UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**'08 CIV 6609**

SECURITIES AND EXCHANGE
COMMISSION,

           **Plaintiff,**

           v.

ONE OR MORE UNKNOWN PURCHASERS
OF CALL OPTIONS FOR THE COMMON
STOCK OF DRS TECHNOLOGIES, INC.
AND AMERICAN POWER CONVERSION
CORP.,

           **Defendant.**

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

Civil Action No. _____



## COMPLAINT

Plaintiff Securities and Exchange Commission (the "SEC" or "Commission"), for its

Complaint alleges as follows:

### SUMMARY OF ALLEGATIONS

1.      This is an insider trading case involving highly profitable and highly suspicious

purchases of call option contracts for the common stock of DRS Technologies, Inc. ("DRS") and

American Power Conversion Corp. ("APCC") made through an account at UBS AG in Zurich,

Switzerland ("UBS Zurich"), by one or more unknown purchasers ("Unknown Purchaser") that

resulted in profits of approximately $3.3 million.  Twice in a period of less than two years,

Unknown Purchaser made well-timed purchases of call options of these two different

corporations in the days and weeks immediately preceding public disclosures and

announcements relating to these companies' ultimate acquisitions.  In both cases, there was no

public information available concerning the acquisitions before Unknown Purchaser purchased the call options.

2. In the first instance, on September 13, 2006, Schneider Electric SA ("Schneider") sent a letter to APCC indicating its interest in acquiring APCC, to which APCC positively responded on September 20, 2006. The Schneider letter and APC response were non-public information. Beginning on September 21, 2006 and continuing through October 20, 2006 the Unknown Purchaser made purchases of 2,830 APCC call options that were out-of-the money. After Schneider publicly announced on October 30, 2006, its intention to acquire all of the outstanding shares of APCC, the company's stock price increased by 26 percent.

3. On October 30, 31 and November 3, 2006, following the announcement of the merger, Unknown Purchaser liquidated his APCC call options holdings and realized a profit of approximately $1.7 million.

4. Less than two years later, beginning on April 29, 2008 and ending on May 7, 2008, the Unknown Purchaser bought 1,820 DRS call options that were out-of-the-money and due to expire shortly. On May 8, 2008, the day after the Unknown Purchaser made his last acquisition of DRS call options, it was publicly reported for the first time that Finmeccanica SpA ("Finmeccanica") was in advanced talks to purchase DRS. On May 12, 2008, Finmeccanica announced that it would acquire DRS for $5.2 billion, or $81 a share. Prior to May 8, 2008, information concerning Finmeccanica's interest in acquiring DRS was confidential and nonpublic. As a result of the announcement concerning the Finmeccanica-DRS deal, the common stock of DRS rose rapidly, reaching $73.89 per share when trading closed on May 8, 2008.

2

5.    On May 8, 2008, Unknown Purchaser liquidated his entire DRS call option holding and realized a profit of approximately $1.6 million.

## JURISDICTION AND VENUE

6.    This Court possesses jurisdiction over this matter pursuant to Sections 21(e), 21A, and 27 of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78u(e), 78u-1, and 78aa]. Defendant has directly or indirectly made use of the means or instrumentalities of interstate commerce, or of the mails, or the facilities of a national securities exchange in connection with the acts, practices, transactions, and courses of business alleged in this Complaint.

7.    Venue lies in this Court pursuant to Section 27 of the Exchange Act [15 U.S.C. § 78aa] because certain acts, practices, transactions and courses of business constituting the violations occurred in the Southern District of New York.

8.    Defendant will, unless restrained and enjoined, continue to engage in the acts, practices, transactions, and courses of business alleged in this Complaint, or in acts, practices, transactions, and courses of business of similar purport and object.

## RELATED CASE

9.    Pursuant to Civil Rule 1.6(a) of the Local Rules of the United States District Court for the Southern District of New York, the Commission notes this action is related to the S.E.C. v. Cristian De Colli, No. 08 –civ-4520 (PAC) (S.D.N.Y. May 15, 2008).

## DEFENDANT

10.    Defendant, Unknown Purchaser, is one or more unidentified individuals who made suspicious purchases of a large number of APCC and DRS call options, respectively,

through an omnibus account known as UBSL A/C Exchange Traded Derivative Account # 452-6020300 (formerly designated # 450-6020300) ("UBS Omnibus Account").

## RELEVANT ENTITIES

11.    **DRS Technologies, Inc.** has its principal executive offices in Parsippany, New Jersey. DRS is a Delaware corporation that supplies integrated products, services, and support to military forces, government agencies, and prime contractors worldwide. DRS' common stock is registered with the Commission pursuant to Exchange Act Section 12(b). DRS' common shares trade on the New York Stock Exchange under the symbol "DRS," and its options trade on the Chicago Board Options Exchange, the Philadelphia Stock Exchange, the International Securities Exchange, and the NYSE Arca.

