UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SECURITIES AND EXCHANGE
COMMISSION,

        Plaintiff,

        v.

ONE OR MORE UNKNOWN PURCHASERS
OF CALL OPTIONS FOR THE COMMON
STOCK OF DRS TECHNOLOGIES, INC.
AND AMERICAN POWER CONVERSION
CORP.,

        Defendant.

Civil Action No. 08-6609

---

### DECLARATION OF ALBERTO A. AREVALO IN SUPPORT OF PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S MOTION FOR EXTENSION OF TEMPORARY RESTRAINING ORDER FREEZING ASSETS AND GRANTING OTHER RELIEF

I, Alberto A. Arevalo, pursuant to 28 U.S.C. 1746, declare as follows:

1. I am an attorney with the United States Securities and Exchange Commission ("Commission") and hold the position of Assistant Director, International Enforcement at the Commission's Office of International Affairs ("OIA"). My current duties at the Commission include assisting Commission attorneys in the international aspects of their matters and facilitating communication between Commission attorneys and foreign securities regulators. I am a member of good standing of the Bar of California and was admitted to that Bar in 1984. I submit this declaration in support of Plaintiff Securities and Exchange Commission's Motion for Extension of Temporary Restraining Order Freezing Assets and Granting Other Relief. The facts set forth herein

are based upon my personal knowledge or upon information contained in the files of the Commission.

2. It is my understanding one or more unknown purchasers ("Unknown Purchaser") engaged in suspicious trading in call options contracts for the common stock of DRS Technologies, Inc. ("DRS") and American Power Conversion Corp. ("APCC") occurred through an account known as UBSL A/C Exchange Traded Derivative Account # 452-6020300 at UBS AG in Zurich Switzerland and cleared through UBS Securities LLC.

3. On July 25, 2008, the United States District Court for the Southern District of New York, the Honorable Judge Alvin K. Hellerstein, granted the Commission's Motion for a Temporary Restraining Order Freezing Assets and Granting Other Relief and Order to Show Cause Why a Preliminary Injunction Should Not Issue ("the TRO"). The Court scheduled a show cause hearing for August 5, 2008 at 10:00 a.m.

4. Because of the international aspects in this matter, the OIA has assisted the Commission staff in attempting to effect service and notice of these proceedings to entities and persons located outside the United States. Due to the laws under which certain of the Commission's foreign counterparts operate, the time necessary to obtain brokerage and other information from certain regulators outside the United States is frequently significant. In this case, the Commission has taken a variety of actions to notify the defendants and other affected parties about the developments in this litigation while contemporaneously seeking specific records and information from foreign regulators.

5. Since the TRO was entered, the Commission staff has taken numerous steps to attempt to notify defendants of the pendency of this action, the existence of the TRO, and the preliminary injunction hearing. These efforts are detailed below.

6. On July 28, 2008, pursuant to the Treaty between the United States and Switzerland on Mutual Assistance in Criminal Matters ("MLAT"), the United States Department of Justice, at the request of OIA, transmitted a request to Swiss Division of International Legal Assistance ("SDIA") for an emergency freeze of funds at UBS AG which represent the proceeds of insider trading by Unknown Purchaser. The MLAT request included a description of this litigation and the actions taken by this Court in the litigation. Enclosed with the MLAT request was a copy of the TRO issued by the Court on July 25, 2008. The United States Department of Justice has informed OIA that the Swiss authorities will deliver a copy of the MLAT request to the Unknown Purchaser in this case.

7. Under Swiss criminal law, a United States governmental agency, such as the Commission, is prohibited from initiating any direct contact with any person or entity located in Switzerland for purposes of investigation or litigation. Accordingly, the Commission sought the assistance of the Swiss Federal Banking Commission ("SFBC") in accordance with letters of cooperation between the Commission and the SFBC dated November 17, 1997 and January 18, 2001 ("the Swiss Letters").

8. On July 29, 2008, the OIA asked SDIA, through the United States Department of Justice, to tell the Commission when the MLAT request to freeze assets would take effect. On July 30, 2008, the OIA received notice that the SDIA had, on that same day, issued its order to freeze the accounts of Unknown Purchaser at UBS AG

Zurich. However, the Swiss authorities were unable to say when UBS AG Zurich would inform the Unknown Purchaser that it had frozen the accounts. Based upon past OIA experience, it was anticipated that the bank would notify the Unknown Purchaser soon after receipt of the SDIA freeze order.

9. On July 30, 2008, the OIA asked the SFBC whether the TRO and complaint, which the OIA had sent to the SFBC on July 28, 2008, had, in turn, been provided by the SFBC to UBS AG Zurich and whether that bank had provided those pleadings to the Unknown Purchaser. The OIA also asked the SFBC to contact the compliance officer at UBS AG Zurich and ask him to contact Commission staff to discuss this matter. In addition, the OIA informed the SFBC that the Court's TRO had authorized service upon the Unknown Purchaser through UBS AG Zurich.

10. On July 31, 2008, the SFBC asked the OIA to send it the court pleadings in response to the OIA's request for SFBC to deliver the TRO, complaint and all related pleadings to Unknown Purchaser and UBS AG. A copy of the TRO, the complaint, summons and all other related pleadings were transmitted to the SFBC, via e-mail and by International Federal Express, on July 31, 2008. As of the date of this declaration, the Commission has not received confirmation that these documents were delivered to UBS AG Zurich or Unknown Purchaser.

11. The SFBC has advised the Commission that the principal Unknown Purchaser does not reside in Switzerland. Swiss law does allow the SFBC to release identifying information about the unknown Purchaser to the Commission under the circumstances of this case. However, Swiss law provides that any individual or entity to be identified has the right to challenge the SFBC's proposed disclosure. If an Unknown

4

Purchaser does file an objection, disclosure of identifying information could be delayed for as long as six months, even if the disclosure is ultimately allowed. Through its MLAT request, the Commission, however, also requested the SDIA to obtain the identity, address and other identifying information about Unknown Purchaser.

12. The OIA and Commission staff has also been working on serving Unknown Purchaser through delivery of a request to the Swiss authorities under the Hague Convention on the Service Abroad of Judicial and Extra Judicial Documents in Civil and Commercial Matters. The OIA and the Commission staff will ask that UBS AG be served under that Hague Service request as an agent for the Unknown Purchaser. Swiss authorities, however, require that the court pleadings be attached to such Hague Service request and that the court pleadings be translated into German. Commission staff is currently working on obtaining such translation.

I declare under penalty of perjury that the foregoing is true and correct.

Dated August 1, 2008.

_____
Alberto A. Arevalo