12.    **Finmeccanica SpA** is headquartered in Rome, Italy. Finmeccanica designs and manufactures, among other things, helicopters, civil and military aircraft, satellites, missiles, and defense electronics. Shares of Finmeccanica are listed on the Milan Stock Exchange and are quoted in the United States on the Pink Sheets under the ticker symbol FINMF.PK.

13.    **American Power Conversion Corp.** had its principal executive offices in West Kingston, Rhode Island, before its merger into an indirect, wholly-owned subsidiary of Schneider Electric SA was completed on February 14, 2007. APCC was a Massachusetts corporation that provided products and services for home and corporate environments to improve the availability, manageability, and performance of sensitive electronic, network, communication and industrial equipment. Prior to the Schneider acquisition, APCC's common stock was registered with the Commission pursuant to Exchange Act Section 12(g), its shares traded on the NASDAQ National Market and on the Pacific Exchange, Inc. under the ticker symbol "APCC,"

and its options traded on the Boston Stock Exchange, Chicago Board Options Exchange, the International securities Exchange, NYSE Arca, and the Philadelphia Stock Exchange.

14.    **Schneider Electric SA**, headquartered in Rueil-Malmaison, France, is an international company that designs, manufactures, and sells electrical distribution equipment, industrial robots, and secured power equipment. Shares of Schneider trade on NYSE Euronext Paris under the ticker symbol PA.

15.    **UBS AG,** with headquarters in Zurich, Switzerland, operates in over 50 countries, including the United States. It is a financial institution with wealth management, investment banking and asset management operations.

16.    **UBS Securities LLC** is a Delaware limited liability company with its principal place of business in Stamford, Connecticut. It is a broker-dealer registered with the Commission pursuant to Section 15(b) of the Exchange Act and a subsidiary of UBS AG.

## FACTUAL ALLEGATIONS

### I.    The APCC Transaction

#### A.    The Purchase of APCC Call Options by Unknown Purchaser

17.    A call option, or a "call," is a financial contract between the buyer and the seller of this type of option. The buyer of the option has the right, but not the obligation, to buy an agreed quantity of a particular security from the seller of the option at a certain time (the expiration date) for a certain price (the strike price). The buyer pays a fee (called a premium) for this right. A call option contract typically gives the buyer the right to purchase 100 shares of the underlying security.

18.    The buyer of a call option wants the price of the underlying security to rise in the future. When the market price of the security exceeds the strike price of the option, the

purchaser of the option can sell the option at the market for a premium. When the market price of the security exceeds the strike price, the option is said to be "in-the-money." The option increases in value when it is "in-the-money."

19.     On or about September 13, 2006 Schneider sent an "indication of interest" letter to the Chairman of the Board of Directors of APCC and the chief executive officer ("CEO") of APCC, expressing Schneider's interest in pursuing a strategic combination with APCC.

20.     On or about September 19, 2006, the APCC Board of Directors reviewed Schneider's "indication of interest" letter.

21.     On or about September 20, 2006, the Chairman of APCC's Board of Directors called Schneider's President and CEO and stated that the APCC's Board of Directors would be willing to have discussions with Schneider about a possible sale of APCC.

22.     On September 21, 2006, the price of a share of APCC common stock reached a high of $21.72 and closed at $21.30. On that same day, Unknown Purchaser bought 1,600 APCC call options due to expire in December 2006 with a strike price of $22.50, and, therefore, on the date they were purchased, the APCC options were not in-the-money.

23.     This purchase constituted 87.33 percent of the trading volume for APCC call options in that series on September 21, 2006, and constituted 26 percent of all the APCC options trading on that date.

24.     On September 22, 2006, the price of a share of APCC common stock reached a high of $21.60 and closed at $21.40. On that same date, Unknown Purchaser bought 800 APCC call options due to expire in December 2006 with a strike price of $22.50 and, therefore, on the date they were purchased, the APCC options were not in-the-money.

25.    Unknown Purchaser's purchase of APCC call options on September 22, 2006, represented 58.78 percent of the trading volume on that date for options in that series, and constituted approximately nine percent of the trading in all APCC options on that date.

26.    On October 10, 2006, the price of a share of APCC common stock reached a high of $21.98 and closed at $21.93. On that same date, Unknown Purchaser bought 350 APCC call options due to expire in November 2006 with a strike price of $22.50 and, therefore, on the date they were purchased, the APCC options were not in-the-money.

27.    This purchase of APCC call options on October 10, 2006, represented 14.5 percent of the trading volume on that date for options in that series.

28.    On October 20, 2006, the price of a share of APCC common stock reached a high of $22.90 and closed at $22.26. On that same date, Unknown Purchaser bought 80 APCC call options due to expire in December 2006 with a strike price of $25 and, therefore, on the date they were purchased, the APCC options were not in-the-money.

29.    This purchase of APCC call options on October 20, 2006, represented 60.15 percent of the trading volume on that date for options in that series.

30.    Between September 21 and October 20, 2006, Unknown Purchaser bought 2,830 APCC call options, none of which were in-the-money, at a cost of approximately $343,000.

31.    All the purchases of APCC call options by Unknown Purchaser were through the omnibus account known as UBSL A/C Exchange Traded Derivative Account # 452-6020300, and cleared through UBS Securities LLC.

B.    **The Announcement of Schneider's Acquisition of APCC**

32.    On Monday, October 30, 2006, at approximately 1:00 a.m. EST, Schneider announced that it would acquire all of the outstanding shares of APCC for $31 per share, in a transaction valued at approximately $6.1 billion.

33.    On October 30, 2006, the price of APCC stock opened at approximately $30 per share, and it traded in that range for the remainder of the day. Trading volume in APCC stock and options rose sharply that day, and the price of APCC stock closed at $30.02 per share, approximately 26 percent above its closing price on Friday, October 27, 2006.

34.    Upon information and belief, prior to the October 30, 2008, announcement, information concerning APCC's interest in being acquired and the potential agreement with Schneider was confidential, nonpublic information.

C.    **Unknown Purchaser Profits From Sale Of APCC Call Options**

35.    On October 30, 31, and November 3, 2006, following the announcement of Schneider's acquisition of APCC, Unknown Purchaser liquidated his holdings in APCC call options and realized a profit of approximately $1.7 million.

II.    **The DRS Transaction**

A.    **The Purchase Of DRS Call Options By Unknown Purchaser**

36.    On April 29, 2008, the price of a share of DRS common stock reached a high of $62.45 and closed at $61. On that same day, Unknown Purchaser bought 550 DRS call options due to expire in June 2008 with a strike price of $65, and, therefore, on the date they were purchased, the DRS options were not in-the-money.

37.    Unknown Purchaser's purchase of DRS call options on April 29, 2008, represented 58.15 percent of the trading volume on that date for options in that series.

8

38.     On May 5, 2008, the price of a share of DRS common stock reached a high of $64.81 and closed at $63.73. On that same day, Unknown Purchaser bought 170 DRS call options due to expire in June 2008 with a strike price of $70, and, therefore, on the date they were purchased, the DRS options were not in-the-money.

39.     Unknown Purchaser's purchase of DRS call options on May 5, 2008, represented 15.7 percent of the trading volume on that date for options in that series.

40.     On May 6, 2008, the price of a share of DRS common stock reached a high of $63.99 and closed at $63.07. On that same day, Unknown Purchaser bought 170 DRS call options due to expire in June 2008 with a strike price of $70, and, therefore, on the date they were purchased, the DRS options were not in-the-money.

41.     This purchase of DRS call options represented 100 percent of the trading volume on May 6, 2008, for options in that series.

42.     On May 7, 2008, the price of a share of DRS common stock reached a high of $64.41and closed at $63.74. On that same day, Unknown Purchaser bought 930 DRS call options due to expire in June 2008 with a strike price of $65, and, therefore, on the date they were purchased, the DRS options were not in-the-money.

43.     Unknown Purchaser's purchase of DRS call options on May 7, 2008, represented 53.1 percent of the trading volume on that date for options in that series.

44.     Between April 29, 2008 and May 7, 2008, Unknown Purchaser bought 1,820 DRS call options, none of which were in-the-money, at a cost of $456,200. All the DRC call options bought by Unknown Purchaser were through the omnibus account known as UBSL A/C Exchange Traded Derivative Account # 452-6020300, and cleared through UBS Securities LLC.

**B.    The DRS-Finmeccanica Announcement**

45.    On Thursday, May 8, the Wall Street Journal reported that Finmeccanica was in advanced talks to purchase DRS, with the buyout price constituting at least a 25 percent premium above DRS' closing share price of $63.74 on the last trading day prior to the announcement. After the Wall Street Journal report, the price of DRS' common stock increased $9.01 per share, or 14 percent, to $72.65 in morning trading and closed on May 8, 2008, at $73.89 per share. During the 52 weeks prior to the Wall Street Journal report, DRS' common stock had traded between $44.11 and $65 per share.

46.    Also, on May 8, 2008, via a press release issued through Business Wire at 9:57 a.m. EST, DRS confirmed the Wall Street Journal report, announcing that it was "engaged in discussions contemplating a potential strategic transaction." In the weeks prior to the Article's publication on May 8, 2008, no major news organization reported either advanced discussions of an acquisition of DRS by Finmeccanica or speculation that DRS was a takeover target. Upon information and belief, all individuals and entities involved in negotiation of the DRS-Finmeccanica deal had been advised that all information relating to the potential acquisition was confidential and nonpublic information, and had agreed to keep the information confidential.

47.    On May 12, 2008, Finmeccanica announced that it would acquire DRS for $5.2 billion, or $81 per share.

**C.    Unknown Purchaser Profits From The Sale Of The DRS Call Options**

48.    Following the May 8, 2008, Unknown Purchaser liquidated his entire DRS call option holding and realized a profit of approximately $1.6 million.

II.     **UBS Ceases Further Transactions On Behalf Of Unknown Purchaser**

49.     On June 6, 2008 and July 7, 2008, the Securities and Exchange Commission requested the assistance of the Swiss Federal Banking Commission ("SFBC") in obtaining information concerning the purchase of APCC and DRS call options executed through UBS.

50.     Those inquiries revealed that the same individual originated, and is the beneficial owner of, the trades in APCC call options, and the trades in DRS call options described in paragraphs 17 through 48.

51.     After reviewing the trading activity of the Unknown Purchaser, UBS AG concluded that the trading activity appeared suspicious and decided, in application of Swiss regulation, not to execute further transactions on behalf of the Unknown Purchaser.     The Unknown Purchaser was informed of this decision on July 10, 2008.

## CLAIM FOR RELIEF

### Violations of Exchange Act Section 10(b) and
### Rule 10b-5 Promulgated Thereunder

52.     Paragraphs 1 through 51 are realleged and incorporated by reference.

53.     Upon information and belief, at the time Defendant purchased APCC call option contracts as set forth above, he was in possession of material, nonpublic information about Schneider's offer to acquire APCC. Defendant (a) knew, or recklessly disregarded the fact that his trading was in breach of a fiduciary duty or similar duty of trust and confidence owed to the shareholders of APCC or to the source from whom he received the material, nonpublic information; or (b) knew or should have known that material, nonpublic information about the acquisition had been communicated to him in breach of a fiduciary or similar duty of trust and confidence.

11

54.    Upon information and belief, at the time Defendant purchased DRS call option contracts as set forth above, he was in possession of material, nonpublic information about Finmeccanica's offer to acquire DRS.    Defendant (a) knew, or recklessly disregarded the fact that his trading was in breach of a fiduciary duty or similar duty of trust and confidence owed to the shareholders of DRS or to the source from whom he received the material, nonpublic information; or (b) knew or should have known that material, nonpublic information about the acquisition had been communicated to him in breach of a fiduciary or similar duty of trust and confidence.

55.    By reason of the conduct described above, defendant, in connection with the purchase or sale of securities, by the use of any means or instrumentalities of interstate commerce or of the mails, or of any facility of any national securities exchange, directly or indirectly (a) employed devices, schemes, or artifices to defraud; (b) made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (c) engaged in acts, practices, or course of business which operates or would operate as a fraud or deceit upon any persons, including purchasers or sellers of the securities.

56.    By reason of the foregoing, Defendant, directly and indirectly, violated Section 10(b) of the Exchange Act [15 U.S.C § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## **PRAYER FOR RELIEF**

WHEREFORE, the Commission requests that the Court enter judgment:

(a)    permanently enjoining Defendants from violating Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5];

(b)    ordering Defendants to disgorge all illicit trading profits resulting from conduct alleged in this Complaint, along with prejudgment interest;

(c)    ordering Defendants to pay civil monetary penalties pursuant to Exchange Act Section 21A [15 U.S.C. § 78u-1]; and

(d)    granting such other and further relief as the Court deems just and appropriate.

Dated: Washington, D.C.
       July 25, 2008

                                   Respectfully submitted,

Of Counsel:
       Antonia Chion                _R·l·l·ξ·l·f_
       Christopher Conte            Richard E. Simpson (RS5859)
       Daniel Chaudoin              Jeffrey T. Infelise (DC 456998)
       Mark J. Kreitman             100 F Street N.E.
       Noel A. Gittens              Washington, D.C. 20549-4030
       Ivonia Slade                 202-551-4904
       E. Laurita Finch             202-772- 9245 (FAX)
       Kevin Guerrero               simpsonr@sec.gov
       Ilana Sultan                 infelisej@sec.gov

                                    Attorneys for Plaintiff
                                    Securities and Exchange Commission