**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
_____

|  |  |  |
|---|---|---|
| | : | |
| SECURITIES AND EXCHANGE | : | |
| COMMISSION, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 08-6609 |
| | : | (PAC) |
| ONE OR MORE UNKNOWN PURCHASERS | : | |
| OF CALL OPTIONS FOR THE COMMON | : | |
| STOCK OF DRS TECHNOLOGIES, INC. | : | |
| AND AMERICAN POWER CONVERSION | : | |
| CORP., | : | |
| | : | |
| Defendant. | : | |

_____

**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION SUPPLEMENTAL**
**MEMORANDUM IN SUPPORT OF ISSUANCE OF PRELIMINARY**
**INJUNCTION FREEZING ASSETS AND GRANTING OTHER RELIEF**
_____

Of Counsel:

| | |
|---|---|
| Antonia Chion | Jeffrey T. Infelise (DC 456998) |
| Christopher Conte | Richard E. Simpson (RS5859) |
| Daniel Chaudoin | 100 F Street N.E. |
| Mark J. Kreitman | Washington, D.C.  20549-4030 |
| Noel A. Gittens | 202-551-4904 |
| Ivonia K. Slade | 202-772- 9245 (FAX) |
| E. Laurita Finch | |
| Kevin Guerrero | |
| Ilana Z. Sultan | |

August 15, 2008                         Attorneys for Plaintiff
                                        Securities and Exchange Commission

# TABLE OF CONTENTS

TABLE OF AUTHORITES ........................................................................................ ii

FACTUAL AND PROCEDURAL BACKGROUND ....................................................2

I.   Current Status Of The Case ...............................................................................2

II.  Notice To Unknown Purchaser ..........................................................................4

III. Identification Of Unknown Purchaser By Name ................................................7

IV.  Failure to Appear Or Oppose .............................................................................8

ARGUMENT ............................................................................................................8

I.   The Court Should Issue A Preliminary Injunction To
     Continue The Asset Freeze And Other Ancillary Relief
     Until This Matter Is Finally Resolved ................................................................8

     A.   A Preliminary Injunction Is Necessary And Appropriate ....................8

     B.   Unknown Purchaser Has Been Provided Notice ............................... 10

CONCLUSION ...................................................................................................... 13

# TABLE OF AUTHORITIES

## CASES

International Controls Corp. v. Vesco, 490 F.2d 1334 (2d Cir.), cert. denied, 417 U.S. 932 (1974)...........................................................................................................9

Kos Pharmaceuticals, Inc. v. Andrx Corp., 369 F.3d 700 (3d Cir. 2004)...........................9

Levi Strauss & Co. v. Sunrise International Trading, Inc., 51 F.3d 982 (11th Cir. 1995) ..................................................................................................................9

New York Land Co. v. Republic of Philippines, 634 F. Supp. 279 (S.D.N.Y. 1986) ..................................................................................................................12

SEC v. Bremont, 954 F. Supp. 726 (S.D.N.Y. 1997) ........................................................10

SEC v. Certain Unknown Purchasers of the Call Options of Duracell Int'l, Inc., 96 civ. No. 7017 (S.D.N.Y. Oct. 2, 1996) .........................................................12

SEC v. Certain Unknown Purchasers of Stock and Call Options for the Common Stock of Santa Fe, International Corp., No. 81 civ 6553, 1983 WL 1343 (S.D.N.Y. July 25, 1983) ......................................................................................11, 12

SEC v. Dumont Corp., 49 F.R.D. 342 (S.D.N.Y. 1969).....................................................12

SEC v. General Refractories Co., 400 F. Supp. 1248 (D.D.C. 1975)................................10

SEC v. Margolin, No. 92-cv-6307, 1992 WL 279735 (S.D.N.Y. Sept. 30, 1992)..........8, 9

SEC v. One or More Purchasers of Call Options for the Common Stock of CNS, Inc., No. 06-cv-4540 (E.D. Pa. Oct. 30, 2006) ............................................................12

SEC v. One or More Unknown Purchasers of Call Options for the Common Stock of TXU Corp., No. 07-cv-1208 (N.D. Ill. Mar 28, 2007)............................................12

SEC v. Unifund SL, 910 F.2d 1028 (2d Cir. 1990) ...................................................8, 9, 10

SEC v. Vaskevitch, 657 F. Supp. 312 (S.D.N.Y. 1987) .......................................................9

U.S. v. First National City Bank, 379 U.S. 378 (1965) .....................................................10

## STATUTES

**Securities Exchange Act of 1934**
Section 21(d)(1) 15 U.S.C. § 78u(d)(1) .................................................................................8

## MISCELLANEOUS

11A Charles Alan Wright et al., <u>Federal Practice & Procedure</u> § 2949 (2d ed.
    1995) .................................................................................................................9

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
_____

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : <br> : <br> : <br> : |
| Plaintiff, | : <br> : |
| v. | :      Civil Action No. 08-6609 <br> :      (PAC) |
| ONE OR MORE UNKNOWN PURCHASERS OF CALL OPTIONS FOR THE COMMON STOCK OF DRS TECHNOLOGIES, INC. AND AMERICAN POWER CONVERSION CORP., | : <br> : <br> : <br> : <br> : <br> : |
| Defendant. | : <br> : |

_____

### PLAINTIFF SECURITIES AND EXCHANGE COMMISSION SUPPLEMENTAL MEMORANDUM IN SUPPORT OF ISSUANCE OF PRELIMINARY INJUNCTION FREEZING ASSETS AND GRANTING OTHER RELIEF

Plaintiff, the Securities and Exchange Commission (the "Commission"), respectfully submits this supplemental memorandum in support of its request for a preliminary injunction continuing the assets freeze and other ancillary relief.

On July 25, 2008, the Court entered a temporary restraining order ("TRO") freezing proceeds from purchases of call option contracts for the common stock of DRS Technologies, Inc. ("DRS") and American Power Conversion Corp. ("APCC") made through an account at UBS AG in Zurich, Switzerland ("UBS Zurich"), by one or more unknown purchasers ("Unknown Purchaser") and granting other ancillary relief. On August 5, 2008, the Court extended the TRO until August 18, 2008. The Commission now requests, pursuant to Rule 65(a) of the Federal Rules of Civil Procedure, that the asset freeze and other granted relief be extended until resolution of this case on the

merits.  All the prerequisites to issuance of a preliminary injunction are satisfied and any

burdens imposed upon the defendant(s) by freezing the proceeds of the trading in call

options of APCC and DRS are outweighed by the need to prevent the dissipation or

secretion of the assets.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    Current Status Of The Case

The complaint in this case was filed on July 25, 2008.  The Commission alleges

that Unknown Purchaser engaged in illegal insider trading of call options of APCC and

DRS.  Compl. ¶ 1.  Beginning on September 21, 2006 and continuing through October

20, 2006, Unknown Purchaser bought 2,830 APCC call options that were out of the

money and due to expire shortly.  Declaration of Rhonda Byun ("Byun Decl.) ¶¶ 4-9,

Exh. A; Declaration of Stephen Glascoe ("Glascoe Decl.") ¶¶ 8-13; Exh. B.  These

purchases began the day after APCC informed that Schneider Electric SA ("Schneider")

that it was willing to initiate discussions concerning the possible sale of APCC to

Schneider.  Exh. A, p. 6 to Declaration of Robert Houck, Exh. C.  The purchases were

also in advance of a public announcement on October 30, 2006, that Schneider Electric

SA ("Schneider") was acquiring APCC.  Glascoe Decl. ¶ 3.  Shortly after this public

announcement, Unknown Purchaser sold his APCC call options holdings, realizing a

profit of approximately $1.7 million.  Byun Decl. ¶¶ 10-14.

Beginning on April 29, 2008 and ending on May 7, 2008, Unknown Purchaser

bought 1,820 DRS call options that were out-of-the-money and due to expire shortly.

Byun Decl. ¶¶ 15-19.

On Thursday, May 8, 2008, the Wall Street Journal reported that Finmeccanica was in advanced talks to acquire DRS for a purchase price likely more than 25 per cent higher than its previous-day closing price of $63.74.  That same day, May 8th, via a press release issued through Business Wire at 9:57 a.m. EST, DRS confirmed the Wall Street Journal report, announcing that it was "engaged in discussions contemplating a potential strategic transaction."  Declaration of Nina Laserson Dunn ("Dunn Decl.) ¶¶ 4-5, Exh. D. Prior to this date, DRS personnel and advisers who received information related to the potential transaction were told that the information was confidential and non-public. Dunn Decl. ¶ 7.  Following the announcement, Unknown Purchaser liquidated his entire DRS call option holding and realized a profit of approximately $1.6 million.  Byun Decl. ¶ 20-23.

All the APCC and DRS call option trades were through an omnibus account known as UBSL A/C Exchange Traded Derivative Account # 452-6020300 (formerly designated # 450-6020300) ("UBS Omnibus Account"), at UBS AG, Zurich, Switzerland.  Byun Decl. ¶¶ 4-8, 10-13, 15-22.  This account does not identify the beneficial owner(s) of the options and, consequently, the complaint does not identify the defendants by name.  However, it was determined that the same individual originated and was the beneficial owner of several trades in both APCC and DRS.  7/24/08 SFBC letter, Exh. E.

On July 25, 2008, the Court granted the Commission's motion for a TRO and froze the assets of the Unknown Purchaser, provided for service upon the defendant(s) through the brokerage firm and bank where the omnibus account was located, ordered defendant(s) to identify themselves, and ordered the repatriation of defendant(s) assets

obtained as a result of the activities described in the complaint.  On August 5, 2008, the

Court granted the Commission's request to extend the TRO until August 18, 2008, and

scheduled a show cause hearing for 3:30 p.m. on that date.

## II.    Notice To Unknown Purchaser

On July 28, 2008, pursuant to the Treaty between the United States and

Switzerland on Mutual Assistance in Criminal Matters ("MLAT"), the United States

Department of Justice, at the request of the Commission's Office of International Affairs

("OIA"), transmitted a request to Swiss Division of International Legal Assistance

("SDIA") for an emergency freeze of funds at UBS AG Zurich which represent the assets

associated with the insider trading by Unknown Purchaser.  The MLAT request included

a description of this litigation and the actions taken by this Court in the litigation.

Enclosed with the MLAT request was a copy of the TRO issued by the Court on July 25,

2008.  The United States Department of Justice informed OIA that the Swiss authorities

will deliver a copy of the MLAT request to the Unknown Purchaser in this case.

Declaration of Alberto A. Arevalo ("Arevalo Decl.") ¶ 6, Exh. F.

On July 28, 2008, the Commission also transmitted the Court's TRO and related

pleadings to UBS Securities LLC, and requested that the TRO and related pleadings be

provided to the Unknown Purchaser.  On July 30, 2008, UBS Securities LLC forwarded

the TRO and related documents to the compliance officer at UBS AG Zurich.  Byun

Decl. ¶ 24.  However, UBS Securities did not indicate whether the TRO and other

pleadings had been provided to Unknown Purchaser.  UBS Securities LLC further stated

that the identities of the customers behind the trades placed by UBS AG Zurich were not

known to it.  Byun Decl. ¶ 25.

On July 29, 2008, OIA asked SDIA, through the United States Department of Justice, to tell the Commission when the MLAT request to freeze assets would take effect.  On July 30, 2008, OIA received notice that the SDIA had, on that same day, issued its order to freeze the accounts of Unknown Purchaser at UBS AG Zurich. However, the Swiss authorities were unable to say when UBS AG Zurich would inform Unknown Purchaser that it had frozen the accounts.  Based upon past OIA experience, it was anticipated that the bank would notify Unknown Purchaser soon after receipt of the SDIA freeze order.  Arevalo Decl. ¶ 8.

The SFBC has advised the Commission that the principal Unknown Purchaser does not reside in Switzerland.  Swiss law does allow the SFBC to release complete identifying information about Unknown Purchaser to the Commission under the circumstances of this case.  However, Swiss law provides that any individual or entity to be identified has the right to challenge the SFBC's proposed disclosure.  If Unknown Purchaser does file an objection, disclosure of identifying information could be delayed for as long as six months, even if the disclosure is ultimately allowed.  Through its MLAT request, the Commission, however, also requested the SDIA to obtain the identity, address and other identifying information about Unknown Purchaser.  Arevalo Decl. ¶ 11.

On July 31, 2008, the Commission served the summons and complaint upon UBS Securities LLC, and requested that it forward these pleadings to Unknown Purchaser. Exh. G.

On August 3, 2008, the Commission served the Commission's pleadings requesting that the Court extend the TRO until August 18, 2008 upon UBS Securities

LLC.  UBS Securities LLC forwarded these pleadings to the UBS Zurich compliance officer on August 4, 2008.  Byun Decl. ¶ 25.  On August 6, 2008, the Commission served the Court's Order extending the TRO upon UBS Securities, who forwarded it to the UBS Zurich compliance officer on August 7, 2008.  Byun Decl. ¶ 26.

Additionally, the Commission translated the pleadings, including the Court's TRO, into German so they could be served upon the defendants in accordance with the provisions of the Hague Convention on the Service Abroad of Judicial and Extra Judicial Documents in Civil and Commercial Matters.  On August 13, 2008, copies of the complaint, summons and TRO were sent, via a Request for Service Abroad of Judicial or Extrajudicial Documents to the Central Authority for the Canton of Zurich, Switzerland in accordance with the Hague convention.  Exh. H.

Finally, on August 13, 2008, the Commission sought to publish notice of this proceeding in the International Herald Tribune.  The notice will be published for five days, commencing on August 16, 2008.  Exh. I.

On August 14, 2008, the Department of Justice received two letters from the SDIA.  Exh. J.  One of these letters explained that the SDIA had provided a copy of its order freezing assets to UBS Zurich, along with the MLAT request and a copy of the TRO.  Exh. J, p. 1.  Enclosed with SDIA's letter was a letter dated August 14, 2008 from UBS Zurich stating that on July 31, 2008 and August 5, 2008, it notified the clients who undertook the transactions referenced in the MLAT of the proceedings that were taking place.  UBS also provided the clients copies of the SDIA's order, the request from the Department of Justice and the TRO.  Exh. J, p. 3.

Also, on August 14, 2008, the Commission received a letter from an attorney representing UBS Zurich that included copies of correspondence that UBS AG had forwarded to the account holders whose assets had been frozen pursuant to the TRO and MLAT.  Exh. K  This correspondence included letters dated August 8, 2008, forwarding to the account holders, the Court's order extending the TRO until August 18, 2008, and setting the show cause hearing for that date.  Exh. K.[1]

### III.  <u>Identification Of Unknown Purchaser By Name</u>

Section II of the TRO entered on July 25, 2008, required Unknown Purchaser to identify himself or themselves to the Commission within five days of service of the orders.  As of the date of this pleading, Unknown Purchaser has not complied with this requirement.

The Commission has employed every means authorized by the TRO, the Federal Rules of Civil Procedure, and all available means under international law to identify Unknown Purchaser, including service of the TRO and related pleadings upon UBS Securities LLC.  Notwithstanding the Commission's aggressive and comprehensive efforts described above, the Commission has not yet been able to determine the identity of Unknown Purchaser.

---

[1]    Because the letter from UBS AG was not received until late on the afternoon of August 14, 2008, the translation of the cover letters UBS Zurich sent to the account holders, which are in German, had not been completed at the time this pleading was filed. The Commission will file the official translation of these letters, which are identical, as soon as it is completed.

## IV.  **Failure to Appear Or Oppose**

The Unknown Purchaser has not made an appearance, answered the complaint, filed an opposition to the Commission's request for TRO, or participated in any other way in this action.

## **ARGUMENT**

### I.  **The Court Should Issue A Preliminary Injunction To Continue The Asset Freeze And Other Ancillary Relief Until This Matter Is Finally Resolved**

#### A.  **A Preliminary Injunction Is Necessary And Appropriate**

Section 21(d)(1) of the Securities Exchange Act of 1934 ("Exchange Act"), provides that a court shall enter a permanent or temporary injunction or restraining order upon "a proper showing" by the Commission. 15 U.S.C. § 78u(d)(1). In order to obtain a preliminary injunction under this statutory provision, the Commission need not show that there would be a risk of irreparable harm absent the injunction or that remedies at law are inadequate. SEC v. Unifund SL, 910 F.2d 1028, 1036 (2d Cir. 1990). Even if such a showing were required, however, it has been met here. TRO Mem. at 2-15. [2]

Further, where the Commission is seeking only ancillary relief such as an asset freeze, it need not show the same degree of "likelihood of success on the merits" that is required for a permanent injunction or a more onerous preliminary injunction. Unifund SAL, 910 F.2d at 1041-42. As previously demonstrated, TRO Mem. at 15-16, where it appears that a defendant might dissipate assets or transfer assets beyond the United States, an asset freeze is appropriate as long as the Commission has shown a basis for

---

[2]  "TRO Mem. at ____," refers to the Plaintiff Securities and Exchange Commission's Memorandum In Support Of Application For An Ex Parte Temporary Restraining Order Freezing Assets And Granting Other Relief, And For An Order To Show Cause Why A Preliminary Injunction Should Not Be Issued.

inferring that there has been a violation of the securities laws. Id. at 1041; see SEC v. Margolin, No. 92-cv-6307, 1992 WL 279735, *19-20 (S.D.N.Y. Sept. 30, 1992) (a "substantial [showing of] likelihood of success . . . is not required in order to obtain a freeze order").

The Commission has previously demonstrated that there is an adequate factual basis for inferring that illegal insider trading occurred in connection with defendants' trading in APCC and DRS call options. TRO Mem. at 1-10, 12-14.[3] In addition to the APCC and DRS call options identified in the Commission's original Memorandum, there is evidence that Unknown Purchaser made an additional purchase of 20 APCC call options on October 23, 2006 – only seven days before the public announcement that Schneider Electric would acquire APCC. Dyun Decl. ¶ 8. These call options, like all the other APCC and DRS call options Unknown Purchaser bought, were out-of-the-money at the time of the purchase.

A continuation of the asset freeze in this case would be consistent with numerous other decisions imposing this type of relief. Courts have frequently recognized that a final order requiring disgorgement could be meaningless without an asset freeze prior to entry of a final judgment. See, e.g., International Controls Corp. v. Vesco, 490 F.2d 1334, 1347 (2d Cir.), cert. denied, 417 U.S. 932 (1974); SEC v. Vaskevitch, 657 F. Supp. 312, 315 (S.D.N.Y. 1987) ("[a]s to the issue of an asset freeze, the court certainly has the ability to

---

[3]    In determining whether a preliminary injunction is warranted, the Court may rely upon affidavits and hearsay materials regardless whether they would be admissible at a trial on the merits. Kos Pharmaceuticals, Inc. v. Andrx Corp., 369 F.3d 700, 718 (3d Cir. 2004) (collecting cases); Levi Strauss & Co. v. Sunrise Int'l Trading, Inc., 51 F.3d 982, 985 (11th Cir. 1995); see 11A Charles Alan Wright et al., Federal Practice & Procedure § 2949 (2d ed. 1995). Moreover, affidavits may be considered at the preliminary injunction stage even if they do not meet the strict rules for consideration on a motion for summary judgment. Kos Pharmaceuticals, 369 F.3d at 718-19; 11A Wright § 2949

ensure that the defendants' assets are not secreted or dissipated before entry of final

judgment concluding this action"); SEC v. General Refractories Co., 400 F. Supp. 1248,

1259 (D.D.C. 1975) (it is within the Court's authority to grant effective equitable relief by

temporarily freezing specific assets "in order to assure a source to satisfy that part of the

final judgment which might [ultimately] be ordered").[4]

The Court has already determined that the Commission is entitled to preliminary

relief and has entered a TRO freezing assets.  There has been no change in the

circumstances that warranted issuance of that TRO.  Based upon the Court's Order, the

Swiss authorities have taken action to freeze the assets of Unknown Purchaser of which they

are aware.  Unknown Purchaser has not identified himself or themselves, has not entered an

appearance in this case and has not provided any basis to rebut the inference from the

circumstances of the trading in APCC and DRS call options that the Unknown Purchaser

engaged in unlawful insider trading.  The Commission now requests that the principal

elements of the equitable relief now in place—the provisions for freezing assets, identifying

agents for service, providing alternative means of service, requiring submission of

identifying information, repatriation of assets, and prohibiting document destruction—be

continued for the duration of this litigation.  The only new issue raised by the Commission's

instant motion is the question of the sufficiency of notice to Unknown Purchaser.

### B.      Unknown Purchaser Has Been Provided Notice

Rule 65(a)(1) of the Federal Rules of Civil Procedure provides that a preliminary

injunction may be entered only after "notice to the adverse party."  This requirement has

---

[4]      Asset freeze orders are also used to preserve assets for payment of monetary
penalties, Unifund SAL, 910 F.2d at 1042, citing U.S. v. First Nat'l City Bank, 379 U.S.
378, 385 (1965), and for payment of prejudgment interest.  SEC v. Bremont, 954 F. Supp.
726, 733 (S.D.N.Y. 1997).

been satisfied here because, the complaint and preliminary relief papers have been served upon Unknown Purchaser through the U.S. brokerage firm, UBS Securities, LLC, that conducted the trades at issue, as authorized in Section V of the TRO.

Additionally, there is reliable and persuasive evidence the Unknown Purchaser has received actual notice that the TRO has been entered and that a show cause hearing has been scheduled.  First, UBS Securities LLC forwarded the TRO and related pleadings to the compliance officer at UBS Securities LLC on July 28, 2008.  Moreover, in accordance with the normal practice for a bank in Switzerland UBS Zurich notified the account holders whose assets had been frozen of the action and provided them a copy of the MLAT request and the TRO on July 31, 2008 and August 5, 2008.  Additionally, on August 8, 2008, UBS Zurich forwarded copies of the Court's order extending the TRO until August 18, 2008, to the account holders.  Notwithstanding this notice, Unknown Purchaser has not complied with any part of the TRO, has not filed any opposition to the Commission's request for entry of a preliminary injunction and has not entered an appearance in this case.

For the moment, the Commission does not know the identity of Unknown Purchaser.  However, the reason Unknown Purchaser's identity remains a mystery is Unknown Purchaser's use of a Swiss bank account to conduct the trading that is the subject of the Commission's complaint.  Exh. J, pp. 6-7.  This account and the "veil of secrecy imposed by Swiss law" SEC v. Certain Unknown Purchasers of Stock and Call Options for the Common Stock of Santa Fe, Int'l Corp., No. 81 cv 6553, 1983 WL 1343, *1 (S.D.N.Y. July 25, 1983), afford Unknown Purchaser anonymity and require the

Commission to comply with complex and time-consuming procedures under international law to discover Unknown Purchaser's identity.  Exh. J, pp. 5-7.

Under these circumstances the fact that the Commission does not yet have access to the Swiss banking records identifying Unknown Purchaser by name does not preclude entry of a preliminary injunction.  Courts have entered preliminary injunctions freezing the assets of unidentified foreign defendants in other proceedings.  See e.g., SEC v. Certain Unknown Purchasers of the Call Options of Duracell Int'l, Inc., 96 civ. No. 7017 (S.D.N.Y. Oct. 2, 1996) (findings and conclusions holding that Commission was entitled to asset freeze during pendency of action against unknown owners of options) Ex. L; SEC v. Santa Fe, Int'l Corp., No. 81 Civ. 6553, 1983 WL 1343 (S.D.N.Y. July 25, 1983); SEC v. One or More Unknown Purchasers of Call Options for the Common Stock of TXU Corp., No. 07-cv-1208 (N.D. Ill. Mar 28, 2007) Ex. M; SEC v. One or More Purchasers of Call Options for the Common Stock of CNS, Inc., No. 06-cv-4540, (E.D. Pa. Oct. 30, 2006) Ex. N.

Moreover, Unknown Purchaser's failure to appear and defend against the Commission's claims does not shield them from entry of a preliminary injunction.  See New York Land Co. v. Republic of Philippines, 634 F. Supp. 279, 280-81 (S.D.N.Y. 1986) (entitlement to preliminary injunction supported by defendants failure to appear); SEC v. Dumont Corp., 49 F.R.d. 342, 343 (S.D.N.Y. 1969); Santa Fe, Int'l Corp., No. 81 Civ. 6553, 1983 WL 1343; TXU Corp., No. 07-cv-1208 (N.D. Ill. Mar 28, 2007); CNS, Inc., No. 06-cv-4540, (E.D. Pa. Oct. 30, 2006.

## **CONCLUSION**

Wherefore, the Commission requests that the Court enter a preliminary injunction continuing the asset freeze and the provisions designating agents for service on defendants, providing for alternative methods of service, requiring repatriation of assts; requiring defendant to identify themselves and prohibiting document destruction.  A proposed order has been submitted.

Dated: Washington, D.C.
       August 15, 2008

                                        Respectfully submitted,

Of Counsel:
                                          _s/Jeffery T. Infelise_____
       Antonia Chion                      Jeffrey T. Infelise (DC 456998)
       Christopher Conte               Richard E. Simpson (RS5859)
       Daniel Chaudoin                100 F Street N.E.
       Mark J. Kreitman               Washington, D.C.  20549-4030
       Noel A. Gittens                 202-551-4904
       Ivonia K. Slade                 202-772- 9245 (FAX)
       E. Laurita Finch               infelisej@sec.gov
       Kevin Guerrero                simpsonr@sec.gov
       Ilana Z. Sultan

                                          Attorneys for Plaintiff
                                        Securities and Exchange Commission

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

SECURITIES AND EXCHANGE                    :
COMMISSION,                                :
                                           :
                     Plaintiff,            :
                                           :
             v.                            :          Civil Action No. 08-6609
                                           :          (PAC)
ONE OR MORE UNKNOWN PURCHASERS             :
OF CALL OPTIONS FOR THE COMMON             :
STOCK OF DRS TECHNOLOGIES, INC.            :
AND AMERICAN POWER CONVERSION              :
CORP.,                                     :
                                           :
                     Defendant.            :
_____:

## DECLARATION OF RHONDA BYUN

I, Rhonda Byun, pursuant to 28 U.S.C. § 1746, declare as follows:

1.      I am presently a Compliance Officer with UBS Securities, LLC ("UBS

Securities") where I have worked since July 26, 1999.  By virtue of my position, I am

familiar with the account statements attached hereto with respect to account 452-60203

UBSL A/C Exchange Traded Derivative.  This is an omnibus account for trades placed

through UBS AG Zurich.

2.      To the best of my knowledge, UBS Securities does not have information

regarding the identities of the beneficial owners of the trades addressed in paragraphs 4–

13 and 15-22, below.  Trades in account 452-60203 settle on a net basis between UBS

Securities and UBS Limited, and then with UBS AG Zurich.

3.      The Commission asked me to provide statements for account number 452-60203

for the period from September 2006 through November 2006, and April 2008 through

June 2008. Excerpts from the account statements provided are attached to this declaration. To the best of my knowledge, the account statements provided to the Commission are true and accurate copies. It is the regular practice of UBS Securities in the regular course of its business to maintain these account statements. The following information is set forth in the attached account statements:

4.      On September 21, 2006, unknown purchasers bought 1,600 APCC call options, with a December 2006 expiration and a strike price of $22.50, through account number 452-60203.

5.      On September 22, 2006, unknown purchasers bought 800 APCC call options, with a December 2006 expiration and a strike price of $22.50, through account number 452-60203.

6.      On October 10, 2006, unknown purchasers bought 350 APCC call options, with a November 2006 expiration and a strike price of $22.50, through account number 452-60203.

7.      On October 20, 2006, unknown purchasers bought 80 APCC call options, with a December 2006 expiration and a strike price of $25, through account number 452-60203.

8.      On October 23, 2006, unknown purchasers bought 20 APCC call options, with a November 2006 expiration and a strike price of $22.50, through account number 452-60203.

9.      Between September 21 and October 23, 2006, unknown purchasers bought 2,850 APCC call options through account number 452-60203 at a total cost of approximately $347,282.

2

Exhibit A, Pt. 1 of 4

10.    On October 30, 2006, unknown purchasers sold 2,575 of the APCC call options purchased through account number 452-60203.

11.    On October 31, 2006, unknown purchasers sold 175 of the APCC call options purchased through account number 452-60203.

12.    On November 2, 2006, unknown purchasers sold 20 of the APCC call options purchased through account number 452-60203.

13.    On November 5, 2006, unknown purchasers sold 80 of the APCC call options purchased through account number 452-60203.

14.    The difference between the purchase and sale price of the 2,850 APCC call options identified above, is approximately $1,664,000.

15.    On April 29, 2008, unknown purchasers bought 550 DRS call options, with a June 2008 expiration and a strike price of $65, through account number 452-60203.

16.    On May 5, 2008, unknown purchasers bought 170 DRS call options, with a June 2008 expiration and a strike price of $70, through account number 452-60203.

17.    On May 6, 2008, unknown purchasers bought 170 DRS call options, with a June 2008 expiration and a strike price of $70, through account number 452-60203.

18.    On May 7, 2008, unknown purchasers bought 930 DRS call options, with a June 2008 expiration and a strike price of $65, through account number 452-60203.

19.    Between April 29, 2008, and May 7, 2008, unknown purchasers bought 1,820 DRS call options through account number 452-60203 at a total cost of approximately $457,019.

20.    On May 8, 2008, unknown purchasers sold 340 of the DRS call options purchased through account number 452-60203.

3

21.     On May 12, 2008, unknown purchasers sold 930 of the DRS call options purchased through account number 452-60203.

22.     On June 23, 2008, unknown purchasers sold 550 of the DRS call options purchased through account number 452-60203.

23.     The difference between the purchase and sale price of the 1,820 DRS call options identified above, is approximately $1,635,799.

24.     On July 28, 2008, UBS Securities received from the Commission copies of the Commission's complaint, application for a temporary restraining order, memorandum of law in support of the application for a temporary restraining order and the temporary restraining order issued by the Honorable Alvin K. Hellerstein in Civil Action No. 08-cv-6609.  On July 30, 2008, UBS Securities forwarded these documents to a compliance officer with UBS AG Zurich.  Because UBS Securities does not know the identity of the unknown purchasers of the APCC and DRS call options, it could not provide those documents directly to the unknown purchasers as requested.

25.     On August 3, 2008, UBS Securities received from the Commission, the Commission's application for an extension of the temporary restraining order and related pleadings in Civil Action No. 08-cv-6609.  UBS Securities forwarded these documents to the above-referenced UBS AG Zurich compliance officer on August 4, 2008.

26.     On August 6, 2008, UBS Securities received from the Commission the order issued by the Honorable Paul A. Crotty extending the temporary restraining order in Civil Action No. 08-cv-6609 until August 18, 2008.  UBS Securities forwarded this document to the UBS Zurich compliance officer on August 7, 2008.

27.    To the best of my knowledge, as of the date of this declaration, UBS Securities has not received any information from UBS Zurich or any other source concerning the identity of the unknown purchasers of the APCC and DRS call options described in the paragraphs above.


I declare under penalty of perjury that the foregoing is true and correct.


Executed on August 13, 2008
Stamford, Connecticut

 **UBS** **Investment Bank**

677 Washington Boulevard
Stamford CT 06901
(203) 719-3000

Account #
**450-60203  087**

Statement Period
**08-01-06 to 08-31-06**

## YOUR ACCOUNT STATEMENT

Reported in U.S. DOLLARS

Account Name
UBS AG

**UBS AG**
**A/C EXCHANGE TRADED DERIVATIVE**
**PO BOX 8098**
**ZURICH**
**SWITZERLAND**

### MONEY BALANCE SUMMARY

|          | 08-31-06     | 07-31-06     |
|----------|--------------|--------------|
| Net Cash | $621,690.55  | $628,334.35  |

### PORTFOLIO SUMMARY

|                             | 08-31-06        |
|-----------------------------|-----------------|
| * Total Portfolio Value     | $165,612,721.00 |
| Net Cash Balance            | 621,690.55      |
| * Net Portfolio Value       | 166,234,411.55  |
| * Net Value Last Period     | 196,907,737.59  |

**\* Excludes Unpriced Securities.**

### ACTIVITY SUMMARY

| CREDITS             |                |
|---------------------|----------------|
| Securities Sold     | $42,360,323.51 |
| Other Credits       | 24,701,992.20  |
| **Total Credits**   | **$67,062,315.71** |

| DEBITS               |                |
|----------------------|----------------|
| Securities Purchased | $40,430,724.44 |
| Other Debits         | 26,638,235.07  |
| **Total Debits**     | **$67,068,959.51** |

| **Net Activity**     | **$(6,643.80)** |

### REALIZED INCOME & EXPENSE SUMMARY

|                      | 08-31-06   | YEAR-TO-DATE |
|----------------------|------------|--------------|
| Margin Interest Paid | $(528.80)  | $(542.04)    |
| Credit Interest      | 2,778.23   | 18,470.42    |

**Independent, third party research on certain companies covered by the firm's research is available to customers of UBS in the United States at no cost.**
**Customers can access this research at** WWW.UBS.COM/INDEPENDENTRESEARCH **or can call 1-877-208-5700 to request that a copy of this research be sent to them. An explanation of the ratings is available on the research provider's reports.**

 **SIPC**

UBS Securities LLC is a subsidiary of UBS AG and a member of SIPC, the New York Stock Exchange, and other principal exchanges.
UBS Investment Bank is a business group of UBS AG.

2350553WH 0042406          09/01/06 06:18  01 042409        97 B



**UBS Investment Bank**
677 Washington Boulevard
Stamford CT 06901
(203) 719-3000

Account #
**450-60203 087**

Statement Period
**08-01-06 to 08-31-06**

OPTIONS - SHORT POSITIONS          CONTINUED

| QUANTITY | DESCRIPTION | SYMBOL/CUSIP | ACCT TYPE | PRICE | VALUE |
|---|---|---|---|---|---|
| (40 ) | PUT  ASML HOLDING OCT22.50CBOE  EXP 10/21/2006 | MFQVX | 2 | 1.1000 | (4,400.00) |
| (40 ) | PUT  AGNICO EAGLE JAN 035 ****  LONG TERM OPTIONS EXP 01/19/08  EXP 01/19/2008 | LLRM35 | 2 | 5.7000 | (22,800.00) |
| (8 ) | CALL ALCAN INC    JAN 045 ****  LONG TERM OPTIONS EXP 01/19/08  EXP 01/19/2008 | YXUA45 | 2 | 8.3000 | (6,640.00) |
| (15 ) | CALL ALCAN INC    JAN 060 AMEX  EXP 01/20/2007 | ALA60 | 2 | 0.4500 | (675.00) |
| (5 ) | CALL ALCAN INC    JAN 065 AMEX  EXP 01/20/2007 | ALA65 | 2 | 0.2000 | (100.00) |
| (10 ) | CALL ALCAN INC    SEP 050 AMEX  EXP 09/16/2006 | ALI50 | 2 | 0.1000 | (100.00) |
| (10 ) | CALL ALCAN INC    DEC 045 AMEX  EXP 12/16/2006 | ALL45 | 2 | 3.7000 | (3,700.00) |
| (50 ) | CALL ALCAN INC    DEC 055 AMEX  EXP 12/16/2006 | ALL55 | 2 | 0.6500 | (3,250.00) |
| (25 ) | PUT  ALCAN INC    JAN 040 AMEX  EXP 01/20/2007 | ALM40 | 2 | 1.7000 | (4,250.00) |
| (62 ) | PUT  AM ELEC PWR  JAN 035 ****  EXP 01/20/2007 | AEPM35 | 2 | 0.8000 | (4,960.00) |
| (20 ) | CALL AMERN EXPRES JAN 055 ****  LONG TERM OPTIONS EXP 01/20/07  EXP 01/20/2007 | ZZKA55 | 2 | 8.2000 | (16,400.00) |
| (30 ) | CALL AMERN EXPRES JAN 065 ****  LONG TERM OPTIONS EXP 01/20/07  EXP 01/20/2007 | ZZKA65 | 2 | 1.6000 | (4,800.00) |
| (10 ) | CALL AMERN EXPRES OCT 055 ****  EXP 10/21/2006 | AXPJ55 | 2 | 0.4500 | (450.00) |
| (4 ) | PUT  AMERN EXPRES JAN 050 ****  LONG TERM OPTIONS EXP 01/20/07  EXP 01/20/2007 | ZZKM50 | 2 | 0.3000 | (120.00) |
| (7 ) | PUT  AMERN EXPRES JAN 050 ****  LONG TERM OPTIONS EXP 01/19/08  EXP 01/19/2008 | WXPM50 | 2 | 2.6900 | (1,883.00) |
| (20 ) | PUT  AMERN EXPRES APR 050 ****  EXP 04/21/2007 | AXPP50 | 2 | 1.7000 | (3,400.00) |
| (20 ) | PUT  AMERN EXPRES OCT 050 ****  EXP 10/21/2006 | AXPV50 | 2 | 0.4500 | (900.00) |
| (20 ) | PUT  AMERN EXPRES OCT 055 ****  EXP 10/21/2006 | AXPV55 | 2 | 2.7500 | (5,500.00) |
| (2 ) | CALL AMER INTL GP NOV 065 ****  EXP 11/18/2006 | AIGK65 | 2 | 1.5000 | (300.00) |
| (2,650 ) | PUT  AMER INTL GP JAN 060 ****  EXP 01/20/2007 | AIGM60 | 2 | 1.0000 | (265,000.00) |
| (25 ) | PUT  AMER INTL GP JAN 065 ****  EXP 01/20/2007 | AIGM65 | 2 | 2.6000 | (6,500.00) |
| (320 ) | PUT  AK STL HLDG  JAN 005 CBOE  EXP 01/20/2007 | AKSMA | 2 | 0.1000 | (3,200.00) |
| (500 ) | PUT  AK STL HLDG  JAN 7.50****  LONG TERM OPTIONS EXP 01/19/08  EXP 01/19/2008 | YDFM7 | 2 | 0.7000 | (35,000.00) |
| (500 ) | PUT  AK STL HLDG  JAN 010 CBOE  EXP 01/20/2007 | AKSMB | 2 | 0.7000 | (35,000.00) |
| (10 ) | CALL AMER PWR CNV JAN17.50****  LONG TERM OPTIONS EXP 01/17/09  EXP 01/17/2009 | OCIA17 | 2 | 3.6000 | (3,600.00) |
| (24 ) | PUT  AMER PWR CNV DEC17.50****  EXP 12/16/2006 | PWQX17 | 2 | 1.0500 | (2,520.00) |
| (5 ) | PUT  AMERCN SCIEN SEP 040 AMEX  EXP 09/16/2006 | KBUU40 | 2 | 0.2500 | (125.00) |
| (10 ) | PUT  ALKERMES INC NOV 020 ****  EXP 11/18/2006 | QALW20 | 2 | 3.9000 | (3,900.00) |

SIPC

2350553WH 0042433          09/01/06:06:18  01 042434          97 B



677 Washington Boulevard
Stamford CT 06901
(203) 719-3000

Account #
**450-60203  087**

Statement Period
**08-01-06 to 08-31-06**

PURCHASES & SALES     CONTINUED

| DATE | ACCT TYPE | TYPE OF ACTIVITY | QUANTITY | DESCRIPTION | SYMBOL/ CUSIP | PRICE | AMOUNT PAID | AMOUNT RECEIVED |
|------|-----------|------------------|----------|-------------|---------------|-------|-------------|-----------------|
| 08/22 | 2 | Sold | (1 ) | CALL TARO PHARM  SEP12.50**** EXP 09/16/2006 CLOSING CONTRACT X | QTTI12 | 1.1500 | | 114.54 |
| 08/22 | 2 | Sold | (4 ) | CALL TARO PHARM  SEP12.50**** EXP 09/16/2006 CLOSING CONTRACT X | QTTI12 | 1.4000 | | 558.18 |
| 08/22 | 2 | Sold | (6 ) | CALL TARO PHARM  SEP12.50**** EXP 09/16/2006 CLOSING CONTRACT X | QTTI12 | 1.2500 | | 747.27 |
| 08/22 | 2 | Sold | (9 ) | CALL TARO PHARM  SEP12.50**** EXP 09/16/2006 CLOSING CONTRACT X | QTTI12 | 1.2500 | | 1,120.91 |
| 08/22 | 2 | Sold | (10 ) | CALL TARO PHARM  SEP12.50**** EXP 09/16/2006 CLOSING CONTRACT X | QTTI12 | 1.1500 | | 1,145.46 |
| 08/22 | 2 | Sold | (10 ) | CALL TARO PHARM  SEP12.50**** EXP 09/16/2006 CLOSING CONTRACT X | QTTI12 | 1.2500 | | 1,245.46 |
| 08/22 | 2 | Sold | (11 ) | CALL TARO PHARM  SEP12.50**** EXP 09/16/2006 CLOSING CONTRACT X | QTTI12 | 1.1500 | | 1,260.01 |
| 08/22 | 2 | Sold | (21 ) | CALL TARO PHARM  SEP12.50**** EXP 09/16/2006 CLOSING CONTRACT X | QTTI12 | 1.4000 | | 2,930.45 |
| 08/22 | 2 | Bought | 23 | CALL TARO PHARM  OCT12.50**** EXP 10/21/2006 OPEN CONTRACT X | QTTJ12 | 1.8000 | 4,150.35 | |
| 08/22 | 2 | Bought | 77 | CALL TARO PHARM  OCT12.50**** EXP 10/21/2006 OPEN CONTRACT X | QTTJ12 | 1.8000 | 13,894.65 | |
| 08/22 | 2 | Bought | 18 | CALL TARO PHARM  OCT12.50**** EXP 10/21/2006 OPEN CONTRACT X | QTTJ12 | 1.8000 | 3,248.10 | |
| 08/22 | 2 | Bought | 21 | CALL TARO PHARM  OCT12.50**** EXP 10/21/2006 OPEN CONTRACT X | QTTJ12 | 1.8000 | 3,789.45 | |
| 08/22 | 2 | Bought | 21 | CALL TARO PHARM  OCT12.50**** EXP 10/21/2006 OPEN CONTRACT X | QTTJ12 | 1.8000 | 3,789.45 | |
| 08/22 | 2 | Bought | 20 | CALL ADVNCD MICRO OCT37.50**** EXP 10/21/2006 CLOSING CONTRACT X | AKDJ37 | .1000 | 209.00 | |
| 08/22 | 2 | Sold | (10 ) | CALL AMER PWR CNV JAN17.50**** LONG TERM OPTIONS EXP 01/17/09 EXP 01/17/2009 OPEN CONTRACT X | OCIA17 | 3.2000 | | 3,195.40 |

SIPC

2350553WH 0042582          09/01/06 06:18  01 042583     97 B

Exhibit A, Pt. 1 of 4



UBS **Investment Bank**
677 Washington Boulevard
Stamford CT 06901
(203) 719-3000

Account #
**450-60203 087**

Statement Period
**08-01-06 to 08-31-06**

PURCHASES & SALES     CONTINUED

| DATE | ACCT TYPE | TYPE OF ACTIVITY | QUANTITY | DESCRIPTION | SYMBOL/ CUSIP | PRICE | AMOUNT PAID | AMOUNT RECEIVED |
|---|---|---|---|---|---|---|---|---|
| 08/28 | 2 | Bought | 21 | CALL AUDIO CODES  JAN 7.50AMEX EXP 01/20/2007 OPEN CONTRACT X | QASA7 | 2.5000 | 5,259.45 | |
| 08/28 | 2 | Bought | 30 | CALL AUDIO CODES  JAN 7.50AMEX EXP 01/20/2007 OPEN CONTRACT X | QASA7 | 2.5000 | 7,513.50 | |
| 08/28 | 2 | Bought | 33 | CALL AUDIO CODES  JAN 7.50AMEX EXP 01/20/2007 OPEN CONTRACT X | QASA7 | 2.5000 | 8,264.85 | |
| 08/28 | 2 | Bought | 83 | CALL AUDIO CODES  JAN 7.50AMEX EXP 01/20/2007 OPEN CONTRACT X | QASA7 | 2.5000 | 20,787.35 | |
| 08/28 | 2 | Sold | (20 ) | CALL BIOTECH INDX OCT 740 AMEX EXP 10/21/2006 OPEN CONTRACT X | BXZJ740 | 2.5000 | | 4,991.00 |
| 08/28 | 2 | Bought | 35 | CALL ALVARION LTD JAN 7.50**** LONG TERM OPTIONS EXP 01/17/09 EXP 01/17/2009 OPEN CONTRACT X | VJDA7 | 2.5000 | 8,765.75 | |
| 08/28 | 2 | Sold | (14 ) | CALL APPLE COMPUT OCT 070 **** EXP 10/21/2006 OPEN CONTRACT X | QAAJ70 | 3.7000 | | 5,173.54 |
| 08/28 | 2 | Sold | (10 ) | CALL APPLE COMPUT OCT 075 **** EXP 10/21/2006 OPEN CONTRACT X | QAAJ75 | 1.7500 | | 1,745.44 |
| 08/28 | 2 | Sold | (15 ) | CALL APPLE COMPUT OCT 075 **** EXP 10/21/2006 OPEN CONTRACT X | QAAJ75 | 1.7500 | | 2,618.16 |
| 08/28 | 2 | Sold | (5 ) | PUT  APPLE COMPUT SEP 065 **** EXP 09/16/2006 OPEN CONTRACT X | QAAU65 | .9500 | | 472.73 |
| 08/28 | 2 | Sold | (4 ) | CALL AFFILIATED M SEP 090 AMEX EXP 09/16/2006 CLOSING CONTRACT X | AMGI90 | 4.6000 | | 1,838.14 |
| 08/28 | 2 | Bought | 9 | PUT  AMER PWR CNV SEP 020 **** EXP 09/16/2006 CLOSING CONTRACT X | PWQU20 | 3.4000 | 3,064.05 | |
| 08/28 | 2 | Bought | 15 | PUT  AMER PWR CNV SEP 020 **** EXP 09/16/2006 CLOSING CONTRACT X | PWQU20 | 3.3000 | 4,956.75 | |
| 08/28 | 2 | Sold | (9 ) | PUT  AMER PWR CNV DEC17.50**** EXP 12/16/2006 OPEN CONTRACT X | PWQX17 | 1.4000 | | 1,255.91 |
| 08/28 | 2 | Sold | (15 ) | PUT  AMER PWR CNV DEC17.50**** EXP 12/16/2006 OPEN CONTRACT X | PWQX17 | 1.3500 | | 2,018.18 |
| 08/28 | 9 | Bought | 2,500 | AQUA AMERICA INC A/E QWTRUE  25 ASSIGNED AS OF 08/23/06 | WTR | 25.0000 | 62,525.00 | |

SIPC

2350553WH 0042610B          09/01/06:06:18  01 042611      97 B

Exhibit A, Pt. 1 of 4

 **Investment Bank** 677 Washington Boulevard
Stamford CT 06901
(203) 719-3000

Account #
**450-60203 087**

Statement Period
**08-01-06 to 08-31-06**

OTHER ACTIVITY        CONTINUED

| DATE | ACCT TYPE | TYPE OF ACTIVITY | QUANTITY | DESCRIPTION | PRICE | AMOUNT PAID | AMOUNT RECEIVED |
|------|-----------|------------------|----------|-------------|-------|-------------|-----------------|
| 08/23 | 9 | Delivered | (14,300 ) | SMURFIT-STONE CONTAINER CORP TAG=060818A1754 | | | 178,893.00 |
| 08/23 | 9 | Delivered | (1,200 ) | SONIC SOLUTIONS TAG=060818A1755 | | | 18,012.00 |
| 08/23 | 9 | Received | 20,000 | STEEL DYNAMICS INC TAG=060818A1768 | | 999,769.30 | |
| 08/23 | 9 | Received | 4,000 | SUNOCO INC TAG=060818A1792 | | 299,950.79 | |
| 08/23 | 9 | Delivered | (5,000 ) | SUNOCO INC TAG=060818A1801 | | | 400,050.00 |
| 08/23 | 9 | Delivered | (1,000 ) | TASER INTERNATIONAL INC TAG=060818A1805 | | | 10,010.00 |
| 08/23 | 9 | Received | 2,000 | TOLL BROTHERS INC TAG=060818A1743 | | 49,978.46 | |
| 08/23 | 9 | Delivered | (2,000 ) | WAL-MART STORES INC TAG=060818A1998 | | | 90,020.00 |
| 08/23 | 2 | Assigned | 12 | PUT WAL-MART STR JAN 055 **** LONG TERM OPTIONS EXP 01/19/08 EXP 01/19/2008 OPTION ASSIGNMENT | | | |
| 08/24 | 2 | Wire Trf | | FUNDS WIRED | | 945,702.42 | |
| 08/24 | 9 | Delivered | (6,500 ) | ALCAN INC TAG=060821A0003 | | | 357,565.00 |
| 08/24 | 9 | Delivered | (1,000 ) | AQUA AMERICA INC TAG=060821A0004 | | | 25,010.00 |
| 08/24 | 2 | Assigned | 25 | PUT AQUA AMERICA SEP 025 CBOE EXP 09/16/2006 OPTION ASSIGNMENT | | | |
| 08/24 | 2 | Assigned | 25 | PUT COGNEX CORP NOV 030 **** EXP 11/18/2006 OPTION ASSIGNMENT | | | |
| 08/24 | 9 | Delivered | (1,000 ) | HEADWATERS INC TAG=060818A0805 | | | 30,010.00 |
| 08/24 | 2 | Assigned | 160 | PUT HOUSEVALUES SEP 7.50AMEX EXP 09/16/2006 OPTION ASSIGNMENT | | | |
| 08/24 | 6 | Journal | 275,000 | MICROSOFT CORP Free Receive vs. 2507 | | | |
| 08/24 | 2 | Assigned | 10 | PUT NAVTEQ CORP OCT 040 CBOE EXP 10/21/2006 OPTION ASSIGNMENT | | | |
| 08/24 | 2 | Assigned | 7 | PUT PARKER DRILL OCT 010 **** EXP 10/21/2006 OPTION ASSIGNMENT | | | |
| 08/24 | 2 | Assigned | 9 | PUT RAMBUS INC FEB 030 **** EXP 02/17/2007 OPTION ASSIGNMENT | | | |
| 08/24 | 9 | Delivered | (600 ) | ROWAN COMPANIES INC TAG=060821A0021 | | | 25,506.00 |
| 08/24 | 2 | Assigned | 28 | PUT 3M COMPANY OCT 085 **** EXP 10/21/2006 OPTION ASSIGNMENT | | | |
| 08/24 | 2 | Assigned | 13 | PUT STARBUCKS CP OCT37.50**** EXP 10/21/2006 OPTION ASSIGNMENT | | | |
| 08/25 | 9 | Delivered | (300 ) | ALCAN INC TAG=060822A0002 | | | 16,503.00 |
| 08/25 | 2 | Assigned | 6 | PUT AMER PWR CNV SEP 020 **** EXP 09/16/2006 OPTION ASSIGNMENT | | | |
| 08/25 | 2 | Assigned | 5 | PUT CARNIVAL CP JAN 050 **** EXP 01/20/2007 OPTION ASSIGNMENT | | | |

2350553WH 0042654        09/01/06:06:18  01 042655        97 B



677 Washington Boulevard
Stamford CT 06901
(203) 719-3000

Account #
**450-60203 087**

Statement Period
**09-01-06 to 09-30-06**

**YOUR ACCOUNT STATEMENT**

**Reported in U.S. DOLLARS**

**Account Name**
UBS AG

**UBS AG**
**A/C EXCHANGE TRADED DERIVATIVE**
**PO BOX 8098**
**ZURICH**
**SWITZERLAND**

MONEY BALANCE SUMMARY

| | 09-30-06 | 08-31-06 |
|---|---|---|
| Net Cash | $589,305.55 | $621,690.55 |

PORTFOLIO SUMMARY

| | 09-30-06 |
|---|---|
| * Total Portfolio Value | $212,332,019.00 |
| Net Cash Balance | 589,305.55 |
| * Net Portfolio Value | 212,921,324.55 |
| * Net Value Last Period | 166,234,411.55 |
| *** Excludes Unpriced Securities.** | |

ACTIVITY SUMMARY

CREDITS

| | |
|---|---|
| Securities Sold | $51,098,581.91 |
| Other Credits | 36,654,439.68 |
| **Total Credits** | **$87,753,021.59** |

DEBITS

| | |
|---|---|
| Securities Purchased | $57,993,948.70 |
| Other Debits | 29,791,457.89 |
| **Total Debits** | **$87,785,406.59** |
| **Net Activity** | **$(32,385.00)** |

REALIZED INCOME & EXPENSE SUMMARY

| | 09-30-06 | YEAR-TO-DATE |
|---|---|---|
| Margin Interest Paid | $0.00 | $(542.04) |
| Credit Interest | 0.00 | 18,470.42 |

**Independent, third party research on certain companies covered by the firm's research is available to customers of UBS in the United States at no cost.**
**Customers can access this research at** WWW.UBS.COM/INDEPENDENTRESEARCH **or can call 1-877-208-5700 to request that a copy of this research be sent to them. An explanation of the ratings is available on the research provider's reports.**



UBS Securities LLC is a subsidiary of UBS AG and a member of SIPC, the New York Stock Exchange, and other principal exchanges.
UBS Investment Bank is a business group of UBS AG.

2350553WH 0004978          09/30/06 18:32  01 004979      97 B

 **UBS Investment Bank**

677 Washington Boulevard
Stamford CT 06901
(203) 719-3000

Account #
**450-60203 087**

Statement Period
**09-01-06 to 09-30-06**

OPTIONS - LONG POSITIONS          CONTINUED

| QUANTITY | DESCRIPTION | SYMBOL/ CUSIP | ACCT TYPE | PRICE | VALUE |
|---|---|---|---|---|---|
| 8 | CALL ABBOTT LABS  JAN 040 **** EXP 01/20/2007 | ABTA40 | 2 | 8.9000 | 7,120.00 |
| 2 | CALL ABBOTT LABS  JAN 045 **** LONG TERM OPTIONS EXP 01/19/08 EXP 01/19/2008 | WBTA45 | 2 | 6.9000 | 1,380.00 |
| 3 | CALL ABBOTT LABS  JAN 050 **** LONG TERM OPTIONS EXP 01/19/08 EXP 01/19/2008 | WBTA50 | 2 | 4.0000 | 1,200.00 |
| 50 | CALL ADAPTEC INC  JAN 005 **** EXP 01/20/2007 | APQA5 | 2 | 0.3000 | 1,500.00 |
| 85 | CALL ADVNCD MICRO JAN 010 **** LONG TERM OPTIONS EXP 01/19/08 EXP 01/19/2008 | WVVA10 | 2 | 15.7000 | 133,450.00 |
| 1,002 | CALL ADVNCD MICRO JAN 035 **** LONG TERM OPTIONS EXP 01/19/08 EXP 01/19/2008 | WVVA35 | 2 | 2.6000 | 260,520.00 |
| 30 | CALL ADVNCD MICRO JAN 060 **** LONG TERM OPTIONS EXP 01/19/08 EXP 01/19/2008 | WVVA60 | 2 | 0.4000 | 1,200.00 |
| 15 | CALL ADVNCD MICRO OCT17.50**** EXP 10/21/2006 | AMDJ17 | 2 | 7.4000 | 11,100.00 |
| 100 | CALL ADVNCD MICRO OCT37.50**** EXP 10/21/2006 | AKDJ37 | 2 | 0.0500 | 500.00 |
| 15 | CALL ASPREVA PHAR OCT 040 PBW EXP 10/21/2006 | QOSJH | 2 | 0.1000 | 150.00 |
| 4 | CALL AES CORP    JAN17.50**** LONG TERM OPTIONS EXP 01/19/08 EXP 01/19/2008 | WGCA17 | 2 | 5.0000 | 2,000.00 |
| 200 | CALL AES CORP    JAN 020 **** LONG TERM OPTIONS EXP 01/19/08 EXP 01/19/2008 | WGCA20 | 2 | 3.5000 | 70,000.00 |
| 10 | PUT  ALLERGAN INC JAN 095 **** EXP 01/20/2007 | AGNM95 | 2 | 1.0000 | 1,000.00 |
| 6 | CALL AMERN EXPRES JAN 055 **** LONG TERM OPTIONS EXP 01/20/07 EXP 01/20/2007 | ZZKA55 | 2 | 11.0000 | 6,600.00 |
| 10 | PUT  AMERN EXPRES OCT 050 **** EXP 10/21/2006 | AXPV50 | 2 | 0.0500 | 50.00 |
| 7 | CALL AMER INTL GP JAN 060 **** EXP 01/20/2007 | AIGA60 | 2 | 7.4000 | 5,180.00 |
| 10 | CALL AMER INTL GP JAN 070 **** LONG TERM OPTIONS EXP 01/19/08 EXP 01/19/2008 | WAPA70 | 2 | 4.9000 | 4,900.00 |
| 10 | CALL AMER INTL GP JAN 075 **** LONG TERM OPTIONS EXP 01/19/08 EXP 01/19/2008 | WAPA75 | 2 | 2.9000 | 2,900.00 |
| 50 | CALL AMER INTL GP JAN 095 **** EXP 01/20/2007 | AIGA95 | 2 | 0.0500 | 250.00 |
| 2,400 | CALL AMER PWR CNV DEC22.50**** EXP 12/16/2006 | PWQL22 | 2 | 1.4500 | 348,000.00 |
| 30 | CALL AMGEN INC    OCT 070 **** EXP 10/21/2006 | YAAJ70 | 2 | 2.3500 | 7,050.00 |
| 10 | CALL AMGEN INC    OCT72.50**** EXP 10/21/2006 | YAAJ72 | 2 | 0.9000 | 900.00 |
| 20 | CALL AMGEN INC    NOV 070 **** EXP 11/18/2006 | YAAK70 | 2 | 3.5000 | 7,000.00 |
| 30 | CALL AMGEN INC    NOV72.50**** EXP 11/18/2006 | YAAK72 | 2 | 1.9000 | 5,700.00 |
| 1 | CALL ANADARKO PET JAN47.50**** LONG TERM OPTIONS EXP 01/19/08 EXP 01/19/2008 | YPCA47 | 2 | 5.9000 | 590.00 |
| 8 | CALL ANADARKO PET JAN 050 **** LONG TERM OPTIONS EXP 01/17/09 EXP 01/17/2009 | OCPA50 | 2 | 7.5000 | 6,000.00 |

2350553WH 0004980          09/30/06 18:32  01 004981      97 B



**Investment Bank**
677 Washington Boulevard
Stamford CT 06901
(203) 719-3000

Account #
**450-60203 087**

Statement Period
**09-01-06 to 09-30-06**

OPTIONS - SHORT POSITIONS          CONTINUED

| QUANTITY | DESCRIPTION | SYMBOL/ CUSIP | ACCT TYPE | PRICE | VALUE |
|---|---|---|---|---|---|
| (25 ) | PUT AMER INTL GP JAN 065 **** EXP 01/20/2007 | AIGM65 | 2 | 1.3500 | (3,375.00) |
| (320 ) | PUT AK STL HLDG JAN 005 CBOE EXP 01/20/2007 | AKSMA | 2 | 0.0500 | (1,600.00) |
| (500 ) | PUT AK STL HLDG JAN 7.50**** LONG TERM OPTIONS EXP 01/19/08 EXP 01/19/2008 | YDFM7 | 2 | 0.7500 | (37,500.00) |
| (500 ) | PUT AK STL HLDG JAN 010 CBOE EXP 01/20/2007 | AKSMB | 2 | 0.6500 | (32,500.00) |
| (10 ) | CALL AMER PWR CNV JAN17.50**** LONG TERM OPTIONS EXP 01/17/09 EXP 01/17/2009 | OCIA17 | 2 | 6.8000 | (6,800.00) |
| (24 ) | PUT AMER PWR CNV DEC17.50**** EXP 12/16/2006 | PWQX17 | 2 | 0.2500 | (600.00) |
| (5 ) | PUT AMERCN SCIEN OCT 040 AMEX EXP 10/21/2006 | KBUV40 | 2 | 0.1000 | (50.00) |
| (20 ) | PUT ALLIED WASTE JAN12.50**** LONG TERM OPTIONS EXP 01/19/08 EXP 01/19/2008 | YNQM12 | 2 | 1.9500 | (3,900.00) |
| (15 ) | CALL AMGEN INC JAN 070 **** EXP 01/20/2007 | YAAA70 | 2 | 4.8000 | (7,200.00) |
| (15 ) | CALL AMGEN INC JAN 075 **** EXP 01/20/2007 | YAAA75 | 2 | 2.1500 | (3,225.00) |
| (24 ) | CALL AMGEN INC JAN 075 **** LONG TERM OPTIONS EXP 01/19/08 EXP 01/19/2008 | WAMA75 | 2 | 7.9000 | (18,960.00) |
| (10 ) | CALL AMGEN INC JAN 080 **** EXP 01/20/2007 | YAAA80 | 2 | 0.7500 | (750.00) |
| (5 ) | CALL AMGEN INC OCT 070 **** EXP 10/21/2006 | YAAJ70 | 2 | 2.3500 | (1,175.00) |
| (15 ) | CALL AMGEN INC OCT 075 **** EXP 10/21/2006 | YAAJ75 | 2 | 0.3000 | (450.00) |
| (10 ) | PUT AMGEN INC JAN 060 **** EXP 01/20/2007 | YAAM60 | 2 | 0.3500 | (350.00) |
| (40 ) | PUT AMGEN INC JAN 065 **** EXP 01/20/2007 | YAAM65 | 2 | 0.8500 | (3,400.00) |
| (40 ) | PUT AMGEN INC JAN 070 **** EXP 01/20/2007 | YAAM70 | 2 | 2.1000 | (8,400.00) |
| (1,172 ) | PUT AMGEN INC JAN 075 **** EXP 01/20/2007 | YAAM75 | 2 | 4.7000 | (550,840.00) |
| (10 ) | PUT AMGEN INC JAN 080 **** LONG TERM OPTIONS EXP 01/17/09 EXP 01/17/2009 | VAMM80 | 2 | 11.2000 | (11,200.00) |
| (13 ) | PUT AMGEN INC OCT57.50**** EXP 10/21/2006 | YAAV57 | 2 | 0.0500 | (65.00) |
| (28 ) | PUT AMGEN INC OCT 060 **** EXP 10/21/2006 | YAAV60 | 2 | 0.0200 | (56.00) |
| (30 ) | PUT AMGEN INC OCT 065 **** EXP 10/21/2006 | YAAV65 | 2 | 0.1000 | (300.00) |
| (40 ) | PUT AMGEN INC OCT67.50**** EXP 10/21/2006 | YAAV67 | 2 | 0.2500 | (1,000.00) |
| (15 ) | PUT AMGEN INC OCT 070 **** EXP 10/21/2006 | YAAV70 | 2 | 0.6500 | (975.00) |
| (15 ) | PUT AMGEN INC OCT72.50**** EXP 10/21/2006 | YAAV72 | 2 | 1.6500 | (2,475.00) |
| (5 ) | PUT AMGEN INC OCT 075 **** EXP 10/21/2006 | YAAV75 | 2 | 3.6000 | (1,800.00) |
| (10 ) | CALL AMERN SUPERC JAN12.50**** EXP 01/20/2007 | QAYA12 | 2 | 0.2500 | (250.00) |
| (50 ) | PUT ANADARKO PET JAN 040 **** EXP 01/20/2007 | APCM40 | 2 | 1.6500 | (8,250.00) |
| (70 ) | PUT ANADARKO PET JAN 045 **** EXP 01/20/2007 | APCM45 | 2 | 3.7000 | (25,900.00) |

**UBS** Investment Bank

677 Washington Boulevard
Stamford CT 06901
(203) 719-3000

Account #
**450-60203 087**

Statement Period
**09-01-06 to 09-30-06**

PURCHASES & SALES    CONTINUED

| DATE | ACCT TYPE | TYPE OF ACTIVITY | QUANTITY | DESCRIPTION | SYMBOL/ CUSIP | PRICE | AMOUNT PAID | AMOUNT RECEIVED |
|------|-----------|------------------|----------|-------------|---------------|-------|-------------|-----------------|
| 09/22 | 2 | Sold | (10) | CALL AMAZON COM  OCT32.50**** EXP 10/21/2006 OPEN CONTRACT X | ZQNJ32 | 1.2500 | | 1,245.46 |
| 09/22 | 2 | Bought | 4 | CALL AMER PWR CNV DEC22.50**** EXP 12/16/2006 OPEN CONTRACT X | PWQL22 | 1.2500 | 501.80 | |
| 09/22 | 2 | Bought | 5 | CALL AMER PWR CNV DEC22.50**** EXP 12/16/2006 OPEN CONTRACT X | PWQL22 | 1.2500 | 627.25 | |
| 09/22 | 2 | Bought | 8 | CALL AMER PWR CNV DEC22.50**** EXP 12/16/2006 OPEN CONTRACT X | PWQL22 | 1.2500 | 1,003.60 | |
| 09/22 | 2 | Bought | 8 | CALL AMER PWR CNV DEC22.50**** EXP 12/16/2006 OPEN CONTRACT X | PWQL22 | 1.2500 | 1,003.60 | |
| 09/22 | 2 | Bought | 10 | CALL AMER PWR CNV DEC22.50**** EXP 12/16/2006 OPEN CONTRACT X | PWQL22 | 1.2500 | 1,254.50 | |
| 09/22 | 2 | Bought | 10 | CALL AMER PWR CNV DEC22.50**** EXP 12/16/2006 OPEN CONTRACT X | PWQL22 | 1.2500 | 1,254.50 | |
| 09/22 | 2 | Bought | 10 | CALL AMER PWR CNV DEC22.50**** EXP 12/16/2006 OPEN CONTRACT X | PWQL22 | 1.2500 | 1,254.50 | |
| 09/22 | 2 | Bought | 11 | CALL AMER PWR CNV DEC22.50**** EXP 12/16/2006 OPEN CONTRACT X | PWQL22 | 1.2500 | 1,379.95 | |
| 09/22 | 2 | Bought | 12 | CALL AMER PWR CNV DEC22.50**** EXP 12/16/2006 OPEN CONTRACT X | PWQL22 | 1.2500 | 1,505.40 | |
| 09/22 | 2 | Bought | 13 | CALL AMER PWR CNV DEC22.50**** EXP 12/16/2006 OPEN CONTRACT X | PWQL22 | 1.2500 | 1,630.85 | |
| 09/22 | 2 | Bought | 20 | CALL AMER PWR CNV DEC22.50**** EXP 12/16/2006 OPEN CONTRACT X | PWQL22 | 1.2000 | 2,409.00 | |
| 09/22 | 2 | Bought | 20 | CALL AMER PWR CNV DEC22.50**** EXP 12/16/2006 OPEN CONTRACT X | PWQL22 | 1.2000 | 2,409.00 | |
| 09/22 | 2 | Bought | 25 | CALL AMER PWR CNV DEC22.50**** EXP 12/16/2006 OPEN CONTRACT X | PWQL22 | 1.2500 | 3,136.25 | |
| 09/22 | 2 | Bought | 25 | CALL AMER PWR CNV DEC22.50**** EXP 12/16/2006 OPEN CONTRACT X | PWQL22 | 1.2500 | 3,136.25 | |
| 09/22 | 2 | Bought | 26 | CALL AMER PWR CNV DEC22.50**** EXP 12/16/2006 OPEN CONTRACT X | PWQL22 | 1.2500 | 3,261.70 | |

SIPC

2350553WH 0005181          09/30/06:18:32  01 005182      97 B

 **UBS** Investment Bank

677 Washington Boulevard
Stamford CT 06901
(203) 719-3000

Account #
450-60203 087

Statement Period
**09-01-06 to 09-30-06**

PURCHASES & SALES        CONTINUED

| DATE | ACCT TYPE | TYPE OF ACTIVITY | QUANTITY | DESCRIPTION | SYMBOL/ CUSIP | PRICE | AMOUNT PAID | AMOUNT RECEIVED |
|------|-----------|------------------|----------|-------------|---------------|-------|-------------|-----------------|
| 09/22 | 2 | Bought | 32 | CALL AMER PWR CNV DEC22.50**** EXP 12/16/2006 OPEN CONTRACT X | PWQL22 | 1.2500 | 4,014.40 | |
| 09/22 | 2 | Bought | 40 | CALL AMER PWR CNV DEC22.50**** EXP 12/16/2006 OPEN CONTRACT X | PWQL22 | 1.2500 | 5,018.00 | |
| 09/22 | 2 | Bought | 40 | CALL AMER PWR CNV DEC22.50**** EXP 12/16/2006 OPEN CONTRACT X | PWQL22 | 1.2500 | 5,018.00 | |
| 09/22 | 2 | Bought | 82 | CALL AMER PWR CNV DEC22.50**** EXP 12/16/2006 OPEN CONTRACT X | PWQL22 | 1.2500 | 10,286.90 | |
| 09/22 | 2 | Bought | 85 | CALL AMER PWR CNV DEC22.50**** EXP 12/16/2006 OPEN CONTRACT X | PWQL22 | 1.2500 | 10,663.25 | |
| 09/22 | 2 | Bought | 147 | CALL AMER PWR CNV DEC22.50**** EXP 12/16/2006 OPEN CONTRACT X | PWQL22 | 1.2500 | 18,441.15 | |
| 09/22 | 2 | Bought | 150 | CALL AMER PWR CNV DEC22.50**** EXP 12/16/2006 OPEN CONTRACT X | PWQL22 | 1.2500 | 18,817.50 | |
| 09/22 | 2 | Bought | 195 | CALL AMER PWR CNV DEC22.50**** EXP 12/16/2006 OPEN CONTRACT X | PWQL22 | 1.2500 | 24,462.75 | |
| 09/22 | 2 | Bought | 257 | CALL AMER PWR CNV DEC22.50**** EXP 12/16/2006 OPEN CONTRACT X | PWQL22 | 1.2500 | 32,240.65 | |
| 09/22 | 2 | Bought | 365 | CALL AMER PWR CNV DEC22.50**** EXP 12/16/2006 OPEN CONTRACT X | PWQL22 | 1.2500 | 45,789.25 | |
| 09/22 | 2 | Sold | (6) | CALL AMKOR TECH  JAN 7.50**** LONG TERM OPTIONS EXP 01/17/09 EXP 01/17/2009 OPEN CONTRACT X | OMYA7 | 1.9000 | | 1,137.26 |
| 09/22 | 2 | Sold | (44) | CALL AMKOR TECH  JAN 7.50**** LONG TERM OPTIONS EXP 01/17/09 EXP 01/17/2009 OPEN CONTRACT X | OMYA7 | 1.9000 | | 8,339.94 |
| 09/22 | 2 | Bought | 6 | CALL AMKOR TECH  JAN 2.50**** LONG TERM OPTIONS EXP 01/19/08 EXP 01/19/2008 OPEN CONTRACT X | YDDA2 | 3.9000 | 2,342.70 | |
| 09/22 | 2 | Bought | 44 | CALL AMKOR TECH  JAN 2.50**** LONG TERM OPTIONS EXP 01/19/08 EXP 01/19/2008 OPEN CONTRACT X | YDDA2 | 3.9000 | 17,179.80 | |
| 09/22 | 2 | Sold | (50) | PUT  APACHE CORP  JAN 060 **** EXP 01/20/2007 OPEN CONTRACT X | APAM60 | 2.9500 | | 14,727.04 |





**UBS Investment Bank**
677 Washington Boulevard
Stamford CT 06901
(203) 719-3000

Account #
**450-60203 087**

Statement Period
**09-01-06 to 09-30-06**

PURCHASES & SALES          CONTINUED

| DATE | ACCT TYPE | TYPE OF ACTIVITY | QUANTITY | DESCRIPTION | SYMBOL/ CUSIP | PRICE | AMOUNT PAID | AMOUNT RECEIVED |
|------|-----------|------------------|----------|-------------|---------------|-------|-------------|-----------------|
| 09/22 | 2 | Sold | (50 ) | CALL NOKIA CORP   OCT 020 **** EXP 10/21/2006 OPEN CONTRACT X | NAYJ20 | .5500 | | 2,727.41 |
| 09/22 | 2 | Bought | 6 | CALL WILLIAMS CO   JAN 025 **** LONG TERM OPTIONS EXP 01/17/09 EXP 01/17/2009 OPEN CONTRACT X | VWCA25 | 3.9000 | 2,342.70 | |
| 09/22 | 2 | Bought | 1 | CALL YM BIOSCNC   OCT 005 AMEX EXP 10/21/2006 OPEN CONTRACT X | YMIJ5 | .1000 | 10.45 | |
| 09/22 | 2 | Bought | 1 | CALL YM BIOSCNC   OCT 005 AMEX EXP 10/21/2006 OPEN CONTRACT X | YMIJ5 | .1000 | 10.45 | |
| 09/22 | 9 | Bought | 200 | YAHOO INC A/E QYHQM40  2 ASSIGNED AS OF 09/19/06 | YHOO | 40.0000 | 8,002.00 | |
| 09/25 | 2 | Sold | (25 ) | CALL BIOTECH INDX OCT 700 AMEX EXP 10/21/2006 OPEN CONTRACT X | BXZJ700 | 1.1000 | | 2,738.75 |
| 09/25 | 2 | Sold | (10 ) | CALL AKAMAI TECH   JAN 045 **** LONG TERM OPTIONS EXP 01/17/09 EXP 01/17/2009 OPEN CONTRACT X | OMUA45 | 15.5000 | | 15,495.02 |
| 09/25 | 2 | Sold | (20 ) | PUT  ALCAN INC    OCT 040 AMEX A/E EXP 10/21/2006 OPEN CONTRACT X | ALV40 | 1.9000 | | 3,790.88 |
| 09/25 | 2 | Sold | (20 ) | PUT  ALCAN INC    DEC 040 AMEX EXP 12/16/2006 OPEN CONTRACT X | ALX40 | 3.2000 | | 6,390.80 |
| 09/25 | 2 | Bought | 4 | PUT  ALLERGAN INC JAN 095 **** EXP 01/20/2007 OPEN CONTRACT X | AGNM95 | .8500 | 341.80 | |
| 09/25 | 2 | Bought | 6 | PUT  ALLERGAN INC JAN 095 **** EXP 01/20/2007 OPEN CONTRACT X | AGNM95 | .8500 | 512.70 | |
| 09/25 | 2 | Sold | (10 ) | PUT  ALLERGAN INC JAN 090 **** EXP 01/20/2007 CLOSING CONTRACT X | AGNM90 | .4000 | | 395.48 |
| 09/25 | 2 | Sold | (10 ) | PUT  ALLERGAN INC JAN 090 **** EXP 01/20/2007 OPEN CONTRACT X | AGNM90 | .4000 | | 395.48 |
| 09/25 | 2 | Sold | (20 ) | PUT  AMAZON COM   OCT27.50**** EXP 10/21/2006 OPEN CONTRACT X | ZQNV27 | .5000 | | 990.96 |
| 09/25 | 2 | Bought | 28 | CALL AMER PWR CNV DEC22.50**** EXP 12/16/2006 OPEN CONTRACT X | PWQL22 | 1.2500 | 3,512.60 | |

SIPC

2350553WH 0005189B          09/30/06:18:32  01.005190      97 B


**Investment Bank**

677 Washington Boulevard
Stamford CT 06901
(203) 719-3000

Account #
**450-60203 087**

Statement Period
**09-01-06 to 09-30-06**

PURCHASES & SALES     CONTINUED

| DATE | ACCT TYPE | TYPE OF ACTIVITY | QUANTITY | DESCRIPTION | SYMBOL/ CUSIP | PRICE | AMOUNT PAID | AMOUNT RECEIVED |
|---|---|---|---|---|---|---|---|---|
| 09/25 | 2 | Bought | 40 | CALL AMER PWR CNV DEC22.50**** EXP 12/16/2006 OPEN CONTRACT X | PWQL22 | 1.2500 | 5,018.00 | |
| 09/25 | 2 | Bought | 50 | CALL AMER PWR CNV DEC22.50**** EXP 12/16/2006 OPEN CONTRACT X | PWQL22 | 1.2500 | 6,272.50 | |
| 09/25 | 2 | Bought | 82 | CALL AMER PWR CNV DEC22.50**** EXP 12/16/2006 OPEN CONTRACT X | PWQL22 | 1.2500 | 10,286.90 | |
| 09/25 | 2 | Bought | 300 | CALL AMER PWR CNV DEC22.50**** EXP 12/16/2006 OPEN CONTRACT X | PWQL22 | 1.2500 | 37,635.00 | |
| 09/25 | 2 | Bought | 300 | CALL AMER PWR CNV DEC22.50**** EXP 12/16/2006 OPEN CONTRACT X | PWQL22 | 1.2500 | 37,635.00 | |
| 09/25 | 2 | Sold | (15) | CALL AT&T INC   JAN 020 **** LONG TERM OPTIONS EXP 01/20/07 DEL : 77 SHS T & C.I.L EXP 01/20/2007 CLOSING CONTRACT X | TAVA20 | 5.3000 | | 7,943.00 |
| 09/25 | 2 | Bought | 8 | CALL ANADARKO PET JAN 050 **** LONG TERM OPTIONS EXP 01/17/09 EXP 01/17/2009 OPEN CONTRACT X | OCPA50 | 7.1000 | 5,683.60 | |
| 09/25 | 2 | Sold | (20) | CALL APACHE CORP  OCT 065 **** EXP 10/21/2006 OPEN CONTRACT X | APAJ65 | .7500 | | 1,490.95 |
| 09/25 | 2 | Sold | (10) | PUT  APACHE CORP  JAN 060 **** EXP 01/20/2007 OPEN CONTRACT X | APAM60 | 3.1000 | | 3,095.40 |
| 09/25 | 2 | Sold | (10) | CALL APPLE COMPUT JAN 070 **** LONG TERM OPTIONS EXP 01/17/09 EXP 01/17/2009 OPEN CONTRACT X | VAAA70 | 22.2000 | | 22,194.81 |
| 09/25 | 2 | Sold | (35) | CALL AQUA AMERICA NOV22.50CBOE EXP 11/18/2006 OPEN CONTRACT X | WTRKX | .5000 | | 1,734.19 |
| 09/25 | 2 | Sold | (20) | PUT  BANCO ITAU   MAR 025 CBOE EXP 03/17/2007 OPEN CONTRACT X | ITUOE | 1.4600 | | 2,910.91 |
| 09/25 | 2 | Bought | 20 | PUT  BANCO ITAU   DEC22.50CBOE EXP 12/16/2006 CLOSING CONTRACT X | ITUXX | .3100 | 629.00 | |
| 09/25 | 2 | Sold | (15) | PUT  BEAZER HOMES OCT 035 CBOE EXP 10/21/2006 OPEN CONTRACT X | BZHVG | .5500 | | 818.22 |
| 09/25 | 2 | Sold | (20) | CALL BIOMET INC   OCT 030 **** EXP 10/21/2006 CLOSING CONTRACT X | BIQJF | 2.5500 | | 5,090.84 |





**UBS** Investment Bank

677 Washington Boulevard
Stamford CT 06901
(203) 719-3000

Account #
**450-60203  087**

Statement Period
**10-01-06 to 10-31-06**

## YOUR ACCOUNT STATEMENT

Reported in U.S. DOLLARS

Account Name
UBS AG

**UBS AG**
**A/C EXCHANGE TRADED DERIVATIVE**
**PO BOX 8098**
**ZURICH**
**SWITZERLAND**

### MONEY BALANCE SUMMARY

|  | 10-31-06 | 09-30-06 |
|---|---|---|
| Net Cash | $639,321.55 | $589,305.55 |

### PORTFOLIO SUMMARY

|  | 10-31-06 |
|---|---|
| * Total Portfolio Value | $320,582,561.30 |
| Net Cash Balance | 639,321.55 |
| * Net Portfolio Value | 321,221,882.85 |
| * Net Value Last Period | 212,921,324.55 |

**\* Excludes Unpriced Securities.**

### ACTIVITY SUMMARY

**CREDITS**

| Securities Sold | $67,200,319.72 |
|---|---|
| Other Credits | 42,375,571.57 |
| **Total Credits** | **$109,575,891.29** |

**DEBITS**

| Securities Purchased | $69,203,590.65 |
|---|---|
| Other Debits | 40,322,284.64 |
| **Total Debits** | **$109,525,875.29** |
| **Net Activity** | **$50,016.00** |

### REALIZED INCOME & EXPENSE SUMMARY

|  | 10-31-06 | YEAR-TO-DATE |
|---|---|---|
| Margin Interest Paid | $0.00 | $(542.04) |
| Credit Interest | 0.00 | 18,470.42 |

Independent, third party research on certain companies covered by the firm's research is available to customers of UBS in the United States at no cost.
Customers can access this research at WWW.UBS.COM/INDEPENDENTRESEARCH or can call 1-877-208-5700 to request that a copy of this research be sent to them.  An explanation of the ratings is available on the research provider's reports.



SIPC

UBS Securities LLC is a subsidiary of UBS AG and a member of SIPC, the New York Stock Exchange, and other principal exchanges.
UBS Investment Bank is a business group of UBS AG.

2350553WH 0022799        11/01/06:11:31  01 022800      97 B

Exhibit A, Pt. 1 of 4



**Investment Bank**
677 Washington Boulevard
Stamford CT 06901
(203) 719-3000

Account #
**450-60203 087**

Statement Period
**10-01-06 to 10-31-06**

OPTIONS - LONG POSITIONS          CONTINUED

| QUANTITY | DESCRIPTION | SYMBOL/ CUSIP | ACCT TYPE | PRICE | VALUE |
|---|---|---|---|---|---|
| 30 | CALL ADOBE SYS   JAN 035 **** EXP 01/20/2007 | AEQA35 | 2 | 4.4000 | 13,200.00 |
| 40 | CALL ADVNCD MICRO JAN 005 **** EXP 01/20/2007 | AMDA5 | 2 | 16.4000 | 65,600.00 |
| 500 | CALL ADVNCD MICRO JAN 7.50**** LONG TERM OPTIONS EXP 01/19/08 EXP 01/19/2008 | WVVA7 | 2 | 14.3000 | 715,000.00 |
| 55 | CALL ADVNCD MICRO JAN 010 **** LONG TERM OPTIONS EXP 01/19/08 EXP 01/19/2008 | WVVA10 | 2 | 12.1000 | 66,550.00 |
| 1,002 | CALL ADVNCD MICRO JAN 035 **** LONG TERM OPTIONS EXP 01/19/08 EXP 01/19/2008 | WVVA35 | 2 | 1.3000 | 130,260.00 |
| 30 | CALL ADVNCD MICRO JAN 060 **** LONG TERM OPTIONS EXP 01/19/08 EXP 01/19/2008 | WVVA60 | 2 | 0.2300 | 690.00 |
| 50 | CALL ANGIOTECH   JAN 010 CBOE LONG TERM OPTIONS EXP 01/19/08 EXP 01/19/2008 | LCVAB | 2 | 1.7000 | 8,500.00 |
| 20 | CALL ASPREVA PHAR APR 020 PBW EXP 04/21/2007 | QOSDD | 2 | 2.0000 | 4,000.00 |
| 20 | CALL AGNICO EAGLE DEC 040 **** EXP 12/16/2006 | AEML40 | 2 | 1.5000 | 3,000.00 |
| 4 | CALL AES CORP   JAN17.50**** LONG TERM OPTIONS EXP 01/19/08 EXP 01/19/2008 | WGCA17 | 2 | 6.2000 | 2,480.00 |
| 200 | CALL AES CORP   JAN 020 **** LONG TERM OPTIONS EXP 01/19/08 EXP 01/19/2008 | WGCA20 | 2 | 4.4800 | 89,600.00 |
| 1 | CALL ALLERGAN INC JAN 120 **** LONG TERM OPTIONS EXP 01/17/09 EXP 01/17/2009 | OBOA120 | 2 | 19.0000 | 1,900.00 |
| 10 | PUT  ALLERGAN INC JAN 095 **** EXP 01/20/2007 | AGNM95 | 2 | 0.4500 | 450.00 |
| 6 | CALL AMERN EXPRES JAN 055 **** LONG TERM OPTIONS EXP 01/20/07 EXP 01/20/2007 | ZZKA55 | 2 | 13.4000 | 8,040.00 |
| 7 | CALL AMER INTL GP JAN 060 **** EXP 01/20/2007 | AIGA60 | 2 | 7.7000 | 5,390.00 |
| 10 | CALL AMER INTL GP JAN 070 **** LONG TERM OPTIONS EXP 01/19/08 EXP 01/19/2008 | WAPA70 | 2 | 5.0000 | 5,000.00 |
| 10 | CALL AMER INTL GP JAN 075 **** LONG TERM OPTIONS EXP 01/19/08 EXP 01/19/2008 | WAPA75 | 2 | 2.8000 | 2,800.00 |
| 50 | CALL AMER INTL GP JAN 095 **** EXP 01/20/2007 | AIGA95 | 2 | 0.0500 | 250.00 |
| 195 | CALL AMER PWR CNV NOV22.50**** EXP 11/18/2006 | PWQK22 | 2 | 7.8000 | 152,100.00 |
| 80 | CALL AMER PWR CNV DEC 025 **** EXP 12/16/2006 | PWQL25 | 2 | 5.2000 | 41,600.00 |
| 10 | CALL AMGEN INC   NOV 070 **** EXP 11/18/2006 | YAAK70 | 2 | 6.2000 | 6,200.00 |
| 15 | CALL AMGEN INC   NOV72.50**** EXP 11/18/2006 | YAAK72 | 2 | 3.7000 | 5,550.00 |
| 1 | CALL ANADARKO PET JAN47.50**** LONG TERM OPTIONS EXP 01/19/08 EXP 01/19/2008 | YPCA47 | 2 | 6.6000 | 660.00 |
| 8 | CALL ANADARKO PET JAN 050 **** LONG TERM OPTIONS EXP 01/17/09 EXP 01/17/2009 | OCPA50 | 2 | 8.5000 | 6,800.00 |
| 10 | CALL ANADARKO PET JAN52.50**** EXP 01/20/2007 | APCA52 | 2 | 0.8500 | 850.00 |
| 68 | PUT  ANADARKO PET JAN 040 **** EXP 01/20/2007 | APCM40 | 2 | 0.6000 | 4,080.00 |



2350553WH 0022801B          11/01/06:11:31  01 022802     97 B



**UBS Investment Bank**
677 Washington Boulevard
Stamford CT 06901
(203) 719-3000

Account #
**450-60203 087**

Statement Period
**10-01-06 to 10-31-06**

OPTIONS - SHORT POSITIONS          CONTINUED

| QUANTITY | DESCRIPTION | SYMBOL/ CUSIP | ACCT TYPE | PRICE | VALUE |
|---|---|---|---|---|---|
| (8) | CALL ALCAN INC   JAN 045 ****<br>LONG TERM OPTIONS EXP 01/19/08<br>EXP 01/19/2008 | YXUA45 | 2 | 8.5000 | (6,800.00) |
| (15) | CALL ALCAN INC   JAN 060 AMEX<br>EXP 01/20/2007 | ALA60 | 2 | 0.1000 | (150.00) |
| (5) | CALL ALCAN INC   JAN 065 AMEX<br>EXP 01/20/2007 | ALA65 | 2 | 0.1000 | (50.00) |
| (10) | CALL ALCAN INC   DEC 045 AMEX<br>EXP 12/16/2006 | ALL45 | 2 | 3.5000 | (3,500.00) |
| (50) | CALL ALCAN INC   DEC 055 AMEX<br>EXP 12/16/2006 | ALL55 | 2 | 0.2000 | (1,000.00) |
| (25) | PUT  ALCAN INC   JAN 040 AMEX<br>EXP 01/20/2007 | ALM40 | 2 | 0.5000 | (1,250.00) |
| (100) | PUT  ALCAN INC   MAR 045 AMEX<br>EXP 03/17/2007 | ALO45 | 2 | 2.5500 | (25,500.00) |
| (20) | PUT  ALCAN INC   DEC 040 AMEX<br>EXP 12/16/2006 | ALX40 | 2 | 0.2500 | (500.00) |
| (3) | PUT  ALLERGAN INC JAN 090 ****<br>EXP 01/20/2007 | AGNM90 | 2 | 0.2500 | (75.00) |
| (100) | PUT  ALLTEL CORP  JAN 050 ****<br>EXP 01/20/2007 | ATM50 | 2 | 0.8000 | (8,000.00) |
| (62) | PUT  AM ELEC PWR  JAN 035 ****<br>EXP 01/20/2007 | AEPM35 | 2 | 0.1000 | (620.00) |
| (40) | CALL AMERN EXPRES JAN 060 ****<br>EXP 01/20/2007 | AXPA60 | 2 | 1.0500 | (4,200.00) |
| (30) | CALL AMERN EXPRES JAN 065 ****<br>LONG TERM OPTIONS EXP 01/20/07<br>EXP 01/20/2007 | ZZKA65 | 2 | 4.3000 | (12,900.00) |
| (10) | CALL AMERN EXPRES NOV52.50****<br>EXP 11/18/2006 | AXPK52 | 2 | 5.4500 | (5,450.00) |
| (7) | PUT  AMERN EXPRES JAN 050 ****<br>LONG TERM OPTIONS EXP 01/19/08<br>EXP 01/19/2008 | WXPM50 | 2 | 1.6000 | (1,120.00) |
| (4) | PUT  AMERN EXPRES JAN 050 ****<br>LONG TERM OPTIONS EXP 01/17/09<br>EXP 01/17/2009 | VAXM50 | 2 | 2.5500 | (1,020.00) |
| (20) | PUT  AMERN EXPRES APR 050 ****<br>EXP 04/21/2007 | AXPP50 | 2 | 0.6000 | (1,200.00) |
| (8) | CALL AMER INTL GP FEB 070 ****<br>EXP 02/17/2007 | AIGB70 | 2 | 1.1500 | (920.00) |
| (2) | CALL AMER INTL GP NOV 065 ****<br>EXP 11/18/2006 | AIGK65 | 2 | 2.5500 | (510.00) |
| (2,600) | PUT  AMER INTL GP JAN 060 ****<br>EXP 01/20/2007 | AIGM60 | 2 | 0.1500 | (39,000.00) |
| (5) | PUT  AMER INTL GP JAN 065 ****<br>EXP 01/20/2007 | AIGM65 | 2 | 0.7500 | (375.00) |
| (10) | PUT  AMER INTL GP JAN 070 ****<br>EXP 01/20/2007 | AIGM70 | 2 | 3.0000 | (3,000.00) |
| (320) | PUT  AK STL HLDG  JAN 005 CBOE<br>EXP 01/20/2007 | AKSMA | 2 | 0.0500 | (1,600.00) |
| (500) | PUT  AK STL HLDG  JAN 7.50****<br>LONG TERM OPTIONS EXP 01/19/08<br>EXP 01/19/2008 | YDFM7 | 2 | 0.3500 | (17,500.00) |
| (500) | PUT  AK STL HLDG  JAN 010 CBOE<br>EXP 01/20/2007 | AKSMB | 2 | 0.1500 | (7,500.00) |
| (10) | CALL AMER PWR CNV JAN17.50****<br>LONG TERM OPTIONS EXP 01/17/09<br>EXP 01/17/2009 | OCIA17 | 2 | 12.8000 | (12,800.00) |
| (24) | PUT  AMER PWR CNV DEC17.50****<br>EXP 12/16/2006 | PWQX17 | 2 | 0.0500 | (120.00) |
| (20) | PUT  ALLIED WASTE JAN12.50****<br>LONG TERM OPTIONS EXP 01/19/08<br>EXP 01/19/2008 | YNQM12 | 2 | 1.4500 | (2,900.00) |

2350553WH 0022827B          11/01/06:11:31  01 022828     97 B

 **Investment Bank** 677 Washington Boulevard
Stamford CT 06901
(203) 719-3000

Account #
**450-60203  087**

Statement Period
**10-01-06 to 10-31-06**

## PURCHASES & SALES    CONTINUED

| DATE | ACCT TYPE | TYPE OF ACTIVITY | QUANTITY | DESCRIPTION | SYMBOL/ CUSIP | PRICE | AMOUNT PAID | AMOUNT RECEIVED |
|------|-----------|------------------|----------|-------------|---------------|-------|-------------|-----------------|
| 10/03 | 2 | Sold | (7) | CALL AU OPTRONICS NOV 015 PSE EXP 11/18/2006 OPEN CONTRACT ABACUS | AUOKC | .6000 | | 416.83 |
| 10/03 | 2 | Sold | (33) | CALL AU OPTRONICS NOV 015 PSE EXP 11/18/2006 OPEN CONTRACT ABACUS | AUOKC | .6000 | | 1,965.08 |
| 10/03 | 2 | Sold | (2) | PUT AKAMAI TECH OCT 045 **** EXP 10/21/2006 OPEN CONTRACT ABACUS | UMUV45 | .7500 | | 149.09 |
| 10/03 | 2 | Sold | (2) | PUT AKAMAI TECH OCT 045 **** EXP 10/21/2006 OPEN CONTRACT ABACUS | UMUV45 | .7500 | | 149.09 |
| 10/03 | 2 | Sold | (25) | PUT AKAMAI TECH OCT 045 **** EXP 10/21/2006 OPEN CONTRACT ABACUS | UMUV45 | .7500 | | 1,863.69 |
| 10/03 | 2 | Sold | (10) | PUT ALCOA INC NOV27.50**** EXP 11/18/2006 OPEN CONTRACT ABACUS | AAW27 | .9500 | | 945.47 |
| 10/03 | 2 | Sold | (40) | PUT ALTRIA GROUP MAR 075 **** EXP 03/17/2007 OPEN CONTRACT ABACUS | MOO75 | 3.5000 | | 13,981.57 |
| 10/03 | 2 | Bought | 65 | CALL AMER PWR CNV OCT22.50**** EXP 10/21/2006 OPEN CONTRACT ABACUS | PWQJ22 | .7000 | 4,579.25 | |
| 10/03 | 2 | Bought | 285 | CALL AMER PWR CNV OCT22.50**** EXP 10/21/2006 OPEN CONTRACT ABACUS | PWQJ22 | .6500 | 18,653.25 | |
| 10/03 | 2 | Bought | 10 | PUT APPLE COMPUT JAN 080 **** LONG TERM OPTIONS EXP 01/17/09 EXP 01/17/2009 OPEN CONTRACT ABACUS | VAAM80 | 16.3000 | 16,304.50 | |
| 10/03 | 2 | Sold | (1) | PUT ARIBA INC FEB12.50**** EXP 02/17/2007 OPEN CONTRACT ABACUS | IRUN12 | 4.8000 | | 479.53 |
| 10/03 | 2 | Bought | 2 | PUT BEAZER HOMES NOV 045 CBOE EXP 11/18/2006 CLOSING CONTRACT ABACUS | BZHWI | 6.7000 | 1,340.90 | |
| 10/03 | 9 | Bought | 600 | BOSTON SCIENTIFIC CORP A/E QWBXM22 6 ASSIGNED AS OF 09/28/06 | BSX | 22.5000 | 13,506.00 | |
| 10/03 | 2 | Sold | (61) | CALL BROADCOM COR OCT32.50**** EXP 10/21/2006 OPEN CONTRACT ABACUS | RCQJ32 | 1.0000 | | 6,072.36 |
| 10/03 | 2 | Sold | (64) | CALL BROADCOM COR OCT32.50**** EXP 10/21/2006 OPEN CONTRACT ABACUS | RCQJ32 | 1.0000 | | 6,371.00 |
| 10/03 | 2 | Bought | 3 | PUT NASD 100 IND MAR 1650CBOE EXP 03/17/2007 OPEN CONTRACT ABACUS | NDVOM | 66.7000 | 20,011.35 | |



**UBS Investment Bank**
677 Washington Boulevard
Stamford CT 06901
(203) 719-3000

Account #
**450-60203 087**

Statement Period
**10-01-06 to 10-31-06**

PURCHASES & SALES          CONTINUED

| DATE | ACCT TYPE | TYPE OF ACTIVITY | QUANTITY | DESCRIPTION | SYMBOL/ CUSIP | PRICE | AMOUNT PAID | AMOUNT RECEIVED |
|------|-----------|------------------|----------|-------------|---------------|-------|-------------|-----------------|
| 10/11 | 2 | Sold | (10) | PUT CNH GLOBAL MAR 025 **** EXP 03/17/2007 OPEN CONTRACT ABACUS | CNHO25 | 1.6500 | | 1,645.44 |
| 10/11 | 2 | Sold | (2) | PUT BIOTECH HOLD JAN 150 **** LONG TERM OPTIONS EXP 01/17/09 EXP 01/17/2009 OPEN CONTRACT | OEEM150 | 5.4000 | | 1,079.06 |
| 10/11 | 2 | Sold | (20) | CALL ADVNCD MICRO NOV27.50**** EXP 11/18/2006 OPEN CONTRACT ABACUS | AMDK27 | .4500 | | 890.97 |
| 10/11 | 2 | Sold | (250) | CALL ADVNCD MICRO NOV27.50**** EXP 11/18/2006 OPEN CONTRACT ABACUS | AMDK27 | .4500 | | 11,137.15 |
| 10/11 | 2 | Sold | (100) | PUT ALTRIA GROUP OCT 075 **** EXP 10/21/2006 OPEN CONTRACT ABACUS | MOV75 | .3000 | | 2,954.90 |
| 10/11 | 2 | Sold | (40) | CALL AMERN EXPRES JAN 060 **** EXP 01/20/2007 OPEN CONTRACT ABACUS | AXPA60 | 1.1500 | | 4,581.85 |
| 10/11 | 2 | Sold | (350) | CALL AMER PWR CNV OCT22.50**** EXP 10/21/2006 CLOSING CONTRACT ABACUS | PWQJ22 | .4000 | | 13,842.07 |
| 10/11 | 2 | Bought | 350 | CALL AMER PWR CNV NOV22.50**** EXP 11/18/2006 OPEN CONTRACT ABACUS | PWQK22 | 1.1000 | 38,657.50 | |
| 10/11 | 2 | Bought | 6 | CALL AMPHENOL CRP OCT 060 **** EXP 10/21/2006 OPEN CONTRACT ABACUS | APHJL | 5.6000 | 3,362.70 | |
| 10/11 | 2 | Sold | (14) | PUT APACHE CORP JAN 070 **** EXP 01/20/2007 OPEN CONTRACT ABACUS | APAM70 | 7.9000 | | 11,053.36 |
| 10/11 | 2 | Bought | 14 | PUT APACHE CORP OCT 070 **** EXP 10/21/2006 CLOSING CONTRACT ABACUS | APAV70 | 7.0000 | 9,806.30 | |
| 10/11 | 2 | Bought | 1 | PUT BED BATH & OCT 035 **** EXP 10/21/2006 CLOSING CONTRACT ABACUS | BHQVG | .0500 | 5.45 | |
| 10/11 | 2 | Bought | 10 | PUT BED BATH & OCT 035 **** EXP 10/21/2006 CLOSING CONTRACT ABACUS | BHQVG | .0500 | 54.50 | |
| 10/11 | 2 | Bought | 10 | PUT BED BATH & OCT 035 **** EXP 10/21/2006 CLOSING CONTRACT ABACUS | BHQVG | .0500 | 54.50 | |
| 10/11 | 2 | Bought | 10 | PUT BED BATH & OCT 035 **** EXP 10/21/2006 CLOSING CONTRACT ABACUS | BHQVG | .0500 | 54.50 | |
| 10/11 | 2 | Bought | 11 | PUT BED BATH & OCT 035 **** EXP 10/21/2006 CLOSING CONTRACT ABACUS | BHQVG | .0500 | 59.95 | |

SIPC

2350553WH 0022919          11/01/06;11:31  01 022920          97 B

 **UBS** Investment Bank    677 Washington Boulevard
Stamford CT 06901
(203) 719-3000

Account #
**450-60203 087**

Statement Period
**10-01-06 to 10-31-06**

PURCHASES & SALES        CONTINUED

| DATE | ACCT TYPE | TYPE OF ACTIVITY | QUANTITY | DESCRIPTION | SYMBOL/CUSIP | PRICE | AMOUNT PAID | AMOUNT RECEIVED |
|---|---|---|---|---|---|---|---|---|
| 10/23 2 | | Sold | (7 ) | CALL ALBEMARLE CP NOV 050 **** EXP 11/18/2006 CLOSING CONTRACT ABACUS | ALBK50 | 11.2000 | | 7,836.60 |
| 10/23 2 | | Sold | (30 ) | CALL ALCOA INC    OCT27.50**** EXP 10/21/2006 CLOSING CONTRACT ABACUS | AAJ27 | .0500 | | 136.49 |
| 10/23 2 | | Bought | 3 | PUT ALLEGHENY TE JAN 065 CBOE EXP 01/20/2007 OPEN CONTRACT ABACUS | ATIMM | 2.2000 | 661.35 | |
| 10/23 2 | | Bought | 80 | CALL AMER PWR CNV DEC 025 **** EXP 12/16/2006 OPEN CONTRACT ABACUS | PWQL25 | .5000 | 4,036.00 | |
| 10/23 2 | | Sold | (10 ) | CALL APACHE CORP  NOV 070 **** EXP 11/18/2006 OPEN CONTRACT ABACUS | APAK70 | 1.3500 | | 1,345.45 |
| 10/23 9 | | Sold | (3,300 ) | APPLE COMPUTER INC WITH RIGHTS TO PURCHASE COMMON STK UNDER CERTAIN CIRCUMSTANCE A/E QQAAJ70  33 ASSIGNED AS OF 10/18/06 | AAPL | 70.0000 | | 230,959.90 |
| 10/23 2 | | Sold | (30 ) | PUT  BAKER HUGHES NOV 065 **** EXP 11/18/2006 OPEN CONTRACT ABACUS | BHIW65 | .7500 | | 2,236.43 |
| 10/23 2 | | Bought | 20 | CALL ANGIOTECH    JAN 010 CBOE LONG TERM OPTIONS EXP 01/19/08 EXP 01/19/2008 OPEN CONTRACT ABACUS | LCVAB | 1.7000 | 3,409.00 | |
| 10/23 2 | | Bought | 1 | CALL COGNIZANT   JAN 080 **** LONG TERM OPTIONS EXP 01/17/09 EXP 01/17/2009 OPEN CONTRACT ABACUS | VJOA80 | 18.8000 | 1,880.45 | |
| 10/23 2 | | Sold | (38 ) | CALL BRIGHAM EXP  OCT 7.50PBW EXP 10/21/2006 CLOSING CONTRACT ABACUS | QBJJU | .0500 | | 172.89 |
| 10/23 2 | | Bought | 125 | PUT  BROADCOM COR OCT27.50**** EXP 10/21/2006 CLOSING CONTRACT ABACUS | RCQV27 | .1500 | 1,931.25 | |
| 10/23 2 | | Sold | (34 ) | PUT  BROADCOM COR NOV27.50**** EXP 11/18/2006 OPEN CONTRACT ABACUS | RCQW27 | 1.0500 | | 3,554.59 |
| 10/23 2 | | Sold | (91 ) | PUT  BROADCOM COR NOV27.50**** EXP 11/18/2006 OPEN CONTRACT ABACUS | RCQW27 | 1.0500 | | 9,513.75 |
| 10/23 2 | | Bought | 3 | PUT  BURLINGTN NO JAN 075 **** EXP 01/20/2007 OPEN CONTRACT ABACUS | BNIM75 | 2.7000 | 811.35 | |
| 10/23 2 | | Bought | 100 | PUT  D.J. INDL AV JUN 088 CBOE EXP 06/16/2007 CLOSING CONTRACT ABACUS | DJXRJ | .2000 | 2,045.00 | |

 **UBS** Investment Bank

677 Washington Boulevard
Stamford CT 06901
(203) 719-3000

Account #
450-60203  087

Statement Period
**10-01-06 to 10-31-06**

PURCHASES & SALES    CONTINUED

| DATE | ACCT TYPE | TYPE OF ACTIVITY | QUANTITY | DESCRIPTION | SYMBOL/ CUSIP | PRICE | AMOUNT PAID | AMOUNT RECEIVED |
|------|-----------|------------------|----------|-------------|---------------|-------|-------------|-----------------|
| 10/24 | 2 | Bought | 2 | CALL ALTRIA GROUP NOV 090 **** EXP 11/18/2006 OPEN CONTRACT ABACUS | MOK90 | .1500 | 30.90 | |
| 10/24 | 2 | Bought | 22 | CALL ALTRIA GROUP NOV 090 **** EXP 11/18/2006 OPEN CONTRACT ABACUS | MOK90 | .1500 | 339.90 | |
| 10/24 | 2 | Bought | 576 | CALL ALTRIA GROUP NOV 090 **** EXP 11/18/2006 OPEN CONTRACT ABACUS | MOK90 | .1500 | 8,899.20 | |
| 10/24 | 2 | Sold | (5) | PUT AMAZON COM NOV32.50**** EXP 11/18/2006 OPEN CONTRACT ABACUS | ZQNW32 | 2.0000 | | 997.71 |
| 10/24 | 2 | Sold | (10) | PUT AMER INTL GP JAN 070 **** EXP 01/20/2007 OPEN CONTRACT ABACUS | AIGM70 | 3.7000 | | 3,695.38 |
| 10/24 | 2 | Bought | 20 | CALL AMER PWR CNV NOV22.50**** EXP 11/18/2006 OPEN CONTRACT ABACUS | PWQK22 | 1.8500 | 3,709.00 | |
| 10/24 | 2 | Sold | (10) | PUT APACHE CORP APR 055 **** EXP 04/21/2007 OPEN CONTRACT ABACUS | APAP55 | 1.4500 | | 1,445.45 |
| 10/24 | 2 | Bought | 4 | CALL APOLLO GROUP NOV 055 **** EXP 11/18/2006 CLOSING CONTRACT ABACUS | OAQK55 | .1500 | 61.80 | |
| 10/24 | 2 | Sold | (4) | PUT APOLLO GROUP JAN 040 **** EXP 01/20/2007 OPEN CONTRACT ABACUS | OAQM40 | 4.6000 | | 1,838.14 |
| 10/24 | 2 | Bought | 3 | PUT APOLLO GROUP NOV 045 **** EXP 11/18/2006 CLOSING CONTRACT ABACUS | OAQW45 | 8.8000 | 2,641.35 | |
| 10/24 | 9 | Sold | (2,300) | APPLE COMPUTER INC WITH RIGHTS TO PURCHASE COMMON STK UNDER CERTAIN CIRCUMSTANCE A/E QQAAJ75  23 ASSIGNED AS OF 10/19/06 | AAPL | 75.0000 | | 172,471.70 |
| 10/24 | 9 | Sold | (9,800) | APPLE COMPUTER INC WITH RIGHTS TO PURCHASE COMMON STK UNDER CERTAIN CIRCUMSTANCE A/E QQAAJ70  98 ASSIGNED AS OF 10/19/06 | AAPL | 70.0000 | | 685,880.93 |
| 10/24 | 2 | Sold | (50) | PUT BAIDU.COM DEC 065 CBOE EXP 12/16/2006 OPEN CONTRACT ABACUS | BDQXM | 1.0000 | | 4,977.34 |
| 10/24 | 2 | Sold | (7) | CALL BOEING CO NOV 080 **** EXP 11/18/2006 CLOSING CONTRACT ABACUS | BAK80 | 3.2000 | | 2,236.78 |
| 10/24 | 2 | Sold | (10) | PUT NASD 100 IND NOV 1650CBOE EXP 11/18/2006 OPEN CONTRACT ABACUS | NDVWM | 6.3000 | | 6,295.50 |



**UBS** Investment Bank    677 Washington Boulevard
Stamford CT 06901
(203) 719-3000

Account #
**450-60203  087**

Statement Period
**10-01-06 to 10-31-06**

PURCHASES & SALES        CONTINUED

| DATE | ACCT TYPE | TYPE OF ACTIVITY | QUANTITY | DESCRIPTION | SYMBOL/ CUSIP | PRICE | AMOUNT PAID | AMOUNT RECEIVED |
|------|-----------|------------------|----------|-------------|---------------|-------|-------------|-----------------|
| 10/31 | 2 | Sold | (8) | PUT TRANSOCEAN   JAN 070 ****  EXP 01/20/2007  OPEN CONTRACT  ABACUS | RIGM70 | 3.7000 | | 2,956.30 |
| 10/31 | 2 | Sold | (31) | PUT TRANSOCEAN   FEB 065 ****  EXP 02/17/2007  OPEN CONTRACT  ABACUS | RIGN65 | 2.7500 | | 8,510.78 |
| 10/31 | 2 | Sold | (10) | PUT TRANSOCEAN   NOV 070 ****  EXP 11/18/2006  OPEN CONTRACT  ABACUS | RIGW70 | 1.8500 | | 1,845.44 |
| 10/31 | 2 | Sold | (20) | PUT TRANSOCEAN   NOV 070 ****  EXP 11/18/2006  OPEN CONTRACT  ABACUS | RIGW70 | 1.8500 | | 3,690.88 |
| 10/31 | 2 | Bought | 25 | CALL RADVISION   MAR 015 ****  EXP 03/17/2007  OPEN CONTRACT  ABACUS | RJUCC | 4.5000 | 11,261.25 | |
| 10/31 | 2 | Bought | 66 | CALL RADVISION   MAR 015 ****  EXP 03/17/2007  OPEN CONTRACT  ABACUS | RJUCC | 4.5000 | 29,729.70 | |
| 10/31 | 2 | Bought | 3 | CALL RADVISION   MAR 015 ****  EXP 03/17/2007  OPEN CONTRACT  ABACUS | RJUCC | 4.5000 | 1,351.35 | |
| 10/31 | 2 | Bought | 6 | CALL RADVISION   MAR 015 ****  EXP 03/17/2007  OPEN CONTRACT  ABACUS | RJUCC | 4.5000 | 2,702.70 | |
| 10/31 | 2 | Bought | 1 | CALL APPLE COMPUT JAN 090 ****  EXP 01/20/2007  OPEN CONTRACT  ABACUS | QAAA90 | 2.2500 | 225.45 | |
| 10/31 | 2 | Bought | 110 | CALL APPLE COMPUT JAN 090 ****  EXP 01/20/2007  OPEN CONTRACT  ABACUS | QAAA90 | 2.2500 | 24,799.50 | |
| 10/31 | 2 | Bought | 50 | CALL APPLE COMPUT APR 090 ****  EXP 04/21/2007  OPEN CONTRACT  ABACUS | QAAD90 | 5.1000 | 25,522.50 | |
| 10/31 | 2 | Bought | 200 | PUT ABERCROMBIE& DEC 070 ****  EXP 12/16/2006  OPEN CONTRACT  ABACUS | ANFX70 | 1.2000 | 24,090.00 | |
| 10/31 | 2 | Bought | 30 | CALL ADOBE SYS   JAN 035 ****  EXP 01/20/2007  OPEN CONTRACT  ABACUS | AEQA35 | 5.0000 | 15,013.50 | |
| 10/31 | 2 | Sold | (30) | CALL ADOBE SYS   JAN27.50****  EXP 01/20/2007  OPEN CONTRACT  ABACUS | AEQA27 | 11.2000 | | 33,585.46 |
| 10/31 | 2 | Bought | 30 | PUT AETNA INC   NOV 040 ****  EXP 11/18/2006  CLOSING CONTRACT  ABACUS | AETW40 | .4500 | 1,363.50 | |
| 10/31 | 2 | Sold | (175) | CALL AMER PWR CNV NOV22.50****  EXP 11/18/2006  CLOSING CONTRACT  ABACUS | PWQK22 | 7.3000 | | 127,667.32 |



2350553WH 0023069        11/01/06:11:31  01 023070    97 B



**UBS Investment Bank**
677 Washington Boulevard
Stamford CT 06901
(203) 719-3000

Account #
**450-60203 087**

Statement Period
**10-01-06 to 10-31-06**

PURCHASES & SALES    CONTINUED

| DATE | ACCT TYPE | TYPE OF ACTIVITY | QUANTITY | DESCRIPTION | SYMBOL/CUSIP | PRICE | AMOUNT PAID | AMOUNT RECEIVED |
|------|-----------|------------------|----------|-------------|--------------|-------|-------------|-----------------|
| 10/31 | 2 | Sold | (21 ) | CALL AMER PWR CNV DEC22.50**** EXP 12/16/2006 CLOSING CONTRACT ABACUS | PWQL22 | 7.2000 | | 15,110.08 |
| 10/31 | 2 | Sold | (31 ) | CALL AMER PWR CNV DEC22.50**** EXP 12/16/2006 CLOSING CONTRACT ABACUS | PWQL22 | 7.3000 | | 22,615.35 |
| 10/31 | 2 | Sold | (57 ) | CALL AMER PWR CNV DEC22.50**** EXP 12/16/2006 CLOSING CONTRACT ABACUS | PWQL22 | 7.3000 | | 41,583.07 |
| 10/31 | 2 | Sold | (65 ) | CALL AMER PWR CNV DEC22.50**** EXP 12/16/2006 CLOSING CONTRACT ABACUS | PWQL22 | 7.3000 | | 47,419.29 |
| 10/31 | 2 | Sold | (80 ) | CALL AMER PWR CNV DEC22.50**** EXP 12/16/2006 CLOSING CONTRACT ABACUS | PWQL22 | 7.3000 | | 58,362.20 |
| 10/31 | 2 | Sold | (388 ) | CALL AMER PWR CNV DEC22.50**** EXP 12/16/2006 CLOSING CONTRACT ABACUS | PWQL22 | 7.2000 | | 279,176.82 |
| 10/31 | 2 | Sold | (512 ) | CALL AMER PWR CNV DEC22.50**** EXP 12/16/2006 CLOSING CONTRACT ABACUS | PWQL22 | 7.3000 | | 373,518.12 |
| 10/31 | 2 | Sold | (520 ) | CALL AMER PWR CNV DEC22.50**** EXP 12/16/2006 CLOSING CONTRACT ABACUS | PWQL22 | 7.3000 | | 379,354.34 |
| 10/31 | 2 | Sold | (726 ) | CALL AMER PWR CNV DEC22.50**** EXP 12/16/2006 CLOSING CONTRACT ABACUS | PWQL22 | 7.2000 | | 522,377.25 |
| 10/31 | 2 | Sold | (6 ) | CALL APACHE CORP JAN 075 **** EXP 01/20/2007 CLOSING CONTRACT ABACUS | APAA75 | .7000 | | 417.28 |
| 10/31 | 2 | Sold | (15 ) | PUT APACHE CORP JAN 065 **** EXP 01/20/2007 OPEN CONTRACT ABACUS | APAM65 | 2.8500 | | 4,268.11 |
| 10/31 | 2 | Sold | (30 ) | CALL AQUA AMERICA MAR 025 CBOE EXP 03/17/2007 OPEN CONTRACT ABACUS | WTRCE | 1.2500 | | 3,736.38 |
| 10/31 | 2 | Bought | 10 | CALL ASPREVA PHAR APR 020 PBW EXP 04/21/2007 OPEN CONTRACT ABACUS | QOSDD | 2.0000 | 2,004.50 | |
| 10/31 | 2 | Bought | 10 | CALL ASPREVA PHAR APR 020 PBW EXP 04/21/2007 OPEN CONTRACT ABACUS | QOSDD | 2.0000 | 2,004.50 | |
| 10/31 | 2 | Sold | (5 ) | CALL BP PLC APR 075 **** EXP 04/21/2007 OPEN CONTRACT ABACUS | BPD75 | 1.0000 | | 497.73 |

SIPC

2350553WH 0023069B        11/01/06:11:31  01 023070      97 B

 **Investment Bank**

677 Washington Boulevard
Stamford CT 06901
(203) 719-3000

Account #
**450-60203 087**

Statement Period
**10-01-06 to 10-31-06**

TRADES NOT YET SETTLED          CONTINUED

| TRADE DATE | SETTLE DATE | TYPE OF ACTIVITY | QUANTITY | DESCRIPTION | PRICE | AMOUNT PAID | AMOUNT RECEIVED |
|---|---|---|---|---|---|---|---|
| 10/31 | 11/01 | Sold | (30) | CALL AMER PWR CNV NOV22.50**** EXP 11/18/2006 CLOSING CONTRACT ABACUS | 7.6000 | | 22,785.80 |
| 10/31 | 11/01 | Sold | (145) | CALL AMER PWR CNV NOV22.50**** EXP 11/18/2006 CLOSING CONTRACT ABACUS | 7.6000 | | 110,131.36 |
| 10/31 | 11/01 | Bought | 25 | PUT MORGAN STANL APR 070 **** EXP 04/21/2007 OPEN CONTRACT ABACUS | 1.9500 | 4,886.25 | |
| 10/31 | 11/01 | Bought | 35 | CALL YAHOO INC JAN 030 **** LONG TERM OPTIONS EXP 01/19/08 EXP 01/19/2008 OPEN CONTRACT ABACUS | 3.2000 | 11,215.75 | |
| 10/31 | 11/01 | Sold | (50) | CALL SANDISK CORP NOV 050 **** EXP 11/18/2006 CLOSING CONTRACT ABACUS | 1.2500 | | 6,227.30 |
| 10/31 | 11/01 | Sold | (6) | CALL TITANIUM NOV 020 CBOE EXP 11/18/2006 CLOSING CONTRACT ABACUS | 8.7000 | | 5,217.13 |
| 10/31 | 11/01 | Bought | 50 | CALL GLAXO SMITH JAN 060 **** LONG TERM OPTIONS EXP 01/19/08 EXP 01/19/2008 OPEN CONTRACT ABACUS | 2.5500 | 12,772.50 | |
| 10/31 | 11/01 | Bought | 9 | CALL SUNOCO INC DEC 075 **** EXP 12/16/2006 OPEN CONTRACT ABACUS | .5500 | 499.05 | |
| 10/31 | 11/01 | Bought | 19 | CALL SUNOCO INC DEC 075 **** EXP 12/16/2006 OPEN CONTRACT ABACUS | .5500 | 1,053.55 | |
| 10/31 | 11/01 | Bought | 19 | CALL SUNOCO INC DEC 075 **** EXP 12/16/2006 OPEN CONTRACT ABACUS | .5500 | 1,053.55 | |
| 10/31 | 11/01 | Bought | 20 | CALL SUNOCO INC DEC 075 **** EXP 12/16/2006 OPEN CONTRACT ABACUS | .5500 | 1,109.00 | |
| 10/31 | 11/01 | Bought | 50 | CALL SUNOCO INC DEC 075 **** EXP 12/16/2006 OPEN CONTRACT ABACUS | .5500 | 2,772.50 | |
| 10/31 | 11/01 | Bought | 30 | CALL OMNIVISION JAN17.50**** LONG TERM OPTIONS EXP 01/19/08 EXP 01/19/2008 OPEN CONTRACT ABACUS | 4.2000 | 12,613.50 | |
| 10/31 | 11/01 | Bought | 250 | PUT STARBUCKS CP JAN27.50**** LONG TERM OPTIONS EXP 01/19/08 ADJ 2 FOR 1 STOCK SPLIT EXP 01/19/2008 OPEN CONTRACT ABACUS | 1.0000 | 25,112.50 | |
| 10/31 | 11/01 | Bought | 42 | PUT CIA VALE DO MAR 025 **** EXP 03/17/2007 OPEN CONTRACT ABACUS | 1.8000 | 7,578.90 | |

SIPC

2350553WH 0023099B          11/01/06:11:31 01 023100          97 B

 **UBS Investment Bank**

677 Washington Boulevard
Stamford CT 06901
(203) 719-3000

Account #
**450-60203  087**

Statement Period
**11-01-06 to 11-30-06**

**YOUR ACCOUNT STATEMENT**

Reported in U.S. DOLLARS

**UBS AG**
**A/C EXCHANGE TRADED DERIVATIVE**
**PO BOX 8098**
**ZURICH**
**SWITZERLAND**

**Account Name**
UBS AG

**MONEY BALANCE SUMMARY**

|  | 11-30-06 | 10-31-06 |
|---|---|---|
| Net Cash | $639,345.55 | $639,321.55 |

**PORTFOLIO SUMMARY**

|  | 11-30-06 |
|---|---|
| * Total Portfolio Value | $272,218,132.00 |
| Net Cash Balance | 639,345.55 |
| * Net Portfolio Value | 272,857,477.55 |
| * Net Value Last Period | 321,221,882.85 |

**\* Excludes Unpriced Securities.**

**ACTIVITY SUMMARY**

CREDITS
| Securities Sold | $49,824,622.31 |
|---|---|
| Other Credits | 29,379,371.50 |
| **Total Credits** | **$79,203,993.81** |

DEBITS
| Securities Purchased | $53,936,749.54 |
|---|---|
| Other Debits | 25,267,220.27 |
| **Total Debits** | **$79,203,969.81** |
| **Net Activity** | **$24.00** |

**REALIZED INCOME & EXPENSE SUMMARY**

|  | 11-30-06 | YEAR-TO-DATE |
|---|---|---|
| Margin Interest Paid | $0.00 | $(542.04) |
| Credit Interest | 2,505.63 | 20,976.05 |

Independent, third party research on certain companies covered by the firm's research is available to customers of UBS in the United States at no cost.
Customers can access this research at WWW.UBS.COM/INDEPENDENTRESEARCH or call 1-877-208-5700 to request that a copy of this research be sent to them.  An explanation of the ratings is available on the research provider's reports.

 **SIPC**

UBS Securities LLC is a subsidiary of UBS AG and a member of SIPC, the New York Stock Exchange, and other principal exchanges.
UBS Investment Bank is a business group of UBS AG.

Page 1 of 580

2350553WH 0012748        12/01/06 06:12  01 012749      99 B

 **UBS** Investment Bank    677 Washington Boulevard
Stamford CT 06901
(203) 719-3000

Account #
**450-60203  087**

Statement Period
**11-01-06 to 11-30-06**

OPTIONS - SHORT POSITIONS          CONTINUED

| QUANTITY | DESCRIPTION | SYMBOL/CUSIP | ACCT TYPE | PRICE | VALUE |
|---|---|---|---|---|---|
| (30 ) | CALL AMERN EXPRES JAN 065 **** LONG TERM OPTIONS EXP 01/20/07 EXP 01/20/2007 | ZZKA65 | 2 | 5.5000 | (16,500.00) |
| (40 ) | CALL AMERN EXPRES APR 065 **** EXP 04/21/2007 | AXPD65 | 2 | 0.7000 | (2,800.00) |
| (7 ) | PUT  AMERN EXPRES JAN 050 **** LONG TERM OPTIONS EXP 01/19/08 EXP 01/19/2008 | WXPM50 | 2 | 1.4000 | (980.00) |
| (4 ) | PUT  AMERN EXPRES JAN 050 **** LONG TERM OPTIONS EXP 01/17/09 EXP 01/17/2009 | VAXM50 | 2 | 2.3500 | (940.00) |
| (20 ) | PUT  AMERN EXPRES APR 050 **** EXP 04/21/2007 | AXPP50 | 2 | 0.3300 | (660.00) |
| (40 ) | PUT  AMERN EXPRES APR 060 **** EXP 04/21/2007 | AXPP60 | 2 | 2.8500 | (11,400.00) |
| (8 ) | CALL AMER INTL GP FEB 070 **** EXP 02/17/2007 | AIGB70 | 2 | 2.5000 | (2,000.00) |
| (10 ) | CALL AMER INTL GP MAY 070 **** EXP 05/19/2007 | AIGE70 | 2 | 4.0000 | (4,000.00) |
| (2,000 ) | PUT  AMER INTL GP JAN 060 **** EXP 01/20/2007 | AIGM60 | 2 | 0.0500 | (10,000.00) |
| (5 ) | PUT  AMER INTL GP JAN 065 **** EXP 01/20/2007 | AIGM65 | 2 | 0.1500 | (75.00) |
| (10 ) | PUT  AMER INTL GP MAY 075 **** EXP 05/19/2007 | AIGQ75 | 2 | 5.1000 | (5,100.00) |
| (320 ) | PUT  AK STL HLDG  JAN 005 CBOE EXP 01/20/2007 | AKSMA | 2 | 0.0500 | (1,600.00) |
| (500 ) | PUT  AK STL HLDG  JAN 7.50**** LONG TERM OPTIONS EXP 01/19/08 EXP 01/19/2008 | YDFM7 | 2 | 0.2500 | (12,500.00) |
| (500 ) | PUT  AK STL HLDG  JAN 010 CBOE EXP 01/20/2007 | AKSMB | 2 | 0.0500 | (2,500.00) |
| (10 ) | CALL AMER PWR CNV JAN17.50**** LONG TERM OPTIONS EXP 01/17/09 EXP 01/17/2009 | OCIA17 | 2 | 10.5000 | (10,500.00) |
| (24 ) | PUT  AMER PWR CNV DEC17.50**** EXP 12/16/2006 | PWQX17 | 2 | 0.0500 | (120.00) |
| (5 ) | PUT  AMERCN SCIEN DEC 060 AMEX EXP 12/16/2006 | KBUX60 | 2 | 0.9500 | (475.00) |
| (20 ) | PUT  ALLIED WASTE JAN12.50**** LONG TERM OPTIONS EXP 01/19/08 EXP 01/19/2008 | YNQM12 | 2 | 1.2000 | (2,400.00) |
| (15 ) | CALL AMGEN INC    JAN 070 **** EXP 01/20/2007 | YAAA70 | 2 | 2.8000 | (4,200.00) |
| (15 ) | CALL AMGEN INC    JAN 075 **** EXP 01/20/2007 | YAAA75 | 2 | 0.6000 | (900.00) |
| (24 ) | CALL AMGEN INC    JAN 075 **** LONG TERM OPTIONS EXP 01/19/2008 | WAMA75 | 2 | 6.7000 | (16,080.00) |
| (10 ) | CALL AMGEN INC    JAN 080 **** EXP 01/20/2007 | YAAA80 | 2 | 0.1000 | (100.00) |
| (4 ) | CALL AMGEN INC    JAN 080 **** LONG TERM OPTIONS EXP 01/19/08 EXP 01/19/2008 | WAMA80 | 2 | 4.6000 | (1,840.00) |
| (17 ) | CALL AMGEN INC    JAN 085 **** LONG TERM OPTIONS EXP 01/19/08 EXP 01/19/2008 | WAMA85 | 2 | 2.9500 | (5,015.00) |
| (25 ) | CALL AMGEN INC    APR 080 **** EXP 04/21/2007 | YAAD80 | 2 | 1.2500 | (3,125.00) |
| (10 ) | PUT  AMGEN INC    JAN 060 **** EXP 01/20/2007 | YAAM60 | 2 | 0.0500 | (50.00) |
| (30 ) | PUT  AMGEN INC    JAN 065 **** EXP 01/20/2007 | YAAM65 | 2 | 0.2500 | (750.00) |

 **SIPC**

2350553WH 0012779          12/01/06:05:12  01 012780      99 B



**Investment Bank**
677 Washington Boulevard
Stamford CT 06901
(203) 719-3000

Account #
**450-60203 087**

Statement Period
**11-01-06 to 11-30-06**

PURCHASES & SALES    CONTINUED

| DATE | ACCT TYPE | TYPE OF ACTIVITY | QUANTITY | DESCRIPTION | SYMBOL/ CUSIP | PRICE | AMOUNT PAID | AMOUNT RECEIVED |
|---|---|---|---|---|---|---|---|---|
| 11/01 | 2 | Sold | (30 ) | CALL ADV MAGNETIC MAY 040 AMEX EXP 05/19/2007 OPEN CONTRACT ABACUS | AVME40 | 9.6000 | | 28,785.61 |
| 11/01 | 2 | Bought | 10 | PUT ADV MAGNETIC FEB 025 AMEX EXP 02/17/2007 OPEN CONTRACT ABACUS | AVMN25 | 2.2500 | 2,254.50 | |
| 11/01 | 2 | Bought | 10 | PUT ADV MAGNETIC FEB 025 AMEX EXP 02/17/2007 OPEN CONTRACT ABACUS | AVMN25 | 2.3000 | 2,304.50 | |
| 11/01 | 2 | Bought | 10 | PUT ADV MAGNETIC FEB 025 AMEX EXP 02/17/2007 OPEN CONTRACT ABACUS | AVMN25 | 2.2500 | 2,254.50 | |
| 11/01 | 2 | Sold | (100 ) | PUT ADVNCD MICRO JAN 020 **** EXP 01/20/2007 OPEN CONTRACT ABACUS | AMDM20 | 1.2000 | | 11,954.63 |
| 11/01 | 2 | Sold | (30 ) | CALL AMER PWR CNV NOV22.50**** EXP 11/18/2006 CLOSING CONTRACT ABACUS | PWQK22 | 7.6000 | | 22,785.80 |
| 11/01 | 2 | Sold | (145 ) | CALL AMER PWR CNV NOV22.50**** EXP 11/18/2006 CLOSING CONTRACT ABACUS | PWQK22 | 7.6000 | | 110,131.36 |
| 11/01 | 2 | Bought | 20 | CALL ANALOG DVICE MAR 035 **** EXP 03/17/2007 OPEN CONTRACT ABACUS | ADIC35 | 1.1500 | 2,309.00 | |
| 11/01 | 2 | Sold | (20 ) | PUT ANALOG DVICE MAR 025 **** EXP 03/17/2007 OPEN CONTRACT ABACUS | ADIO25 | .2500 | | 490.98 |
| 11/01 | 2 | Sold | (20 ) | PUT APACHE CORP NOV 065 **** EXP 11/18/2006 OPEN CONTRACT ABACUS | APAW65 | 1.5000 | | 2,990.90 |
| 11/01 | 9 | Bought | 100 | ARIBA INC NEW A/E QIRUN12 1 ASSIGNED AS OF 10/27/06 | ARBA | 12.5000 | 1,251.00 | |
| 11/01 | 2 | Bought | 10 | CALL ASPREVA PHAR APR 020 PBW EXP 04/21/2007 OPEN CONTRACT ABACUS | QOSDD | 2.0000 | 2,004.50 | |
| 11/01 | 2 | Bought | 10 | CALL ASPREVA PHAR APR 020 PBW EXP 04/21/2007 OPEN CONTRACT ABACUS | QOSDD | 2.0000 | 2,004.50 | |
| 11/01 | 2 | Bought | 10 | CALL ASPREVA PHAR APR 020 PBW EXP 04/21/2007 OPEN CONTRACT ABACUS | QOSDD | 2.0000 | 2,004.50 | |
| 11/01 | 2 | Bought | 15 | CALL ASPREVA PHAR APR 020 PBW EXP 04/21/2007 OPEN CONTRACT ABACUS | QOSDD | 2.0000 | 3,006.75 | |
| 11/01 | 2 | Sold | (10 ) | PUT BAIDU.COM DEC 085 CBOE EXP 12/16/2006 OPEN CONTRACT ABACUS | BDQXQ | 4.0000 | | 3,995.37 |

2350553WH 0012826    12/01/06:05:12  01 012827    99 B



**UBS Investment Bank**

677 Washington Boulevard
Stamford CT 06901
(203) 719-3000

Account #
**450-60203 087**

Statement Period
**11-01-06 to 11-30-06**

PURCHASES & SALES        CONTINUED

| DATE | ACCT TYPE | TYPE OF ACTIVITY | QUANTITY | DESCRIPTION | SYMBOL/ CUSIP | PRICE | AMOUNT PAID | AMOUNT RECEIVED |
|------|-----------|------------------|----------|-------------|---------------|-------|-------------|-----------------|
| 11/03 | 2 | Sold | (2 ) | PUT  APPLE COMPUT NOV 075 **** EXP 11/18/2006 OPEN CONTRACT ABACUS | QAAW75 | .6000 | | 119.09 |
| 11/03 | 2 | Sold | (2 ) | PUT  APPLE COMPUT NOV 075 **** EXP 11/18/2006 OPEN CONTRACT ABACUS | QAAW75 | .6000 | | 119.09 |
| 11/03 | 2 | Sold | (2 ) | PUT  APPLE COMPUT NOV 075 **** EXP 11/18/2006 OPEN CONTRACT ABACUS | QAAW75 | .6000 | | 119.09 |
| 11/03 | 2 | Sold | (4 ) | PUT  APPLE COMPUT NOV 075 **** EXP 11/18/2006 OPEN CONTRACT ABACUS | QAAW75 | .6000 | | 238.19 |
| 11/03 | 2 | Sold | (30 ) | PUT  AEROFLEX INC NOV 010 **** EXP 11/18/2006 OPEN CONTRACT ABACUS | ARXWB | .2500 | | 736.47 |
| 11/03 | 2 | Sold | (30 ) | PUT  AEROFLEX INC NOV 010 **** EXP 11/18/2006 OPEN CONTRACT ABACUS | ARXWB | .2500 | | 736.47 |
| 11/03 | 2 | Sold | (270 ) | CALL ADVNCD MICRO APR 025 **** EXP 04/21/2007 OPEN CONTRACT ABACUS | AMDD25 | 1.3000 | | 34,977.42 |
| 11/03 | 2 | Bought | 270 | CALL ADVNCD MICRO NOV27.50**** EXP 11/18/2006 CLOSING CONTRACT ABACUS | AMDK27 | .0500 | 1,471.50 | |
| 11/03 | 2 | Bought | 4 | PUT  ADVNCD ENRGY JAN 015 CBOE EXP 01/20/2007 CLOSING CONTRACT ABACUS | OEQMC | 1.3000 | 521.80 | |
| 11/03 | 2 | Bought | 23 | PUT  ADVNCD ENRGY JAN 015 CBOE EXP 01/20/2007 CLOSING CONTRACT ABACUS | OEQMC | 1.3000 | 3,000.35 | |
| 11/03 | 2 | Bought | 25 | PUT  ADVNCD ENRGY JAN 015 CBOE EXP 01/20/2007 CLOSING CONTRACT ABACUS | OEQMC | 1.3000 | 3,261.25 | |
| 11/03 | 2 | Bought | 46 | PUT  ADVNCD ENRGY JAN 015 CBOE EXP 01/20/2007 CLOSING CONTRACT ABACUS | OEQMC | 1.3000 | 6,000.70 | |
| 11/03 | 2 | Bought | 50 | PUT  ADVNCD ENRGY JAN 015 CBOE EXP 01/20/2007 CLOSING CONTRACT ABACUS | OEQMC | 1.3000 | 6,522.50 | |
| 11/03 | 2 | Sold | (20 ) | CALL AMER PWR CNV NOV22.50**** EXP 11/18/2006 CLOSING CONTRACT ABACUS | PWQK22 | 7.6000 | | 15,190.53 |
| 11/03 | 2 | Sold | (20 ) | PUT  APACHE CORP  DEC 060 **** EXP 12/16/2006 OPEN CONTRACT ABACUS | APAX60 | 1.0000 | | 1,990.93 |
| 11/03 | 2 | Sold | (10 ) | PUT  AVANIR PHARM MAR 2.50CBOE EXP 03/17/2007 OPEN CONTRACT ABACUS | AVQOZ | .5500 | | 545.48 |



677 Washington Boulevard
Stamford CT 06901
(203) 719-3000

Account #
**450-60203 087**

Statement Period
**11-01-06 to 11-30-06**

PURCHASES & SALES        CONTINUED

| DATE | ACCT TYPE | TYPE OF ACTIVITY | QUANTITY | DESCRIPTION | SYMBOL/ CUSIP | PRICE | AMOUNT PAID | AMOUNT RECEIVED |
|---|---|---|---|---|---|---|---|---|
| 11/06 | 9 | Bought | 300 | ALCOA INC<br>A/E QYJAM40  3 ASSIGNED<br>AS OF 11/01/06 | AA | 40.0000 | 12,003.00 | |
| 11/06 | 2 | Sold | (15) | CALL AMER PWR CNV DEC 025 ****<br>EXP 12/16/2006<br>CLOSING CONTRACT<br>ABACUS | PWQL25 | 5.2000 | | 7,793.01 |
| 11/06 | 2 | Sold | (15) | CALL AMER PWR CNV DEC 025 ****<br>EXP 12/16/2006<br>CLOSING CONTRACT<br>ABACUS | PWQL25 | 5.2000 | | 7,793.01 |
| 11/06 | 2 | Sold | (15) | CALL AMER PWR CNV DEC 025 ****<br>EXP 12/16/2006<br>CLOSING CONTRACT<br>ABACUS | PWQL25 | 5.2000 | | 7,793.01 |
| 11/06 | 2 | Sold | (16) | CALL AMER PWR CNV DEC 025 ****<br>EXP 12/16/2006<br>CLOSING CONTRACT<br>ABACUS | PWQL25 | 5.2000 | | 8,312.54 |
| 11/06 | 2 | Sold | (16) | CALL AMER PWR CNV DEC 025 ****<br>EXP 12/16/2006<br>CLOSING CONTRACT<br>ABACUS | PWQL25 | 5.2000 | | 8,312.54 |
| 11/06 | 2 | Sold | (3) | CALL AMER PWR CNV DEC 025 ****<br>EXP 12/16/2006<br>CLOSING CONTRACT<br>ABACUS | PWQL25 | 5.2000 | | 1,558.60 |
| 11/06 | 2 | Sold | (10) | PUT  APOLLO GROUP JAN 040 ****<br>EXP 01/20/2007<br>OPEN CONTRACT<br>ABACUS | OAQM40 | 6.0000 | | 5,995.31 |
| 11/06 | 2 | Sold | (130) | CALL APPLE COMPUT JAN 050 ****<br>LONG TERM OPTIONS EXP 01/19/08<br>EXP 01/19/2008<br>OPEN CONTRACT<br>ABACUS | WAAA50 | 33.0000 | | 428,928.32 |
| 11/06 | 2 | Sold | (3) | PUT  APPLE COMPUT JAN 080 ****<br>LONG TERM OPTIONS EXP 01/19/08<br>EXP 01/19/2008<br>OPEN CONTRACT<br>ABACUS | WAAM80 | 11.2000 | | 3,358.54 |
| 11/06 | 2 | Sold | (78) | PUT  APPLE COMPUT JAN 080 ****<br>LONG TERM OPTIONS EXP 01/19/08<br>EXP 01/19/2008<br>OPEN CONTRACT<br>ABACUS | WAAM80 | 11.2000 | | 87,322.21 |
| 11/06 | 2 | Sold | (94) | PUT  APPLE COMPUT JAN 080 ****<br>LONG TERM OPTIONS EXP 01/19/08<br>EXP 01/19/2008<br>OPEN CONTRACT<br>ABACUS | WAAM80 | 11.2000 | | 105,234.46 |
| 11/06 | 2 | Bought | 10 | CALL ASPREVA PHAR APR 020 PBW<br>EXP 04/21/2007<br>OPEN CONTRACT<br>ABACUS | QOSDD | 2.0000 | 2,004.50 | |
| 11/06 | 2 | Bought | 10 | CALL ASPREVA PHAR APR 020 PBW<br>EXP 04/21/2007<br>OPEN CONTRACT<br>ABACUS | QOSDD | 2.0000 | 2,004.50 | |
| 11/06 | 2 | Bought | 10 | CALL ASPREVA PHAR APR 020 PBW<br>EXP 04/21/2007<br>OPEN CONTRACT<br>ABACUS | QOSDD | 2.0000 | 2,004.50 | |

2350553WH 0012848        12/01/06:05:12  01 012849        99 B



**UBS** **Investment** 677 Washington Boulevard
**Bank** Stamford CT 06901
(203) 719-3000.

Account #
**452-60203  087**

Statement Period
**04-01-08 to 04-30-08**

### YOUR ACCOUNT STATEMENT

**UBSL**
**A/C EXCHANGE TRADED DERIVATIVE**
**PO BOX 8098**
**ZURICH**
**SWITZERLAND**

**Reported in U.S. DOLLARS**

**Account Name**
UBSL
A/C EXCHANGE TRADED DERIVATIVE

#### MONEY BALANCE SUMMARY

|  | 04-30-08 | 03-31-08 |
|---|---|---|
| Net Cash | $630,215.10 | $(18,175.25) |

#### PORTFOLIO SUMMARY

|  | 04-30-08 |
|---|---|
| * Total Portfolio Value | $544,542,981.00 |
| Net Cash Balance | 630,215.10 |
| * Net Portfolio Value | 545,173,196.10 |
| * Net Value Last Period | 272,516,643.75 |

**\* Excludes Unpriced Securities.**

#### ACTIVITY SUMMARY

| CREDITS |  |
|---|---|
| Securities Sold | $77,985,212.63 |
| Other Credits | 17,767,289.73 |
| **Total Credits** | **$95,752,502.36** |
| DEBITS |  |
| Securities Purchased | $45,338,632.00 |
| Other Debits | 49,765,480.01 |
| **Total Debits** | **$95,104,112.01** |
| **Net Activity** | **$648,390.35** |

#### REALIZED INCOME & EXPENSE SUMMARY

|  | 04-30-08 | YEAR-TO-DATE |
|---|---|---|
| Dividends | $0.00 | $7,115.46 |
| Bond Interest | 0.00 | 148,270.73 |
| Margin Interest Paid | (292.56) | (1,150.54) |
| Credit Interest | 605.41 | 29,093.56 |
| Foreign Tax Withheld | 0.00 | (1,174.05) |

**Independent, third party research on certain companies covered by the firm's research is available to customers of UBS in the United States at no cost.**
**Customers can access this research at WWW.UBS.COM/INDEPENDENTRESEARCH or can call 1-877-208-5700 to request that a copy of this research be sent to them. An explanation of the ratings is available on the research provider's reports.**



UBS Securities LLC is a subsidiary of UBS AG and a member of SIPC, the New York Stock Exchange, and other principal exchanges.
UBS Investment Bank is a business group of UBS AG.

2350553WH 0051079          05/01/08:06:34  01 051080        99 B



**UBS** Investment Bank   677 Washington Boulevard
Stamford CT 06901
(203) 719-3000

Account #
**452-60203 087**

Statement Period
**04-01-08 to 04-30-08**

### PURCHASES & SALES    CONTINUED

| DATE | ACCT TYPE | TYPE OF ACTIVITY | QUANTITY | DESCRIPTION | SYMBOL/ CUSIP | PRICE | AMOUNT PAID | AMOUNT RECEIVED |
|------|-----------|------------------|----------|-------------|---------------|-------|-------------|-----------------|
| 04/30 | 2 | Sold | (39) | CALL CITIGROUP    MAY27.50**** EXP 05/17/2008 OPEN CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0BU25072500-1 | CE27 | .3700 | | 1,425.44 |
| 04/30 | 2 | Sold | (20) | CALL CITIGROUP    JUN27.50**** EXP 06/21/2008 OPEN CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0BU25056445-1 | CF27 | .9900 | | 1,970.98 |
| 04/30 | 2 | Sold | (10) | CALL CITIGROUP    JUN27.50**** EXP 06/21/2008 OPEN CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0BU25056444-1 | CF27 | 1.0000 | | 995.49 |
| 04/30 | 2 | Sold | (50) | CALL CITIGROUP    JUN27.50**** EXP 06/21/2008 OPEN CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0BU25056446-1 | CF27 | .9900 | | 4,927.47 |
| 04/30 | 2 | Sold | (50) | CALL COCA COLA CO AUG 065 **** EXP 08/16/2008 OPEN CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0BU25058175-1 | KOH65 | .4500 | | 2,227.48 |
| 04/30 | 2 | Sold | (5) | PUT  COLGATE PALM AUG 070 **** EXP 08/16/2008 OPEN CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0BU25090111-1 | CLT70 | 1.0500 | | 522.74 |
| 04/30 | 2 | Sold | (9) | PUT  COLGATE PALM AUG 070 **** EXP 08/16/2008 OPEN CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0BU25090135-1 | CLT70 | 1.0500 | | 940.94 |
| 04/30 | 2 | Sold | (14) | PUT  COLGATE PALM AUG 070 **** EXP 08/16/2008 OPEN CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0BU25090275-1 | CLT70 | 1.0500 | | 1,463.69 |
| 04/30 | 2 | Bought | 8 | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 OPEN CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0BU25050746-1 | DRSF65 | 1.7000 | 1,363.60 | |
| 04/30 | 2 | Bought | 10 | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 OPEN CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0BU25050745-1 | DRSF65 | 1.7000 | 1,704.50 | |
| 04/30 | 2 | Bought | 16 | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 OPEN CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0BU25050741-1 | DRSF65 | 1.7000 | 2,727.20 | |

SIPC

2350553WH 0051454B        05/01/08:06:34  01 051455        99 B



**UBS** Investment Bank 677 Washington Boulevard
Stamford CT 06901
(203) 719-3000

Account #
**452-60203 087**

Statement Period
**04-01-08 to 04-30-08**

PURCHASES & SALES    CONTINUED

| DATE | ACCT TYPE | TYPE OF ACTIVITY | QUANTITY | DESCRIPTION | SYMBOL/ CUSIP | PRICE | AMOUNT PAID | AMOUNT RECEIVED |
|------|-----------|-----------------|----------|-------------|---------------|-------|-------------|-----------------|
| 04/30 | 2 | Bought | 19 | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 OPEN CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0BU25050731-1 | DRSF65 | 1.7000 | 3,238.55 | |
| 04/30 | 2 | Bought | 25 | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 OPEN CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0BU25050735-1 | DRSF65 | 1.7000 | 4,261.25 | |
| 04/30 | 2 | Bought | 25 | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 OPEN CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0BU25050747-1 | DRSF65 | 1.7000 | 4,261.25 | |
| 04/30 | 2 | Bought | 25 | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 OPEN CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0BU25050752-1 | DRSF65 | 1.7000 | 4,261.25 | |
| 04/30 | 2 | Bought | 31 | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 OPEN CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0BU25050728-1 | DRSF65 | 1.7000 | 5,283.95 | |
| 04/30 | 2 | Bought | 41 | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 OPEN CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0BU25050734-1 | DRSF65 | 1.7000 | 6,988.45 | |
| 04/30 | 2 | Bought | 50 | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 OPEN CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0BU25050732-1 | DRSF65 | 1.7000 | 8,522.50 | |
| 04/30 | 2 | Bought | 50 | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 OPEN CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0BU25050733-1 | DRSF65 | 1.7000 | 8,522.50 | |
| 04/30 | 2 | Bought | 75 | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 OPEN CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0BU25050748-1 | DRSF65 | 1.7000 | 12,783.75 | |
| 04/30 | 2 | Bought | 75 | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 OPEN CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0BU25050760-1 | DRSF65 | 1.7000 | 12,783.75 | |
| 04/30 | 2 | Bought | 100 | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 OPEN CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0BU25050769-1 | DRSF65 | 1.7000 | 17,045.00 | |

**UBS Investment Bank**
677 Washington Boulevard
Stamford CT 06901
(203) 719-3000

Account #
**452-60203 087**

Statement Period
**05-01-08 to 05-31-08**

### YOUR ACCOUNT STATEMENT

Reported in U.S. DOLLARS

Account Name
UBSL
A/C EXCHANGE TRADED DERIVATIVE

UBSL
A/C EXCHANGE TRADED DERIVATIVE
PO BOX 8098
ZURICH
SWITZERLAND

#### MONEY BALANCE SUMMARY

|  | 05-31-08 | 04-30-08 |
|---|---|---|
| Net Cash | $622,544.65 | $630,215.10 |

#### PORTFOLIO SUMMARY

|  | 05-31-08 |
|---|---|
| * Total Portfolio Value | $347,371,065.50 |
| Net Cash Balance | 622,544.65 |
| * Net Portfolio Value | 347,993,610.15 |
| * Net Value Last Period | 545,173,196.10 |

**\* Excludes Unpriced Securities.**

#### ACTIVITY SUMMARY

| CREDITS | |
|---|---|
| Securities Sold | $83,810,725.20 |
| Other Credits | 28,927,752.26 |
| **Total Credits** | **$112,738,477.46** |
| DEBITS | |
| Securities Purchased | $63,801,337.00 |
| Other Debits | 48,944,810.91 |
| **Total Debits** | **$112,746,147.91** |
| **Net Activity** | **$(7,670.45)** |

#### REALIZED INCOME & EXPENSE SUMMARY

|  | 05-31-08 | YEAR-TO-DATE |
|---|---|---|
| Dividends | $0.00 | $7,115.46 |
| Bond Interest | 0.00 | 148,270.73 |
| Margin Interest Paid | 0.00 | (1,150.54) |
| Credit Interest | 783.71 | 29,877.27 |
| Foreign Tax Withheld | 0.00 | (1,174.05) |

Independent, third party research on certain companies covered by the firm's research is available to customers of UBS in the United States at no cost.
Customers can access this research at WWW.UBS.COM/INDEPENDENTRESEARCH or can call 1-877-208-5700 to request that a copy of this research be sent to them.  An explanation of the ratings is available on the research provider's reports.


UBS Securities LLC is a subsidiary of UBS AG and a member of SIPC, the New York Stock Exchange, and other principal exchanges.
UBS Investment Bank is a business group of UBS AG.

Page 1 of 1020

2350553WH 0025330        05/31/08:08:33  01 025331        99 B



**UBS Investment Bank**
677 Washington Boulevard
Stamford CT 06901
(203) 719-3000

Account #
**452-60203 087**

Statement Period
**05-01-08 to 05-31-08**

OPTIONS - LONG POSITIONS          CONTINUED

| QUANTITY | DESCRIPTION | SYMBOL/CUSIP | ACCT TYPE | PRICE | VALUE |
|---|---|---|---|---|---|
| 10 | CALL CREE INC    JAN 030 ****  LONG TERM OPTIONS EXP 01/16/10  EXP 01/16/2010 | YFAA30 | 2 | 4.5000 | 4,500.00 |
| 100 | PUT  CORNING INC  JAN 025 ****  LONG TERM OPTIONS EXP 01/17/09  EXP 01/17/2009 | VGCM25 | 2 | 1.7500 | 17,500.00 |
| 65 | PUT  CORNING INC  AUG22.50****  EXP 08/16/2008 | GLWT22 | 2 | 0.3000 | 1,950.00 |
| 50 | CALL COUNTRYWIDE  JAN 7.50****  LONG TERM OPTIONS EXP 01/16/10  EXP 01/16/2010 | YJDA7 | 2 | 0.6000 | 3,000.00 |
| 500 | PUT COUNTRYWIDE  JAN 2.50****  EXP 01/17/2009 | CFCM2 | 2 | 0.2100 | 10,500.00 |
| 32 | PUT  CUMMINS INC  JAN37.50****  LONG TERM OPTIONS EXP 01/17/09  EXP 01/17/2009 | VBEM37 | 2 | 0.7500 | 2,400.00 |
| 30 | CALL CYTEC INDS   JAN 050 ****  LONG TERM OPTIONS EXP 01/16/10  EXP 01/16/2010 | YDIA50 | 2 | 17.5000 | 52,500.00 |
| 2 | CALL CYPRESS SEMI JAN 035 ****  LONG TERM OPTIONS EXP 01/17/09  EXP 01/17/2009 | VSYA35 | 2 | 1.9500 | 390.00 |
| 20 | PUT  DIAMOND OFFS JUN 105 ****  EXP 06/21/2008 | DOR105 | 2 | 0.0200 | 40.00 |
| 550 | CALL DRS TECH    JUN 065 AMEX  EXP 06/21/2008 | DRSF65 | 2 | 13.7000 | 753,500.00 |
| 6 | PUT  DIAMOND TR  JUN 118 CBOE  EXP 06/21/2008 | DAWRN | 2 | 0.1900 | 114.00 |
| 20 | CALL DAIMLERCHRYS JAN 100 ****  LONG TERM OPTIONS EXP 01/16/10  EXP 01/16/2010 | WLGA100 | 2 | 2.0000 | 4,000.00 |
| 50 | CALL DENDREON COR JAN 005 AMEX WTKA5  LONG TERM OPTIONS EXP 01/16/10  EXP 01/16/2010 | | 2 | 3.0000 | 15,000.00 |
| 50 | CALL DENDREON COR JAN 7.50AMEX ORGA7  LONG TERM OPTIONS EXP 01/17/09  EXP 01/17/2009 | | 2 | 1.7600 | 8,800.00 |
| 12 | CALL DENDREON COR JAN 010 AMEX WTKA10  LONG TERM OPTIONS EXP 01/16/10  EXP 01/16/2010 | | 2 | 2.2500 | 2,700.00 |
| 18 | CALL DENDREON COR JAN17.50AMEXWTKA17  LONG TERM OPTIONS EXP 01/16/10  EXP 01/16/2010 | | 2 | 1.5600 | 2,808.00 |
| 30 | CALL DENDREON COR JAN 025 AMEX ORGA25  LONG TERM OPTIONS EXP 01/17/09  EXP 01/17/2009 | | 2 | 0.5100 | 1,530.00 |
| 1 | CALL DEVON ENERGY JAN 070 ****  EXP 01/17/2009 | DVNA70 | 2 | 48.6000 | 4,860.00 |
| 1 | CALL DEVON ENERGY JAN 080 ****  EXP 01/17/2009 | DVNA80 | 2 | 39.4000 | 3,940.00 |
| 1 | CALL DEVON ENERGY JAN 090 ****  LONG TERM OPTIONS EXP 01/16/10  EXP 01/16/2010 | YQA90 | 2 | 39.7000 | 3,970.00 |
| 100 | CALL DECODE GENE  JAN 005 ****  LONG TERM OPTIONS EXP 01/17/09  EXP 01/17/2009 | ZJIA5 | 2 | 0.1000 | 1,000.00 |
| 40 | CALL DELL INC    JAN 025 ****  LONG TERM OPTIONS EXP 01/17/09  EXP 01/17/2009 | VPZA25 | 2 | 1.5900 | 6,360.00 |
| 24 | PUT  DELL INC    JUN 021 ****  EXP 06/21/2008 | DLYR21 | 2 | 0.0900 | 216.00 |
| 10 | CALL DIRECTV GRP  JAN22.50****  LONG TERM OPTIONS EXP 01/17/09  EXP 01/17/2009 | VGLA22 | 2 | 6.3000 | 6,300.00 |


**SIPC**

2350553WH 0025337          05/31/08:08:33  01 025338     99 B



**UBS Investment Bank**
677 Washington Boulevard
Stamford CT 06901
(203) 719-3000

Account #
**452-60203 087**

Statement Period
**05-01-08 to 05-31-08**

## PURCHASES & SALES    CONTINUED

| DATE | ACCT TYPE | TYPE OF ACTIVITY | QUANTITY | DESCRIPTION | SYMBOL/ CUSIP | PRICE | AMOUNT PAID | AMOUNT RECEIVED |
|---|---|---|---|---|---|---|---|---|
| 05/06 | 2 | Sold | (10) | PUT CHESAPEAKE  JUN 050 ****<br>EXP 06/21/2008<br>OPEN CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0C025024419-1 | CHKR50 | 1.0500 | | 1,045.49 |
| 05/06 | 9 | Bought | 2,000 | CITIGROUP INC<br>A/E QCR32   20 ASSIGNED<br>AS OF 05/01/08 | C | 32.5000 | 65,020.00 | |
| 05/06 | 9 | Bought | 6,500 | CITIGROUP INC<br>A/E QCR45   65 ASSIGNED<br>AS OF 05/01/08 | C | 45.0000 | 292,565.00 | |
| 05/06 | 9 | Bought | 10,900 | CITIGROUP INC<br>A/E QCR47   109 ASSIGNED<br>AS OF 05/01/08 | C | 47.5000 | 517,859.00 | |
| 05/06 | 9 | Bought | 32,500 | CITIGROUP INC<br>A/E QVRNM45  325 ASSIGNED<br>AS OF 05/01/08 | C | 45.0000 | 1,462,825.00 | |
| 05/06 | 2 | Sold | (50) | CALL 5TH 3RD BANC JAN 030 ****<br>LONG TERM OPTIONS EXP 01/16/10<br>EXP 01/16/2010<br>CLOSING CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0C025016909-1 | YJFA30 | 1.8500 | | 9,227.44 |
| 05/06 | 2 | Sold | (12) | CALL COMPANHIA DE OCT 085 ****<br>EXP 10/18/2008<br>OPEN CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0C025023452-1 | ABVJQ | 5.5000 | | 6,594.56 |
| 05/06 | 2 | Sold | (1) | PUT COMPANHIA DE OCT 085 ****<br>EXP 10/18/2008<br>OPEN CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0C025024792-1 | ABVVQ | 11.5000 | | 1,149.54 |
| 05/06 | 2 | Bought | 12 | CALL CORN PRODUCT OCT 050 ****<br>EXP 10/18/2008<br>OPEN CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0C025025873-1 | CPOJ50 | 3.5000 | 4,205.40 | |
| 05/06 | 2 | Bought | 1 | CALL DRS TECH   JUN 070 AMEX<br>EXP 06/21/2008<br>OPEN CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0C025017147-1 | DRSF70 | 1.2000 | 120.45 | |
| 05/06 | 2 | Bought | 11 | CALL DRS TECH   JUN 070 AMEX<br>EXP 06/21/2008<br>OPEN CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0C025017144-1 | DRSF70 | 1.2000 | 1,324.95 | |
| 05/06 | 2 | Bought | 25 | CALL DRS TECH   JUN 070 AMEX<br>EXP 06/21/2008<br>OPEN CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0C025017146-1 | DRSF70 | 1.2000 | 3,011.25 | |

SIPC

2350553WH 0025450       05/31/08:08:33  01 025451      99 B



**UBS** Investment Bank    677 Washington Boulevard
Stamford CT 06901
(203) 719-3000

Account #
**452-60203 087**

Statement Period
**05-01-08 to 05-31-08**

PURCHASES & SALES    CONTINUED

| DATE | ACCT TYPE | TYPE OF ACTIVITY | QUANTITY | DESCRIPTION | SYMBOL/ CUSIP | PRICE | AMOUNT PAID | AMOUNT RECEIVED |
|------|-----------|------------------|----------|-------------|---------------|-------|-------------|-----------------|
| 05/06 | 2 | Bought | 37 | CALL DRS TECH    JUN 070 AMEX EXP 06/21/2008 OPEN CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0C025017150-1 | DRSF70 | 1.2000 | 4,456.65 | |
| 05/06 | 2 | Bought | 46 | CALL DRS TECH    JUN 070 AMEX EXP 06/21/2008 OPEN CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0C025017148-1 | DRSF70 | 1.2000 | 5,540.70 | |
| 05/06 | 2 | Bought | 50 | CALL DRS TECH    JUN 070 AMEX EXP 06/21/2008 OPEN CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0C025017149-1 | DRSF70 | 1.2000 | 6,022.50 | |
| 05/06 | 9 | Bought | 2,500 | DELL INC A/E QDLQQ22  25 ASSIGNED AS OF 05/01/08 | DELL | 22.5000 | 56,275.00 | |
| 05/06 | 2 | Sold | (1) | CALL GOOGLE INC   JUN 650 **** EXP 06/21/2008 OPEN CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0C025024418-1 | GOOF650 | 12.2000 | | 1,219.54 |
| 05/06 | 2 | Bought | 1 | CALL GOOGLE INC   SEP 600 **** EXP 09/20/2008 OPEN CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0C025016315-1 | GOOI600 | 56.5000 | 5,650.45 | |
| 05/06 | 2 | Sold | (30) | CALL GOLDMAN SACH JUL 210 **** EXP 07/19/2008 OPEN CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0C025025745-1 | GPYG210 | 7.9000 | | 23,686.36 |
| 05/06 | 2 | Sold | (10) | CALL FREEPORT    JAN 100 **** LONG TERM OPTIONS EXP 01/17/09 EXP 01/17/2009 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0C025036364-1 | OMTA100 | 27.0000 | | 26,995.34 |
| 05/06 | 2 | Bought | 10 | PUT FREEPORT    JAN 100 **** LONG TERM OPTIONS EXP 01/17/09 EXP 01/17/2009 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0C025025022-1 | OMTM100 | 12.0000 | 12,004.50 | |
| 05/06 | 2 | Sold | (2) | PUT GAMESTOP COR JUN 050 **** EXP 06/21/2008 OPEN CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0C025034984-1 | GMER50 | 2.4000 | | 479.09 |
| 05/06 | 2 | Sold | (3) | PUT GAMESTOP COR JUN 050 **** EXP 06/21/2008 OPEN CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0C025034982-1 | GMER50 | 2.4000 | | 718.64 |



SIPC

2350553WH 0025450B        05/31/08:08:33  01 025451        99 B



**UBS** Investment Bank    677 Washington Boulevard
Stamford CT 06901
(203) 719-3000

Account #
452-60203 087

Statement Period
05-01-08 to 05-31-08

PURCHASES & SALES        CONTINUED

| DATE | ACCT TYPE | TYPE OF ACTIVITY | QUANTITY | DESCRIPTION | SYMBOL/ CUSIP | PRICE | AMOUNT PAID | AMOUNT RECEIVED |
|---|---|---|---|---|---|---|---|---|
| 05/07 | 2 | Sold | (10 ) PUT | COSTCO WHOLE JUN67.50**** EXP 06/21/2008 OPEN CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0C1250C8023-1 | PRQR67 | 1.1500 | | 1,145.49 |
| 05/07 | 2 | Bought | 6 CALL | DRS TECH    JUN 070 AMEX EXP 06/21/2008 OPEN CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0C1250C9125-1 | DRSF70 | 1.2000 | 722.70 | |
| 05/07 | 2 | Bought | 164 CALL | DRS TECH    JUN 070 AMEX EXP 06/21/2008 OPEN CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0C1250C9300-1 | DRSF70 | 1.2000 | 19,753.80 | |
| 05/07 | 2 | Sold | (10 ) PUT | DELTA PETRO  MAY 030 CBOE EXP 05/17/2008 OPEN CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0C1250C9096-1 | QHRQF | 3.9000 | | 3,895.47 |
| 05/07 | 2 | Sold | (1 ) PUT | DIRECTV GRP  JUN22.50**** EXP 06/21/2008 OPEN CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0C1250C8094-1 | DTVR22 | .3000 | | 29.54 |
| 05/07 | 2 | Sold | (4 ) PUT | DIRECTV GRP  JUN22.50**** EXP 06/21/2008 OPEN CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0C1250C8222-1 | DTVR22 | .3000 | | 118.19 |
| 05/07 | 2 | Sold | (5 ) PUT | DIRECTV GRP  JUN22.50**** EXP 06/21/2008 OPEN CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0C1250C8240-1 | DTVR22 | .3000 | | 147.74 |
| 05/07 | 2 | Sold | (8 ) PUT | DIRECTV GRP  JUN22.50**** EXP 06/21/2008 OPEN CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0C1250C8160-1 | DTVR22 | .3000 | | 236.39 |
| 05/07 | 2 | Sold | (82 ) PUT | DIRECTV GRP  JUN22.50**** EXP 06/21/2008 OPEN CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0C1250F1445-1 | DTVR22 | .3000 | | 2,423.08 |
| 05/07 | 2 | Sold | (30 ) PUT | ELECTR ARTS  JUN 050 **** EXP 06/21/2008 OPEN CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0C1250C8114-1 | EZQR50 | 1.6000 | | 4,786.47 |
| 05/07 | 2 | Sold | (60 ) PUT | INTEL CORP   JUN 022 **** EXP 06/21/2008 OPEN CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0C1250C9793-1 | NQR22 | .4500 | | 2,672.98 |



**UBS Investment Bank**  677 Washington Boulevard
Stamford CT 06901
(203) 719-3000

Account #
**452-60203  087**

Statement Period
**05-01-08 to 05-31-08**

## PURCHASES & SALES    CONTINUED

| DATE | ACCT TYPE | TYPE OF ACTIVITY | QUANTITY DESCRIPTION | SYMBOL/ CUSIP | PRICE | AMOUNT PAID | AMOUNT RECEIVED |
|---|---|---|---|---|---|---|---|
| 05/08 | 2 | Sold | (167 ) CALL CIA VALE DO  JUN 045 CBOE<br>EXP 06/21/2008<br>OPEN CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0C2250N2636-1 | RFPFI | .9100 | | 15,121.76 |
| 05/08 | 2 | Sold | (280 ) PUT  EBAY INC     JAN 035 ****<br>LONG TERM OPTIONS EXP 01/17/09<br>EXP 01/17/2009<br>OPEN CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0C2250P4458-1 | OYIM35 | 5.8900 | | 164,793.07 |
| 05/08 | 2 | Sold | (10 ) PUT  COMPANHIA DE OCT 085 ****<br>EXP 10/18/2008<br>OPEN CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0C325003788-1 | ABVVQ | 11.5000 | | 11,495.43 |
| 05/08 | 2 | Sold | (10 ) CALL CONOCOPHILLI AUG 090 ****<br>EXP 08/16/2008<br>OPEN CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0C2250N3001-1 | COPH90 | 4.0500 | | 4,045.47 |
| 05/08 | 2 | Sold | (1 ) PUT  CONOCOPHILLI JUN 080 ****<br>EXP 06/21/2008<br>OPEN CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0C325007337-1 | COPR80 | .8500 | | 84.54 |
| 05/08 | 2 | Sold | (3 ) PUT  CONOCOPHILLI JUN 080 ****<br>EXP 06/21/2008<br>OPEN CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0C325007338-1 | COPR80 | .8500 | | 253.64 |
| 05/08 | 2 | Sold | (26 ) PUT  CONOCOPHILLI JUN 080 ****<br>EXP 06/21/2008<br>OPEN CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0C325007342-1 | COPR80 | .8500 | | 2,198.28 |
| 05/08 | 2 | Sold | (3 ) PUT  CONSTLLATION JUN 075 ****<br>EXP 06/21/2008<br>OPEN CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0C2250N5041-1 | CEGR75 | 1.5500 | | 463.64 |
| 05/08 | 2 | Sold | (50 ) CALL CORNING INC  AUG 030 ****<br>EXP 08/16/2008<br>OPEN CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0C2250P5847-1 | GLWH30 | .6000 | | 2,977.48 |
| 05/08 | 2 | Bought | 2  CALL DRS TECH    JUN 065 AMEX<br>EXP 06/21/2008<br>OPEN CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0C2250P6061-1 | DRSF65 | 3.4000 | 680.90 | |

**UBS** **Investment Bank**
677 Washington Boulevard
Stamford CT 06901
(203) 719-3000

Account #
**452-60203  087**

Statement Period
**05-01-08 to 05-31-08**

PURCHASES & SALES        CONTINUED

| DATE | ACCT TYPE | TYPE OF ACTIVITY | QUANTITY | DESCRIPTION | SYMBOL/ CUSIP | PRICE | AMOUNT PAID | AMOUNT RECEIVED |
|------|-----------|------------------|----------|-------------|---------------|-------|-------------|-----------------|
| 05/08 | 2 | Bought | 10 | CALL DRS TECH    JUN 065 AMEX<br>EXP 06/21/2008<br>OPEN CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0C2250P2922-1 | DRSF65 | 3.5000 | 3,504.50 | |
| 05/08 | 2 | Bought | 10 | CALL DRS TECH    JUN 065 AMEX<br>EXP 06/21/2008<br>OPEN CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0C2250P6060-1 | DRSF65 | 3.4000 | 3,404.50 | |
| 05/08 | 2 | Bought | 32 | CALL DRS TECH    JUN 065 AMEX<br>EXP 06/21/2008<br>OPEN CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0C2250P6058-1 | DRSF65 | 3.4000 | 10,894.40 | |
| 05/08 | 2 | Bought | 35 | CALL DRS TECH    JUN 065 AMEX<br>EXP 06/21/2008<br>OPEN CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0C2250P2919-1 | DRSF65 | 3.5000 | 12,265.75 | |
| 05/08 | 2 | Bought | 48 | CALL DRS TECH    JUN 065 AMEX<br>EXP 06/21/2008<br>OPEN CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0C2250P6059-1 | DRSF65 | 3.4000 | 16,341.60 | |
| 05/08 | 2 | Bought | 65 | CALL DRS TECH    JUN 065 AMEX<br>EXP 06/21/2008<br>OPEN CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0C2250P2920-1 | DRSF65 | 3.5000 | 22,779.25 | |
| 05/08 | 2 | Bought | 68 | CALL DRS TECH    JUN 065 AMEX<br>EXP 06/21/2008<br>OPEN CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0C2250P6057-1 | DRSF65 | 3.4000 | 23,150.60 | |
| 05/08 | 2 | Bought | 70 | CALL DRS TECH    JUN 065 AMEX<br>EXP 06/21/2008<br>OPEN CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0C2250P2926-1 | DRSF65 | 3.5000 | 24,531.50 | |
| 05/08 | 2 | Bought | 90 | CALL DRS TECH    JUN 065 AMEX<br>EXP 06/21/2008<br>OPEN CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0C2250P2923-1 | DRSF65 | 3.5000 | 31,540.50 | |
| 05/08 | 2 | Bought | 100 | CALL DRS TECH    JUN 065 AMEX<br>EXP 06/21/2008<br>OPEN CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0C2250P2921-1 | DRSF65 | 3.5000 | 35,045.00 | |
| 05/08 | 2 | Bought | 100 | CALL DRS TECH    JUN 065 AMEX<br>EXP 06/21/2008<br>OPEN CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0C2250P2924-1 | DRSF65 | 3.5000 | 35,045.00 | |

SIPC

2350553WH 0025479B        05/31/08:08:33  01 025480        99 B



UBS **Investment Bank** 677 Washington Boulevard
Stamford CT 06901
(203) 719-3000

Account #
**452-60203 087**

Statement Period
**05-01-08 to 05-31-08**

## PURCHASES & SALES    CONTINUED

| DATE | ACCT TYPE | TYPE OF ACTIVITY | QUANTITY | DESCRIPTION | SYMBOL/ CUSIP | PRICE | AMOUNT PAID | AMOUNT RECEIVED |
|------|-----------|------------------|----------|-------------|---------------|-------|-------------|-----------------|
| 05/08 | 2 | Bought | 100 | CALL DRS TECH    JUN 065 AMEX<br>EXP 06/21/2008<br>OPEN CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0C2250P2925-1 | DRSF65 | 3.5000 | 35,045.00 | |
| 05/08 | 2 | Bought | 100 | CALL DRS TECH    JUN 065 AMEX<br>EXP 06/21/2008<br>OPEN CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0C2250P6055-1 | DRSF65 | 3.4000 | 34,045.00 | |
| 05/08 | 2 | Bought | 100 | CALL DRS TECH    JUN 065 AMEX<br>EXP 06/21/2008<br>OPEN CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0C2250P6056-1 | DRSF65 | 3.4000 | 34,045.00 | |
| 05/08 | 2 | Sold | (4) | PUT DEERE & CO   SEP 085 ****<br>EXP 09/20/2008<br>OPEN CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0C2250P5109-1 | DEU85 | 7.3000 | | 2,918.18 |
| 05/08 | 2 | Bought | 15 | PUT GOLDMAN SACH MAY 180 ****<br>EXP 05/17/2008<br>CLOSING CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0C2250P1611-1 | GPYQ180 | .5200 | 786.75 | |
| 05/08 | 2 | Bought | 11 | CALL FREEPORT    MAY 110 ****<br>EXP 05/17/2008<br>CLOSING CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0C325012472-1 | FCXE110 | 6.6000 | 7,264.95 | |
| 05/08 | 2 | Bought | 9 | CALL FREEPORT    MAY 110 ****<br>EXP 05/17/2008<br>CLOSING CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0C325012473-1 | FCXE110 | 6.6000 | 5,944.05 | |
| 05/08 | 2 | Sold | (20) | CALL FREEPORT    AUG 120 ****<br>EXP 08/16/2008<br>OPEN CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0C325012477-1 | FCXH120 | 10.0000 | | 19,990.88 |
| 05/08 | 2 | Sold | (7) | PUT FREEPORT    JUN 110 ****<br>EXP 06/21/2008<br>OPEN CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0C2250P2202-1 | FCXR110 | 5.3000 | | 3,706.82 |
| 05/08 | 2 | Sold | (3) | PUT FREEPORT    JUN 110 ****<br>EXP 06/21/2008<br>OPEN CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0C2250P2204-1 | FCXR110 | 5.2000 | | 1,558.64 |
| 05/08 | 2 | Sold | (20) | PUT GAFISA SA   JUN 040 AMEX<br>EXP 06/21/2008<br>OPEN CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0C2250P2838-1 | GFAR40 | 2.0500 | | 4,090.97 |

2350553WH 0025480    05/31/08:08:33 01 025481    99 B



**UBS** Investment Bank     677 Washington Boulevard
Stamford CT 06901
(203) 719-3000

Account #
**452-60203  087**

Statement Period
**05-01-08 to 05-31-08**

PURCHASES & SALES        CONTINUED

| DATE | ACCT TYPE | TYPE OF ACTIVITY | QUANTITY | DESCRIPTION | SYMBOL/ CUSIP | PRICE | AMOUNT PAID | AMOUNT RECEIVED |
|------|-----------|------------------|----------|-------------|---------------|-------|-------------|-----------------|
| 05/09 | 2 | Sold | (31 ) | CALL CON-WAY INC  SEP 050 ****  EXP 09/20/2008  OPEN CONTRACT  AVG PRICE SHOWN-DETAILS ON REQ  ABACUS  UBS-REF:P0C425054740-1 | CNWI50 | 3.9000 | | 12,075.98 |
| 05/09 | 2 | Bought | 25 | PUT  CORNING INC  MAY 025 ****  EXP 05/17/2008  CLOSING CONTRACT  AVG PRICE SHOWN-DETAILS ON REQ  ABACUS  UBS-REF:P0C425076160-1 | GLWQ25 | .1500 | 386.25 | |
| 05/09 | 2 | Bought | 75 | PUT  CORNING INC  MAY 025 ****  EXP 05/17/2008  CLOSING CONTRACT  AVG PRICE SHOWN-DETAILS ON REQ  ABACUS  UBS-REF:P0C425076159-1 | GLWQ25 | .1300 | 1,008.75 | |
| 05/09 | 2 | Sold | (25 ) | PUT  CORNING INC  NOV 025 ****  EXP 11/22/2008  OPEN CONTRACT  AVG PRICE SHOWN-DETAILS ON REQ  ABACUS  UBS-REF:P0C425076184-1 | GLWW25 | 1.8000 | | 4,488.72 |
| 05/09 | 2 | Sold | (75 ) | PUT  CORNING INC  NOV 025 ****  EXP 11/22/2008  OPEN CONTRACT  AVG PRICE SHOWN-DETAILS ON REQ  ABACUS  UBS-REF:P0C425076183-1 | GLWW25 | 1.8500 | | 13,841.17 |
| 05/09 | 2 | Bought | 22 | PUT  CURNYSH EURO JUN 154 AMEX  EXP 06/21/2008  OPEN CONTRACT  AVG PRICE SHOWN-DETAILS ON REQ  ABACUS  UBS-REF:P0C425071363-1 | FXER154 | 2.3000 | 5,069.90 | |
| 05/09 | 2 | Sold | (5 ) | CALL DRS TECH    JUN 070 AMEX  EXP 06/21/2008  CLOSING CONTRACT  AVG PRICE SHOWN-DETAILS ON REQ  ABACUS  UBS-REF:P0C425093808-1 | DRSF70 | 5.8000 | | 2,897.73 |
| 05/09 | 2 | Sold | (5 ) | CALL DRS TECH    JUN 070 AMEX  EXP 06/21/2008  CLOSING CONTRACT  AVG PRICE SHOWN-DETAILS ON REQ  ABACUS  UBS-REF:P0C425093810-1 | DRSF70 | 5.8000 | | 2,897.73 |
| 05/09 | 2 | Sold | (5 ) | CALL DRS TECH    JUN 070 AMEX  EXP 06/21/2008  CLOSING CONTRACT  AVG PRICE SHOWN-DETAILS ON REQ  ABACUS  UBS-REF:P0C425093948-1 | DRSF70 | 5.8000 | | 2,897.73 |
| 05/09 | 2 | Sold | (5 ) | CALL DRS TECH    JUN 070 AMEX  EXP 06/21/2008  CLOSING CONTRACT  AVG PRICE SHOWN-DETAILS ON REQ  ABACUS  UBS-REF:P0C425093954-1 | DRSF70 | 5.8000 | | 2,897.73 |
| 05/09 | 2 | Sold | (5 ) | CALL DRS TECH    JUN 070 AMEX  EXP 06/21/2008  CLOSING CONTRACT  AVG PRICE SHOWN-DETAILS ON REQ  ABACUS  UBS-REF:P0C425093956-1 | DRSF70 | 5.8000 | | 2,897.73 |

2350553WH 0025494B        05/31/08:08:33  01 025495      99 B

 **Investment Bank**  677 Washington Boulevard
Stamford CT 06901
(203) 719-3000

Account #
**452-60203 087**

Statement Period
**05-01-08 to 05-31-08**

PURCHASES & SALES        CONTINUED

| DATE | ACCT TYPE | TYPE OF ACTIVITY | QUANTITY | DESCRIPTION | SYMBOL/ CUSIP | PRICE | AMOUNT PAID | AMOUNT RECEIVED |
|------|-----------|------------------|----------|-------------|---------------|-------|-------------|-----------------|
| 05/09 | 2 | Sold | (5) | CALL DRS TECH     JUN 070 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0C425093972-1 | DRSF70 | 5.8000 | | 2,897.73 |
| 05/09 | 2 | Sold | (6) | CALL DRS TECH     JUN 070 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0C425093842-1 | DRSF70 | 5.8000 | | 3,477.28 |
| 05/09 | 2 | Sold | (6) | CALL DRS TECH     JUN 070 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0C425093935-1 | DRSF70 | 5.8000 | | 3,477.28 |
| 05/09 | 2 | Sold | (10) | CALL DRS TECH     JUN 070 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0C425093832-1 | DRSF70 | 5.8000 | | 5,795.46 |
| 05/09 | 2 | Sold | (10) | CALL DRS TECH     JUN 070 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0C425093839-1 | DRSF70 | 5.8000 | | 5,795.46 |
| 05/09 | 2 | Sold | (10) | CALL DRS TECH     JUN 070 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0C425093871-1 | DRSF70 | 5.8000 | | 5,795.46 |
| 05/09 | 2 | Sold | (10) | CALL DRS TECH     JUN 070 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0C425093911-1 | DRSF70 | 5.8000 | | 5,795.46 |
| 05/09 | 2 | Sold | (10) | CALL DRS TECH     JUN 070 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0C425093961-1 | DRSF70 | 5.8000 | | 5,795.46 |
| 05/09 | 2 | Sold | (10) | CALL DRS TECH     JUN 070 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0C425093962-1 | DRSF70 | 5.8000 | | 5,795.46 |
| 05/09 | 2 | Sold | (10) | CALL DRS TECH     JUN 070 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0C425093971-1 | DRSF70 | 5.8000 | | 5,795.46 |
| 05/09 | 2 | Sold | (14) | CALL DRS TECH     JUN 070 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0C425093841-1 | DRSF70 | 5.8000 | | 8,113.65 |

2350553WH 0025495        05/31/08:08:33  01 025496        99 B



**UBS** **Investment Bank** 677 Washington Boulevard
Stamford CT 06901
(203) 719-3000

Account #
452-60203 087

Statement Period
05-01-08 to 05-31-08

PURCHASES & SALES       CONTINUED

| DATE | ACCT TYPE | TYPE OF ACTIVITY | QUANTITY | DESCRIPTION | SYMBOL/ CUSIP | PRICE | AMOUNT PAID | AMOUNT RECEIVED |
|------|-----------|------------------|----------|-------------|---------------|-------|-------------|-----------------|
| 05/09 | 2 | Sold | (14) | CALL DRS TECH    JUN 070 AMEX<br>EXP 06/21/2008<br>CLOSING CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0C425093925-1 | DRSF70 | 5.8000 | | 8,113.65 |
| 05/09 | 2 | Sold | (15) | CALL DRS TECH    JUN 070 AMEX<br>EXP 06/21/2008<br>CLOSING CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0C425093805-1 | DRSF70 | 5.8000 | | 8,693.20 |
| 05/09 | 2 | Sold | (15) | CALL DRS TECH    JUN 070 AMEX<br>EXP 06/21/2008<br>CLOSING CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0C425093818-1 | DRSF70 | 5.8000 | | 8,693.20 |
| 05/09 | 2 | Sold | (15) | CALL DRS TECH    JUN 070 AMEX<br>EXP 06/21/2008<br>CLOSING CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0C425093953-1 | DRSF70 | 5.8000 | | 8,693.20 |
| 05/09 | 2 | Sold | (15) | CALL DRS TECH    JUN 070 AMEX<br>EXP 06/21/2008<br>CLOSING CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0C425093973-1 | DRSF70 | 5.8000 | | 8,693.20 |
| 05/09 | 2 | Sold | (20) | CALL DRS TECH    JUN 070 AMEX<br>EXP 06/21/2008<br>CLOSING CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0C425093770-1 | DRSF70 | 5.8000 | | 11,590.93 |
| 05/09 | 2 | Sold | (20) | CALL DRS TECH    JUN 070 AMEX<br>EXP 06/21/2008<br>CLOSING CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0C425093820-1 | DRSF70 | 5.8000 | | 11,590.93 |
| 05/09 | 2 | Sold | (20) | CALL DRS TECH    JUN 070 AMEX<br>EXP 06/21/2008<br>CLOSING CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0C425093825-1 | DRSF70 | 5.8000 | | 11,590.93 |
| 05/09 | 2 | Sold | (20) | CALL DRS TECH    JUN 070 AMEX<br>EXP 06/21/2008<br>CLOSING CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0C425093855-1 | DRSF70 | 5.8000 | | 11,590.93 |
| 05/09 | 2 | Sold | (20) | CALL DRS TECH    JUN 070 AMEX<br>EXP 06/21/2008<br>CLOSING CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0C425093856-1 | DRSF70 | 5.8000 | | 11,590.93 |
| 05/09 | 2 | Sold | (20) | CALL DRS TECH    JUN 070 AMEX<br>EXP 06/21/2008<br>CLOSING CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0C425093945-1 | DRSF70 | 5.8000 | | 11,590.93 |



**UBS Investment Bank**
677 Washington Boulevard
Stamford CT 06901
(203) 719-3000

Account #
**452-60203 087**

Statement Period
**05-01-08 to 05-31-08**

PURCHASES & SALES     CONTINUED

| DATE | ACCT TYPE | TYPE OF ACTIVITY | QUANTITY | DESCRIPTION | SYMBOL/ CUSIP | PRICE | AMOUNT PAID | AMOUNT RECEIVED |
|------|------|------|------|------|------|------|------|------|
| 05/09 | 2 | Sold | (20) | CALL DRS TECH    JUN 070 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0C425093994-1 | DRSF70 | 5.8000 | | 11,590.93 |
| 05/09 | 2 | Sold | (6) | PUT DEERE & CO  MAY 085 **** EXP 05/17/2008 OPEN CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0C425070463-1 | DEQ85 | 2.5000 | | 1,497.29 |
| 05/09 | 2 | Sold | (17) | CALL DELL INC    AUG22.50**** EXP 08/16/2008 OPEN CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0C425075011-1 | DLQH22 | .3000 | | 502.34 |
| 05/09 | 2 | Sold | (183) | CALL DELL INC    AUG22.50**** EXP 08/16/2008 OPEN CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0C425075019-1 | DLQH22 | .3000 | | 5,407.61 |
| 05/09 | 2 | Sold | (30) | PUT EASTMAN KODK JUL 015 **** EXP 07/19/2008 OPEN CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0C425071336-1 | EKS15 | .5500 | | 1,636.49 |
| 05/09 | 2 | Bought | 100 | CALL ENCANA CORP JUL 055 **** EXP 07/19/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0C425095365-1 | ECAG55 | 31.0000 | 310,045.00 | |
| 05/09 | 2 | Sold | (100) | CALL ENERGY CONV  JUN 045 **** EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0C425070613-1 | EQIF45 | 3.6000 | | 35,954.79 |
| 05/09 | 2 | Sold | (16) | CALL INTEL CORP   JUN 024 **** EXP 06/21/2008 OPEN CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0C425052536-1 | NQF24 | .6100 | | 968.79 |
| 05/09 | 2 | Sold | (128) | CALL INTEL CORP   JUN 024 **** EXP 06/21/2008 OPEN CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0C425052537-1 | NQF24 | .6100 | | 7,750.35 |
| 05/09 | 2 | Sold | (5) | CALL INTEL CORP   JUN 024 **** EXP 06/21/2008 OPEN CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0C425052484-1 | NQF24 | .6200 | | 307.74 |
| 05/09 | 2 | Sold | (11) | CALL INTEL CORP   JUN 024 **** EXP 06/21/2008 OPEN CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0C425052479-1 | NQF24 | .6200 | | 677.04 |

SIPC

2350553WH 0025496          05/31/08:08:33  01 025497          99 B



UBS **Investment** 677 Washington Boulevard
**Bank** Stamford CT 06901
(203) 719-3000

Account #
**452-60203 087**

Statement Period
**05-01-08 to 05-31-08**

PURCHASES & SALES    CONTINUED

| DATE | ACCT TYPE | TYPE OF ACTIVITY | QUANTITY | DESCRIPTION | SYMBOL/ CUSIP | PRICE | AMOUNT PAID | AMOUNT RECEIVED |
|------|-----------|------------------|----------|-------------|---------------|-------|-------------|-----------------|
| 05/12 | 2 | Bought | 27 | CALL ELAN CP PLC JUN 030 ****<br>EXP 06/21/2008<br>OPEN CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0C5250D9899-1 | EDKF30 | 1.8500 | 5,007.15 | |
| 05/12 | 2 | Bought | 6 | CALL DRS TECH    JUN 070 AMEX<br>EXP 06/21/2008<br>OPEN CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0C5250F6177-1 | DRSF70 | 6.0000 | 3,602.70 | |
| 05/12 | 2 | Bought | 10 | CALL DRS TECH    JUN 070 AMEX<br>EXP 06/21/2008<br>OPEN CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0C5250F6175-1 | DRSF70 | 5.8000 | 5,804.50 | |
| 05/12 | 2 | Bought | 34 | CALL DRS TECH    JUN 070 AMEX<br>EXP 06/21/2008<br>OPEN CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0C5250F6176-1 | DRSF70 | 5.9000 | 20,075.30 | |
| 05/12 | 2 | Bought | 50 | CALL DRS TECH    JUN 070 AMEX<br>EXP 06/21/2008<br>OPEN CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0C5250F6174-1 | DRSF70 | 5.8000 | 29,022.50 | |
| 05/12 | 2 | Sold | (10 ) | PUT  D R HORTON  NOV12.50****<br>EXP 11/22/2008<br>OPEN CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0C5250D1250-1 | DHIWV | 1.6500 | | 1,645.49 |
| 05/12 | 2 | Sold | (32 ) | CALL DELL INC    AUG 021 ****<br>EXP 08/16/2008<br>OPEN CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0C5250D7281-1 | DLYH21 | .5800 | | 1,841.58 |
| 05/12 | 2 | Bought | 50 | PUT DELL INC    MAY 020 ****<br>EXP 05/17/2008<br>CLOSING CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0C5250F1054-1 | DLYQ20 | 1.0100 | 5,072.50 | |
| 05/12 | 2 | Sold | (50 ) | PUT  DELL INC    JAN17.50****<br>LONG TERM OPTIONS EXP 01/17/09<br>EXP 01/17/2009<br>OPEN CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0C5250F1051-1 | VPZM17 | 1.3600 | | 6,777.46 |
| 05/12 | 9 | Bought | 1,000 | E TRADE FINANCIAL CORPORATION<br>A/E QEUSV9  10 ASSIGNED<br>AS OF 05/07/08 | ETFC | 9.0000 | 9,010.00 | |
| 05/12 | 2 | Bought | 17 | PUT  FOREST LABS  MAY 040 ****<br>EXP 05/17/2008<br>CLOSING CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0C5250F0769-1 | FHAQ40 | 6.1800 | 10,513.65 | |

SIPC

2350553WH 0025504        05/31/08:08:33  01 025505        99 B



| | | 677 Washington Boulevard |
| | | Stamford CT 06901 |
| | | (203) 719-3000 |

Account #
**452-60203  087**

Statement Period
**05-01-08 to 05-31-08**

### PURCHASES & SALES        CONTINUED

| DATE | ACCT TYPE | TYPE OF ACTIVITY | QUANTITY | DESCRIPTION | SYMBOL/ CUSIP | PRICE | AMOUNT PAID | AMOUNT RECEIVED |
|---|---|---|---|---|---|---|---|---|
| 05/13 | 2 | Sold | (10) | CALL ALCOA INC    JUL 040 ****<br>EXP 07/19/2008<br>OPEN CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0C6250M4331-1 | AAG40 | 3.6000 | | 3,595.47 |
| 05/13 | 2 | Sold | (2) | CALL ALCOA INC    JUL47.50****<br>EXP 07/19/2008<br>OPEN CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0C6250N4182-1 | AAG47 | 1.5000 | | 299.09 |
| 05/13 | 2 | Sold | (10) | CALL ALCOA INC    JUL47.50****<br>EXP 07/19/2008<br>OPEN CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0C6250N4389-1 | AAG47 | 1.5000 | | 1,495.49 |
| 05/13 | 2 | Sold | (39) | PUT AMER INTL GP JUN 035 ****<br>EXP 06/21/2008<br>OPEN CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0C6250N3148-1 | AIGR35 | 1.0400 | | 4,038.42 |
| 05/13 | 2 | Sold | (1) | PUT AMER INTL GP JUN 035 ****<br>EXP 06/21/2008<br>OPEN CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0C6250N3147-1 | AIGR35 | 1.0400 | | 103.54 |
| 05/13 | 9 | Bought | 500 | ANWORTH MORTGAGE ASSET CORP.<br>A/E QANHS10  5 ASSIGNED<br>AS OF 05/08/08 | ANH | 10.0000 | 5,005.00 | |
| 05/13 | 2 | Bought | 10 | CALL APPLE INC    MAY 180 ****<br>EXP 05/17/2008<br>CLOSING CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0C6250J7627-1 | APVE180 | 5.9500 | 5,954.50 | |
| 05/13 | 2 | Bought | 80 | CALL CBOE VOLTLY JUL 025 CBOE<br>EXP 07/16/2008<br>OPEN CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0C6250N6995-1 | VIXGE | 1.3500 | 10,836.00 | |
| 05/13 | 2 | Sold | (40) | PUT CITIGROUP    MAY 025 ****<br>EXP 05/17/2008<br>CLOSING CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0C6250N3145-1 | CQ25 | 1.6500 | | 6,581.96 |
| 05/13 | 2 | Sold | (10) | PUT CLEAR CHANNE JUL 025 ****<br>EXP 07/19/2008<br>OPEN CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0C6250M8894-1 | CCUS25 | .4500 | | 445.49 |
| 05/13 | 2 | Sold | (11) | CALL DRS TECH    JUN 065 AMEX<br>EXP 06/21/2008<br>CLOSING CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0C6250J3281-1 | DRSF65 | 12.3000 | | 13,524.97 |



**UBS Investment Bank**  677 Washington Boulevard
Stamford CT 06901
(203) 719-3000

Account #
**452-60203 087**

Statement Period
**05-01-08 to 05-31-08**

PURCHASES & SALES        CONTINUED

| DATE | ACCT TYPE | TYPE OF ACTIVITY | QUANTITY | DESCRIPTION | SYMBOL/ CUSIP | PRICE | AMOUNT PAID | AMOUNT RECEIVED |
|------|-----------|------------------|----------|-------------|---------------|-------|-------------|-----------------|
| 05/13 | 2 | Sold | (11 ) | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0C6250J3285-1 | DRSF65 | 12.2000 | | 13,414.97 |
| 05/13 | 2 | Sold | (31 ) | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0C6250J3382-1 | DRSF65 | 12.4000 | | 38,425.83 |
| 05/13 | 2 | Sold | (10 ) | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0C6250J3770-1 | DRSF65 | 12.0000 | | 11,995.43 |
| 05/13 | 2 | Sold | (10 ) | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0C6250J3780-1 | DRSF65 | 12.0000 | | 11,995.43 |
| 05/13 | 2 | Sold | (10 ) | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0C6250J3781-1 | DRSF65 | 12.0000 | | 11,995.43 |
| 05/13 | 2 | Sold | (10 ) | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0C6250J3782-1 | DRSF65 | 11.9000 | | 11,895.43 |
| 05/13 | 2 | Sold | (21 ) | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0C6250J3784-1 | DRSF65 | 12.0000 | | 25,190.40 |
| 05/13 | 2 | Sold | (25 ) | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0C6250J3783-1 | DRSF65 | 12.1000 | | 30,238.58 |
| 05/13 | 2 | Sold | (100 ) | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0C6250J3767-1 | DRSF65 | 12.0000 | | 119,954.32 |
| 05/13 | 2 | Sold | (210 ) | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0C6250J3766-1 | DRSF65 | 12.1000 | | 254,004.07 |
| 05/13 | 2 | Sold | (1 ) | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0C6250J3381-1 | DRSF65 | 12.4000 | | 1,239.54 |

2350553WH 0025509        05/31/08:08:33  01 025510        99 B



**UBS** Investment Bank  677 Washington Boulevard
Stamford CT 06901
(203) 719-3000

Account #
**452-60203  087**

Statement Period
**05-01-08 to 05-31-08**

PURCHASES & SALES          CONTINUED

| DATE | ACCT TYPE | TYPE OF ACTIVITY | QUANTITY | DESCRIPTION | SYMBOL/ CUSIP | PRICE | AMOUNT PAID | AMOUNT RECEIVED |
|------|-----------|------------------|----------|-------------|---------------|-------|-------------|-----------------|
| 05/13 | 2 | Sold | (4) | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0C6250J3383-1 | DRSF65 | 12.4000 | | 4,958.17 |
| 05/13 | 2 | Sold | (5) | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0C6250J3272-1 | DRSF65 | 12.5000 | | 6,247.71 |
| 05/13 | 2 | Sold | (5) | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0C6250J3278-1 | DRSF65 | 12.4000 | | 6,197.71 |
| 05/13 | 2 | Sold | (5) | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0C6250J3403-1 | DRSF65 | 12.3000 | | 6,147.71 |
| 05/13 | 2 | Sold | (5) | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0C6250J3409-1 | DRSF65 | 12.2000 | | 6,097.71 |
| 05/13 | 2 | Sold | (7) | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0C6250J3377-1 | DRSF65 | 12.4000 | | 8,676.80 |
| 05/13 | 2 | Sold | (9) | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0C6250J3277-1 | DRSF65 | 12.4000 | | 11,155.88 |
| 05/13 | 2 | Sold | (10) | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0C6250J3380-1 | DRSF65 | 12.4000 | | 12,395.43 |
| 05/13 | 2 | Sold | (10) | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0C6250J3384-1 | DRSF65 | 12.4000 | | 12,395.43 |
| 05/13 | 2 | Sold | (10) | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0C6250J3394-1 | DRSF65 | 12.4000 | | 12,395.43 |
| 05/13 | 2 | Sold | (10) | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0C6250J3400-1 | DRSF65 | 12.3000 | | 12,295.43 |

SIPC

2350553WH 0025509B          05/31/08:08:33  01 025510          99 B



UBS **Investment** 677 Washington Boulevard
**Bank** Stamford CT 06901
(203) 719-3000

Account #
**452-60203  087**

Statement Period
**05-01-08 to 05-31-08**

PURCHASES & SALES        CONTINUED

| DATE | ACCT TYPE | TYPE OF ACTIVITY | QUANTITY | DESCRIPTION | SYMBOL/ CUSIP | PRICE | AMOUNT PAID | AMOUNT RECEIVED |
|------|-----------|------------------|----------|-------------|---------------|-------|-------------|-----------------|
| 05/13 | 2 | Sold | (10) | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0C6250J3404-1 | DRSF65 | 12.3000 | | 12,295.43 |
| 05/13 | 2 | Sold | (10) | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0C6250J3405-1 | DRSF65 | 12.2000 | | 12,195.43 |
| 05/13 | 2 | Sold | (10) | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0C6250J3410-1 | DRSF65 | 12.2000 | | 12,195.43 |
| 05/13 | 2 | Sold | (10) | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0C6250J3412-1 | DRSF65 | 12.1000 | | 12,095.43 |
| 05/13 | 2 | Sold | (10) | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0C6250J3415-1 | DRSF65 | 12.1000 | | 12,095.43 |
| 05/13 | 2 | Sold | (10) | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0C6250J3420-1 | DRSF65 | 12.1000 | | 12,095.43 |
| 05/13 | 2 | Sold | (10) | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0C6250J3494-1 | DRSF65 | 12.3000 | | 12,295.43 |
| 05/13 | 2 | Sold | (10) | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0C6250J3498-1 | DRSF65 | 12.2000 | | 12,195.43 |
| 05/13 | 2 | Sold | (10) | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0C6250J3499-1 | DRSF65 | 12.2000 | | 12,195.43 |
| 05/13 | 2 | Sold | (10) | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0C6250J3768-1 | DRSF65 | 12.1000 | | 12,095.43 |
| 05/13 | 2 | Sold | (10) | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0C6250J3769-1 | DRSF65 | 12.1000 | | 12,095.43 |

2350553WH 0025510        05/31/08:08:33  01 025511        99 B



**UBS Investment Bank**
677 Washington Boulevard
Stamford CT 06901
(203) 719-3000

Account #
452-60203 087

Statement Period
05-01-08 to 05-31-08

PURCHASES & SALES    CONTINUED

| DATE | ACCT TYPE | TYPE OF ACTIVITY | QUANTITY | DESCRIPTION | SYMBOL/ CUSIP | PRICE | AMOUNT PAID | AMOUNT RECEIVED |
|------|-----------|------------------|----------|-------------|---------------|-------|-------------|-----------------|
| 05/13 | 2 | Sold | (11) | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0C6250J3273-1 | DRSF65 | 12.4000 | | 13,634.97 |
| 05/13 | 2 | Sold | (19) | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0C6250J3408-1 | DRSF65 | 12.2000 | | 23,171.32 |
| 05/13 | 2 | Sold | (20) | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0C6250J3279-1 | DRSF65 | 12.3000 | | 24,590.86 |
| 05/13 | 2 | Sold | (20) | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0C6250J3280-1 | DRSF65 | 12.3000 | | 24,590.86 |
| 05/13 | 2 | Sold | (20) | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0C6250J3411-1 | DRSF65 | 12.1000 | | 24,190.86 |
| 05/13 | 2 | Sold | (100) | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0C6250J3402-1 | DRSF65 | 12.3000 | | 122,954.31 |
| 05/13 | 2 | Sold | (100) | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0C6250J3491-1 | DRSF65 | 12.3000 | | 122,954.31 |
| 05/13 | 9 | Bought | 300 | DELTA PETROLEUM CORP NEW A/E QQHRQF  3 ASSIGNED AS OF 05/08/08 | DPTR | 30.0000 | 9,003.00 | |
| 05/13 | 2 | Bought | 7 | PUT ISHARES BRAZ JUN 070 CBOE EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0C6250M8474-1 | EWZRN | .1500 | 108.15 | |
| 05/13 | 2 | Sold | (7) | PUT ISHARES BRAZ DEC 070 CBOE EXP 12/20/2008 OPEN CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0C6250M8515-1 | EWZXN | 2.3500 | | 1,641.84 |
| 05/13 | 2 | Sold | (30) | PUT HEWLETT PACK JAN 040 **** LONG TERM OPTIONS EXP 01/16/10 EXP 01/16/2010 OPEN CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0C6250N1863-1 | WPWM40 | 3.7000 | | 11,086.43 |



**UBS Investment Bank**
677 Washington Boulevard
Stamford CT 06901
(203) 719-3000

Account #
**452-60203  087**

Statement Period
**05-01-08 to 05-31-08**

PURCHASES & SALES        CONTINUED

| DATE | ACCT TYPE | TYPE OF ACTIVITY | QUANTITY | DESCRIPTION | SYMBOL/ CUSIP | PRICE | AMOUNT PAID | AMOUNT RECEIVED |
|------|-----------|------------------|----------|-------------|---------------|-------|-------------|-----------------|
| 05/15 | 2 | Sold | (200) | CALL CLOROX CO    JUL 055 ****<br>EXP 07/19/2008<br>CLOSING CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0C9250H9813-1 | CLXG55 | 3.5000 | | 69,909.60 |
| 05/15 | 2 | Sold | (216) | CALL CLOROX CO    JUL 055 ****<br>EXP 07/19/2008<br>CLOSING CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0C9250H9798-1 | CLXG55 | 3.5000 | | 75,502.37 |
| 05/15 | 2 | Sold | (335) | CALL CLOROX CO    JUL 055 ****<br>EXP 07/19/2008<br>CLOSING CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0C9250H9800-1 | CLXG55 | 3.5000 | | 117,098.59 |
| 05/15 | 2 | Sold | (16) | CALL CIA VALE DO    JAN 020 ****<br>LONG TERM OPTIONS EXP 01/17/09<br>ADJ 2 FOR 1 STOCK SPLIT<br>EXP 01/17/2009<br>CLOSING CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS | VOHA20 | 21.7000 | | 34,712.60 |
| 05/15 | 2 | Sold | (64) | CALL CIA VALE DO    JAN 020 ****<br>LONG TERM OPTIONS EXP 01/17/09<br>ADJ 2 FOR 1 STOCK SPLIT<br>EXP 01/17/2009<br>CLOSING CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS | VOHA20 | 21.7000 | | 138,850.42 |
| 05/15 | 2 | Sold | (10) | CALL DRS TECH    JUN 070 AMEX<br>EXP 06/21/2008<br>CLOSING CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0C9250F6224-1 | DRSF70 | 8.7000 | | 8,695.45 |
| 05/15 | 2 | Sold | (10) | CALL DRS TECH    JUN 070 AMEX<br>EXP 06/21/2008<br>CLOSING CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0C9250F6225-1 | DRSF70 | 8.7000 | | 8,695.45 |
| 05/15 | 2 | Sold | (80) | CALL DRS TECH    JUN 070 AMEX<br>EXP 06/21/2008<br>CLOSING CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0C9250F6226-1 | DRSF70 | 8.6000 | | 68,763.61 |
| 05/15 | 2 | Sold | (40) | PUT  D R HORTON  AUG12.50****<br>EXP 08/16/2008<br>OPEN CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0C9250D3011-1 | DHITV | .8500 | | 3,381.98 |
| 05/15 | 2 | Sold | (3) | PUT  DEERE & CO    JAN 060 ****<br>LONG TERM OPTIONS EXP 01/16/10<br>ADJ 2 FOR 1 STOCK SPLIT<br>EXP 01/16/2010<br>OPEN CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS | WERM60 | 5.3000 | | 1,588.64 |

2350553WH 0025529        05/31/08:08:33  01 025530        99 B

 **UBS** **Investment Bank** 677 Washington Boulevard
Stamford CT 06901
(203) 719-3000

Account #
**452-60203 087**

Statement Period
**06-01-08 to 06-30-08**

**YOUR ACCOUNT STATEMENT**

**UBSL**
**A/C EXCHANGE TRADED DERIVATIVE**
**PO BOX 8098**
**ZURICH**
**SWITZERLAND**

**Reported in U.S. DOLLARS**

**Account Name**
UBSL
A/C EXCHANGE TRADED DERIVATIVE

**MONEY BALANCE SUMMARY**

|  | 06-30-08 | 05-31-08 |
|---|---|---|
| Net Cash | $(142,180.04) | $622,544.65 |

**PORTFOLIO SUMMARY**

|  | 06-30-08 |
|---|---|
| * Total Portfolio Value | $276,560,651.49 |
| Net Cash Balance | (142,180.04) |
| * Net Portfolio Value | 276,418,471.45 |
| * Net Value Last Period | 347,993,610.15 |

**\* Excludes Unpriced Securities.**

**ACTIVITY SUMMARY**

| CREDITS | |
|---|---|
| Securities Sold | $59,105,370.46 |
| Other Credits | 85,611,832.01 |
| **Total Credits** | **$144,717,202.47** |

| DEBITS | |
|---|---|
| Securities Purchased | $99,440,883.51 |
| Other Debits | 46,041,043.65 |
| **Total Debits** | **$145,481,927.16** |

| **Net Activity** | **$(764,724.69)** |
|---|---|

**REALIZED INCOME & EXPENSE SUMMARY**

|  | 06-30-08 | YEAR-TO-DATE |
|---|---|---|
| Dividends | $0.00 | $7,115.46 |
| Bond Interest | 0.00 | 148,270.73 |
| Margin Interest Paid | 0.00 | (1,150.54) |
| Credit Interest | 1,086.20 | 30,963.47 |
| Foreign Tax Withheld | 0.00 | (1,174.05) |

**Independent, third party research on certain companies covered by the firm's research is available to customers of UBS in the United States at no cost.**
**Customers can access this research at** WWW.UBS.COM/INDEPENDENTRESEARCH **or can call 1-877-208-5700 to request that a copy of this research be sent to them. An explanation of the ratings is available on the research provider's reports.**



UBS Securities LLC is a subsidiary of UBS AG and a member of SIPC, the New York Stock Exchange, and other principal exchanges.
UBS Investment Bank is a business group of UBS AG.

2350553WH 0038782        07/01/08:06:46  01 038783      99 B



**UBS Investment Bank**
677 Washington Boulevard
Stamford CT 06901
(203) 719-3000

Account #
**452-60203  087**

Statement Period
**06-01-08 to 06-30-08**

PURCHASES & SALES        CONTINUED

| DATE | ACCT TYPE | TYPE OF ACTIVITY | QUANTITY DESCRIPTION | SYMBOL/ CUSIP | PRICE | AMOUNT PAID | AMOUNT RECEIVED |
|------|-----------|------------------|---------------------|---------------|-------|-------------|-----------------|
| 06/23 | 2 | Sold | (5) CALL CON-WAY INC  DEC 055 ****<br>EXP 12/20/2008<br>OPEN CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0DA250C4440-1 | CNWL55 | 4.0000 | | 1,997.73 |
| 06/23 | 2 | Sold | (1 ) CALL DRS TECH    JUN 065 AMEX<br>EXP 06/21/2008<br>CLOSING CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0DA250H2042-1 | DRSF65 | 14.0000 | | 1,399.54 |
| 06/23 | 2 | Sold | (1 ) CALL DRS TECH    JUN 065 AMEX<br>EXP 06/21/2008<br>CLOSING CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0DA250H2045-1 | DRSF65 | 14.0000 | | 1,399.54 |
| 06/23 | 2 | Sold | (1 ) CALL DRS TECH    JUN 065 AMEX<br>EXP 06/21/2008<br>CLOSING CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0DA250H2049-1 | DRSF65 | 14.0000 | | 1,399.54 |
| 06/23 | 2 | Sold | (1 ) CALL DRS TECH    JUN 065 AMEX<br>EXP 06/21/2008<br>CLOSING CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0DA250H2050-1 | DRSF65 | 14.0000 | | 1,399.54 |
| 06/23 | 2 | Sold | (1 ) CALL DRS TECH    JUN 065 AMEX<br>EXP 06/21/2008<br>CLOSING CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0DA250H2053-1 | DRSF65 | 14.0000 | | 1,399.54 |
| 06/23 | 2 | Sold | (1 ) CALL DRS TECH    JUN 065 AMEX<br>EXP 06/21/2008<br>CLOSING CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0DA250H2055-1 | DRSF65 | 14.0000 | | 1,399.54 |
| 06/23 | 2 | Sold | (1 ) CALL DRS TECH    JUN 065 AMEX<br>EXP 06/21/2008<br>CLOSING CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0DA250H2060-1 | DRSF65 | 13.9000 | | 1,389.54 |
| 06/23 | 2 | Sold | (1 ) CALL DRS TECH    JUN 065 AMEX<br>EXP 06/21/2008<br>CLOSING CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0DA250H2084-1 | DRSF65 | 14.0000 | | 1,399.54 |
| 06/23 | 2 | Sold | (1 ) CALL DRS TECH    JUN 065 AMEX<br>EXP 06/21/2008<br>CLOSING CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0DA250H2086-1 | DRSF65 | 14.0000 | | 1,399.54 |
| 06/23 | 2 | Sold | (1 ) CALL DRS TECH    JUN 065 AMEX<br>EXP 06/21/2008<br>CLOSING CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0DA250H2094-1 | DRSF65 | 14.0000 | | 1,399.54 |



UBS **Investment** 677 Washington Boulevard
**Bank** Stamford CT 06901
(203) 719-3000

Account #
**452-60203  087**

Statement Period
**06-01-08 to 06-30-08**

PURCHASES & SALES        CONTINUED

| DATE | ACCT TYPE | TYPE OF ACTIVITY | QUANTITY | DESCRIPTION | SYMBOL/ CUSIP | PRICE | AMOUNT PAID | AMOUNT RECEIVED |
|---|---|---|---|---|---|---|---|---|
| 06/23 | 2 | Sold | (1) | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0DA250H2098-1 | DRSF65 | 13.8000 | | 1,379.54 |
| 06/23 | 2 | Sold | (1) | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0DA250H2101-1 | DRSF65 | 13.9000 | | 1,389.54 |
| 06/23 | 2 | Sold | (1) | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0DA250H2115-1 | DRSF65 | 13.9000 | | 1,389.54 |
| 06/23 | 2 | Sold | (1) | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0DA250H2116-1 | DRSF65 | 13.9000 | | 1,389.54 |
| 06/23 | 2 | Sold | (1) | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0DA250H2117-1 | DRSF65 | 13.9000 | | 1,389.54 |
| 06/23 | 2 | Sold | (1) | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0DA250H2118-1 | DRSF65 | 13.9000 | | 1,389.54 |
| 06/23 | 2 | Sold | (1) | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0DA250H2123-1 | DRSF65 | 13.9000 | | 1,389.54 |
| 06/23 | 2 | Sold | (2) | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0DA250H2031-1 | DRSF65 | 13.7000 | | 2,739.08 |
| 06/23 | 2 | Sold | (2) | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0DA250H2032-1 | DRSF65 | 13.7000 | | 2,739.08 |
| 06/23 | 2 | Sold | (2) | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0DA250H2037-1 | DRSF65 | 14.0000 | | 2,799.08 |
| 06/23 | 2 | Sold | (2) | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0DA250H2051-1 | DRSF65 | 14.0000 | | 2,799.08 |

SIPC

2350553WH 0039071        07/01/08:06:46  01 039072        99 B



**UBS Investment Bank**
677 Washington Boulevard
Stamford CT 06901
(203) 719-3000

Account #
452-60203 087

Statement Period
06-01-08 to 06-30-08

## PURCHASES & SALES          CONTINUED

| DATE | ACCT TYPE | TYPE OF ACTIVITY | QUANTITY | DESCRIPTION | SYMBOL/ CUSIP | PRICE | AMOUNT PAID | AMOUNT RECEIVED |
|------|-----------|------------------|----------|-------------|---------------|-------|-------------|-----------------|
| 06/23 | 2 | Sold | (2) | CALL DRS TECH    JUN 065 AMEX<br>EXP 06/21/2008<br>CLOSING CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0DA250H2067-1 | DRSF65 | 14.0000 | | 2,799.08 |
| 06/23 | 2 | Sold | (2) | CALL DRS TECH    JUN 065 AMEX<br>EXP 06/21/2008<br>CLOSING CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0DA250H2068-1 | DRSF65 | 14.0000 | | 2,799.08 |
| 06/23 | 2 | Sold | (2) | CALL DRS TECH    JUN 065 AMEX<br>EXP 06/21/2008<br>CLOSING CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0DA250H2079-1 | DRSF65 | 14.0000 | | 2,799.08 |
| 06/23 | 2 | Sold | (2) | CALL DRS TECH    JUN 065 AMEX<br>EXP 06/21/2008<br>CLOSING CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0DA250H2097-1 | DRSF65 | 13.8000 | | 2,759.08 |
| 06/23 | 2 | Sold | (2) | CALL DRS TECH    JUN 065 AMEX<br>EXP 06/21/2008<br>CLOSING CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0DA250H2119-1 | DRSF65 | 13.9000 | | 2,779.08 |
| 06/23 | 2 | Sold | (3) | CALL DRS TECH    JUN 065 AMEX<br>EXP 06/21/2008<br>CLOSING CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0DA250H2033-1 | DRSF65 | 13.7000 | | 4,108.62 |
| 06/23 | 2 | Sold | (3) | CALL DRS TECH    JUN 065 AMEX<br>EXP 06/21/2008<br>CLOSING CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0DA250H2035-1 | DRSF65 | 14.0000 | | 4,198.62 |
| 06/23 | 2 | Sold | (3) | CALL DRS TECH    JUN 065 AMEX<br>EXP 06/21/2008<br>CLOSING CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0DA250H2043-1 | DRSF65 | 14.0000 | | 4,198.62 |
| 06/23 | 2 | Sold | (3) | CALL DRS TECH    JUN 065 AMEX<br>EXP 06/21/2008<br>CLOSING CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0DA250H2063-1 | DRSF65 | 13.9000 | | 4,168.62 |
| 06/23 | 2 | Sold | (3) | CALL DRS TECH    JUN 065 AMEX<br>EXP 06/21/2008<br>CLOSING CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0DA250H2072-1 | DRSF65 | 14.0000 | | 4,198.62 |
| 06/23 | 2 | Sold | (3) | CALL DRS TECH    JUN 065 AMEX<br>EXP 06/21/2008<br>CLOSING CONTRACT<br>AVG PRICE SHOWN-DETAILS ON REQ<br>ABACUS<br>UBS-REF:P0DA250H2082-1 | DRSF65 | 14.0000 | | 4,198.62 |

SIPC

2350553WH 0039071B        07/01/08:06:46  01 039072        99 B

## ❁ UBS Investment Bank

677 Washington Boulevard
Stamford CT 06901
(203) 719-3000

Account #
**452-60203  087**

Statement Period
**06-01-08 to 06-30-08**

**PURCHASES & SALES     CONTINUED**

| DATE | ACCT TYPE | TYPE OF ACTIVITY | QUANTITY | DESCRIPTION | SYMBOL/ CUSIP | PRICE | AMOUNT PAID | AMOUNT RECEIVED |
|------|-----------|------------------|----------|-------------|---------------|-------|-------------|-----------------|
| 06/23 | 2 | Sold | (3) | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0DA250H2087-1 | DRSF65 | 14.0000 | | 4,198.62 |
| 06/23 | 2 | Sold | (3) | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0DA250H2088-1 | DRSF65 | 14.0000 | | 4,198.62 |
| 06/23 | 2 | Sold | (3) | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0DA250H2090-1 | DRSF65 | 14.0000 | | 4,198.62 |
| 06/23 | 2 | Sold | (3) | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0DA250H2109-1 | DRSF65 | 13.9000 | | 4,168.62 |
| 06/23 | 2 | Sold | (4) | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0DA250H2038-1 | DRSF65 | 14.0000 | | 5,598.16 |
| 06/23 | 2 | Sold | (4) | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0DA250H2059-1 | DRSF65 | 13.9000 | | 5,558.16 |
| 06/23 | 2 | Sold | (4) | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0DA250H2062-1 | DRSF65 | 13.9000 | | 5,558.16 |
| 06/23 | 2 | Sold | (4) | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0DA250H2069-1 | DRSF65 | 14.0000 | | 5,598.16 |
| 06/23 | 2 | Sold | (4) | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0DA250H2071-1 | DRSF65 | 14.0000 | | 5,598.16 |
| 06/23 | 2 | Sold | (4) | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0DA250H2085-1 | DRSF65 | 14.0000 | | 5,598.16 |
| 06/23 | 2 | Sold | (4) | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0DA250H2093-1 | DRSF65 | 14.0000 | | 5,598.16 |



**UBS Investment Bank**
677 Washington Boulevard
Stamford CT 06901
(203) 719-3000

Account #
**452-60203  087**

Statement Period
**06-01-08 to 06-30-08**

## PURCHASES & SALES    CONTINUED

| DATE | ACCT TYPE | TYPE OF ACTIVITY | QUANTITY | DESCRIPTION | SYMBOL/ CUSIP | PRICE | AMOUNT PAID | AMOUNT RECEIVED |
|------|-----------|------------------|----------|-------------|---------------|-------|-------------|-----------------|
| 06/23 | 2 | Sold | (5) | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0DA250H2034-1 | DRSF65 | 13.7000 | | 6,847.71 |
| 06/23 | 2 | Sold | (5) | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0DA250H2052-1 | DRSF65 | 14.0000 | | 6,997.71 |
| 06/23 | 2 | Sold | (5) | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0DA250H2061-1 | DRSF65 | 13.9000 | | 6,947.71 |
| 06/23 | 2 | Sold | (5) | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0DA250H2089-1 | DRSF65 | 14.0000 | | 6,997.71 |
| 06/23 | 2 | Sold | (5) | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0DA250H2110-1 | DRSF65 | 13.9000 | | 6,947.71 |
| 06/23 | 2 | Sold | (5) | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0DA250H2111-1 | DRSF65 | 13.9000 | | 6,947.71 |
| 06/23 | 2 | Sold | (5) | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0DA250H2112-1 | DRSF65 | 13.9000 | | 6,947.71 |
| 06/23 | 2 | Sold | (5) | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0DA250H2124-1 | DRSF65 | 13.9000 | | 6,947.71 |
| 06/23 | 2 | Sold | (6) | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0DA250H2036-1 | DRSF65 | 14.0000 | | 8,397.25 |
| 06/23 | 2 | Sold | (6) | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0DA250H2044-1 | DRSF65 | 14.0000 | | 8,397.25 |
| 06/23 | 2 | Sold | (6) | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0DA250H2054-1 | DRSF65 | 14.0000 | | 8,397.25 |

## UBS Investment Bank

677 Washington Boulevard
Stamford CT 06901
(203) 719-3000

Account #
452-60203 087

Statement Period
06-01-08 to 06-30-08

### PURCHASES & SALES    CONTINUED

| DATE | ACCT TYPE | TYPE OF ACTIVITY | QUANTITY | DESCRIPTION | SYMBOL/ CUSIP | PRICE | AMOUNT PAID | AMOUNT RECEIVED |
|------|-----------|------------------|----------|-------------|---------------|-------|-------------|-----------------|
| 06/23 | 2 | Sold | (7) | CALL DRS TECH   JUN 065 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0DA250H2046-1 | DRSF65 | 14.0000 | | 9,796.79 |
| 06/23 | 2 | Sold | (7) | CALL DRS TECH   JUN 065 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0DA250H2057-1 | DRSF65 | 13.9000 | | 9,726.79 |
| 06/23 | 2 | Sold | (7) | CALL DRS TECH   JUN 065 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0DA250H2080-1 | DRSF65 | 14.0000 | | 9,796.79 |
| 06/23 | 2 | Sold | (8) | CALL DRS TECH   JUN 065 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0DA250H2058-1 | DRSF65 | 13.9000 | | 11,116.33 |
| 06/23 | 2 | Sold | (8) | CALL DRS TECH   JUN 065 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0DA250H2064-1 | DRSF65 | 13.9000 | | 11,116.33 |
| 06/23 | 2 | Sold | (8) | CALL DRS TECH   JUN 065 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0DA250H2065-1 | DRSF65 | 14.0000 | | 11,196.33 |
| 06/23 | 2 | Sold | (8) | CALL DRS TECH   JUN 065 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0DA250H2074-1 | DRSF65 | 13.9000 | | 11,116.33 |
| 06/23 | 2 | Sold | (8) | CALL DRS TECH   JUN 065 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0DA250H2121-1 | DRSF65 | 13.9000 | | 11,116.33 |
| 06/23 | 2 | Sold | (8) | CALL DRS TECH   JUN 065 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0DA250H2122-1 | DRSF65 | 13.9000 | | 11,116.33 |
| 06/23 | 2 | Sold | (9) | CALL DRS TECH   JUN 065 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0DA250H2077-1 | DRSF65 | 13.9000 | | 12,505.87 |
| 06/23 | 2 | Sold | (10) | CALL DRS TECH   JUN 065 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0DA250H2056-1 | DRSF65 | 13.9000 | | 13,895.42 |



**UBS Investment Bank**  677 Washington Boulevard
Stamford CT 06901
(203) 719-3000

Account #
**452-60203 087**

Statement Period
**06-01-08 to 06-30-08**

PURCHASES & SALES        CONTINUED

| DATE | ACCT TYPE | TYPE OF ACTIVITY | QUANTITY | DESCRIPTION | SYMBOL/ CUSIP | PRICE | AMOUNT PAID | AMOUNT RECEIVED |
|------|-----------|------------------|----------|-------------|---------------|-------|-------------|-----------------|
| 06/23 | 2 | Sold | (10 ) | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0DA250H2075-1 | DRSF65 | 13.9000 | | 13,895.42 |
| 06/23 | 2 | Sold | (10 ) | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0DA250H2096-1 | DRSF65 | 13.8000 | | 13,795.42 |
| 06/23 | 2 | Sold | (12 ) | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0DA250H2070-1 | DRSF65 | 14.0000 | | 16,794.50 |
| 06/23 | 2 | Sold | (12 ) | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0DA250H2099-1 | DRSF65 | 13.8000 | | 16,554.50 |
| 06/23 | 2 | Sold | (13 ) | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0DA250H2083-1 | DRSF65 | 14.0000 | | 18,194.04 |
| 06/23 | 2 | Sold | (14 ) | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0DA250H2100-1 | DRSF65 | 13.9000 | | 19,453.59 |
| 06/23 | 2 | Sold | (14 ) | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0DA250H2105-1 | DRSF65 | 13.9000 | | 19,453.59 |
| 06/23 | 2 | Sold | (15 ) | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0DA250H2066-1 | DRSF65 | 14.0000 | | 20,993.13 |
| 06/23 | 2 | Sold | (23 ) | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0DA250H2073-1 | DRSF65 | 13.9000 | | 31,959.47 |
| 06/23 | 2 | Sold | (38 ) | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0DA250H2026-1 | DRSF65 | 13.7000 | | 52,042.60 |
| 06/23 | 2 | Sold | (50 ) | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0DA250H2078-1 | DRSF65 | 13.8000 | | 68,977.11 |

SIPC

2350553WH 0039073B        07/01/08:06:46  01 039074    99 B

**UBS Investment Bank** 677 Washington Boulevard
Stamford CT 06901
(203) 719-3000

Account #
452-60203 087

Statement Period
06-01-08 to 06-30-08

PURCHASES & SALES     CONTINUED

| DATE | ACCT TYPE | TYPE OF ACTIVITY | QUANTITY | DESCRIPTION | SYMBOL/ CUSIP | PRICE | AMOUNT PAID | AMOUNT RECEIVED |
|------|-----------|------------------|----------|-------------|---------------|-------|-------------|-----------------|
| 06/23 | 2 | Sold | (50 ) | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0DA250H2095-1 | DRSF65 | 13.8000 | | 68,977.11 |
| 06/23 | 2 | Sold | (50 ) | CALL DRS TECH    JUN 065 AMEX EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0DA250H2127-1 | DRSF65 | 13.8000 | | 68,977.11 |
| 06/23 | 2 | Sold | (10 ) | CALL DECKERS OUT  JUN 120 CBOE EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0DA250C4366-1 | QUKFD | 16.6000 | | 16,595.40 |
| 06/23 | 2 | Sold | (10 ) | CALL DECKERS OUT  JUN 140 CBOE EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0DA250C4423-1 | QUKFH | .0500 | | 45.49 |
| 06/23 | 2 | Bought | 15 | PUT  DEERE & CO   JUN77.50**** ADJ 2 FOR 1 STOCK SPLIT EXP 06/21/2008 CLOSING CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0DA250C4424-1 | DER77 | 1.3100 | 1,971.75 | |
| 06/23 | 2 | Sold | (15 ) | PUT  DEERE & CO   JUL 075 **** EXP 07/19/2008 OPEN CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0DA250C4393-1 | DES75 | 2.3100 | | 3,458.23 |
| 06/23 | 2 | Sold | (14 ) | PUT  DEERE & CO   SEP 075 **** EXP 09/20/2008 OPEN CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0DA250F2981-1 | DEU75 | 5.2000 | | 7,273.65 |
| 06/23 | 2 | Sold | (21 ) | PUT  DEERE & CO   SEP 075 **** EXP 09/20/2008 OPEN CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0DA250F2983-1 | DEU75 | 5.2000 | | 10,910.48 |
| 06/23 | 2 | Sold | (24 ) | CALL DELL INC    AUG22.50**** EXP 08/16/2008 OPEN CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0DA250C3492-1 | DLQH22 | 2.0000 | | 4,789.17 |
| 06/23 | 2 | Bought | 30 | CALL EASTMAN KODK JUL 010 **** EXP 07/19/2008 OPEN CONTRACT AVG PRICE SHOWN-DETAILS ON REQ ABACUS UBS-REF:P0DA250C5858-1 | EKG10 | 2.9000 | 8,713.50 | |

SIPC

2350553WH 0039074     07/01/08:06:46  01 039075     99 B

# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                Plaintiff,<br><br>              v.<br><br>ONE OR MORE UNKNOWN PURCHASERS OF CALL OPTIONS FOR THE COMMON STOCK OF DRS TECHNOLOGIES, INC. AND AMERICAN POWER CONVERSION CORP.,<br><br>              Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:    **Civil Action No. 08-6609**<br>:    **(PAC)**<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

## DECLARATION OF STEPHEN P. GLASCOE

I, Stephen P. Glascoe, pursuant to 28 U.S.C. 1746, declare as follows:

1.  I am a Senior Market Surveillance Specialist in the Office of Market Surveillance, Division of Enforcement, of the United States Securities and Exchange Commission (the "SEC" or "the Commission"). As part of my daily surveillance activities, I review trading activity that occurred prior to major news announcements involving the securities of companies traded on United States markets. I submit this declaration in support of the Plaintiff Securities and Exchange Commission's Supplemental Memorandum in Support of Issuance of a Preliminary Injunction, Freezing Assets, and Granting Other Relief. The facts set forth herein are based upon my personal knowledge or upon information contained in the files of the Commission.

2.  On August 8, 2008, the staff of the SEC's Division of Enforcement (the "Staff") requested that I review the trading in securities of American Power Conversion

Corporation ("APCC") on September 21 and 22, 2006, and on October 10, 20, and 23, 2006.

3. On Monday, October 30, 2006, at approximately 1:00 a.m. EST, Schneider Electric SA ("Schneider") announced publicly that it would acquire all of the outstanding shares of APCC for $31 per share, in a transaction valued at approximately $6.1 billion. On October 30, the price of APCC stock opened at approximately $30, and it traded in that range for the remainder of the day. Trading volume in APCC stock and options rose sharply that day, and the price of APCC stock closed at $30.02, approximately 26% above its $23.76 close on Friday, October 27.

4. Prior to its merger with Schneider, APCC was a Massachusetts corporation headquartered in West Kingston, Rhode Island. APCC engaged in the design, development, manufacturing, and marketing of power protection and management solutions for computer, communications, and electronic applications worldwide. APCC stock was registered with the Commission pursuant to Section 12(g) of the Exchange Act and traded on NASDAQ. In October 2006, APCC had a market capitalization of approximately $4.5 billion. Options for APCC shares traded on the Boston Stock Exchange, Chicago Board Options Exchange, the International Securities Exchange, NYSE Arca, and the Philadelphia Stock Exchange.

5. Schneider, headquartered in Rueil-Malmaison, France, is an international company that designs and manufactures products for electricity and automation management. Schneider's stock is traded on the Paris Stock Exchange.

6. I obtained information about the price of APCC stock from commonly relied-upon financial resources, such as Bloomberg.

2

7.   In addition, I reviewed information from the Options Regulatory Surveillance Authority ("ORSA") about the September and October 2006 trading in APCC call options and account statements from UBS Securities LLC for an omnibus account known as UBSL A/C Exchange Traded Derivative Account # 452-6020300 (formerly designated as Account # 450-6020300).

8.   A call option is a contract that provides the buyer the right, but not the obligation, to buy an agreed quantity of an underlying security by a date (the expiration date) for a certain price (the strike price). The buyer of a call option generally expects the market price of the underlying security to rise, allowing the buyer of the option to make a profit from the difference between the strike price and the higher market price. A call option is in-the-money if the strike price is lower than the market price of the underlying security. A call option is out-of-the-money if the strike price is higher than the market price of the underlying security. In U.S. markets, each call option contract generally requires delivery of 100 shares of the underlying stock.

9.   On September 21, 2006, shares of the common stock of APCC reached a high of $21.72 per share and closed at $21.30 per share. *See* APCC stock trading data from Bloomberg, attached as Exhibit 1. On that same day, Unknown Purchaser purchased 1,600 APCC call options with a December expiration and a strike price of $22.50, and, therefore, on the date they were purchased, the APCC options were not in-the-money.

10. On September 22, 2006, shares of the common stock of APCC reached a high of $21.60 per share and closed at $21.40 per share. *See* Exhibit 1 at 3. On that same date, Unknown Purchaser purchased 800 APCC call options with a December

3

expiration and a strike price of $22.50 and, therefore, on the date they were

purchased, the APCC options were not in-the-money.

11. On October 10, 2006, shares of the common stock of APCC reached a high of $21.98

per share and closed at $21.93 per share. *See* Exhibit 1 at 2. On that same date,

Unknown Purchaser purchased 350 APCC call options with a November expiration

and a strike price of $22.50 and, therefore, on the date they were purchased, the

APCC options were not in-the-money.

12. On October 20, 2006, shares of the common stock of APCC reached a high of $22.90

per share and closed at $22.26 per share. *See* Exhibit 1 at 2. On that same date,

Unknown Purchaser purchased 80 APCC call options with a December expiration

and a strike price of $25 and, therefore, on the date they were purchased, the APCC

options were not in-the-money.

13. On October 23, 2006, shares of the common stock of APCC reached a high of $23.55

per share and closed at $23.32 per share. *See* Exhibit 1 at 2. On that same day,

Unknown Purchaser purchased 20 APCC call options with a November expiration

and a strike price of $22.50, and, therefore, on the date they were purchased, the

APCC options were not in-the-money.

14. Thus, between September 21 and October 23, 2006, Unknown Purchaser purchased

2,850 APCC call options, none of which were in-the-money, at a cost of $347,274.


I declare under penalty of perjury that the foregoing is true and correct.


_Stephen P. Glascoe_
Stephen P. Glascoe


Executed on August 13, 2008
Washington, D.C.

# Exhibit 1

3                                                        Equity**GPO**
Click here to see details



Australia 61 2 9777 8600 Brazil 5511 3048 4500 Europe 44 20 7330 7500 Germany 49 69 9204 1210 Hong Kong 852 2977 6000
Japan 81 3 3201 8900         Singapore 65 6212 1000       U.S. 1 212 318 2000       Copyright 2008 Bloomberg Finance L.P.
                                                                                    G623-669-0 08-Aug-2008 12:14:44

Page                                                                    Equity**GPO**
Hit <MENU> to return to graph or <PAGE> to continue.
                              2307532Q US Equity                              Page 2/3
THIS PAGE:    10/23/06 - 10/09/06                                        Currency  USD

|   | DATE  | OPEN  | HIGH  | LOW   | CLOSE | VOL     |
|---|-------|-------|-------|-------|-------|---------|
| F | 10/27 |       |       |       |       |         |
| T | 10/26 |       |       |       |       |         |
| W | 10/25 |       |       |       |       |         |
| T | 10/24 |       |       |       |       |         |
| M | 10/23 | 22.31 | 23.55 | 22.20 | 23.32 | 4747766 |
|   |       |       |       |       |       |         |
| F | 10/20 | 22.47 | 22.90 | 22.05 | 22.26 | 5316007 |
| T | 10/19 | 22.59 | 23.00 | 22.46 | 22.87 | 1962472 |
| W | 10/18 | 23.00 | 23.13 | 22.68 | 22.77 | 2314652 |
| T | 10/17 | 22.94 | 23.04 | 22.64 | 22.76 | 1777658 |
| M | 10/16 | 22.85 | 23.01 | 22.68 | 23.00 | 1984580 |
|   |       |       |       |       |       |         |
| F | 10/13 | 22.91 | 23.00 | 22.62 | 22.97 | 1694530 |
| T | 10/12 | 23.04 | 23.17 | 22.57 | 23.01 | 2237249 |
| W | 10/11 | 21.90 | 22.95 | 21.61 | 22.77 | 3921715 |
| T | 10/10 | 21.81 | 21.98 | 21.62 | 21.93 | 1608696 |
| M | 10/09 | 21.85 | 21.97 | 21.56 | 21.86 | 1803898 |

Australia 61 2 9777 8600 Brazil 5511 3048 4500 Europe 44 20 7330 7500 Germany 49 69 9204 1210 Hong Kong 852 2977 6000
Japan 81 3 3201 8900        Singapore 65 6212 1000       U.S. 1 212 318 2000        Copyright 2008 Bloomberg Finance L.P.
                                                                          G623-669-0 08-Aug-2008 12:14:45

Page                                                                Equity**GPO**

Hit <MENU> to return to graph or <PAGE> to continue.

2307532Q US Equity                                                    Page 3/3

THIS PAGE:    10/06/06 - 09/21/06                                   Currency  USD

|   | DATE  | OPEN   | HIGH    | LOW   | CLOSE  | VOL     |
|---|-------|--------|---------|-------|--------|---------|
| F | 10/06 | 22.15  | 22.15   | 21.73 | 21.79  | 2716027 |
| T | 10/05 | 21.91  | 22.20   | 21.67 | 22.05  | 2802965 |
| W | 10/04 | 21.25  | 21.96   | 21.23 | 21.71  | 1847956 |
| T | 10/03 | 21.56  | 21.75   | 21.21 | 21.35  | 1629709 |
| M | 10/02 | 22.01  | 22.20   | 21.25 | 21.60  | 2591864 |
|   |       |        |         |       |        |         |
| F | 09/29 | 22.00  | 22.69   | 21.89 | 21.96  | 2947452 |
| T | 09/28 | 21.79  | 22.00   | 21.76 | 21.86  | 3529707 |
| W | 09/27 | 21.20  | 21.8086 | 21.20 | 21.65  | 4382232 |
| T | 09/26 | 20.95  | 21.38   | 20.75 | 21.30  | 2629649 |
| M | 09/25 | 21.45  | 21.45   | 20.25 | 20.89  | 4828566 |
|   |       |        |         |       |        |         |
| F | 09/22 | 21.40  | 21.60   | 20.99 | 21.40  | 2200247 |
| T | 09/21 | 21.59  | 21.72   | 21.21 | 21.30  | 3330654 |
| W | 09/20 |        |         |       |        |         |
| T | 09/19 |        |         |       |        |         |
| M | 09/18 |        |         |       |        |         |

# EXHIBIT C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE<br>COMMISSION,<br><br>　　　　　　　　Plaintiff,<br><br>　　　　　v.<br><br>ONE OR MORE UNKNOWN PURCHASERS<br>OF CALL OPTIONS FOR THE COMMON<br>STOCK OF DRS TECHNOLOGIES, INC.<br>AND AMERICAN POWER CONVERSION<br>CORP.,<br><br>　　　　　　　　Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:      Civil Action No. 08-6609<br>(PAC) |

## DECLARATION OF ROBERT HOUCK

I, Robert Houck, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am a partner in the law firm Clifford Chance US LLP, where I have worked since 1996. I am currently a member in good standing of the New York Bar.

2. In 2006, as an attorney at Clifford Chance, I represented American Power Conversion Corporation ("APCC") with respect to the circumstances leading up to the public announcement on October 30, 2006, that Schneider Electric SA ("Schneider") would acquire APCC.

3. To the best of my recollection, in November 2006, I, together with others at my firm, prepared a chronology of events regarding the APCC auction process, based on information that we received from APCC personnel. *See* Exhibit 1, attached.

4. We prepared the chronology at or near the time that APCC provided us with the information, and it correctly reflects the information that we received.

NYA901477.2

5.  In accordance with the confidentiality agreements among APCC and bidders other

    than Schneider, I have redacted confidential information from the chronology that is

    not relevant to the issues in this litigation.


I declare under penalty of perjury that the foregoing is true and correct.


_____

ROBERT HOUCK


Executed on August 14, 2008
New York, NY

Exhibit A

# American Power Conversion
## Chronology of Events (Request A(1))[1]

| Date | Event | Identity of Persons |
|---|---|---|
| 08/15/06 | American Power Conversion ("APC") announced that Rodger B. Dowdell, Jr. was retiring as President and Chief Executive Officer of APC, but would continue to serve in a non-executive capacity as Chairman of the Board of Directors of APC. | |
| 08/15/06 | APC announced that Robert J. Johnson had been appointed to act as President and Chief Executive Officer on an interim basis until APC completed a search for a permanent replacement for Mr. Dowdell. | |
| 8/17/06 and 8/18/06 | Following the August 15, 2006 announcements, **REDACTED** communicated an interest in acquiring APC and attempted to reach Mr. Dowdell by telephone. | **REDACTED** |
| 8/21/06 | **REDACTED**    chairman explained the he had been trying to reach sent Mr. Dowdell a letter, in which **REDACTED** Mr. Dowdell to discuss a possible business combination between the two companies. | **REDACTED** |

---

[1] The information set forth in this Exhibit is based on discussions with personnel of APC who were involved in the potential transaction and represents their best collective recollection. It is not possible to reconstruct definitively or precisely each and every discussion or meeting – its nature, significance, formality, length or number of participants – which may have occurred during this period. Identification of particular individuals or entities as participants in a meeting does not constitute a representation that each of them participated from beginning to end, without absence, or that other individuals, not currently recalled, may not also have participated. In addition, for reasons of privilege, detailed information about certain communications that took place between APC and its legal advisors is not included in this Exhibit.

Confidential Treatment Requested
by American Power Conversion

1

Exhibit A

| Date | Event | Persons |
|---|---|---|
| On or about 8/29/06 | After speaking with a representative of REDACTED Mr. Dowdell subsequently agreed to meet with representatives of REDACTED on September 6, 2006, together with Mr. Johnson, to hear a presentation on REDACTED interest in acquiring APC. | REDACTED Mr. REDACTED |
| 8/30/06 | Following the August 15, 2006 announcements, Schneider Electric also communicated an interest in acquiring APC. Schneider Electric first approached Mr. Dowdell by means of an email sent on August 30, 2006, requesting a telephone call between Mr. Jean-Pascal Tricoire (the President and Chief Executive Officer of Schneider Electric) and Mr. Dowdell. After speaking with Mr. Tricoire, Mr. Dowdell agreed to hold a meeting with representatives of Schneider Electric on September 7, 2006, together with Mr. Johnson. | *From Schneider Electric:* Marie d'Antras  *From APC:* Joan Prudhomme |
| 9/1/06 | The APC board of directors held a telephone board meeting. | *From APC:* Rodger B. Dowdell, Jr. James D. Gerson John G. Kassakian Ervin F. Lyon Neil E. Rasmusen Ellen B. Richstone Jeffrey J. Giguere  *From Counsel to APC:* William B. Simmons, Jr. of Choate, Hall & Stewart LLP |
| On or about 9/5/06 | Subsequently, after discussing the matter with the APC board of directors, Mr. Dowdell canceled the meeting with REDACTED | |

2

Confidential Treatment Requested by American Power Conversion

Exhibit A

| Date | | Details | Source |
|---|---|---|---|
| 9/5/06 | | On or about Subsequently, after discussing the matter with the APC board of directors, Mr. Dowdell canceled the meeting with Schneider Electric. | |
| 9/6/06 | REDACTED | The chairman of **REDACTED** sent Mr. Dowdell a letter confirming strong interest in a potential combination with APC. | |
| 9/11/06 | | On September 11, 2006, APC received a letter addressed to APC's board of directors from Matrix Asset Advisors. In the letter, Matrix, which said it was a significant shareholder of APC, was critical of APC's financial performance and suggested, among other things, that APC's board of directors should consider selling APC. | *From APC:* Open Letter to the Board of Directors of American Power Conversion Corporation |
| 9/12/06 | | On September 12, 2006, various media outlets published excerpts from the Matrix letter. | *From Matrix Asset Advisors:* David A. Katz |
| 9/13/06 | | Mr. Tricoire (Schneider Electric) wrote to Messrs. Dowdell and Johnson confirming Schneider Electric's strong interest in acquiring APC, and stating that Schneider Electric was ready to make a proposal for an all-cash acquisition of APC at a value of $21.00 to $22.00 per share. The proposal was subject to various contingencies, including completion by Schneider Electric of due diligence with respect to APC. | |
| 9/15/06 | REDACTED | **REDACTED** sent another letter in which it proposed to acquire APC in an all-cash transaction at a price of $24.00 per share. That proposal was subject to various conditions, including a due diligence condition. | *From* **REDACTED** *From APC:* Rodger B. Dowdell, Jr. |

Confidential Treatment Requested
by American Power Conversion

3

NYA 813568.1

Exhibit A

| Date | Event | Persons |
|---|---|---|
| 9/18/06 and 9/19/06 | At a meeting held in Boston, Massachusetts, APC's board of directors discussed the events that had occurred since the August 15 announcements. At the meeting, APC's management team shared with APC's board of directors a newly-developed preliminary draft, dated September 18, 2006, of a plan that included a series of new initiatives designed to enhance APC's profitability while at the same time continuing the revenue growth APC had achieved in recent years, together with the projections of the financial results that might be attained if the plan were successfully implemented. The board of directors was joined for the discussion of the indications of interest that had been made by Schneider Electric and **REDACTED** **REDACTED** by representatives of Goldman, Sachs & Co. ("Goldman Sachs") and Clifford Chance US LLP. After hearing a comprehensive presentation on the financial and other implications of the two proposals, the members of the board then discussed various alternative courses of action. One possible course of action that the board discussed was to decline to enter into discussions with either Schneider Electric or **REDACTED** and **REDACTED** to proceed instead to further develop the preliminary business plan that had been presented to the board of directors by APC's management team. This approach potentially could allow APC's existing shareholders to share in any additional value that might be created over time by implementation of a new business plan, but conversely the approach might cause APC's shareholders to lose an opportunity to realize the substantial, near-term financial benefits that might be realized if APC could be sold for a sufficiently attractive price. Another possible course of action considered by APC's board was to commence a publicly announced auction of APC. APC's board of director expressed concern that while a public process could be an efficient means of maximizing the number of potential acquirors and thereby potentially maximizing | *From APC:*<br>Rodger B. Dowdell, Jr.<br>James D. Gerson<br>John G. Kassakian<br>Ervin F. Lyon<br>Neil E. Rasmussen<br>Ellen B. Richstone<br>Robert J. Johnson<br>Edward W. Machala<br>Richard J. Thompson<br>David R. Johnson<br>Emanuel E. Landsman<br>Aaron L. Davis<br>Steven Held<br>John Piatak<br>Jeffrey J. Giguere<br><br>*From Counsel to APC:*<br>William B. Simmons, Jr. of Choate, Hall & Stewart LLP<br><br>*From Goldman Sachs:*<br>Jeffrey Moslow<br>David (Dusty) Philip<br>Jane Kelsey<br><br>*From Clifford Chance:*<br>John A. Healy |

Confidential Treatment Requested by American Power Conversion

4

Exhibit A

| Date | | |
|---|---|---|
| | the price that might be obtained for APC, such a process also could be very distracting for APC's employees as well as APC's management team, and could adversely affect customer relationships, and this in turn could harm shareholder value. After considering these and other alternatives, the board of directors decided to authorize a brief, focused process in which **REDACTED REDACTED** Schneider Electric and a limited number of other potential acquirors would be invited to perform due diligence and to submit firm proposals to acquire APC. In deciding on this approach, APC's board determined that it was in the best interests of APC's shareholders to find out how serious **REDACTED** and Schneider Electric were about acquiring APC, and the price that they and other potential acquirors would be willing to pay for APC, particularly because the process would be relatively swift and would not harm APC or its business. If and when proposals were received, the board of directors would decide whether to sell APC or seek to remain independent. APC's board further directed that while that process was being conducted, management was to continue to work on its new business plan and related financial forecasts. | |

Confidential Treatment Requested
by American Power Conversion

NYA 813568.1

Exhibit A

| Date | Event | Persons |
|---|---|---|
| Beginning on 9/20/06 | Acting pursuant to the directions of the board of directors, APC's management team, together with its outside advisors, organized a process designed to elicit acquisition proposals. In addition to REDACTED and Schneider Electric, Goldman Sachs contacted five other companies that APC's management had identified in consultation with Goldman Sachs as potentially likely to have an interest acquiring APC. Only one of these companies, REDACTED expressed a willingness to participate in the process. The potential acquirors that were contacted generally participate to some extent in the same industry as, or a complementary industry to, APC. Financial sponsors were not approached because APC's board concluded, after consultation with management and its advisors, that only an acquiror that could generate substantial synergies from an acquisition of APC would be willing to offer the level of value that already had been communicated by REDACTED and Schneider Electric. | *From APC:*<br>Rodger B. Dowdell, Jr.<br>Neil E. Rasmussen<br>Emanuel E. Landsman<br>James D. Gerson<br>Ervin F. Lyon<br>John G. Kassakian<br>Ellen B. Richstone<br>Robert J. Johnson<br>Richard J. Thompson<br>Jeffrey J. Giguere<br>Peter Wexler<br><br>*From Clifford Chance:*<br>John A. Healy<br>Benjamin K. Sibbett<br><br>*From Goldman Sachs:*<br>Jeffrey Moslow<br>David (Dusty) Philip<br>Clare Scherrer<br>Jane Kelsey<br>Nathaniel Wendling<br>Peter Yordan |
| 9/20/06 | Mr. Dowdell informs Mr. Tricoire (Schneider Electric) that the APC board has decided to review the possible sale of the company and is willing to initiate discussions with Schneider Electric. Mr. Johnson coordinates these discussions. | *From* REDACTED |

6

Confidential Treatment Requested by American Power Conversion

NYA 813569.1

Exhibit A

| DATE | DESCRIPTION | PERSONS |
|------|-------------|---------|
| 9/30/06 | A confidentiality agreement is executed between APC and Schneider Electric. | |
| 10/2/06-10/27/06 | APC then proceeded, during the period of October 2, 2006 through October 27, 2006, to make information available to **REDACTED** **REDACTED** Schneider Electric and **REDACTED** through a virtual data room and a series of management presentations and interviews. The information provided to prospective acquirors included a business plan and related financial projections, dated October 6, 2006, that were updated from the materials shared with APC's board on September 19, 2006 to reflect APC's management's latest thinking. | *From APC:* Robert J. Johnson Richard J. Thompson Jeffrey J. Giguere Peter Wexler<br><br>*From Clifford Chance:* John A. Healy Benjamin K. Sibbett Merran Magill Juliana Correa<br><br>*From Goldman Sachs:* Jeffrey Moslow David (Dusty) Philip Clare Scherer Jane Kelsey Nathaniel Wendling Peter Yordan Julie Park<br><br>*From Schneider Electric:* Jean-Pascal Tricoire<br><br>*From Schneider Electric's Advisors:* Representatives from Merrill Lynch Representatives from Lazard |

7

Confidential Treatment Requested by American Power Conversion

Exhibit A

| Date | Name | Persons |
|---|---|---|
| | | Representatives from Cravath, Swaine & Moore |
| | | *From*      *Advisors:* <br> **REDACTED** <br> Representatives from Wachtell, Lipton, Rosen & Katz |
| | | *From:*      *Advisors:* <br> **REDACTED** <br> Representatives from Davis, Polk & Wardwell <br> Representatives from J.P. Morgan |
| 10/2/06 | Representatives from APC and Schneider Electric have dinner in New York. | *From APC:* <br> Robert J. Johnson <br> Neil E. Rasmussen <br> Richard J. Thompson <br> Jim Simonelli <br><br> *From Goldman Sachs:* <br> Clare Scherer <br><br> *From Schneider Electric:* <br> Jean-Pascal Tricoire <br> Claude Graff <br> Hal Grant <br> Dave Petratis <br><br> *From Schneider Electric's Advisors:* <br> Representatives from Merrill Lynch <br> Representatives from Lazard |

Confidential Treatment Requested by American Power Conversion

8

NYA 812568.1

Exhibit A

| Date | Description | Persons |
|---|---|---|
| 10/3/06 | APC made a presentation to Schneider Electric and Schneider Electric's advisors at Clifford Chance's offices in New York. | *From APC:* Robert J. Johnson, Neil E. Rasmussen, Joe Loberti, Richard J. Thompson, Jim Simonelli, Dave Johnson, Jeffrey J. Giguere, Andrew Cole, Mike Ricci<br><br>*From Goldman Sachs:* Jeff Moslow, Jane Kelsey, Julie Park<br><br>*From Schneider Electric:* Jean-Pascal Tricoire, Pierre Bouchut, Claude Graff, Hal Grant, Ghislaine Guittat, Pedro Salazar, Peggy Gann, Dave Petratis<br><br>*From Schneider Electric's Advisors:* Representatives from Merrill Lynch & Co. Inc., Representatives from Lazard, Representatives from BNP Paribas, Representatives from Cravath, Swaine & Moore LLP, Representatives from Ernst & Young LLP |

9

Exhibit A

| Date | Event | Persons |
|---|---|---|
| 10/3/06 | Representatives from APC and New York. REDACTED have dinner in | *From APC:* Rob Johnson Rich Thompson Neil Rasmussen Dave Johnson Jim Simonelli Andrew Cole<br><br>*From Goldman Sachs:* Jeff Moslow<br><br>*From* REDACTED |

Confidential Treatment Requested by American Power Conversion

10

NYA 813568.1

Exhibit A

| Date | Event/Description | Persons |
|------|------|------|
| 10/4/06 | Representatives from APC and New York. REDACTED have dinner in | *From APC:*<br>Rob Johnson<br>Rich Thompson<br>Neil Rasmussen<br>Dave Johnson<br>Jim Simonelli<br>Andrew Cole<br>Joe Loberti<br><br>*From Goldman Sachs:*<br>Dusty Philip<br><br>*From* REDACTED |

Confidential Treatment Requested by American Power Conversion

11

NYA 813568.1

Exhibit A

| Date | Event | Persons |
|------|-------|---------|
| 10/4/06 | APC made a presentation to **REDACTED** at Clifford Chance's offices in New York. | *From APC:* <br> Robert J. Johnson <br> Neil E. Rasmussen <br> Joe Loberti <br> Richard J. Thompson <br> Jim Simonelli <br> Dave Johnson <br> Jeffrey J. Giguere <br> Andrew Cole <br> Mike Ricci <br><br> *From Goldman Sachs:* <br> Clare Scherrer <br> Jane Kelsey <br> Peter Yordan |
| 10/5/06 | APC made a presentation to **REDACTED** and **REDACTED** advisors at Clifford Chance's offices in New York. | *From* **REDACTED** <br><br> **REDACTED** <br><br> *From APC:* <br> Robert J. Johnson <br> Neil E. Rasmussen <br> Joe Loberti |

12

Confidential Treatment Requested by American Power Conversion

Exhibit A

| Date | Event | Persons |
|---|---|---|
| | | Richard J. Thompson |
| | | Jim Simonelli |
| | | Dave Johnson |
| | | Jeffrey J. Giguere |
| | | Andrew Cole |
| | | Mike Ricci |
| | | *From Goldman Sachs:* |
| | | Dusty Philip |
| | | Jane Kelsey |
| | | Nathaniel Wendling |
| | | Peter Yordan |
| | REDACTED | *From* REDACTED |
| | | REDACTED |
| | | *From* REDACTED *advisors:* |
| | | Representatives from J.P. Morgan |

Confidential Treatment Requested
by American Power Conversion

13

NYA 813568.1

Exhibit A

| Dates | Event | Persons |
|---|---|---|
| 10/6/06 | Access to the virtual data room was granted to **REDACTED** Schneider Electric and **REDACTED** and their advisors. | |
| 10/10/06 | APC, Goldman Sachs and Schneider Electric held a meeting at Clifford Chance's New York office. | *From APC:* Robert J. Johnson, Ed Machala, Aaron Davis, Andrew Cole<br><br>*From Schneider Electric:* Jean-Pascal Tricoire<br><br>*From Goldman Sachs:* David (Dusty) Philip |
| 10/11/06 | APC sends **REDACTED** Schneider Electric and **REDACTED** **REDACTED** a draft of the proposed Merger Agreement which was drafted by Clifford Chance. | |
| 10/12/06 | APC, Schneider Electric and their respective advisors held a working session in Goldman Sachs New York offices. | *From APC:* Robert J. Johnson, Ed Machala, Neil E. Rasmussen, Jim Simonelli, Richard J. Thompson, Mike Ricci, Aaron Davis, Andrew Cole, Brian Belliveau<br><br>*From Schneider Electric:* Pierre Bouchut, Claude Graff |

14

Confidential Treatment Requested by American Power Conversion

NYA 813568.1

Exhibit A

| Date: | Event: | Persons: |
|---|---|---|
| | | Christian Corsin |
| | | Peggy Gann |
| | | Mary Trish |
| | | Ghislaine Guitat |
| | | Dave Petratis |
| | | Daniel Doimo |
| | | Vince Inendino |
| | | Mike Cascella |
| | | |
| | | *From Goldman Sachs:* |
| | | David (Dusty) Philip |
| | | Clare Scherrer |
| | | Jane Kelsey |
| | | Nathaniel Wendling |
| | | Peter Yordan |
| | | Julie Park |
| | | |
| | | *From Schneider Electric's Advisors:* |
| | | Representatives from Merrill Lynch |
| | | Representatives from Lazard |
| | | Representatives from E&Y |

Confidential Treatment Requested
by American Power Conversion

15

Exhibit A

| Date | Event | Persons |
|---|---|---|
| 10/13/06 | A legal due diligence conference call is held among APC and Schneider Electric. | *From APC:*<br>Jeffrey J. Giguere<br>Peter Wexler<br><br>*From Clifford Chance:*<br>John A. Healy<br>Benjamin K. Sibbett<br>Merran Magill<br><br>*From Schneider Electric:*<br>Howard Japlon<br>Pedro Salazar<br><br>*From Schneider Electric's Advisors:*<br>Representatives from Cravath, Swaine & Moore |
| 10/16/06 | A tax due diligence conference call is held among APC and Schneider Electric. | *From APC:*<br>Mike Ricci<br><br>*From Schneider Electric:*<br>Vince Irendino |
| 10/16/06 | Goldman Sachs sends a letter to Schneider Electric requesting a submission of an offer letter by October 25. | |

Confidential Treatment Requested<br>by American Power Conversion

16

NYA 813568.1

Exhibit A

Confidential Treatment Requested by American Power Conversion

| Date | Event | Persons |
| --- | --- | --- |
| 10/18/06 | APC's board of directors met to receive an interim report on the process and to give direction as to how the remainder of the process would be handled. | *From APC:* <br> Rodger B. Dowdell, Jr. <br> Neil E. Rasmussen <br> Emanuel E. Landsman <br> James D. Gerson <br> Ervin F Lyon <br> John G. Kassakian <br> Ellen B. Richstone <br> Robert J. Johnson <br> Richard J. Thompson <br> Jeffrey J. Giguere <br> Peter Wexler <br><br> *From Counsel to APC:* <br> Wiliam B. Simmons, Jr. of Choate, Hall & Stewart LLP <br><br> *From Clifford Chance:* <br> John A. Healy <br> Benjamin K. Sibbett <br> Merran Magill <br><br> *From Goldman Sachs:* <br> David (Dusty) Philip <br> Jeffrey Moslow <br> Clare Scherrer <br> Jane Kelsey <br> Nathaniel Wendling <br> Peter Yordan |

17

NYA 813568 1

Confidential Treatment Requested by American Power Conversion

Exhibit A

| Date | Event | Persons |
|---|---|---|
| 10/18/06 | A due diligence conference call is held among KPMG and Schneider Electric. | *From KPMG:* Pat Canning <br><br> *From Schneider Electric:* Jean-Pascal Tricoire, Pierre Bouchut |
| 10/19/06 | A due diligence conference call is held among KPMG and Schneider Electric relative to tax audit workpapers. | *From KPMG:* Pat Canning, Pauline Mak <br><br> *From Schneider Electric:* Jean-Pascal Tricoire, Pierre Bouchut |
| 10/20/06 | Pursuant to the process established by APC's board with input from Goldman Sachs, **REDACTED** Schneider Electric and **REDACTED** produced preliminary mark-ups of a form of merger agreement previously provided to each of them on APC's behalf by Clifford Chance. | *From Schneider Electric's Advisors:* Representatives from Merrill Lynch Representatives from Lazard Representatives from Cravath, Swaine & Moore <br><br> *From* **REDACTED** *Advisors:* Representatives from Wachtell, Lipton, Rosen & Katz <br><br> *From* **REDACTED** *Advisors::* Representatives from Davis, Polk & Wardwell Representatives from J.P. Morgan |

18

NYA 813568.1

Exhibit A

| Date | | Present: |
|------|---|----------|
| 10/20/06 | Clifford Chance then provided input to counsel for each of the three prospective acquirors. The principal points emphasized by Clifford Chance in these discussions were certainty of completion and the ability of APC's board of directors to accept a superior proposal should one emerge after a merger agreement was signed. | *From Clifford Chance:* John A. Healy Benjamin K. Sibbett

*From Schneider Electric's Advisors:* Representatives from Cravath, Swaine & Moore

*From    REDACTED    Advisors:* Representatives from Wachtell, Lipton, Rosen & Katz

*From    REDACTED    Advisors::* Representatives from Davis, Polk & Wardwell |

Confidential Treatment Requested by American Power Conversion

19

NYA 813568.1

Confidential Treatment Requested by American Power Conversion

Exhibit A

| Date | Event | Result |
|---|---|---|
| 10/20/06 | APC and Schneider Electric held discussions regarding operations and finance at Clifford Chance's New York office. A financial follow-up due diligence meeting took place between APC, Schneider Electric and certain advisors. A discussion on management structure and incentives took place between APC and Schneider Electric. Mr. Rasmussen and Mr. Tricoire (Schneider Electric) attend a lunch meeting. | *From APC:*<br>Robert J. Johnson<br>Ed Machala<br>Neil E. Rasmussen<br>Richard J. Thompson<br>Mike Ricci<br>Brian Gough<br><br>*From Schneider Electric:*<br>Jean-Pascal Tricoire<br>Pierre Bouchut<br>Claude Graff<br>Ghislaine Guittat<br>Dan Anderson<br>Peggy Gann<br><br>*From Goldman Sachs:*<br>David (Dusty) Philip<br>Clare Scherrer<br>Jane Kelsey<br>Nathaniel Wendling<br><br>*From Schneider Electric's Advisors:*<br>Representatives from Merrill Lynch<br>Representatives from Lazard<br>Representatives from BNP Paribas<br>Representatives from E&Y |

20

NYA 813568.1

Exhibit A

| Date | Event | Persons |
|---|---|---|
| 10/25/06 | Each of the three potential acquirors submitted definitive proposals to acquire APC, accompanied by revised mark-ups of the merger agreement. Each of the proposals was for an all-cash acquisition. Proposals ranged from $25.25 to $29.00 per share. Each of the potential acquirors requested that Messrs. Dowdell and Rasmussen enter into an agreement to vote their shares in favor or the proposed transaction and against any competing transaction. | *From Schneider Electric's Advisors:*<br>Representatives from Merrill Lynch<br>Representatives from Lazard<br>Representatives from Cravath, Swaine & Moore<br><br>*From* REDACTED *Advisors:*<br>Representatives from Wachtell, Lipton, Rosen & Katz<br><br>REDACTED *Advisors::*<br>*From*<br>Representatives from Davis, Polk & Wardwell<br>Representatives from J.P. Morgan |

Confidential Treatment Requested
by American Power Conversion

21

NYA 813568.1

Exhibit A

| Date | Event | Persons |
|------|-------|---------|
| 10/26/06 | APC's board of directors met on the morning of the next day, October 26, 2006, to review the three proposals. At the meeting, the board received presentations from Goldman Sachs and Clifford Chance regarding the proposals. The presentations included extensive financial analysis of APC and a detailed discussion of contract terms. The board discussed, among other things, how the value implied by the three proposals compared to the value that might be realized for APC's shareholders if APC were to seek to remain independent. The board of directors directed that Schneider Electric and the other potential acquirors each should be pushed to improve their proposals. APC's board authorized Messrs. Dowdell and Rasmussen to discuss the voting commitments requested by each of the potential acquirors, after confirming that neither had held any such discussion prior to that time. | *From APC:* Rodger B. Dowdell, Jr. Neil E. Rasmussen Emanuel E. Landsman James D. Gerson Ervin F. Lyon John G. Kassakian Ellen B. Richstone Robert J. Johnson Richard J. Thompson Jeffrey J. Giguere Peter Wexler  *From Clifford Chance:* John A. Healy Benjamin K. Sibbett Merran Magill  *From Goldman Sachs:* Jeffrey Moslow David (Dusty) Philip Clare Scherrer Jane Kelsey |

Confidential Treatment Requested by American Power Conversion

22

Exhibit A

| Date | Event | Persons |
|---|---|---|
| 10/26/06 | Subsequently, at the board's direction, APC's advisors contacted each of the three potential acquirors and encouraged each of them to improve all aspects of their proposals, price and non-price, and to confirm that the revised proposals represented their highest and best offers. The potential acquirors were asked to submit any improvements to their proposals by 9:00 a.m. on October 27, 2006. | *From Clifford Chance:*<br>John A. Healy<br>Benjamin K. Sibbett<br><br>*From Goldman Sachs:*<br>David (Dusty) Philips<br>Jeff Moslow<br><br>**From**  **REDACTED**<br><br>*From Schneider Electric's Advisors:*<br>Representatives from Merrill Lynch<br>Representatives from Lazard<br>Representatives from Cravath, Swaine & Moore<br><br>**From**  **REDACTED**  *Advisors:*<br>Representatives from Wachtell, Lipton, Rosen & Katz<br><br>*From*  **REDACTED**  *Advisors::*<br>Representatives from Davis, Polk & Wardwell<br>Representatives from J.P. Morgan<br><br>*From*  **REDACTED** |

Confidential Treatment Requested
by American Power Conversion

25

Exhibit A

| Date | Terms | Persons |
|---|---|---|
| | Each of the three potential acquirors submitted revised proposals. **REDACTED** increased its offer to $28.25 per share, **REDACTED** increased its offer to $29.00 per share and Schneider Electric increased its offer to $31.00 per share. Schneider Electric also stated that if a definitive agreement were reached by midnight on October 27, 2006, it would agree to use its best efforts to avoid or eliminate each and every impediment under any antitrust, competition or trade regulation law with respect to the merger so as to allow the merger to be completed as soon as reasonably possible. | *From Schneider Electric's Advisors:* Representatives from Merrill Lynch Representatives from Lazard Representatives from Cravath, Swaine & Moore |
| 10/27/06 | | *From* **REDACTED** *Advisors:* Representatives from Wachtell, Lipton, Rosen & Katz |
| | **REDACTED** previously had indicated its preparedness to agree to a similar provision). Schneider Electric also stated that its revised proposal represented its highest and best offer. | *From* **REDACTED** *Advisors::* Representatives from Davis, Polk & Wardwell Representatives from J.P. Morgan |

Confidential Treatment Requested
by American Power Conversion

24

Exhibit A

| Date | Event | Persons |
|---|---|---|
| 10/27/06 | APC's management team and advisors reviewed the revised proposals shortly after they were received, and based on the attractiveness of Schneider Electric's offer, invited Schneider Electric's negotiating team to meet at Clifford Chance's offices in New York with a view to finalizing the merger agreement, and notified the other two potential acquirors that their respective revised proposals were not the best received. | *From APC:*<br>Robert J. Johnson<br>Richard J. Thompson<br>Jeffrey J. Giguere<br>Peter Wexler<br><br>*From Clifford Chance:*<br>John A. Healy<br>Benjamin K. Sibbett<br>Merran Magill<br><br>*From Goldman Sachs:*<br>Jeffrey Moslow<br>David (Dusty) Philip<br>Clare Scherer<br>Jane Kelsey<br>Nathaniel Wendling<br>Peter Yordan<br>Julie Park<br><br>*From Schneider Electric:*<br>Pierre Bouchut<br>Pedro Salazar<br>Howie Japlon<br><br>*From Schneider Electric's advisors:*<br>Representatives from Cravath, Swaine & Moore<br>Representatives from Merrill Lynch<br>Representatives from Lazard |

Confidential Treatment Requested
by American Power Conversion

25

NYA 813568.1

Exhibit A

| Date | Event | Persons |
|---|---|---|
| 10/27/06 | APC's representatives then met with Schneider Electric's representatives beginning at around noon, during which meeting they completed their negotiation of contract terms and addressed various outstanding due diligence items. | *From APC:*<br>Robert J. Johnson<br>Richard J. Thompson<br>Jeffrey J. Giguere<br>Peter Wexler<br>Andrew Cole<br>Brian Gough<br>Mike Ricci<br><br>*From Clifford Chance:*<br>John A. Healy<br>Benjamin K. Stibbett<br>Merran Magill<br>Jacqueline Dagan<br>Robert Houck<br><br>*From Goldman Sachs:*<br>Jeffrey Moslow<br>David (Dusty) Philip<br>Clare Scherer<br><br>*From Skadden Arps:*<br>Representatives from Skadden Arps<br><br>*From Schneider Electric:*<br>Pierre Bouchut<br>Pedro Salazar<br>Howie Japlon<br><br>*From Schneider Electric's Advisors:*<br>Representatives from Cravath, Swaine & Moore |

Confidential Treatment Requested
by American Power Conversion

26

NYA 813658 1

Exhibit A

| Date | Event | Persons |
|------|-------|---------|
| 10/27/06 | A conference call is held with respect to additional due diligence items between APC, Schneider Electric and certain advisors. | Representatives from Merrill Lynch<br><br>Representatives from Lazard<br><br>*From Clifford Chance:*<br>Robert Houck<br><br>*From Goldman Sachs:*<br>Clare Scherer<br><br>*From KPMG:*<br>Pat Canning<br><br>*From Schneider Electric:*<br>Pierre Bouchut<br><br>*From Schneider Electric's Advisors:*<br>Representatives from Cravath, Swaine & Moore<br><br>Representatives from Lazard |

Confidential Treatment Requested by American Power Conversion

27

Exhibit A

| DATE | EVENT | DIRECTORS |
|---|---|---|
| 10/27/06 | At 8:00 p.m. APC's board of directors held a meeting a which it received an update on the revised proposals received earlier that morning from the three potential acquirors and on the status of negotiations with Schneider Electric. APC's management team and advisors informed the board that the agreement in principle had been reached with Schneider Electric on all significant outstanding contract points. Clifford Chance described for the board how the various contract issues had been resolved. Goldman Sachs reviewed the financial aspects of Schneider Electric's improved proposal and rendered its opinion (orally, which was subsequently confirmed in writing) that the price of $31.00 per share proposed by Schneider Electric was fair, from a financial point of view, to holders of APC's common stock. The board of directors adopted the merger agreement at that price and on the terms presented to it, and authorized management to finalize negotiations on the merger agreement consistent with these terms. | *From APC:* Rodger B. Dowdell, Jr. Neil E. Rasmussen Emanuel E. Landsman James D. Gerson Ervin F. Lyon John G. Kassakian Ellen B. Richstone Robert J. Johnson Richard J. Thompson Jeffrey J. Giguere  *From Clifford Chance:* John A. Healy Benjamin K. Sibbett Robert Houck  *From Goldman Sachs:* Jeffrey Moslow David (Dusty) Philip Clare Scherer |

28

Confidential Treatment Requested by American Power Conversion

Exhibit A

| Date | Event | Persons |
|---|---|---|
| 10/28/06 | Contract terms were finalized, and the merger agreement and related voting agreement signed, at approximately 6:00 a.m. | *From APC:*<br>Jeffrey J. Giguere<br>Peter Wexler<br><br>*From Clifford Chance:*<br>John A. Healy<br>Benjamin K. Sibbett<br>Meran Magill<br>Jacqueline Dagan<br><br>*From Schneider Electric:*<br>Howie Japlon<br>Pedro Salazar<br><br>*From Schneider Electric's advisors:*<br>Representatives from Cravath, Swaine & Moore<br>Representatives from Lazard<br>Representatives from Merrill Lynch |
| 10/30/06 | A public announcement of the transaction is made. | |

Confidential Treatment Requested
by American Power Conversion

29

# EXHIBIT D

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION | : | |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | Civil Action No. 08 Civ. 6609 (PAC) |
| | : | |
| ONE OR MORE UNKNOWN PURCHASERS OF CALL OPTIONS FOR THE COMMON STOCK OF DRS TECHNOLOGIES, INC. AND AMERICAN POWER CONVERSION CORP., | : | |
| | : | |
| Defendant | : | |

## DECLARATION OF NINA LASERSON DUNN

I, Nina Laserson Dunn, pursuant to 28 U.S.C. § 1746, declare as follows:

1.     I am Executive Vice President, General Counsel and Secretary of DRS Technologies, Inc. ("DRS"). I make this declaration on my own personal knowledge and information based upon my position with DRS. I understand that the United States Securities and Exchange Commission ("Commission") has alleged that one or more unknown purchasers of call options for DRS common stock ("Unknown Purchaser") engaged in securities trading in violation of the U.S. federal securities laws, in advance of the disclosure of merger negotiations on May 8, 2008 between DRS and Finmeccanica S.p.A. ("Finmeccanica").

2.     Headquartered in Parsippany, New Jersey, DRS is a Delaware corporation that supplies integrated products, services, and support to military forces, intelligence agencies and prime contractors worldwide. Shares of DRS common stock trade on the New York Stock Exchange under the ticker symbol "DRS." Options for the purchase or sale of DRS common stock trade on the Chicago Board Options Exchange, the Philadelphia Stock Exchange, the International Securities Exchange, the American

Stock Exchange and the NYSE Area. DRS's common stock is registered with the Commission pursuant to 12(b) of the Securities Exchange Act of 1934 ("Exchange Act").

3.     Finmeccanica, headquartered in Rome, Italy, is primarily an aerospace and defense company. Shares of Finmeccanica are listed on the Milan Exchange and are quoted on the "Pink Sheets" in the United States under the ticker symbol "FINMF.PK."

4.     On May 8, 2008 the Wall Street Journal reported that Finmeccanica was in advanced negotiations to acquire DRS.

5.     At 9:57 am EST that same day DRS issued a statement, through Business Wire, that it was "engaged in discussions contemplating a potential strategic transaction involving the company," and that there was no assurance that any agreement would be reached.

6.     On May 12, 2008, Finmeccanica announced it would acquire all outstanding shares of DRS common stock for approximately $5.2 billion, or $81 a share.

7.     During the negotiation of the DRS-Finmeccanica deal, the DRS personnel and advisers who received information related to the potential transaction were advised that such information was non-public and confidential.

I declare under penalty of perjury that the foregoing is true and correct.

Nina Laserson Dunn

Executed on August _11_, 2008

5 Sylvan Way
Parsippany, New Jersey 07054

# EXHIBIT E

Schwanengasse 12
P.O.Box
CH-3001 Berne
Phone +41 31 322 69 11
Fax +41 31 322 69 26
info@ebk.admin.ch
www.sfbc.admin.ch

Eidgenössische Bankenkommission
Commission fédérale des banques
Commissione federale delle banche
Swiss Federal Banking Commission

| | |
|---|---|
| Date | 24.07.2008 |
| Responsible | Serge Husmann |
| Department | Legal |
| Direct phone | +41 31 323 26 63 |
| Direct e-mail | serge.husmann@ebk.admin.ch |
| Reference | 2008-07-21/165/14532 |

**LSI and fax: 001 202 772 9281**
Securities and Exchange Commission
Alberto A. Arevalo
450 Fifth Street, NW
Washington, DC 20549
United States

**Your requests for assistance in the matter of DRS Technologies, Inc. (HO-10874) / OIA Ref. #2008-01002-001) ("DRS") and in the matter American Power Conversion Corp. (HO-10770) / OIA Ref. # 2008-00498 ("APCC")**

Dear Mr. Arevalo,

We refer to the above mentioned requests dated 7 July 2008, DRS, and 6 June 2008, APCC.

We are working on these requests in order to transmit the requested information to your authority. In the meanwhile, we wish to inform you of the following:

- The same individual originated and is the beneficial owner of the trades in DRS and APCC executed through UBS, which are under investigation by the SEC.

- After reviewing the trading activity of this client, UBS AG concluded that the trading activity appeared suspicious and decided, in application of Swiss regulation, not to execute further transactions on his behalf. The client was informed of this decision on 10 July 2008 and is in contact (either directly or through his attorney) with UBS AG regarding these events.

- The client is aware of the SEC request to the SFBC for information regarding the APCC trading, but not yet aware of the SEC's similar request regarding DRS.

- Based on these events, the client might end his banking and trading relationship with UBS AG at any moment and transfer his assets out of UBS AG and/or Switzerland.

- As of 15 July 2008, approximately half of the assets deposited with UBS is immediately available and could be moved at any time. The other part is invested in shares of investment funds for approximately EUR 2,3 million. These shares cannot be redeemed before 4 August 2008.

We hope this information will be useful. We remain at your disposal should you have any question.

Best regards,

The Secretariat of the
**SWISS FEDERAL BANKING COMMISSION**
Legal department

Dr David Wyss                    Serge Husmann

# EXHIBIT F

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, :<br><br>Plaintiff, :<br><br>v. :<br><br>ONE OR MORE UNKNOWN PURCHASERS OF CALL OPTIONS FOR THE COMMON STOCK OF DRS TECHNOLOGIES, INC. AND AMERICAN POWER CONVERSION CORP., :<br><br>Defendant. : | Civil Action No. 08-6609 |

---

### DECLARATION OF ALBERTO A. AREVALO IN SUPPORT OF PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S MOTION FOR EXTENSION OF TEMPORARY RESTRAINING ORDER FREEZING ASSETS AND GRANTING OTHER RELIEF

I, Alberto A. Arevalo, pursuant to 28 U.S.C. 1746, declare as follows:

1.      I am an attorney with the United States Securities and Exchange

Commission ("Commission") and hold the position of Assistant Director, International

Enforcement at the Commission's Office of International Affairs ("OIA"). My current

duties at the Commission include assisting Commission attorneys in the international

aspects of their matters and facilitating communication between Commission attorneys

and foreign securities regulators. I am a member of good standing of the Bar of

California and was admitted to that Bar in 1984. I submit this declaration in support of

Plaintiff Securities and Exchange Commission's Motion for Extension of Temporary

Restraining Order Freezing Assets and Granting Other Relief. The facts set forth herein

are based upon my personal knowledge or upon information contained in the files of the Commission.

2.    It is my understanding one or more unknown purchasers ("Unknown Purchaser") engaged in suspicious trading in call options contracts for the common stock of DRS Technologies, Inc. ("DRS") and American Power Conversion Corp. ("APCC") occurred through an account known as UBSL A/C Exchange Traded Derivative Account # 452-6020300 at UBS AG in Zurich Switzerland and cleared through UBS Securities LLC .

3.    On July 25, 2008, the United States District Court for the Southern District of New York, the Honorable Judge Alvin K. Hellerstein, granted the Commission's Motion for a Temporary Restraining Order Freezing Assets and Granting Other Relief and Order to Show Cause Why a Preliminary Injunction Should Not Issue ("the TRO"). The Court scheduled a show cause hearing for August 5, 2008 at 10:00 a.m.

4.    Because of the international aspects in this matter, the OIA has assisted the Commission staff in attempting to effect service and notice of these proceedings to entities and persons located outside the United States. Due to the laws under which certain of the Commission's foreign counterparts operate, the time necessary to obtain brokerage and other information from certain regulators outside the United States is frequently significant. In this case, the Commission has taken a variety of actions to notify the defendants and other affected parties about the developments in this litigation while contemporaneously seeking specific records and information from foreign regulators.

5.    Since the TRO was entered, the Commission staff has taken numerous steps to attempt to notify defendants of the pendency of this action, the existence of the TRO, and the preliminary injunction hearing. These efforts are detailed below.

6.    On July 28, 2008, pursuant to the Treaty between the United States and Switzerland on Mutual Assistance in Criminal Matters ("MLAT"), the United States Department of Justice, at the request of OIA, transmitted a request to Swiss Division of International Legal Assistance ("SDIA") for an emergency freeze of funds at UBS AG which represent the proceeds of insider trading by Unknown Purchaser. The MLAT request included a description of this litigation and the actions taken by this Court in the litigation. Enclosed with the MLAT request was a copy of the TRO issued by the Court on July 25, 2008. The United States Department of Justice has informed OIA that the Swiss authorities will deliver a copy of the MLAT request to the Unknown Purchaser in this case.

7.    Under Swiss criminal law, a United States governmental agency, such as the Commission, is prohibited from initiating any direct contact with any person or entity located in Switzerland for purposes of investigation or litigation. Accordingly, the Commission sought the assistance of the Swiss Federal Banking Commission ("SFBC") in accordance with letters of cooperation between the Commission and the SFBC dated November 17, 1997 and January 18, 2001 ("the Swiss Letters").

8.    On July 29, 2008, the OIA asked SDIA, through the United States Department of Justice, to tell the Commission when the MLAT request to freeze assets would take effect. On July 30, 2008, the OIA received notice that the SDIA had, on that same day, issued its order to freeze the accounts of Unknown Purchaser at UBS AG

3

Zurich. However, the Swiss authorities were unable to say when UBS AG Zurich would inform the Unknown Purchaser that it had frozen the accounts. Based upon past OIA experience, it was anticipated that the bank would notify the Unknown Purchaser soon after receipt of the SDIA freeze order.

9.    On July 30, 2008, the OIA asked the SFBC whether the TRO and complaint, which the OIA had sent to the SFBC on July 28, 2008, had, in turn, been provided by the SFBC to UBS AG Zurich and whether that bank had provided those pleadings to the Unknown Purchaser. The OIA also asked the SFBC to contact the compliance officer at UBS AG Zurich and ask him to contact Commission staff to discuss this matter. In addition, the OIA informed the SFBC that the Court's TRO had authorized service upon the Unknown Purchaser through UBS AG Zurich.

10.    On July 31, 2008, the SFBC asked the OIA to send it the court pleadings in response to the OIA's request for SFBC to deliver the TRO, complaint and all related pleadings to Unknown Purchaser and UBS AG. A copy of the TRO, the complaint, summons and all other related pleadings were transmitted to the SFBC, via e-mail and by International Federal Express, on July 31, 2008. As of the date of this declaration, the Commission has not received confirmation that these documents were delivered to UBS AG Zurich or Unknown Purchaser.

11.    The SFBC has advised the Commission that the principal Unknown Purchaser does not reside in Switzerland. Swiss law does allow the SFBC to release identifying information about the unknown Purchaser to the Commission under the circumstances of this case. However, Swiss law provides that any individual or entity to be identified has the right to challenge the SFBC's proposed disclosure. If an Unknown

4

Purchaser does file an objection, disclosure of identifying information could be delayed for as long as six months, even if the disclosure is ultimately allowed. Through its MLAT request, the Commission, however, also requested the SDIA to obtain the identity, address and other identifying information about Unknown Purchaser.

12.    The OIA and Commission staff has also been working on serving Unknown Purchaser through delivery of a request to the Swiss authorities under the Hague Convention on the Service Abroad of Judicial and Extra Judicial Documents in Civil and Commercial Matters. The OIA and the Commission staff will ask that UBS AG be served under that Hague Service request as an agent for the Unknown Purchaser. Swiss authorities, however, require that the court pleadings be attached to such Hague Service request and that the court pleadings be translated into German. Commission staff is currently working on obtaining such translation.

I declare under penalty of perjury that the foregoing is true and correct.

Dated August 1, 2008.

Alberto A. Arevalo

# EXHIBIT G

**Infelise, Jeffrey**

| | |
|---|---|
| **From:** | Infelise, Jeffrey |
| **Sent:** | Thursday, July 31, 2008 11:11 AM |
| **To:** | 'alan.brudner@ubs.com' |
| **Cc:** | 'judith.romaine@ubs.com'; 'rhonda.byun@ubs.com' |
| **Subject:** | SEC v. Unknown Purchasers, No. 90-cv-6609 |
| **Attachments:** | DRS-APCC-Complaint.pdf; Summons Unknown Purchasers 1.pdf; Summons Unknown Purchasers 2.pdf |

Attached are the Securities and Exchange Commission's complaint and summons in the subject case.  I am sending them pursuant to the Court's Order which was provided to you on July 28, 2008.

      

DRS-APCC-Complai   Summons Unknown   Summons Unknown
nt.pdf (514 KB...      Purchasers 1.p...      Purchasers 2.p...

Respectfully,

Jeffery T. Infelise
Assistant Chief Litigation Counsel
Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549-4010
202-551-4904

From:    Origin ID: YKNA    (202) 551-4904
Jeffery Infelise
SEC
Division of Enforcement
100 F Street, N.E.
Washington, DC 20549



Ship Date: 31JUL08
ActWgt: 1.0 LB
System#: 9756801/INET8061
Account#: S ********

Delivery Address Bar Code



Ref #
Invoice #
PO #
Dept #

SHIP TO:    (000) 000-0000        BILL SENDER
**Mr. Alan Brudner, Esquire**
**UBS Securities, LLC**
**Head of Litigation**
**299 Park Avenue**
**New York, NY 10171**

TRK#  7960 4112 3477        **FRI - 01AUG**    **A1**
0201                        **PRIORITY OVERNIGHT**

**ZB JHCA**

**10171**
NY-US
**EWR**



**After printing this label:**
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

Warning: Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.

Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com.FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery,misdelivery,or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic valueof the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss.Maximum for items of extraordinary value is $500, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

From:   Origin ID: YKNA   (202) 551-4904
Jeffery Infelise
SEC
Division of Enforcement
100 F Street, N.E.
Washington, DC 20549



JCLS0606408/20/23

Ship Date: 31JUL08
ActWgt: 1.0 LB
System#: 9756801/INET8061
Account#: S ********

Delivery Address Bar Code

Ref #
Invoice #
PO #
Dept #

SHIP TO:   (000) 000-0000          BILL SENDER
**Ms. Judith Romaine**
**Executive Director, Compliance**
**UBS Securities LLC**
**201 Tresser Boulevard**
**STAMFORD, CT 06901**



TRK#
0201    7960 4113 6308

FRI - 01AUG      AA
**PRIORITY OVERNIGHT**

06901
CT-US
JFK

# ZS JSDA



**After printing this label:**
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

Warning: Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.

Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com. FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery,misdelivery,or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic valueof the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss.Maximum for items of extraordinary value is $500, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.



UNITED STATES
## SECURITIES AND EXCHANGE COMMISSION
100 "F" Street, N.E.
WASHINGTON, D.C. 20549-4010

DIVISION OF
ENFORCEMENT

Jeffery T. Infelise
Assistant Chief Litigation Counsel
Telephone: (202) 551-4904
Facsimile: (202) 772-9245

July 28, 2008

**Via E-Mail and FedEx**
Mr. Alan Brudner, Esq.
UBS Securities, LLC
Head of Litigation
299 Park Ave.
New York, NY 10171

Re:    <u>S.E.C. v. One or More Unknown Persons</u> 08-cv-6609

Dear Mr. Brudner:

Enclosed with this letter are copies of the documents filed by the Securities and Exchange Commission (the "Commission") in the subject case. On July 25, 2008, the Honorable Alvin K. Hellerstein granted the Commission's request for an *ex parte* Temporary Restraining Order to, among other things, freeze the assets of the one or more unknown purchasers of common stock of DRS Technologies and American Power Conversion Corporation. These purchases were made through the omnibus account known as UBSL A/C Exchange Traded Derivative Account # 452-6020300, and cleared through UBS Securities LLC. The Court's Order is enclosed with this letter.

The Court has scheduled a hearing at 10:00 a.m. on August 5, 2008, in Courtroom 20C and ordered the defendants or their attorneys to appear to show cause why the Court should not enter a preliminary injunction extending the asset freeze until a final disposition on the merits.

The Court's Order also provides that service of the Order and the complaint and all documents filed in support thereof may be served upon UBS Securities LLC as an agent of the undisclosed purchasers. Therefore, please take action to provide copies of the attached pleadings to the undisclosed purchasers and to inform them of the hearing scheduled for August 5, 2008.

If you have any further questions, please feel free to contact me at 202-551-4904 or at infelisej@sec.gov. Thank you again for your assistance.

Very truly yours,

Jeffery T. Infelise
Assistant Chief Litigation Counsel

Encl.

cc:    Ms. Judith Romaine
       Executive Director, Compliance
       UBS Securities LLC
       201 Tresser Blvd.
       Stamford, CT 06901

# EXHIBIT H

```
***********************
***   TX REPORT   ***
***********************

TRANSMISSION OK

TX/RX NO              3445
RECIPIENT ADDRESS     01141442579265
DESTINATION ID
ST. TIME              08/13 11:21
TIME USE              06'40
PAGES SENT              57
RESULT                OK
```

### Facsimile Transmittal Cover
## U.S. SECURITIES AND EXCHANGE COMMISSION



### Office of International Affairs
### 100 F Street, N.E.
### Washington, DC  20549-1004

**TO:** Central Aathority **Fax:** 41144 2579265
For the Canton of Zurich

**FROM:**

**SUBJECT:**

**Date:** 8-13-2008

**Total Number of Pages Including Cover Sheet:** 57

### IF YOU DO NOT RECEIVE ALL THE PAGES, PLEASE CALL US AS SOON AS POSSIBLE

*The attached material is intended for use by the individual or entity to which it is*
*specifically addressed and should not be read by or delivered to any other person.*

UNITED STATES
## SECURITIES AND EXCHANGE COMMISSION
WASHINGTON, D.C. 20549

## EXPEDITED TREATMENT REQUESTED

OFFICE OF
INTERNATIONAL
AFFAIRS

**BY FEDERAL EXPRESS**                                    12 August 2008

Obergericht des Kantons Zürich
Rechtshilfe
Postfach
Hirschengraben 15
8021 Zürich
SWITZERLAND
Tel: 41 44 257 91 91

Re:    **SEC v. One or More Unknown Purchasers of Call Options for the Common Stock of DRS Technologies, Inc. and American Power Conversion Corp, United States District Court, Southern District of New York (Civil Action Number 08 cv-6609)**

Dear Sir or Madam:

In accordance with Form USM-94 of the Hague Service Convention Request for Service Abroad of Judicial or Extrajudicial Documents, we request that your office, as the Central Authority for the Canton of Zürich, effect service of process of the enclosed Summons and Complaint as soon as possible on one of the defendants in the above-referenced case. Under the U.S. Federal Rules of Civil Procedure, Rules 4(c)(2) and 4(f)(1), the attorney/applicant is authorized to transmit this request for service under the Hague Convention.

Enclosed please find one set (in duplicate) of the following documents in connection with the above-referenced case: (1) Form USM-94, Hague Service Convention Request for Service Abroad of Judicial or Extrajudicial Documents; (2) Summons; (3) Complaint (4) Temporary Restraining Order Freezing Asset (TRO). The Summons, Complaint and TRO are in the original English together with a German translation. The documents are provided for the defendant for whom service is requested, who is currently located in Switzerland. Unknown Purchaser in UBSL A/C Exchange Traded Derivative Account #452-60203 c/o UBS AG, P.O. Box 8098, Zurich, Switzerland.

Please return the Form USM-94 Certificate of Service to Mr. Kevin Guerrero, Attorney for the U.S. Securities and Exchange Commission, 100 F Street, N.E., Mail Stop 8549-C, Washington, DC 20549, USA. If you need any additional information, please feel free to contact me by telephone at 202.551.4521 or by email at McCartneye@sec.gov. Thank you for your kind assistance in this matter.

Sincerely,

Erin McCartney
Senior Counsel (Attorney)

Enclosures

**U.S. Department of Justice**
United States Marshals Service



# REQUEST
## FOR SERVICE ABROAD OF JUDICIAL OR EXTRAJUDICIAL DOCUMENTS

*DEMANDE*
*AUX FINS DE SIGNIFICATION OU DE NOTIFICATION À L'ETRANGER*
*D'UN ACTE JUDICIAIRE OU EXTRAJUDICIAIRE*

**Convention on the service abroad of judicial and extrajudicial documents in civil or commercial matters, signed at The Hague, November 15, 1965.**
*Convention relative à la signification et à la notification à l'étranger des actes judiciaires ou extrajudiciaires en matière civile ou commerciale, signée à La Haye, le 15 novembre 1965.*

| Identity and address of the applicant<br>*Identité et adresse du requérant* | Address of receiving authority<br>*Adresse de l'autorité destinataire* |
|---|---|
| Kevin Guerrero, Attorney at Law for<br>U.S. Securities and Exchange Commission<br>100 F Street, NE, Washington, DC 20549, USA<br>Attorney has authority to make this request<br>pursuant to Rule 4 of the U.S. Federal Rules of<br>Civil Procedure | Obergericht des Kantons Zürich<br>Rechtshilfe<br>Postfach<br>Hirschengraben 15<br>8021 Zürich, Switzerland<br>T: ++41 44 257 91 91 |

The undersigned applicant has the honour to transmit -- in duplicate-- the documents listed below and, in conformity with article 5 of the above-mentioned Convention, requests prompt service of one copy thereof on the addressee, i.e., **(identity and address)**
*Le requérant soussignée a l'honneur de faire parvenir--en double exemplaire--à l'autorité destinataire les documents ci-dessous énumérés, en la priant, conformément à l'article 5 de la Convention précitée, d'en faire remettre sans retard un exemplaire au destinataire, à savoir:*
*(identité et adresse)*

Unknown Purchaser in UBSL A/C Exchange Traded Derivative Account # 452-60203

c/o UBS AG, P.O. Box 8098, Zurich, Switzerland

☒ (a) in accordance with the provisions of sub-paragraph (a) of the first paragraph of article 5 of the Convention.*
*a) selon les formes légales (article 5 alinéa premier, lettre a).*

☐ (b) in accordance with the following particular method (sub-paragraph (b) of the first paragraph of article 5)*:
*b) selon la forme particulière suivante (article 5, alinéa premier, lettre b) :*

☐ (c) by delivery to the addressee, if he accepts it voluntarily (second paragraph of article 5)*:
*c) le cas échéant, par remise simple (article 5, alinéa 2).*

The authority is requested to return or to have returned to the applicant a copy of the documents and of the annexes with a certificate as provided on the reverse side.
*Cette autorité est priée de renvoyer ou de faire renvoyer au requérant un exemplaire de l'acte - et de ses annexes - avec l'attestation figurant au verso.*

| List of documents<br>*Énumération des pièces* | Done at Washington, DC , the 12 Aug. 2008<br>*Fait à , le* |
|---|---|
| Complaint | |
| Summons | Signature and/or stamp<br>*Signature et/ou cachet* |
| Temporary Restraining Order ("TRO") | |

*Delete if inappropriate
*Rayer les mentions inutiles.*

Form USM-94
Est. 11/77
(Formerly OBD-116, which was formerly LAA-116, both of which may still be used)

# CERTIFICATE
## *ATTESTATION*

The undersigned authority has the honour to certify, in conformity with article 6 of the Convention,
*L'autorité soussignée a l'honneur d'attester conformément à l'article 6 de ladite Convention,*

1) that the document has been served *
*1)  que la demande a été exécutée*
— the (date) -- *le (date)* _____
-- at (place, street, number) - *à (localité, rue, numéro)*

-- in one of the following methods authorized by article 5:
*-- dans une des formes suivantes prévues à l'article 5:*

☐ (a) in accordance with the provisions of sub-paragraph (a) of the first paragraph of article 5 of the Convention*.
*a) selon les formes légales (article 5. alinéa premier, lettre a)*

☐ (b) in accordance with the following particular method:
*b) selon la forme particulière suivante:* _____

☐ (c) by delivery to the addressee, who accepted it voluntarily.*
*c) par remise simple.*

The documents referred to in the request have been delivered to:
*Les documents mentionnés dans la demande ont été remis à:*

- (identity and description of person)
- *(Identité et qualité de la personne)*

- relationship to the addressee family, business or other
- *liens de parenté de subordination ou autres avec le destinataire de l'acte:*

2) that the document has not been served, by reason of the following facts*:
*2) que la demande n'a pas été exécutée, en raison des faits suivants:*

In conformity with the second paragraph of article 12 of the Convention, the applicant is requested to pay or reimburse the expenses detailed in the attached statement*
*Conformément  à l'article 12, alinéa 2, de ladite Convention, le requérant est prié de payer ou de rembourser les frais dont le détail figure au mémoire ci-joint.*

ANNEXES
*Annexes*

Documents returned:
*Pièces renvoyées*

_____

_____

In appropriate cases, documents establishing the service:
*Le cas échéant, les documents justificatifs de l'exécution:*

_____

Done at _____ , the _____
*Fait à* _____ , *le* _____

Signature and/or stamp
*Signature et/ou cachet*

_____

## SUMMARY OF THE DOCUMENT TO BE SERVED
### ÉLÉMENTS ESSENTIELS DE L'ACTE

**Convention on the service abroad of judicial and extrajudicial documents in civil or commercial matters, signed at The Hague, November 15, 1965.**

*Convention relative à la signification et à la notification à l'étranger des actes judiciaires ou extrajudiciaires en matière civile ou commerciale, signée à La Haye, le 15 novembre 1965.*

### (article 5, fourth paragraph)
### (article 5, alinéa quatre)

**Name and address of the requesting authority:**
*Nom et adresse de l'autorité requérante:*

U.S. Securities and Exchange Commission, 100 F Street NE, Washington, DC 20549, USA

**Particulars of the parties:**
*Identité des parties:*

SEC is a U.S. gov't agency.  Assets of Unknown Purchasers are in Switzerland, but identities are unknown.

### JUDICIAL DOCUMENT
### ACTE JUDICIA IRE

**Nature and purpose of the document:**
*Nature et objet de l'acte:*

Summons (to appear in court); Complaint (alleges U.S. law violations and seeks relief); TRO (asset freeze).

**Nature and purpose of the proceedings and, where appropriate, the amount in dispute:**
*Nature et objet de l'instance, le cas échéant, le montant du litige:*

Government requests to continue asset freeze and injunction to stop violations and return of money.

**Date and place for entering appearance:**
*Date et lieu de la comparution:*

Show cause hearing is August 18, 2008.  Answer is due 20 days after service of Summons and Complaint.

**Court which has given judgment\*\*:**
*Juridiction qui a rendu la décision:*

Summons and TRO issued by U.S. District Court in New York, New York, USA.

**Dale of judgment\*\*:**
*Date de la décision:*

Summons was issued on July 25, 2008.

**Time limits stated in the document\*\*:**
*Indication des délais figurant dans l'acte:*

An answer is due 20 days after service of Summons and Complaint.

### EXTRAJUDICIAL DOCUMENT
### ACTE EXTRAJUDICIAIRE

**Nature and purpose of the document:**
*Nature et objet de l'acte:*

**Time limits stated in the document:\*\***
*Indication des délais figurant dans l'acte:*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| ONE OR MORE UNKNOWN PURCHASERS OF CALL OPTIONS FOR THE COMMON STOCK OF DRS TECHNOLOGIES, INC. AND AMERICAN POWER CONVERSION CORP., | : |
| | : |
| Defendant. | : |

Civil Action No. 08 cv 6609 (UA)

## TEMPORARY RESTRAINING ORDER FREEZING ASSETS AND GRANTING OTHER RELIEF AND ORDER TO SHOW CAUSE WHY THE ASSET FREEZE SHOULD NOT CONTINUE

On the application of Plaintiff Securities and Exchange Commission ("Commission") for

an *ex parte* Order: (1) freezing assets; (2) requiring identification; (3) requiring repatriation of

assets; (4) preventing document alteration or destruction; (5) expediting discovery in this action; (6)

providing for alternative service; and (7) requiring defendants to show cause why the Court should

not issue a Preliminary Injunction and impose other relief against them:

The Court, having considered the Complaint in this action; the Declarations of Kevin

Guerrero and Ilana Sultan, a letter from the Swiss Federal Banking Commission and the

Memorandum of Points and Authorities in support of the Motion for Temporary Restraining Order,

makes the following findings:

1.      This Court has jurisdiction over the subject matter of this action and over defendant.

2.    The Commission has made a sufficient and proper showing in support of the relief granted herein, as required by Section 21(d) of the Securities Exchange Act of 1934 (15 U.S.C. § 78u(d)) by evidence establishing a *prima facie* case and a strong likelihood that the Commission will prevail at trial on the merits and that the defendant, directly or indirectly, has engaged in and, unless restrained and enjoined by order of this Court, will continue to engage in acts, practices, and courses of business constituting violations of Section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78j(b)), and Rule 10b-5 (17 C.F.R. § 240.10b-5).

3.    There is good cause to believe that, unless restrained and enjoined by order of this Court, defendants will dissipate, conceal, or transfer from the jurisdiction of this Court assets which could be subject to an order directing disgorgement or the payment of civil money penalties in this action.  It is appropriate for the Court to issue this Temporary Restraining Order *ex parte* so that prompt service on appropriate financial institutions can be made, thus preventing the dissipation of assets.

4.    There is good cause to believe that, unless restrained and enjoined by order of this Court, defendant may alter or destroy documents relevant to this action.

Now, therefore,

## I.

IT IS HEREBY ORDERED that, pending the determination of the Commission's Motion for a Preliminary Injunction or hearing on the merits:

A.    Defendants and their agents, servants, employees, attorneys-in-fact, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise (including without limitation, UBS Securities LLC and UBS AG Zurich), and each of them, hold and retain within their control, and otherwise prevent any

2

disposition, transfer, pledge, encumbrance, assignment, dissipation, concealment, or other disposal

whatsoever of any of their funds or other assets or things of value presently held by them, under

their control or over which they exercise actual or apparent investment or other authority, in

whatever form such assets may presently exist including, but not limited to:

(1)    Proceeds from the sale of 1,600 APCC call options purchased on September 21, 2006 through an omnibus account known as UBSL A/C Exchange Traded Derivative Account # 452-6020300 maintained by UBS AG of Zurich, Switzerland ("UBS Omnibus Account");

(2)    Proceeds from the sale of 800 APCC call options purchased on September 22, 2006 through the UBS Omnibus Account;

(3)    Proceeds from the sale of 350 APCC call options purchased on October 10, 2006 through the UBS Omnibus Account;

(4)    Proceeds from the sale of 80 APCC call options purchased on October 20, 2006 through the UBS Omnibus Account;

(5)    Proceeds from the sale of 550 DRS call options purchased on April 29, 2008 through the UBS Omnibus Account;

(6)    Proceeds from the sale of 170 DRS call options purchased on May 5, 2008 through the UBS Omnibus Account;

(7)    Proceeds from the sale of 170 DRS call options purchased on May 6, 2008 through the UBS Omnibus Account;

(8)    Proceeds from the sale of 930 DRS call options purchased on May 7, 2008 through the UBS Omnibus Account;

B.    That any financial or brokerage institution or other person or entity and holding any

funds or other assets in the name of, for the benefit of, or under the control of defendants, their

agents, servants, employees, attorneys-in-fact, and those persons in active concert or participation

with them, and each of them, shall hold and retain within their control and prohibit the withdrawal,

removal, transfer or other disposal of any such funds or other assets except as otherwise ordered

by this Court.  Necessary and reasonable living expenses will be granted to defendants upon

3

good cause shown by application to the Court with notice to and an opportunity for the Commission to be heard;

## II.

IT IS HEREBY FURTHER ORDERED that, each defendant shall submit in writing to this Court and Plaintiff Commission within two (2) business days following service of this Order, the following identify information:

    (A) all names by which each defendant is known, all business and residence addresses, postal box numbers, telephone numbers, and facsimile numbers, e-mail addresses and the nationality of defendant; and

    (B) each account with any financial institution or brokerage firm maintained in defendant's name or held for defendant's direct or indirect beneficial interest from September 1, 2006 through the present, including, but not limited to, each account through which each defendant directed securities transactions since September 1, 2006, or in which proceeds from such transactions were held.

## III.

IT IS HEREBY FURTHER ORDERED that, within ~~72 hours~~ **3 business days** of notice of the entry of this Order, each defendant shall repatriate all assets obtained from the activities described in the Commission's Complaint that are now located outside the territorial limits of the United States, and that each defendant direct the return of such assets to the Registry of the Court, pending conclusion of this matter.

*AAZ*

## IV.

IT IS HEREBY FURTHER ORDERED that, defendants and his agents, servants, employees, attorneys-in-fact, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, and each of them, are hereby restrained from destroying, mutilating, concealing, altering, or disposing of any document referring or relating in any manner to any transactions described in the Commission's complaint in this action. As used in this order, "document" means the original and all non-identical copies (whether non-identical because of handwritten notation or otherwise) of all written or graphic matter, however produced, and any other tangible record, or electronic data compilation capable of reproduction in tangible form, including, without limitation, correspondence, memoranda, minutes, telephone records, e-mails, reports, studies, telexes, diaries, calendar entries, contracts, letters of agreement, and including any and all existing drafts of all documents.

## V.

A.    IT IS HEREBY FURTHER ORDERED that, pursuant to Rule 4 of the Federal Rules of Civil Procedure, service of all pleadings and other papers, including the Summons, the Complaint, this Order and all documents filed in support thereof, and all other documents to be served in this action, may be made by serving such documents on any of the following agents of defendants: UBS Securities LLC, or UBS AG Zurich, Switzerland and any of their respective affiliates, successors in interest and assigns, *these entities having been acting in securities matters for individual principals* . *(AB.P)*

B.    IT IS HEREBY FURTHER ORDERED that, pursuant to Rule 4 of the Federal Rules of Civil Procedure, service of all pleadings and other papers, including the Summons, the Complaint, this Order and all documents filed in support thereof, and all other documents to be served in this action, may be made personally, by facsimile, by overnight courier, or by mail upon

each defendant, his attorney, his U.S. agents or his foreign agents identified in the prior subparagraph to the extent permitted by law, or by an alternative provision for service permitted by Rule 4 of the Federal Rules of Civil Procedure, or as this Court may direct by further order.

### VI.

IT IS HEREBY FURTHER ORDERED that, the Commission's application for expedited discovery concerning defendants, their assets and activities, is granted and that, commencing with the time and date of this Order, in lieu of the time periods, notice provisions, and other requirements of Rules 26, 30, 33, 34, 36 and 45 of the Federal Rules of Civil Procedure, and Rule 30.1A of the Local Rules of this Court, discovery shall proceed as follows:

(A)    Pursuant to Rule 30(a) of the Federal Rules of Civil Procedure, the Commission may take depositions upon oral examination on two days notice of any such deposition. Depositions may be taken ~~Monday through Saturday.~~ As to each defendant and his agents, servants, employees, brokers and associates, the Commission may depose such witnesses after serving a deposition notice by facsimile, hand or overnight courier upon such individuals, and without serving a subpoena on such witness. Depositions which have not been signed by the witness may be used for purposes of the hearing on plaintiff Commission's application for a preliminary injunction;

(B)    Pursuant to Rule 33(a) of the Federal Rules of Civil Procedure, each defendant shall answer the Commission's interrogatories within three days of service of such interrogatories upon defendant;

(C)    Pursuant to Rule 34(b) of the Federal Rules of Civil Procedure, each defendant shall produce all documents requested by the Commission within three days of service of such

6

request, with production of the documents made to Jeffery T. Infelise, U.S. Securities & Exchange Commission, or such other person or place as counsel for the Commission may direct in writing;

(D)    Pursuant to Rule 36(a) of the Federal Rules of Civil Procedure, each defendant shall respond to the Commission's requests for admissions within three days of such requests; and

(E)    All written responses to the Commission's requests for discovery under the Federal Rules of Civil Procedure shall be delivered by hand or overnight courier to the Commission to the attention of Jeffery T. Infelise, or such other place and person as counsel for the Commission may direct in writing.

### VII.

IT IS HEREBY FURTHER ORDERED, that this Order shall be, and is, binding upon each defendant, and each of his agents, servants, employees, attorneys-in-fact, and those persons in active concert or participation with him who receive actual notice of this Order by personal service, facsimile service, or service in accordance with Section V of this Order, or otherwise.

### VIII.

IT IS HEREBY FURTHER ORDERED, that each defendant or his attorneys shall appear before this Court at *10:00* o'clock, *a* m., on the _____ *5* day of _____, 2008, in Room *(Judge Crotty)* *20 C* of the United States Courthouse, New York, New York, or as soon thereafter as he can be heard, and in any event prior to the expiration of this Order, to show cause, if any exists, why this Court should not enter a preliminary injunction extending the asset freeze granted in this Order until a final adjudication on the merits may be had. Defendants shall serve any papers in opposition to such relief by hand delivery or overnight courier service to the Commission's counsel, Jeffery T. Infelise, Assistant Chief Litigation Counsel, Securities and Exchange Commission, 100 F Street, NE, Mail Stop 4010, Washington, DC, 20549, or via email to infelisej@sec.gov, no later than three full business days before such hearing. The Commission may serve and file a reply no later than 24 hours before the hearing, and shall serve such reply brief, if any, on each defendant or his attorney by facsimile transmission, email,

courier service, or other means as the Commission may reasonably determine will give defendants or their attorneys prompt delivery of these papers.

## IX.

~~IT IS FURTHER ORDERED that the Court shall retain jurisdiction of this matter for all purposes.~~

Dated this **25** day of July, 2008.

_____
UNITED STATES DISTRICT JUDGE

8

✎AO 440  (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

_____Southern_____ District of _____New York_____

SECURITIES AND EXCHANGE COMMISSION

**SUMMONS IN A CIVIL ACTION**

V.

ONE OR MORE UNKNOWN PURCHASERS OF
CALL OPTIONS FOR THE COMMON STOCK

CASE NUMBER:   08 cv 6609

TO: (Name and address of Defendant)

UNKNOWN  PURCHASERS  1

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

Richard E. Simpson
Jeffrey T. Infelise
Securities and Exchange Commission
100 F Street N.E.
Washington, D.C. 20549-4030

an answer to the complaint which is served on you with this summons, within _____ 20 _____ days after service
of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you
for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the
Clerk of this Court within a reasonable period of time after service.

J. MICHAEL McMAHON

JUL 2 5 2008

CLERK

DATE

(By) DEPUTY CLERK

AO 440 (Rev. 8/01) Summons in a Civil Action

## RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and complaint was made by me[1] | |
| NAME OF SERVER *(PRINT)* | TITLE |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant. Place where served:

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

    Name of person with whom the summons and complaint were left:

☐ Returned unexecuted:

☐ Other (specify):

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL $0.00 |
|---|---|---|

## DECLARATION OF SERVER

    I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____     _____
                Date                  *Signature of Server*

_____
                  *Address of Server*

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

'08 CIV 6609

SECURITIES AND EXCHANGE
COMMISSION,

     **Plaintiff,**

    **v.**

ONE OR MORE UNKNOWN PURCHASERS
OF CALL OPTIONS FOR THE COMMON
STOCK OF DRS TECHNOLOGIES, INC.
AND AMERICAN POWER CONVERSION
CORP.,

     **Defendant.**

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

Civil Action No. _____



## COMPLAINT

   Plaintiff Securities and Exchange Commission (the "SEC" or "Commission"), for its

Complaint alleges as follows:

## SUMMARY OF ALLEGATIONS

   1.  This is an insider trading case involving highly profitable and highly suspicious

purchases of call option contracts for the common stock of DRS Technologies, Inc. ("DRS") and

American Power Conversion Corp. ("APCC") made through an account at UBS AG in Zurich,

Switzerland ("UBS Zurich"), by one or more unknown purchasers ("Unknown Purchaser") that

resulted in profits of approximately $3.3 million. Twice in a period of less than two years,

Unknown Purchaser made well-timed purchases of call options of these two different

corporations in the days and weeks immediately preceding public disclosures and

announcements relating to these companies' ultimate acquisitions. In both cases, there was no

public information available concerning the acquisitions before Unknown Purchaser purchased the call options.

2.    In the first instance, on September 13, 2006, Schneider Electric SA ("Schneider") sent a letter to APCC indicating its interest in acquiring APCC, to which APCC positively responded on September 20, 2006. The Schneider letter and APC response were non-public information. Beginning on September 21, 2006 and continuing through October 20, 2006 the Unknown Purchaser made purchases of 2,830 APCC call options that were out-of-the money. After Schneider publicly announced on October 30, 2006, its intention to acquire all of the outstanding shares of APCC, the company's stock price increased by 26 percent.

3.    On October 30, 31 and November 3, 2006, following the announcement of the merger, Unknown Purchaser liquidated his APCC call options holdings and realized a profit of approximately $1.7 million.

4.    Less than two years later, beginning on April 29, 2008 and ending on May 7, 2008, the Unknown Purchaser bought 1,820 DRS call options that were out-of-the-money and due to expire shortly. On May 8, 2008, the day after the Unknown Purchaser made his last acquisition of DRS call options, it was publicly reported for the first time that Finmeccanica SpA ("Finmeccanica") was in advanced talks to purchase DRS. On May 12, 2008, Finmeccanica announced that it would acquire DRS for $5.2 billion, or $81 a share. Prior to May 8, 2008, information concerning Finmeccanica's interest in acquiring DRS was confidential and nonpublic. As a result of the announcement concerning the Finmeccanica-DRS deal, the common stock of DRS rose rapidly, reaching $73.89 per share when trading closed on May 8, 2008.

2

5.    On May 8, 2008, Unknown Purchaser liquidated his entire DRS call option holding and realized a profit of approximately $1.6 million.

## JURISDICTION AND VENUE

6.    This Court possesses jurisdiction over this matter pursuant to Sections 21(e), 21A, and 27 of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78u(e), 78u-1, and 78aa]. Defendant has directly or indirectly made use of the means or instrumentalities of interstate commerce, or of the mails, or the facilities of a national securities exchange in connection with the acts, practices, transactions, and courses of business alleged in this Complaint.

7.    Venue lies in this Court pursuant to Section 27 of the Exchange Act [15 U.S.C. § 78aa] because certain acts, practices, transactions and courses of business constituting the violations occurred in the Southern District of New York.

8.    Defendant will, unless restrained and enjoined, continue to engage in the acts, practices, transactions, and courses of business alleged in this Complaint, or in acts, practices, transactions, and courses of business of similar purport and object.

## RELATED CASE

9.    Pursuant to Civil Rule 1.6(a) of the Local Rules of the United States District Court for the Southern District of New York, the Commission notes this action is related to the S.E.C. v. Cristian De Colli, No. 08 –civ-4520 (PAC) (S.D.N.Y. May 15, 2008).

## DEFENDANT

10.    Defendant, Unknown Purchaser, is one or more unidentified individuals who made suspicious purchases of a large number of APCC and DRS call options, respectively,

through an omnibus account known as UBSL A/C Exchange Traded Derivative Account # 452-6020300 (formerly designated # 450-6020300) ("UBS Omnibus Account").

## RELEVANT ENTITIES

11.    **DRS Technologies, Inc.** has its principal executive offices in Parsippany, New Jersey. DRS is a Delaware corporation that supplies integrated products, services, and support to military forces, government agencies, and prime contractors worldwide. DRS' common stock is registered with the Commission pursuant to Exchange Act Section 12(b). DRS' common shares trade on the New York Stock Exchange under the symbol "DRS," and its options trade on the Chicago Board Options Exchange, the Philadelphia Stock Exchange, the International Securities Exchange, and the NYSE Arca.

12.    **Finmeccanica SpA** is headquartered in Rome, Italy. Finmeccanica designs and manufactures, among other things, helicopters, civil and military aircraft, satellites, missiles, and defense electronics. Shares of Finmeccanica are listed on the Milan Stock Exchange and are quoted in the United States on the Pink Sheets under the ticker symbol FINMF.PK.

13.    **American Power Conversion Corp.** had its principal executive offices in West Kingston, Rhode Island, before its merger into an indirect, wholly-owned subsidiary of Schneider Electric SA was completed on February 14, 2007. APCC was a Massachusetts corporation that provided products and services for home and corporate environments to improve the availability, manageability, and performance of sensitive electronic, network, communication and industrial equipment. Prior to the Schneider acquisition, APCC's common stock was registered with the Commission pursuant to Exchange Act Section 12(g), its shares traded on the NASDAQ National Market and on the Pacific Exchange, Inc. under the ticker symbol "APCC,"

4

and its options traded on the Boston Stock Exchange, Chicago Board Options Exchange, the International securities Exchange, NYSE Arca, and the Philadelphia Stock Exchange.

14.     **Schneider Electric SA**, headquartered in Rueil-Malmaison, France, is an international company that designs, manufactures, and sells electrical distribution equipment, industrial robots, and secured power equipment.  Shares of Schneider trade on NYSE Euronext Paris under the ticker symbol PA.

15.     **UBS AG**, with headquarters in Zurich, Switzerland, operates in over 50 countries, including the United States.  It is a financial institution with wealth management, investment banking and asset management operations.

16.     **UBS Securities LLC** is a Delaware limited liability company with its principal place of business in Stamford, Connecticut.  It is a broker-dealer registered with the Commission pursuant to Section 15(b) of the Exchange Act and a subsidiary of UBS AG.

## FACTUAL ALLEGATIONS

I.     **The APCC Transaction**

   A.     **The Purchase of APCC Call Options by Unknown Purchaser**

17.     A call option, or a "call," is a financial contract between the buyer and the seller of this type of option.  The buyer of the option has the right, but not the obligation, to buy an agreed quantity of a particular security from the seller of the option at a certain time (the expiration date) for a certain price (the strike price). The buyer pays a fee (called a premium) for this right.  A call option contract typically gives the buyer the right to purchase 100 shares of the underlying security.

18.     The buyer of a call option wants the price of the underlying security to rise in the future.  When the market price of the security exceeds the strike price of the option, the

purchaser of the option can sell the option at the market for a premium. When the market price of the security exceeds the strike price, the option is said to be "in-the-money." The option increases in value when it is "in-the-money."

19.    On or about September 13, 2006 Schneider sent an "indication of interest" letter to the Chairman of the Board of Directors of APCC and the chief executive officer ("CEO") of APCC, expressing Schneider's interest in pursuing a strategic combination with APCC.

20.    On or about September 19, 2006, the APCC Board of Directors reviewed Schneider's "indication of interest" letter.

21.    On or about September 20, 2006, the Chairman of APCC's Board of Directors called Schneider's President and CEO and stated that the APCC's Board of Directors would be willing to have discussions with Schneider about a possible sale of APCC.

22.    On September 21, 2006, the price of a share of APCC common stock reached a high of $21.72 and closed at $21.30. On that same day, Unknown Purchaser bought 1,600 APCC call options due to expire in December 2006 with a strike price of $22.50, and, therefore, on the date they were purchased, the APCC options were not in-the-money.

23.    This purchase constituted 87.33 percent of the trading volume for APCC call options in that series on September 21, 2006, and constituted 26 percent of all the APCC options trading on that date.

24.    On September 22, 2006, the price of a share of APCC common stock reached a high of $21.60 and closed at $21.40. On that same date, Unknown Purchaser bought 800 APCC call options due to expire in December 2006 with a strike price of $22.50 and, therefore, on the date they were purchased, the APCC options were not in-the-money.

25.    Unknown Purchaser's purchase of APCC call options on September 22, 2006, represented 58.78 percent of the trading volume on that date for options in that series, and constituted approximately nine percent of the trading in all APCC options on that date.

26.    On October 10, 2006, the price of a share of APCC common stock reached a high of $21.98 and closed at $21.93. On that same date, Unknown Purchaser bought 350 APCC call options due to expire in November 2006 with a strike price of $22.50 and, therefore, on the date they were purchased, the APCC options were not in-the-money.

27.    This purchase of APCC call options on October 10, 2006, represented 14.5 percent of the trading volume on that date for options in that series.

28.    On October 20, 2006, the price of a share of APCC common stock reached a high of $22.90 and closed at $22.26. On that same date, Unknown Purchaser bought 80 APCC call options due to expire in December 2006 with a strike price of $25 and, therefore, on the date they were purchased, the APCC options were not in-the-money.

29.    This purchase of APCC call options on October 20, 2006, represented 60.15 percent of the trading volume on that date for options in that series.

30.    Between September 21 and October 20, 2006, Unknown Purchaser bought 2,830 APCC call options, none of which were in-the-money, at a cost of approximately $343,000.

31.    All the purchases of APCC call options by Unknown Purchaser were through the omnibus account known as UBSL A/C Exchange Traded Derivative Account # 452-6020300, and cleared through UBS Securities LLC.

**B.    The Announcement of Schneider's Acquisition of APCC**

32.    On Monday, October 30, 2006, at approximately 1:00 a.m. EST, Schneider announced that it would acquire all of the outstanding shares of APCC for $31 per share, in a transaction valued at approximately $6.1 billion.

33.    On October 30, 2006, the price of APCC stock opened at approximately $30 per share, and it traded in that range for the remainder of the day. Trading volume in APCC stock and options rose sharply that day, and the price of APCC stock closed at $30.02 per share, approximately 26 percent above its closing price on Friday, October 27, 2006.

34.    Upon information and belief, prior to the October 30, 2008, announcement, information concerning APCC's interest in being acquired and the potential agreement with Schneider was confidential, nonpublic information.

**C.    Unknown Purchaser Profits From Sale Of APCC Call Options**

35.    On October 30, 31, and November 3, 2006, following the announcement of Schneider's acquisition of APCC, Unknown Purchaser liquidated his holdings in APCC call options and realized a profit of approximately $1.7 million.

**II.    The DRS Transaction**

**A.    The Purchase Of DRS Call Options By Unknown Purchaser**

36.    On April 29, 2008, the price of a share of DRS common stock reached a high of $62.45 and closed at $61. On that same day, Unknown Purchaser bought 550 DRS call options due to expire in June 2008 with a strike price of $65, and, therefore, on the date they were purchased, the DRS options were not in-the-money.

37.    Unknown Purchaser's purchase of DRS call options on April 29, 2008, represented 58.15 percent of the trading volume on that date for options in that series.

8

38.    On May 5, 2008, the price of a share of DRS common stock reached a high of $64.81 and closed at $63.73. On that same day, Unknown Purchaser bought 170 DRS call options due to expire in June 2008 with a strike price of $70, and, therefore, on the date they were purchased, the DRS options were not in-the-money.

39.    Unknown Purchaser's purchase of DRS call options on May 5, 2008, represented 15.7 percent of the trading volume on that date for options in that series.

40.    On May 6, 2008, the price of a share of DRS common stock reached a high of $63.99 and closed at $63.07. On that same day, Unknown Purchaser bought 170 DRS call options due to expire in June 2008 with a strike price of $70, and, therefore, on the date they were purchased, the DRS options were not in-the-money.

41.    This purchase of DRS call options represented 100 percent of the trading volume on May 6, 2008, for options in that series.

42.    On May 7, 2008, the price of a share of DRS common stock reached a high of $64.41and closed at $63.74. On that same day, Unknown Purchaser bought 930 DRS call options due to expire in June 2008 with a strike price of $65, and, therefore, on the date they were purchased, the DRS options were not in-the-money.

43.    Unknown Purchaser's purchase of DRS call options on May 7, 2008, represented 53.1 percent of the trading volume on that date for options in that series.

44.    Between April 29, 2008 and May 7, 2008, Unknown Purchaser bought 1,820 DRS call options, none of which were in-the-money, at a cost of $456,200. All the DRC call options bought by Unknown Purchaser were through the omnibus account known as UBSL A/C Exchange Traded Derivative Account # 452-6020300, and cleared through UBS Securities LLC.

9

### B.    The DRS-Finmeccanica Announcement

45.    On Thursday, May 8, the Wall Street Journal reported that Finmeccanica was in advanced talks to purchase DRS, with the buyout price constituting at least a 25 percent premium above DRS' closing share price of $63.74 on the last trading day prior to the announcement. After the Wall Street Journal report, the price of DRS' common stock increased $9.01 per share, or 14 percent, to $72.65 in morning trading and closed on May 8, 2008, at $73.89 per share. During the 52 weeks prior to the Wall Street Journal report, DRS' common stock had traded between $44.11 and $65 per share.

46.    Also, on May 8, 2008, via a press release issued through Business Wire at 9:57 a.m. EST, DRS confirmed the Wall Street Journal report, announcing that it was "engaged in discussions contemplating a potential strategic transaction." In the weeks prior to the Article's publication on May 8, 2008, no major news organization reported either advanced discussions of an acquisition of DRS by Finmeccanica or speculation that DRS was a takeover target. Upon information and belief, all individuals and entities involved in negotiation of the DRS-Finmeccanica deal had been advised that all information relating to the potential acquisition was confidential and nonpublic information, and had agreed to keep the information confidential.

47.    On May 12, 2008, Finmeccanica announced that it would acquire DRS for $5.2 billion, or $81 per share.

### C.    Unknown Purchaser Profits From The Sale Of The DRS Call Options

48.    Following the May 8, 2008, Unknown Purchaser liquidated his entire DRS call option holding and realized a profit of approximately $1.6 million.

10

**II.    UBS Ceases Further Transactions On Behalf Of Unknown Purchaser**

49.    On June 6, 2008 and July 7, 2008, the Securities and Exchange Commission requested the assistance of the Swiss Federal Banking Commission ("SFBC") in obtaining information concerning the purchase of APCC and DRS call options executed through UBS.

50.    Those inquiries revealed that the same individual originated, and is the beneficial owner of, the trades in APCC call options, and the trades in DRS call options described in paragraphs 17 through 48.

51.    After reviewing the trading activity of the Unknown Purchaser, UBS AG concluded that the trading activity appeared suspicious and decided, in application of Swiss regulation, not to execute further transactions on behalf of the Unknown Purchaser. The Unknown Purchaser was informed of this decision on July 10, 2008.

## CLAIM FOR RELIEF

### Violations of Exchange Act Section 10(b) and Rule 10b-5 Promulgated Thereunder

52.    Paragraphs 1 through 51 are realleged and incorporated by reference.

53.    Upon information and belief, at the time Defendant purchased APCC call option contracts as set forth above, he was in possession of material, nonpublic information about Schneider's offer to acquire APCC. Defendant (a) knew, or recklessly disregarded the fact that his trading was in breach of a fiduciary duty or similar duty of trust and confidence owed to the shareholders of APCC or to the source from whom he received the material, nonpublic information; or (b) knew or should have known that material, nonpublic information about the acquisition had been communicated to him in breach of a fiduciary or similar duty of trust and confidence.

11

54.    Upon information and belief, at the time Defendant purchased DRS call option contracts as set forth above, he was in possession of material, nonpublic information about Finmeccanica's offer to acquire DRS.    Defendant (a) knew, or recklessly disregarded the fact that his trading was in breach of a fiduciary duty or similar duty of trust and confidence owed to the shareholders of DRS or to the source from whom he received the material, nonpublic information; or (b) knew or should have known that material, nonpublic information about the acquisition had been communicated to him in breach of a fiduciary or similar duty of trust and confidence.

55.    By reason of the conduct described above, defendant, in connection with the purchase or sale of securities, by the use of any means or instrumentalities of interstate commerce or of the mails, or of any facility of any national securities exchange, directly or indirectly (a) employed devices, schemes, or artifices to defraud; (b) made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (c) engaged in acts, practices, or course of business which operates or would operate as a fraud or deceit upon any persons, including purchasers or sellers of the securities.

56.    By reason of the foregoing, Defendant, directly and indirectly, violated Section 10(b) of the Exchange Act [15 U.S.C § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

### **PRAYER FOR RELIEF**

WHEREFORE, the Commission requests that the Court enter judgment:

(a)    permanently enjoining Defendants from violating Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5];

12

(b)     ordering Defendants to disgorge all illicit trading profits resulting from conduct alleged in this Complaint, along with prejudgment interest;

(c)     ordering Defendants to pay civil monetary penalties pursuant to Exchange Act Section 21A [15 U.S.C. § 78u-1]; and

(d)     granting such other and further relief as the Court deems just and appropriate.

Dated: Washington, D.C.
      July 25, 2008

Respectfully submitted,

Of Counsel:
    Antonia Chion
    Christopher Conte
    Daniel Chaudoin
    Mark J. Kreitman
    Noel A. Gittens
    Ivonia Slade
    E. Laurita Finch
    Kevin Guerrero
    Ilana Sultan

Richard E. Simpson (RS5859)
Jeffrey T. Infelise (DC 456998)
100 F Street N.E.
Washington, D.C.  20549-4030
202-551-4904
202-772- 9245 (FAX)
simpsonr@sec.gov
infelisej@sec.gov

Attorneys for Plaintiff
Securities and Exchange Commission

AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

| Southern | District of | New York |
|---|---|---|

SECURITIES AND EXCHANGE COMMISSION

V.

ONE OR MORE UNKNOWN PURCHASERS OF
CALL OPTIONS FOR THE COMMON STOCK

### SUMMONS IN A CIVIL ACTION

CASE NUMBER:    08 cv 6609

TO: (Name and address of Defendant)

UNKNOWN PURCHASERS 2

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

Richard E. Simpson
Jeffrey T. Infelise
Securities and Exchange Commission
100 F Street N.E.
Washington, D.C. 20549-4030

an answer to the complaint which is served on you with this summons, within _____20_____ days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

J. MICHAEL McMAHON                                JUL 2 5 2008

CLERK

(By) DEPUTY CLERK                                         DATE

AO 440  (Rev. 8/01) Summons in a Civil Action

## RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and complaint was made by me[1] | |

| NAME OF SERVER (PRINT) | TITLE |
|---|---|

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant.  Place where served:

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

Name of person with whom the summons and complaint were left:

☐ Returned unexecuted:

☐ Other (specify):

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL $0.00 |
|---|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____    _____
                           Date                                  Signature of Server

                                                  _____
                                                                  Address of Server

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

AO 440 (Rev. 8/01) Vorladung in einer Zivilsache

# US-BEZIRKSGERICHT

| Südlicher | Bezirk von | New York |
|---|---|---|

SECURITIES AND EXCHANGE COMMISSION
(U.S.-BÖRSENAUFSICHT)

## GERICHTLICHE VORLADUNG
## IN EINER ZIVILSACHE

### GEGEN

EINEN ODER MEHRERE KÄUFER VON
KAUFOPTIONEN FÜR STAMMAKTIEN

AKTENZEICHEN: 08 cv 6609

AN: (Name und Adresse des Beklagten)

UNBEKANNTER KÄUFER 1

**SIE WERDEN HIERMIT VORGELADEN** und sind verpflichtet, dem RECHTSANWALT DES KLÄGERS (Name und Adresse)

Richard E. Simpson
Jeffrey T. Infelise
Securities and Exchange Commission
100 F Street N.E.
Washington, D.C. 20549-4030

innerhalb von ZWANZIG Tagen nach Zustellung dieser Vorladung (ohne Einbeziehung des Zustelldatums) eine Antwort auf die Ihnen mit dieser Vorladung zugestellte Klageschrift zu übermitteln. Sollten Sie dieser Aufforderung nicht nachkommen, wird ein Versäumnisurteil entsprechend dem Klageantrag gegen Sie ergehen. Alle Antworten, die Sie den an dieser Klage beteiligten Parteien zustellen, müssen innerhalb einer angemessenen Zeit nach der Zustellung beim Urkundsbeamten dieses Gerichts eingereicht werden. ·

[STEMPEL: J. MICHAEL McMAHON]

[STEMPEL: JUL 25 2008]

URKUNDSBEAMTER

DATUM

[UNLESERLICHE UNTERSCHRIFT]

(i.V.) STELLVERTRETENDER URKUNDSBEAMTER

AO 440 (Rev. 8/01) Vorladung in einer Zivilsache

| ZUSTELLUNGSRÜCKMELDUNG | |
|---|---|
| Zustellung der Vorladung und Beschwerde wurde von mir ausgeführt [1] | DATUM |
| NAME DES ZUSTELLERS *(DRUCKBUCHSTABEN)* | POSITION |

*Wählen Sie eine der u.a. Felder für die entsprechende Art der Zustellung*

Persönlich an den Angeklagten zugestellt. Ort der Zustellung:

Kopien der Unterlagen wurden am Wohnhaus oder Aufenthaltsort mit einer Person entsprechenden Alters und Verstands dort hinterlassen.

Name der Person, mit der die Vorladung und die Beschwerde hinterlassen wurde:

Unerledigt zurück:

Sonstiges (erläutern Sie):

| ERKLÄRUNG VON ZUSTELLUNGSKOSTEN | | |
|---|---|---|
| REISE | DIENSTLEISTUNGEN | GESAMT |
| | | $0,00 |

**ERKLÄRUNG DES ZUSTELLERS**

In Kenntnis der Strafbarkeit einer falschen eidesstattlichen Versicherung nach den Gesetzen der USA erkläre ich hiermit die Richtigkeit der bevorstehenden Informationen in der Zustellungsrückmeldung und in der Erklärung zu den Zustellungskosten als wahr und richtig.

Ausgestellt am _____       _____
                    Datum                    *Unterschrift des Zustellers*

                                     _____
                                     *Adresse des Zustellers*

(1) Personen, die Vorladungen zustellen dürfen sind in Regel 4 der Zivilprozessordnung aufgeführt.

**U.S.-BEZIRKSGERICHT**
**SÜDLICHER BEZIRK VON NEW YORK**

*[STEMPEL: '08 CIV 6609]*

---

**U.S.-BÖRSENAUFSICHT**                           :
**SECURITY AND EXCHANGE COMMISSION,** :
                                                   :
      **Kläger,**                         :
                                                   :
                                                   :
       **gg.**                        :        **Zivilklage Nr.**
                                                   :
**EINEN ODER MEHRERE KÄUFER**        :        *[STEMPEL: ERHALTEN U.S.D.C S.D.*
**VON KAUFOPTIONEN FÜR**                  :
**STAMMAKTIEN**                                  :        *N.Y. CASHIERS; JUL 25 2008]*
**VON DRS TECHNOLOGIES, INC.**         :
**UND AMERICAN POWER CONVERSION** :
**CORP.**                                             :
                                                   :
      **Beklagter**                     :
                                                   :
---

## BESCHWERDE

Der Kläger, die United States Securities and Exchange Commission (U.S.-Börsenaufsicht – nachfolgend die "Kommission"):

## ZUSAMMENFASSUNG DER ANSCHULDIGUNGEN

1. Dies ist ein Fall von Insiderhandel einschließlich äußerst verdächtiger Käufe mit hohem Gewinn von Kaufoptionen für Stammaktien von DRS Technologies, Inc. ("DRS") und American Power Conversion Corp. ("APCC"); ausgeführt mit einem Konto bei UBS AG in Zürich, Schweiz ("UBS Zürich"), durch einen oder mehrere Käufer ("Unbekannte Käufer"), durch welchen Gewinne von ca. $3.3 Millionen erwirtschaftet wurden. Der Unbekannte Käufer tätigte zweimal innerhalb von weniger als zwei Jahren Käufe von Kaufoptionen dieser zwei verschiedenen Unternehmen in den Tagen und Wochen kurz vor Veröffentlichung und Bekanntgabe der endgültigen Übernahme dieser Unternehmen. In beiden Fällen waren

keine öffentlichen Informationen über die Übernahme verfügbar, bevor der Unbekannte Käufer die Kaufoptionen kaufte.

2. Zunächst sendete Schneider Electric SA ("Schneider") am 13. September 2006 einen Brief an APCC, in dem es sein Übernahmeinteresse an APCC bekundete. APCC antwortete darauf förmlich am 20. September 2006. Der Brief von Schneider und die Antwort von APCC waren nicht-öffentliche Informationen. Beginnend am 21. September 2006 und fortlaufend bis zum 20. Oktober 2006 führte der Unbekannte Käufer Käufe von 2.830 APCC-Kaufoptionen aus, die "aus dem Geld" waren. Nachdem Schneider am 30. Oktober 2006 öffentlich seine Absicht der Übernahme aller ausstehenden Anteile von APCC bekannt gab, stieg der Aktienpreis des Unternehmens um 26 %.

3. Am 30. und 31. Oktober sowie am 3. November 2006, nach Bekanntgabe der Übernahme, verkaufte der Unbekannte Käufer seine APCC-Kaufoptionen und erwirtschaftete einen Gewinn von ca. $1,7 Millionen.

4. Weniger als zwei Jahre später kaufte der Unbekannte Käufer zwischen dem 29. April 2008 und dem 7. Mai 2008 1.820 DRS-Kaufoptionen, die "aus dem Geld" waren, sowie binnen kurzem fällig waren. Am 8. Mai 2008, einen Tag nachdem der Unbekannte Käufer seinen letzten Kauf von DRS-Kaufoptionen tätigte, wurde erstmalig öffentlich über die fortgeschrittenen Übernahmegespräche zwischen Finmeccanica SpA ("Finmeccanica") und DRS berichtet. Am 12. Mai 2008 gab Finmeccanica bekannt, dass es DRS für $5,2 Milliarden, oder $81 pro Aktie kaufen wird. Vor dem 8. Mai 2008 waren alle Informationen bezüglich des Interesses der Übernahme von DRS durch Finmeccanica geheim und nicht-öffentlich. Als ein Ergebnis der Bekanntgabe bezüglich des Finmeccanica-DRS Geschäftes stieg der Aktienpreis von DRS stark an und schloss den Handel am 8. Mai 2008 bei $73,89 pro Anteil.

5. Am 8. Mai 2008 verkaufte der Unbekannte Käufer seine gesamten DRS-Kaufoptionen und erwirtschaftete einen Gewinn von ca. $1,6 Millionen.

## ZUSTÄNDIGKEIT UND GERICHTSSTAND

6. Dieses Gericht für diese Klage ergibt sich aus den Abschnitten 21(e), 21A, und 27 des Wertpapiergesetzes (Securities Exchange Act) von 1934 ("Wertpapiergesetz") [15 U.S.C. §§ 78u(e), 78u-l, und 78aa] zuständig. Verbindung mit den Handlungen, Transaktionen, Praktiken und Geschäftsverläufen, deren sie in dieser Klageschrift beschuldigt werden, verwendeten die Beklagten die Mittel oder Instrumente des zwischenstaatlichen Handels, sowie den Postdienst oder die Einrichtungen einer staatlichen Wertpapierbörse.

7. Die örtliche Zuständigkeit liegt gemäß Abschnitt 27 [15 U.S.C. § 78aa] des Wertpapiergesetzes bei diesem Gericht, da bestimmte Tätigkeiten, Praktiken und Geschäftsverläufe, die Verstöße darstellen, im Südlichen Bezirk von New York stattfanden.

8. Die Beklagten werden, falls nicht beschränkt und untersagt, weiterhin in Tätigkeiten, Praktiken, Transaktionen und Geschäftsverläufen, behauptet in dieser Beschwerde, oder Tätigkeiten, Praktiken, Transaktionen und Geschäftsverläufen ähnlichen Zwecks und Ziels verwickelt sein.

## VERWANDTER FALL

9. Gemäß der Regel 1.6(a) der örtlichen Zivilprozessordnung des US-Bezirksgerichtes für den Südlichen Bezirk von New York, merkt die Kommission an, dass diese Klage mit S.E.C. gg Cristian De Colli, No. 08 -civ-4520 (PAC) (S.D.N.Y. May 15,2008) verwandt ist.

## BEKLAGTER

10. Der Beklagte, Unbekannte Käufer, ist eine Person oder mehrere nicht identifizierte Personen, die verdächtige Käufe einer großen Anzahl von APCC und DRS-Kaufoptionen, mittels

3

eines Omnibus-Kontos, bekannt als UBSL A/C Exchange Traded Derivative Konto # 452-6020300 (vorher # 450-6020300) ("UBS Omnibus-Konto"), getätigt haben.

## RELEVANTE JURISTISCHE PERSONEN

11. **DRS Technologies, Inc.** hat seinen Hauptsitz in Parsippany, New Jersey. DRS ist ein Unternehmen aus Delaware, das weltweit integrierte Produkte, Dienstleistungen und Unterstützung für das Militär, Regierungsorganisationen und Generalunternehmer liefert. DRS' Stammaktien sind mit der Komission gemäß Wertpapiergesetz Abschnitt 12(b) registriert. Die Stammaktien von DRS werden mit dem Symbol "DRS" an der New York Stock Exchange, und seine Optionen an der Chicago Board Options Exchange, der Philadelphia Stock Exchange, der International Securities Exchange und der NYSE Arca gehandelt.

12. **Finmeccanica SpA** hat seinen Hauptsitz in Rom, Italien. Finmeccanica plant und stellt unter anderem Hubschrauber, zivile und militärische Flugzeuge, Satelliten, Raketen und Verteidigungselektronik her. Aktien von Finmeccanica werden an der Milan Stock Exchange aufgeführt und in den USA auf dem Pink Sheets unter dem Ticker-Symbol FINMF.PK geführt.

13. **American Power Conversion Corp.** hatte seinen Hauptsitz in West Kingston, Rhode Island, bevor sein Übergang in eine indirekte, 100-prozentige Tochtergesellschaft Schneider Electric SA am 14. Februar 2007 abgeschlossen war. APCC war ein Unternehmen aus Massachusetts und vertrieb Produkte und Dienstleistungen für den privaten und geschäftlichen Bereich, um Verfügbarkeit, Handlichkeit und Leistung von sensitiver Elektronik, Netzwerken, Kommunikations- und Industrieausrüstung zu verbessern. Vor der Übernahme durch Schneider waren APCC's Stammaktien mit der Kommission gemäß Abschnitt 12(g) des Wertpapiergesetzes registriert; seine Anteile wurden an der NASDAQ National Market und an der Pacific Exchange, Inc. mit dem Ticker-Symbol "APCC",

und seine Optionen an der Boston Stock Exchange, Chicago Board Options Exchange, der International Securities Exchange, der NYSE Arca und der Philadelphia Stock Exchange gehandelt.

14. **Schneider Electric SA**, mit Hauptsitz in Rueil-Malmaison, Frankreich, plant, stellt her und verkauft elektrische Verteilerausrüstung, industrielle Roboter und Sicherheitsstromausrüstung. Anteile von Schneider werden an der NYSE Euronext Paris unter dem Ticker-Symbol PA gehandelt.

15. **UBS AG**, mit Hauptsitz in Zürich, Schweiz, arbeitet in über 50 Ländern, einschließlich der USA. Es ist ein Finanzunternehmen im Bereich Vermögensverwaltung, Bankanlagen und Anlagenverwaltung.

16. **UBS Securities LLC** ist eine Gesellschaft mit beschränkter Haftung aus Delaware mit Geschäftshauptsitz in Stamford, Connecticut. Es ist ein Händler, der mit der Kommission gemäß Abschnitt 15(b) des Wertpapiergesetzes registriert ist und eine Tochtergesellschaft der UBS AG ist.

## SACHLICHE BEHAUPTUNGEN

### I.    APCC Transaktion

#### A.    Kauf von APCC-Kaufoptionen durch Unbekannten Käufer

17. Eine Kaufoption, oder ein "Call", ist ein Finanzvertrag zwischen dem Käufer und dem Verkäufer dieses Typs von Optionen. Der Käufer der Option hat das Recht, aber nicht die Verpflichtung, die vereinbarte Anzahl einer bestimmten Aktie vom Verkäufer der Option zu einer bestimmten Zeit (Verfallsdatum) und einem bestimmten Preis (Basispreis) zu kaufen. Der Käufer bezahlt für dieses Recht eine Gebühr, die sogenannte Prämie. Ein Vertrag über Kaufoptionen gibt dem Käufer normalerweise das Recht für den Kauf von 100 Anteilen der zugrundeliegenden Aktie.

18. Der Käufer der Kaufoption setzt auf die in der Zukunft steigende Preise der zugrundeliegenden Aktie. Wenn der Marktpreis des Wertpapieres über den Basispreis der Option steigt,

kann der Käufer die Optionen zum Marktpreis gegen eine Prämie verkaufen. Wenn der Marktpreis der der Aktie den Basispreis überschreitet, ist die Option "im Geld". Die Option erhöht ihren Wert, wenn sie "im Geld" ist.

19. An oder um den 13. September 2006 sendete Schneider einen Brief ("Meldung des Interesses") an den Vorstandsvorsitzenden von APCC und den Geschäftsführer (CEO) von APCC, in dem das Interesse von Schneider an einer strategischen Zusammenführung mit APCC bekundet wurde.

20. An oder um den 19. September 2006 wurde Schneiders' "Meldung des Interesses" vom APCC Vorstand besprochen.

21. An oder um den 20. September 2006 kontaktierte der Vorstandsvorsitzende von APCC den Präsidenten und Geschäftsführer von Schneider per Telefon und informierte Schneider, dass der Vorstand von APCC zu Diskussionen über einen eventuellen Verkauf von APCC bereit wäre.

22.    Am 21. September 2006 erreichte der Preis der Anteile von APCC Stammaktien ein Hoch von $21,72 und schloss bei $21,30. Am selben Tag kaufte der Unbekannte Käufer 1.600 APCC-Kaufoptionen, die im Dezember 2006 fällig waren, mit einem Basispreis von $22,50; folglich waren die APCC Optionen am Kaufdatum nicht "im Geld".

23. Dieser Kauf stellte 87,33 % des Handelsvolumens für APCC Bezugsaktien in dieser Serie am 21. September 2006 dar, sowie 26 % aller an diesem Datum gehandelten APCC Optionen.

24.    Am 22. September 2006 erreichte der Preis der Anteile von APCC Stammaktien ein Hoch von $21,60 und schloss bei $21,40. Am gleichen Tag kaufte der Unbekannte Käufer 800 APCC-Kaufoptionen, die im Dezember 2006 fällig waren, mit einem Basispreis von $22,50; folglich waren diese APCC Optionen am Tag, an dem sie gekauft wurden, nicht "im Geld".

25. Der Kauf durch den Unbekannten Käufer von APCC-Kaufoptionen am 22. September 2006 stellte 58,78 % des Handelsvolumens an diesem Tag in dieser Serie dar, sowie ca. 9 % aller an diesem Datum gehandelten APCC Optionen.

26. Am 10. Oktober 2006 erreichte der Preis der Anteile von APCC Stammaktien ein Hoch von $21,98 und schloss bei $21,93. Am gleichen Tag kaufte der Unbekannter Käufer 350 APCC-Kaufoptionen, die im November 2006 fällig waren, mit einem Basispreis von $22,50; folglich waren die APCC Optionen am Tag, an dem sie gekauft wurden, nicht "im Geld".

27. Dieser Kauf von APCC-Kaufoptionen am 10. Oktober 2006 stellte 14,5% des Handelsvolumens an diesem Tag für Optionen in dieser Serie dar.

28. Am 20. Oktober 2006 erreichte der Preis der Anteile von APCC Stammaktien ein Hoch von $22,90 und schloss bei $22,26. Am gleichen Tag kaufte der Unbekannte Käufer 80 APCC-Kaufoptionen, die im Dezember 2006 fällig waren, mit einem Basispreis von $25; folglich waren diese APCC Optionen am Tag, an dem sie gekauft wurden, nicht "im Geld".

29. Dieser Kauf von APCC-Kaufoptionen am 20. Oktober 2006 stellte 60,15% des Handelsvolumens an diesem Tag für Optionen in dieser Serie dar.

30. Der Unbekannte Käufer kaufte zwischen dem 21. September und dem 20. Oktober 2006 2.830 APCC-Kaufoptionen für ca. $343.000, von denen keine "im Geld" war.

31. Alle Käufe von APCC-Kaufoptionen durch den Unbekannten Käufer wurden durch das Omnibus-Konto, bekannt als UBSL A/C Exchange Traded Derivative Konto # 452-6020300, getätigt und durch die UBS Securities LLC abgerechnet.

**B.    Die Bekanntgabe der Übernahme von APCC durch Schneider**

32.    Am Montag, den 30. Oktober 2006, gegen 1 Uhr (01:00 a.m. EST) gab Schneider bekannt, dass es alle ausstehenden Anteile von APCC zu einem Preis von $31 pro Anteil mit einem Gesamtvolumen von ca. $6,1 Mrd. erstehen würde.

33. Am 30. Oktober 2006 eröffnete die APCC Aktie bei ca. $30 pro Anteil und wurde im gesamten Tagesverlauf in diesem Rahmen gehandelt. Das Handelsvolumen von APCC Aktien und Optionen nahm an diesem Tag stark zu, und die APCC Aktie schloss bei $30.02 pro Anteil, ca. 26 % über dem Schlusskurs vom Freitag, dem 27. Oktober 2006.

34.    Nach Informationen und Glauben waren Informationen bezüglich APPCs Verkaufsinteresse und potenzielle Vereinbarungen vor der Bekanntmachung am 30. Oktober 2006 geheime, nicht-öffentliche Informationen.

**C.    Unbekannter Käufer profitiert vom Verkauf der APCC-Kaufoptionen**

35. Am 30. und 31. Oktober sowie am 3. November 2006, nach der Bekanntgabe der Übernahme von APCC durch Schneider, verkaufte der Unbekannte Käufer seine APCC-Kaufoptionen und erwirtschaftete einen Gewinn von ca. $1,7 Millionen.

**II.    DRS Transaktion**

**A.    Kauf von DRS-Kaufoptionen durch Unbekannten Käufer**

36. Am 29. April 2008 erreichte die Stammaktie von DRS einen Höchstkurs von $62,45 und schloss bei $61. Am selben Tag kaufte der Unbekannter Käufer 550 DRS-Kaufoptionen, die im Juni 2008 fällig waren, mit einem Basispreis von $65; folglich waren die DRS Optionen am Tag, an dem sie gekauft wurden, nicht "im Geld".

37. Der Kauf von DRS-Kaufoptionen durch den Unbekannten Käufer am 29. April 2008 stellte 58,15% des Handelsvolumens dieses Tages für Optionen dieser Serie dar.

38. Am 5. Mai 2008 erreichte die Stammaktie von DRS einen Höchstpreis von $64,81 und schloss bei $63,73. Am selben Tag kaufte der Unbekannte Käufer 170 DRS-Kaufoptionen, die im Juni 2008 fällig waren, mit einem Basispreis von $70; folglich waren die DRS Optionen am Tag, an dem sie gekauft wurden, nicht "im Geld".

39. Dieser Kauf von APCC-Kaufoptionen am 5. Mai 2008 stellte 15,7% des Handelsvolumens an diesem Tag für Optionen in dieser Serie dar.

40.    Am 6. Mai 2008 erreichte die Stammaktie von DRS einen Höchstkurs von $63,99 und schloss bei $63,07. Am selben Tag kaufte der Unbekannte Käufer 170 DRS-Kaufoptionen, die im Juni 2008 fällig waren, mit einem Basispreis von $70; folglich waren die DRS Optionen am Tag, an dem sie gekauft wurden, nicht "im Geld".

41. Dieser Kauf von DRS-Kaufoptionen stellte 100 % des Handelsvolumens am 6. Mai 2006 für Optionen in dieser Serie dar.

42. Am 7. Mai 2008 erreichte die Stammaktie von DRS einen Höchstkurs von $64,41 und schloss bei $63,74. Am selben Tag kaufte der Unbekannte Käufer 930 DRS-Kaufoptionen, die im Juni 2008 fällig waren, mit einem Basispreis von $65; folglich waren die DRS Optionen am Tag, an dem sie gekauft wurden, nicht "im Geld".

43. Dieser Kauf von DRS-Kaufoptionen am 7. Mai 2008 stellte 53,1% des Handelsvolumens an diesem Tag für Optionen in dieser Serie dar.

44. Der Unbekannte Käufer kaufte zwischen dem 29. April und dem 7. Mai 2008 1.820 DRS-Kaufoptionen für $456.200, von denen keine "im Geld" waren. Alle DRS-Kaufoptionen wurden durch den Unbekannten Käufer über das Omnibus-Konto (bekannt als UBSL A/C Exchange Traded Derivative Konto # 452-6020300) gekauft und durch die UBS Securities LLC abgerechnet.

**B.    Die DRS-Finmeccanica Bekanntmachung**

45. Am Donnerstag, dem 8. Mai berichtete das Wall Street Journal über die fortgeschrittenen Gespräche zur Übernahme von DRS mit einem Übernahmepreis von mind. 25% des DRS Schlusskurses $63,74 am letzten Handelstag vor der Bekanntgabe. Nach dem Wall Street Journal Bericht verteuerte sich die DRS Stammaktie um $9,01 pro Anteil, oder 14 % auf $72,65 im morgendlichem Handel, und schloss am 8. Mai 2008 bei $73,89 pro Anteil. Während der 52 Wochen vor dem Wall Street Journal Bericht wurde die DRS Stammaktie zwischen $44,11 und $65 pro Anteil gehandelt.

46. Ebenfalls am 8. Mai bestätigte DRS den Bericht des Wall Street Journals mit einer Pressemittelung über Business Wire um 09:57 a.m. EST und gab bekannt, dass es "Diskussion zu einer potenziellen strategischen Geschäften führte". In den Wochen vor der Veröffentlichung des Artikels am 8. Mai 2008 berichtete keine der bedeutenden Nachrichtenorganisationen weder über die fortgeschrittenen Übernahmegespräche zwischen DRS und Finmeccanica, noch von Spekulationen, dass DRS ein Übernahmekandidat war. Nach Informationen und Glauben wurden alle beteiligten und juristischen Personen im DRS-Finmeccanica Geschäft angewiesen, jegliche Informationen bezüglich der potenziellen Übernahme als geheim und nicht-öffentlich zu behandeln, und hatten zugestimmt, die Informationen geheim zu halten.

47. Am 12. Mai 2008, gab Finmeccanica bekannt, dass es DRS für $5,2 Milliarden, oder $81 pro Aktie kaufen wird.

**C.    Unbekannter Käufer profitiert vom Verkauf der DRS-Kaufoptionen**

48. Nach dem 8. Mai 2008 verkaufte der Unbekannte Käufer seine gesamten DRS-Kaufoptionen und erwirtschaftete einen Gewinn von ca. $1,6 Millionen.

## II.    UBS stellt weitere Transaktionen für den Unbekannten Käufer ein

49.    Am 6. Juni 2008 und 7. Juli 2008 ersuchte die Kommission die Amtshilfe der Eidgenössischen Bankenkommission ("EBK") bezüglich Informationen zum Kauf von APCC- und DRS-Kaufoptionen über die UBS AG.

50. Diese Anfragen zeigten, dass die gleiche Person der Käufer, sowie der Nutzungsberechtigte, der in Paragrafen 17 bis 48 beschriebenen APCC- und DRS-Kaufoptionen ist.

51. Nach der Durchsicht der Handelsaktivitäten des Unbekannten Käufers kam die UBS zum Schluss, dass diese Handelsaktivitäten verdächtig scheinen, und entschied, in Anwendung von Schweizer Bedingungen, keine weiteren Transaktionen für den Unbekannten Käufer auszuführen. Der Unbekannte Käufer wurde über die Entscheidung von UBS am 10. Juli 2008 informiert.

### KLAGEANTRAG

#### Verstöße gegen das Wertpapiergesetz (Exchange Act) Abschnitt 10(b) und Regel 10b-5 darunter verkündigt

52. Paragraf 1 bis 51 sind erneute Anschuldigungen und wurden als Referenz eingearbeitet.

53. Nach Informationen und Glauben war der Beklagte zum Zeitpunkt des Kaufes von o.g. APCC-Kaufoptionen im Besitz von wesentlichen, nicht-öffentlichen Informationen über das Übernahmeangebot von Schneider an APCC. Der Beklagte (a) wusste oder missachtete fahrlässig die Tatsache, dass sein Handel ein Verstoß gegen die Fürsorgepflicht oder ähnliche Pflicht von Vertrauen gegenüber den Anteilseignern von APCC war, oder gegen die Quelle von dem er die wesentlichen, nicht-öffentlichen Informationen erhielt; oder (b) wusste oder sollte gewusst haben, dass wesentliche, nicht-öffentliche Informationen über den Kauf ihm in Verstoß gegen die Fürsorgepflicht oder ähnlicher Pflicht von Vertrauen mitgeteilt wurden.

11

54. Nach Informationen und Glauben war der Beklagte zum Zeitpunkt des Kaufes von o.g. DRS-Kaufoptionen im Besitz von wesentlichen, nicht-öffentlichen Informationen über das Übernahmeangebot von Finmeccanica an DRS. Der Beklagte (a) wusste oder missachtete fahrlässig die Tatsache, dass sein Handel ein Verstoß gegen die Fürsorgepflicht oder ähnliche Pflicht von Vertrauen gegenüber den Anteilseignern von DRS war, oder gegen die Quelle von dem er die wesentlichen, nicht-öffentlichen Informationen erhielt; oder (b) wusste oder sollte gewusst haben, dass wesentliche, nicht-öffentliche Informationen über den Kauf ihm in Verstoß gegen die Fürsorgepflicht oder ähnlicher Pflicht von Vertrauen mitgeteilt wurden.

55. Aufgrund der oben beschriebenen Handlungsweise, in Verbindung mit dem Kauf oder Verkauf der Wertpapiere, bei der Benutzung von jeglichen Mitteln des interstaatlichen Handels oder der Post, oder einer jeden Einrichtung von jeglichen nationalen Börsen wurden vom Beklagten direkt oder indirekt (a) Vorrichtungen, Schemen oder Tricks zum Betrug angewendet; (b) unwahre Aussagen zu wesentlichen Fakten gemacht oder wesentliche Fakten wurden bei Aussagen verschwiegen, sodass die Aussagen irreführend waren; oder (c) Tätigkeiten, Praktiken oder Geschäftsverläufe an jegliche Personen, einschließlich Käufern oder Verkäufern der Wertpapiere angewendet, die zum Zweck des Betruges oder der arglistigen Täuschung dienen oder dienen sollten.

56. Aufgrund der vorgenannten Fakten hat der Beklagte direkt oder indirekt gegen Abschnitt 10(b) des Wertpapiergesetzes (Exchange Act) [15 U.S.C § 78j(b)] und Regel 10b-5 darunter [17 C.F.R. § 240. 10b-5] verstoßen.

## KLAGEBEGEHREN

WESHALB, die Kommission dieses Gericht um ein Urteil ersucht:

(a) fortdauerndes Verbot der Beklagten gegen Abschnitt 10 (b) des Wertpapiergesetzes (Exchange Act) [15 U.S.C . § 78j(b)] und Regel l0b-5 [17 C.F.R. § 240.l0b-5] zu verstoßen;

12

(b) Anordnung an die Beklagten, alle unrechtmäßigen Handelsgewinne aus der behaupteten Vorgehensweise in dieser Beschwerde, zusammen mit Zinsen vor dem Urteil herauszugeben;

(c) Anordnung an die Beklagten, eine Geldstrafe gemäß Wertpapiergesetz Abschnitt 21A [15 U.S.C. § 78u-l] zu zahlen; und

(d) Erlassung solcher anderer und weiterer Unterstützung, die dieses Gericht für gerecht und angemessen hält.

Datiert:        Washington, D.C.
                25. Juli 2008

                                        Hochachtungsvoll überreicht,

                                        *[UNLESERLICHE UNTERSCHRIFT]*

                                        Richard E. Simpson (RS5859)
                                        Jeffrey T. Infelise. (DC 456998)
                                        100 F Street N.E.
Durch Anwälte:                          Washington, D.C. 20549-4030
        Antonia Chion                   202-551-4904
        Christopher Conte               202-772- 9245 (FAX)
        Daniel Chaudoin                 simpsonr@sec.gov
        Mark J. Kreitman                infelisej@sec.gov
        Noel A. Gittens
        Ivonia Slade
        E. Laurita Finch                Anwälte des Klägers
        Kevin Guerrero                  Security and Exchange Commission
        Ilana Sultan

AO 440 (Rev. 8/01) Vorladung in einer Zivilsache

# US-BEZIRKSGERICHT

Südlicher                    Bezirk von                    New York

SECURITIES AND EXCHANGE COMMISSION
(U.S.-BÖRSENAUFSICHT)

## GERICHTLICHE VORLADUNG
## IN EINER ZIVILSACHE

GEGEN

EINEN ODER MEHRERE KÄUFER VON
KAUFOPTIONEN FÜR STAMMAKTIEN

AKTENZEICHEN: 08 cv 6609

AN: (Name und Adresse des Beklagten)

UNBEKANNTER KÄUFER 2

**SIE WERDEN HIERMIT VORGELADEN** und sind verpflichtet, dem RECHTSANWALT DES
KLÄGERS: (Name und Adresse)

Richard E. Simpson
Jeffrey T. Infelise
Securities and Exchange Commission
100 F Street N.E.
Washington, D.C. 20549-4030

innerhalb von ZWANZIG Tagen nach Zustellung dieser Vorladung (ohne Einbeziehung des
Zustelldatums) eine Antwort auf die Ihnen mit dieser Vorladung zugestellte Klageschrift zu übermitteln.
Sollten Sie dieser Aufforderung nicht nachkommen, wird ein Versäumnisurteil entsprechend dem
Klageantrag gegen Sie ergehen. Alle Antworten, die Sie den an dieser Klage beteiligten Parteien
zustellen, müssen innerhalb einer angemessenen Zeit nach der Zustellung beim Urkundsbeamten dieses
Gerichts eingereicht werden.

[STEMPEL: J. MICHAEL McMAHON]                            [STEMPEL: JUL 25 2008]

URKUNDSBEAMTER                                           DATUM

[UNLESERLICHE UNTERSCHRIFT]

(i.V.) STELLVERTRETENDER URKUNDSBEAMTER

AO 440 (Rev. 8/01) Vorladung in einer Zivilsache

## ZUSTELLUNGSRÜCKMELDUNG

| | DATUM |
|---|---|
| Zustellung der Vorladung und Beschwerde wurde von mir ausgeführt (1) | |

| NAME DES ZUSTELLERS *(DRUCKBUCHSTABEN)* | POSITION |
|---|---|
| | |

*Wählen Sie eine der u.a. Felder für die entsprechende Art der Zustellung*

Persönlich an den Angeklagten zugestellt. Ort der Zustellung:

Kopien der Unterlagen wurden am Wohnhaus oder Aufenthaltsort mit einer Person entsprechenden Alters und Verstands dort hinterlassen.

Name der Person mit der die Vorladung und die Beschwerde hinterlassen wurde:

Unerledigt zurück:

Sonstiges (erläutern Sie):

### ERKLÄRUNG VON ZUSTELLUNGSKOSTEN

| REISE | DIENSTLEISTUNGEN | GESAMT |
|---|---|---|
| | | $0,00 |

### ERKLÄRUNG DES ZUSTELLERS

In Kenntnis der Strafbarkeit einer falschen eidesstattlichen Versicherung nach den Gesetzen der USA erkläre ich hiermit die Richtigkeit der bevorstehenden Informationen in der Zustellungsrückmeldung und der Erklärung zu den Zustellungskosten als wahr und richtig.

Ausgestellt am

| Datum | Unterschrift des Zustellers |
|---|---|

Adresse des Zustellers

(1) Personen, die Vorladungen zustellen dürfen sind in Regel 4 der Zivilprozessordnung aufgeführt.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| | *[STEMPEL]*<br>USDC SDNY<br>DOKUMENT<br>ELEKTRONISCH ABGELEGT<br>DOK # _____<br>ERSTELLUNGSDATUM:      *25/7/08* |

U.S.-BÖRSENAUFSICHT                          :
SECURITY AND EXCHANGE COMMISSION :
(SEC),                                                :
                                                         :
                    Kläger,                           :
                                                         :
                        gg.                            :          Zivilklage Nr. *08CV6609(UA)*
                                                         :
EINEN ODER MEHRERE KÄUFER       :
VON KAUFOPTIONEN FÜR                 :
STAMMAKTIEN                                   :
VON DRS TECHNOLOGIES, INC.          :
UND AMERICAN POWER CONVERSION :
CORP.                                                 :
                                                         :
                    Beklagter                        :
                                                         :
                                                         :

---

**EINSTWEILIGE VERFÜGUNG ZUR SPERRE VON VERMÖGENSWERTEN**
**UND GEWÄHRUNG WEITERER UNTERSTÜTZUNG UND ANORDNUNG DER**
**ANZEIGE VON GRÜNDEN, WARUM DIE SPERRE DER VERMÖGENSWERTE**
**NICHT WEITER BESTEHEN BLEIBEN SOLLTE**

Auf Antrag des Klägers, der amerikanischen Börsenaufsichtsbehörde (Securities and
Exchange Commission, SEC oder „Kommission") bezüglich eines ex parte Erlasses: (1) Sperre
der Vermögenswerte; (2) Anforderung der Identifizierung; (3) Anforderung der Rückführung der
Vermögenswerte; (4) Verhinderung von Veränderung oder Zerstörung von Unterlagen; (5)
beschleunigte Untersuchungen in diesem Fall; (6) Bereitstellung von alternativen
Dienstleistungen; und (7) Anforderung der Aufzeigung von Gründen durch die Beklagten warum
das Gericht keine einstweilige Verfügung und andere Unterstützung gegen sie erlassen sollte:

Das Gericht kommt nach der Betrachtung der Beschwerde in dieser Klage, den
Erklärungen von Kevin Guerrero und Ilana Sultan, einem Brief von der Eidgenössischen
Bankenkommission und dem Memorandum der Stellen und Behörden in Unterstützung einer
einstweiligen Verfügung zu folgenden Erkenntnissen:

1. Der Sachverhalt der Klage und die Beklagten liegen im Zuständigkeitsbereich dieses
Gerichts.

2. Die Kommission hat ausreichende und sachgemäße Erkenntnisse in Unterstützung der hier zugestandenen Hilfe gemäß Abschnitt 21(d) des US-Börsengesetzes (Securities Exchange Act) von 1934 (15 U.S.C. § 78u(d)) durch die Erbringung von Anscheinsbeweisen aufgezeigt und es besteht eine große Wahrscheinlichkeit, dass die Kommission sich in einem Prozess um die Vermögenswerte durchsetzen kann und dass der Angeklagte - direkt oder indirekt - in Tätigkeiten, Praktiken und Geschäftsverläufe verwickelt war und ohne den beschränkenden und untersagenden Erlass dieses Gerichtes diese Aktivitäten weiterhin ausführen wird. Die Verstöße beziehen sich auf Abschnitt 10(b) des US-Börsengesetzes (Securities Exchange Act) von 1934 (15 U.S.C. § 78j(b)), und Regel 10b-5 (17 C.F.R. § 240.10b-5).

3. Es gibt gute Gründe anzunehmen, dass die Beklagten ohne den beschränkenden und untersagenden Erlass dieses Gerichtes Vermögenswerte in der Zuständigkeit dieses Gerichtes verschwendet, verschleiert oder überweist, die Gegenstand eines Erlasses zur Gewinnherausgabe oder der Zahlung von zivilen Geldstrafen in dieser Strafsache sein könnten. Das Gericht sieht es als angemessen, eine einstweilige Verfügung *ex parte* anzuordnen, sodass schnelle Maßnahmen in den angemessenen Institutionen ausgeführt werden können, um die Verschwendung der Vermögenswerte zu verhindern.

4. Es gibt gute Gründe anzunehmen, dass die Beklagten ohne den beschränkenden und untersagenden Erlass dieses Gerichtes Unterlagen bezüglich dieser Anklage verfälschen oder zerstören werden.

Eben deshalb,

I.

IST ES HIERMIT ANGEORDNET, dass rechtshängig der Entscheidung des Gesuchs der Kommission für eine einstweilige Verfügung oder der Anhörung zu den Vermögenswerten:

A. Beklagte und deren Agenten, Bedienstete, Mitarbeiter, Bevollmächtigte und Personen in aktivem Kontakt oder Mitarbeit mit denen, die von diesem Erlass -persönlich oder anders (einschließlich ohne Einschränkungen, UBS Securities LLC und UBS AG Zürich) informiert werden, und jeder von denen, halten und beschränken in deren Kontrolle,

2

und verhindern auf andere Weise jegliche Übertragung, Überweisung, Belastung, Anweisung, Verschwendung, Verschleierung, oder andere Verwendung - was auch immer von deren jeglichen Vermögenswerten oder Wertsachen momentan in deren Besitz bzw. in deren Kontrolle ist oder über die sie aktuell oder ersichtlich Investment betreiben oder andere Behörden, in welcher Form auch immer solche Vermögenswerte momentan vorhanden sind, einschließlich, aber nicht beschränkt auf:

> (1) Gewinne von dem Verkauf von 1.600 APCC Kaufoptionen, gekauft am 21. September 2006 über das Omnibus-Konto bekannt als UBSL A/C Exchange Traded Derivative Konto # 452-6020300 bei der UBS AG von Zürich, Schweiz("UBS Omnibus-Konto");

> (2) Gewinne vom Verkauf von 800 APCC Kaufoptionen, gekauft am 22. September 2006 über das UBS-Omnibus-Konto;

> (3) Gewinne vom Verkauf von 350 APCC Kaufoptionen, gekauft am 10. Oktober 2006 über das UBS-Omnibus-Konto;

> (4) Gewinne des Verkaufs von 80 APCC Kaufoptionen, gekauft am 20. Oktober 2006 über das UBS-Omnibus-Konto;

> (5) Gewinne vom Verkauf von 550 DRS Kaufoptionen, gekauft am 29. April 2008 über das UBS-Omnibus-Konto;

> (6) Gewinne vom Verkauf von 170 DRS Kaufoptionen, gekauft am 5. Mai 2008 über das UBS-Omnibus-Konto;

> (7) Gewinne vom Verkauf von 170 DRS Kaufoptionen, gekauft am 6. Mai 2008 über das UBS-Omnibus-Konto;

> (8) Gewinne vom Verkauf von 930 DRS Kaufoptionen, gekauft am 7. Mai 2008 über das UBS-Omnibus-Konto;

B. Dass jede Finanz- oder Vermittlungsinstitution oder andere Person bzw. juristische Person die jegliche Vermögen oder andere Vermögenswerte im Namen von, zum Nutzen von, oder unter der Kontrolle von Beklagten, deren Agenten, Bediensteten, Angestellten, Bevollmächtigten und Personen in aktivem Kontakt oder Teilnahme mit denen halten, müssen in Ihrer Macht die Überweisung, Entnahme, Transfer oder andere Verwendung von jeglichen solchen Vermögen oder anderen Vermögenswerten zurückhalten und verbieten, falls nicht anders von diesem Gericht bestimmt. Notwendige und angemessene Lebenshaltungskosten werden den Beklagten nach der Aufzeigung von

guten Gründen, die dem Gericht mit einer Meldung zu und der Möglichkeit der Stellungnahme von der Kommission beantragt werden müssen, gewährt;

II.

ES WIRD HIERMIT WEITERHIN ANGEORDNET, dass jeder Beklagte diesem Gericht und der klagenden Kommission innerhalb von zwei (2) Geschäftstagen nach dem Erhalt dieses Erlasses, die folgenden Identitätsinformationen schriftlich zukommen lassen muss:

(A) alle Namen, unter denen jeder Beklagte bekannt ist, alle Geschäfts- und Privatadressen, Postfachnummern, Telefonnummern, und Faxnummern, E-Mail-Adressen und die Nationalität des Beklagten; und

(B) jedes Konto mit einer jeden Finanzinstitution oder Vermittlungsunternehmen unter dem Namen des Beklagten oder gehalten für den direkten oder indirekten Nutzen des Beklagten vom 1. September 2006 bis heute, einschließlich aber nicht beschränkt auf jedes Konto über das jeder Beklagte Wertpapiertransaktionen seit dem 1. September 2006 abgewickelt hat oder in welchen Gewinne von solchen Transaktionen gehalten werden.

III.

ES WIRD HIERMIT WEITERHIN ANGEORDNET, dass innerhalb von 72 Stunden [3 Geschäftstagen] nach Bekanntgabe des Eingangs dieses Erlasses, jeder Beklagte alle Vermögenswerte, die durch die in der Beschwerde der Kommission beschriebenen Aktivitäten erwirtschaftet wurden und sich jetzt außerhalb der USA befinden zurückführen muss und das jeder Beklagte die Rückführung solcher Vermögenswerte zur Sekretariatsstelle des Gerichts sendet, rechtshängig des Abschlusses in diesem Sachverhalt.

IV.

ES WIRD HIERMIT WEITERHIN ANGEORDNET, dass Beklagte und seine Agenten, Bediensteten, Angestellten, Bevollmächtigten, und diese Personen in aktivem Kontakt oder Teilnahme mit diesen, die von diesem Erlass persönlich oder anders informiert werden, und jeder von ihnen, ist es hiermit untersagt, jegliche Dokumente in jeder Hinsicht bezüglich zu jeglichen Transaktionen beschrieben in der Beschwerde der Kommission zu diesem Fall zu zerstören, verstümmeln, verschleiern, verfälschen oder entnehmen. Wie in diesem Erlass verwendet, bedeutet „Dokument" das Original und alle nicht identischen Kopien (entweder nicht identisch wegen handschriftlichen Anmerkungen oder anderem) von allen geschriebenen oder grafischer Art, egal wie produziert, sowie jegliche andere dinghaften Aufzeichnungen oder elektronische Datensammlung welche in eine dingbare Form überführt werden können, einschließlich, aber nicht beschränkt auf Korrespondenz, Memoranden, Mitschriften, Telefonaufzeichnungen, Emails, Berichte, Studien, Telexe, Terminkalender, Kalendereinträge, Verträge, Einverständniserklärungen und einschließlich jeglicher und aller Entwürfe von allen Dokumenten.

V.

A. ES WIRD HIERMIT WEITERHIN ANGEORDNET, dass gemäß der Regel 4 der Zivilprozessordnung (Federal Rules of Civil Procedure), die Zustellung von allen Vorträgen und anderen Unterlagen, einschließlich der Vorladungen, der Beschwerde, dieses Erlasses und alle eingereichten Unterlagen in Unterstützung hierzu, und alle anderen Dokumente zur Vorlage in diesem Fall erfolgt mittels der Zustellung solcher Dokumente an jeden der folgenden Agenten der Beklagten: UBS Securities LLC, oder UBS AG Zürich, Schweiz und jeden von deren entsprechenden Partnern, Rechtsnachfolgern und beauftragt diese juristischen Personen, die in Wertpapierangelegenheiten für die ungenannten Eigenhändler tätig waren.

B. ES WIRD HIERMIT WEITERHIN ANGEORDNET, dass gemäß der Regel 4 der Zivilprozessordnung, die Zustellung aller Vorträge und anderen Unterlagen, einschließlich der Vorladungen, der Beschwerde, dieses Erlasses und allen eingereichten Unterlagen in Unterstützung hierzu, und alle anderen Dokumente zur Vorlage in diesem Fall

5

muss persönlich, via Fax, durch Expresskurier oder Post an jeden im vorherigen Abschnitt identifizierten Beklagten, seinen Anwalt, seinen amerikanischen Agenten oder seines ausländischen Agenten im gesetzlich erlaubten Umfang oder durch eine alternative Art und Weise der Zustellung gemäß Regel 4 der Zivilprozessordnung, oder die dieses Gericht in einem späteren Erlass festlegt.

VI.

ES WIRD HIERMIT WEITERHIN ANGEORDNET, dass dem Antrag der Kommission auf beschleunigte Untersuchung bezüglich der Beklagten, deren Vermögenswerten und Aktivitäten, stattgegeben ist, und dass beginnend vom Zeitpunkt und Datum dieses Erlasses, anstatt der Zeitspannen, Meldefristen und andere Bestimmungen der Regeln 26, 30, 33, 34, 36 und 45 der Zivilprozessordnung, und der Regel 30.1A der Regeln dieses Gerichts, müssen die Ermittlungen wie folgt ausgeführt werden:

(A) Gemäss Regel 30(a) der Zivilprozessordnung, soll die Kommission eidesstattliche Aussagen nach der mündlichen Prüfung mit einer Benachrichtigung von 2 Tagen vor einer jeden solchen eidesstattlichen Aussage. Eidesstattliche Aussagen können ~~von Montag bis Freitag~~ aufgenommen werden. Als zu jedem Beklagten und seinen Agenten, Bediensteten, Angestellten, Brokern und Partnern, kann die Kommission solche Zeugen nach der Zustellung einer Mitteilung über die Zeugenaussage via Fax, persönlicher oder Übernachtzustellung unter Eid aussagen lassen, und ohne die Zustellung einer Vorladung zu solchen Zeugen. Eidesstattliche Aussagen, die nicht vom Zeugen unterschrieben wurden, können zum Zweck von Anhörungen für den Antrag der klagenden Kommission für eine einstweilige Verfügung verwendet werden;

(B) Gemäss Regel 33(a) der Zivilprozessordnung, muss jeder Beklagte auf die Beweisfragen der Kommission innerhalb von drei Tagen nach Zustellung dieser Beweisfragen an den Beklagten antworten;

(C) Gemäß Regel 34(b) der Zivilprozessordnung muss jeder Beklagte alle von der Kommission angeforderten Unterlagen innerhalb von drei Tagen nach Zustellung einer solchen

Anfrage erstellen, und diese an Jeffery T. Infelise, US-Börsenaufsicht (SEC) oder eine andere Person oder Ort oder Behörde, der durch die Kommission festgelegt wurde, schriftlich übersenden;

(D) Gemäß Regel 36(a) der Zivilprozessordnung muss jeder Beklagte auf Aufforderungen zum Geständnis von der Kommission innerhalb von drei Tagen nach Erhalt eines solchen Aufforderung antworten; und

(E) Alle schriftlichen Antworten auf Offenlegungsaufforderungen der Kommission nach der Zivilprozessordnung müssen persönlich oder durch Übernachtkurier an die Kommission zu Händen von Jeffery T. Infelise, oder solchem anderen Ort oder Person oder Behörde gesendet werden, die von der Kommission schriftlich bestimmt wird.

## VII.

ES WIRD HIERMIT WEITERHIN ANGEORDNET, dass dieser Erlass für jeden Beklagten und jeden seiner Agenten, Bediensteten, Angestellten, Bevollmächtigten, und diese Personen in aktivem Kontakt oder Teilnahme mit ihm, die über diesen Erlass persönlich, via Fax oder auf andere Art und Weise, gemäß Abschnitt V dieses Erlasses, oder anders informiert werden, bindend sein wird und ist.

## VIII.

ES WIRD HIERMIT WEITERHIN ANGEORDNET, dass jeder Beklagter oder seine Anwälte vor diesem Gericht um [10:00] Uhr, am [5. August] 2008, im Raum [20 C, Richter Crotty] des amerikanischen Gerichtes, New York, New York , oder kurz danach zur Anhörung erscheinen müssen, und in jedem Fall vor dem Verfall dieses Erlassen, um Gründe darzustellen, falls vorhanden, warum dieses Gericht keine einstweilige Verfügung zur Erweiterung der Sperre der Vermögenswerte über die bewilligte Sperre in diesem Erlass hinaus anzuordnen bis eine endgültige Urteil über die Vermögenswerte gefällt wurde. Die Beklagten müssen jegliche Unterlagen im Gegensatz zu solch einer Maßnahme persönlich oder via Übernachtkurier an den Anwalt der Kommission Jeffery T. Infelise, Assistant Chief Litigation Counsel, Security and Exchange Commission, 100 F Street, NE, Mail Stop 4010, Washington, DC, 20549, oder via Email an infelisej@sec.gov, nicht später als drei volle Geschäftstage vor der Anhörung übersenden. Die Kommission beantwortet und sendet eine Antwort nicht später als 24 Stunden vor der Anhörung und übermittelt solch Antwort, wenn erforderlich, an jeden Beklagten oder seinen Anwalt via Fax, Email,

7

Kurier oder auf andere Art und Weise, die die Kommission als geeignet festlegt, sodass die schnelle Zustellung dieser Unterlagen an die Beklagten oder deren Anwälte sicherstellt.

## IX.

~~ES WIRD WEITERHIN ANGEORDNET dass das Gericht die Zuständigkeit für alle Angelegenheiten in dieser Sache behält.~~

Datiert auf den *25* Juli 2008

*1:15 pm*

*Unterschrift*

AMERIKANISCHER BEZIRKSRICHTER

(United States Dictrict Judge)

*[Unterschrift nicht lesbar]*

8

# EXHIBIT I

**Infelise, Jeffrey**

| | |
|---|---|
| **From:** | Jack Byrnes [jbyrnes@classifiedsplus.net] |
| **Sent:** | Wednesday, August 13, 2008 3:10 PM |
| **To:** | Infelise, Jeffrey |
| **Subject:** | Confirming Legal Notice for IHT |

Hi Jeffery,
Your ad will be appear under "Legal Notices" Saturday, Aug 16; Monday, Aug 18; Tue, Aug
19; Wed Aug 20 and Thur Aug 21. It is $1,180.41 per insertion for a total of $5,902.05.
We will just send an invoice to you at the SEC at 100 F St. NE. This goes out after the
notice runs.
After the final printing I will send all 5 tearsheets to you.

Your order # is 79746.

thanks
Jack
866-459-1121

# NOTICE TO PURCHASERS OF CALL OPTIONS FOR DRS TECHNOLOGIES, INC. AND AMERICAN POWER CONVERSION CORP.

To: Unknown purchasers of call options for DRS Technologies, Inc. ("DRS") and American Power Conversion Corp. ("APCC") through an account at UBS AG Zurich, Switzerland.

On July 25, 2008, the Securities and Exchange Commission ("SEC") filed a complaint in the U.S. District Court for the Southern District of New York ("SDNY") alleging that certain unknown purchasers engaged in insider trading in violation of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 thereunder, with respect to call options of APCC and DRS. The name of the case is SEC v. One or More Unknown Purchasers of Call Options for Common Stock of DRS Technologies, Inc. and American Power Conversion Corp., No. 08-cv-6609. The complaint alleges that the defendants bought and sold call options of APCC and DRS through the account at UBS AG, Zurich, Switzerland and cleared through known an account at UBS Securities LLC known as UBSL.

District of New York ("SDNY") alleging that certain unknown purchasers engaged in insider trading in violation of Section 10(b) of the Securities Exchange Act 1 of 1934 and Rule 10b-5 thereunder, with respect to call options of APCC and DRS. The name of the case is SEC v. One or More Unknown Purchasers of Call Options for Common Stock of DRS Technologies, Inc. and American Power Conversion Corp., No. 08-cv-6609. The complaint alleges that the defendants bought and sold call options of APCC and DRS through the account at UBS AG, Zurich, Switzerland and cleared through known an account at UBS Securities LLC known as UBSL ATC Exchange Traded Derivative Account # 452-6020300 (formerly designated # 450-6020300) ("Omnibus Account").

On July 25, 2008, the Court issued a Temporary Restraining Order ("TRO"), freezing the assets of the defendants and ordering that they appear on August 5, 2008, to show cause why the Court should not enter a preliminary injunction extending the asset freeze until a final adjudication on the merits. On August 5, 2008, the Court extended the TRO until August 18, 2008, and rescheduled the show cause hearing for August 18, 2008, at

On July 25, 2008, the Court issued a Temporary Restraining Order ("TRO"), freezing the assets of the defendants and ordering that they appear on August 5, 2008, to show cause why the Court should not enter a preliminary injunction extending the asset freeze until a final adjudication on the merits. On August 5, 2008, the Court extended the TRO until August 18, 2008, and rescheduled the show cause hearing for August 18, 2008, at 3:00 p.m. in Courtroom 11-C, United States Courthouse, 500 Pearl St., New York, New York.

Any unknown purchaser whose assets have been frozen pursuant to the Court's Order of July 25, 2008, who wishes to contest the issuance of a preliminary injunction should file any opposition to the SEC's motion with the Clerk for the SDNY at 500 Pearl Street, New York, NY 10007-1312, USA, and serve a copy of any such opposition upon Jeffrey T. Infelise, U.S. Securities and Exchange Commission, 100 F Street, N.E., Mail Stop 4010, Washington, D.C. 20549. Copies of the SEC's complaint and application for a preliminary injunction can be obtained by contacting Mr. Infelise at 202-551-4904.

# EXHIBIT J

Schweizerische Eidgenossenschaft
Confédération suisse
Confederazione Svizzera
Confederaziun svizra

Swiss Confederation

Federal Department of Justice and Police FDJP
**Federal Office of Justice FOJ**
Swiss Central Authority

BOT. FOJ. Bundesrain 20, 3003 Berne, Switzerland

**BY FEDEX**
Office of International Affairs OIA
Department of Justice
Suite 800
1301 New York Ave., N.W.
Washington DC 20005
UNITED STATES

Your reference : 182-29104
Our reference : B 209'070 FRS

Berne, August 14, 2008

**Request for assistance made by the Office of International Affairs OIA on July 28, 2008 in re DRS Technologies and APCC**

Dear Mrs Friedman

We refer to the above mentioned request and to our previous letter of this day giving explanations as to the Swiss procedure in mutual legal assistance matter.

As mentioned in this letter, we have issued on July 30th 2008 a decision ordering in particular the freeze of the accounts of the Unknown Purchasers at UBS SA. This decision has been notified to UBS SA. Enclosed to the decision were all documents sent by the OIA, including the MLAT request of July 28th and the document called "*Temporary restraining order freezing assets and granting other relief and order to show cause why the asset freeze should not continue*" in re DRS technologies and American Power Conversion Corp. The Bank was also asked to inform its clients[1].

As you can take out of the enclosed letter of UBS SA, these documents have been transmitted by the bank to all the five Unknown Purchasers identified at UBS SA.

A sixth account[2] at UBS SA has also been used to receive proceeds of the sales mentioned in the request[3]. However, it has been proven that this account was not an Unknown Purchaser account,

---

[1] When ordering the freeze of assets, the Swiss Central is not aware of the identity of the affected person. Therefore, the notification of the documents happens through the bank. Even if the identity of the affected person is known, the Swiss Central Authority has only authority to serve documents within the Swiss territory. This prevents us to serve documents when the affected person is living abroad.

[2] Not mentioned in our previous letter of today.

Nicolas Bottinelli
Bundesrain 20, 3003 Berne, Switzerland
Telephone : +41 31 323 57 04, Telefax : +41 31 322 53 80
lrh@bj.admin.ch
http://www.bj.admin.ch

6.8.1/B 0209070/RH2008006113/H332-0066



2

but a general account opened by another Swiss bank, Hyposwiss Privatbank AG. We have there-
fore cancelled our order to freeze this sixth account at UBS SA, as it was only a transit account.

On August 7th we have issued a decision ordering the freeze of the account at Hyposwiss Privat-
bank AG on which the proceeds from the sale of the said 350 APCC call options had been depos-
ited. Enclosed to the decision were all documents sent by the OIA, including the MLAT request of
July 28th and the document called "*Temporary restraining order freezing assets and granting other
relief and order to show cause why the asset freeze should not continue*" in re DRS technologies
and American Power Conversion Corp. The Bank was also asked to inform accordingly its client.

We are currently seeking information from Hyposwiss Privatbank AG as to the notification of the
documents. However, you must be aware that the bank has had very little time between the recep-
tion of the decision, the process of identification and seizure of the affected account and now.

We hope that you will find these information useful.

We would like to point out that the information mentioned above is provided in support of the SEC
efforts to obtain all necessary decisions to be able to maintain or to extend the freeze on the Swiss
accounts. These information shall not be used in a way that would definitively deprive the Unknown
Purchasers of their rights if they choose not to appear to the hearing or if they refuse to voluntarily
disclose their identity before such disclosure is made in accordance with the Swiss law[4]. In particu-
lar, the US authorities shall not seek a default judgement on the ground that the unknown Pur-
chasers have been notified of the proceeding by the bank but have not acted within a certain time
frame.

Please let us know if you need any clarifications.

Yours faithfully

Nicolas Bottinelli

Enclosures: letter of UBS SA date August 14th 2008 and their enclosure (40 pages).

---

[3] This transfer concerns the proceeds from the sale of 350 APCC call options purchased on October 10, 2006 through
the UBS Omnibus Account.
[4] However, as mentioned in our previous letter of today, the Swiss law doesn't prevent the Unknown Purchasers to
disclose voluntarily their identity or to voluntarily appear at the hearing.

 **UBS**

UBS AG
Postfach
CH-8098 Zürich
Tel. +41-44-497 81 11

Legal Services

Jean-Michel Kunz
TT83-C45P-J6K
P.O. Box 1770
CH-8098 Zurich
Tel. +41-44-234 88 91
Fax +41-44-234 20 90

www.ubs.com

Bundesamt für Justiz
Herr Bottinelli
Bundesrain 20
3003 Bern

14 August 2008

Our ref: TT83-C45P-J6K-2008-3880

**Request for assistance in the investigation of DRS Technologies, Inc., et al.**

Dear Mr. Bottinelli

As discussed today and upon your request we herewith confirm that we on 31 July 2008 and 5 August 2008 have notified five of our clients about the proceeding taking place and have forwarded to them photocopies of your ordinance dated 30 July 2008 and the request of the U.S. Department of Justice dated 28 July 2008 (included the temporary restraining order freezing assets dated 25 July 2008 from the United States District Court Southern District of New York) for their information.
These five clients undertook the transactions mentioned on page 17 of the above-mentioned U.S.-request.

Please find the forwarded documents in annex.

Yours sincerely

UBS AG

Jean-Michel Kunz
Director

Caterina Allegretti
Associate Director



Schweizerische Eidgenossenschaft
Confédération suisse
Confederazione Svizzera
Confederaziun svizra

Swiss Confederation

Federal Department of Justice and Police FDJP
**Federal Office of Justice FOJ**
Swiss Central Authority

BOT. FOJ, Bundesrain 20, 3003 Berne, Switzerland

**BY FEDEX**
Office of International Affairs OIA
Department of Justice
Att. Mrs Judith Friedman
Suite 800
1301 New York Ave., N.W.
Washington DC 20005
UNITED STATES

Your reference : 182-29104
Our reference : B 209'070 FRS

Berne, August 14, 2008

### Request for assistance made by the Office of International Affairs OIA on July 28, 2008 in re DRS Technologies and APCC

Dear Mrs Friedman

Kindly be informed that the execution in Switzerland of the above mentioned request is handled by the Federal Office of Justice, which is the Swiss Central Authority provided by the Treaty between the United States of America and the Swiss Confederation on Mutual Assistance in Criminal Matters signed at Bern May 25, 1973 (Thereafter: the Treaty)[1]. Within the Swiss Central Authority, the request is handled together by the Attorneys Sandra Freiburghaus and Nicolas Bottinelli, the undersigned, who is the deputy head of the Swiss Central Authority.

According to the Swiss law enforcing the Treaty, the Swiss Central Authority has the competence to take the necessary provisory measures in order to preserve evidence and to avoid the dissipation of assets of illegal origin; the provisory measures shall stay in place until the end of the mutual legal assistance procedure. For example, if the Swiss Central Authority, requested to do so by an MLAT request, decides to order the freeze of assets in Switzerland, the assets will stay frozen until

---

[1] The Swiss Central Authority is aware that assistance has already been requested in the same context by the SEC through the channels of the International Administrative Assistance and that a cooperation is currently taking place between the SEC and the Swiss Banking Commission. It is our understanding that the requests of the SEC to the SBC are founded on specific dispositions about administrative assistance, while the requests addressed to the Swiss Central Authority are based on the Treaty, and specifically the Diplomatic Notes exchanged on November 3, 1993, which extends the applicability of the Treaty to the investigations lead by the SEC, if the investigated facts would be considered as criminal under Swiss law. Generally speaking, the channels of the administrative assistance may be used to obtain banking documentation or information, as the channels provided by the Treaty may be used to obtain other measures like witness interviews or freezing of assets. This letter only addresses the issues related to the MLAT request.

Nicolas Bottinelli
Bundesrain 20, 3003 Berne, Switzerland
Telephone : +41 31 323 57 04, Telefax : +41 31 322 53 80
irh@bj.admin.ch
http://www.bj.admin.ch

6.8.1/B 0209070/IRH2008006113/H332-0066



2

the assets are repatriated in execution of a foreign judicial order of confiscation (or any order considered as equivalent under Swiss law) or until the US Central Authority notifies that the provisory measures are not more necessary.

The Swiss Central Authority has also the competence to decide whether a request for assistance is admissible under Swiss law and, if admissible, to decide which evidence has to be collected. Generally speaking, the gathering of evidence is not made by the Swiss Central Authority itself, but delegated to a Swiss criminal authority, like a prosecutor.

The Swiss law enforcing the Treaty provides for specific dispositions when the evidence to be collected concerns the privacy of a person[2]. Such evidence cannot be transmitted to the requesting State before the affected person has been in a position to defend himself against the MLA measure. In particular, those persons have the right to appeal before a Court against the decision of the Swiss Central Authority to disclose the evidence to the requesting authority[3]. This process can take some months. Of course, the affected persons have also the possibility to cooperate and to give their agreement to the disclosure, so that the evidence can be transmitted within weeks.

In this case, the Swiss Central Authority issued on July 30th 2008 a decision ordering the freeze of the accounts on which the proceeds of the transactions have been deposited and asked the prosecutor of the canton of Zurich to collect the relevant evidence as to the affected bank accounts.

Up to now, we have identified accounts belonging to five different persons and have been successful to freeze assets approximately equivalent to the proceeds described in the MLAT request.

As to the evidence, they are currently collected by the Prosecutor of the canton of Zurich. Once they have been transmitted to the Swiss Central Authority, the Swiss Central Authority will have to examine them and to issue a decision ordering their transmission to the USA. This decision may be challenged by the account holder, who has a 30-day time frame to lodge an appeal before the Federal Criminal Court. This Court will issue its decision within three to four months. An ultimate appeal before the Supreme Court may be lodged within ten days against this decision. This Court generally refuses to enter into the matter within fourteen days.

This means that the Swiss Central Authority will not be able to transmit to the USA the information about the identity of the holders of the affected accounts before the whole procedure has taken

---

[2] For example, all information related to a bank account are considered as a privacy matter, whether these information are provided in the form of documents (copies of the banking documentation) or in the form of a witness statement (interview of the bank officers).
[3] In Switzerland, coercive measures may be taken directly by the competent authority without the previous agreement of a Court. The affected persons have however the right to appeal to a Court against such decisions ("a posteriori" judicial control).



3    place. In other words, for the time being, Swiss law prohibits the revealing of the identity of the account holder - in this case the "Unknown Purchasers"[4].

However, nothing in Swiss law prevents the unknown purchasers to cooperate with the US investigation and to agree to the release of the evidence or to act spontaneously in the USA.

As to the freeze, kindly be informed that the Swiss Central Authority has no independent powers of investigation. We may freeze assets only if we are requested to do so by the US Central Authority, but if the request for freeze is withdrawn[5], we will have to release the money, even if we have indications that it may be of illegal origin.

We have no competence to decide whether an investigation for money laundering should be opened in Switzerland[6]. We notice however that, in our opinion, the facts described in the request constitute the offense of illegal insider trading in Swiss law[7]. This offence is not a predicate offense to money laundering in Switzerland. Thus, a withdrawal of the MLAT request for freeze of the assets would probably lead to the complete release of the money.

Please let us know if you need any clarifications.

Yours faithfully

Nicolas Bottinelli

---

[4] Art. 15a of the Law implementing the Treaty provides that when the evidence gathered concern the privacy, the Swiss Central Authority has to notify the affected person about his right to appeal (§2). The evidence is transmitted if no appeal has been lodged in the legal time frame or if all appeals have been rejected (§3).
[5] Which we understand could be necessary if there is no longer a judicial finding in the USA that the funds are subject to restraint.
[6] In the event of a Swiss investigation, there could be a freeze of assets, independent of the freeze ordered in the frame of the MLAT procedure.
[7] « Exploitation de la connaissance de faits confidentiels », art. 161 Swiss Criminal Code

# EXHIBIT K

# SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, NY 10004-2498*

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.

FRANKFURT • LONDON • PARIS

BEIJING • HONG KONG • TOKYO

MELBOURNE • SYDNEY

August 14, 2008

## FOIA CONFIDENTIAL TREATMENT REQUESTED
## BY UBS AG

<u>Via E-mail</u>

Jeffery T. Infelise, Esq.
Assistant Chief Litigation Counsel
U.S. Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549-4010

Re:    <u>SEC v. One Or More Unknown Purchasers, 08 Civ. 6609 (PAC)</u>

Dear Mr. Felice:

On behalf of UBS AG, enclosed are copies of correspondence relating to this matter that have been provided to UBS AG New York by UBS AG Zurich, Switzerland.

Pursuant to Rule 83 of the SEC's Rules of Information And Requests, 17 C.F.R. 200.83, I hereby request on behalf of UBS AG that this letter and the attached materials not be disclosed by the SEC in response to any request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 522. If this letter or the enclosed materials are the subject of any FOIA request, please advise me, and I will provide further substantiation for the request for confidential treatment.

Sincerely,

Steven R. Peikin

(Attachments)

Jeffery T. Infelise, Esq.                                                    -2-

cc:     John Moon, Esq. (Via E-mail)

✠ **UBS**

UBS AG
Postfach, 8098 Zürich
Tel. +41-44-234 11 11

Rechtsdienst

Jean-Michel Kunz
TT83 C45P-J6K
Bahnhofstrasse 45
8001 Zürich
Tel. +41-44-234 88 91
Fax +41-44-234 20 90
Jean-Michel .Kunz@ubs.com

www.ubs.com

**Einschreiben**

08. August 2008
Ihre Referenz:
Unsere Referenz: TT83 C45P-A9C-2008-3880

**Schreiben der SEC betr. Anhörung vor dem United States District Court Southern District of New York in Sachen "Optionen DRS Technologies" –**

Sehr geehrter Kunde

Anbei erhalten Sie eine Vorladung für eine auf den 18. August 2008 angesetzte Anhörung vor dem United States District Court Southern District of New York. Diese Vorladung wurde uns durch die Klägerin in diesem Verfahren, die Securities and Exchange Commission (SEC), zugestellt und nicht durch das aus unserer Sicht zuständige United States District Court Southern District of New York selbst. Wir sind uns bewusst, dass für die Zustellung ausländischer Gerichtsvorladungen das Haager-Übereinkommen in Zivilsachen zur Anwendung kommen muss. Obwohl diese Zustellung aus unserer Sicht formell nicht richtig erfolgt ist, möchten wir es dennoch nicht versäumen, Sie bereits heute darüber in Kenntnis zu setzen, damit Sie allenfalls die in dieser Angelegenheit Ihnen geeignet scheinenden Massnahmen (z.B. Kontaktaufnahme mit einem Rechtsvertreter, etc.) ergreifen können.

Wir möchten darauf hinweisen, dass wir den amerikanischen Behörden weder Namen noch Kontoinformationen zugestellt haben und das Bankgeheimnis somit seitens UBS AG gewahrt wurde. Es kann aber nicht ausgeschlossen werden, dass im weiteren Verlauf des Verfahrens im Rahmen des Amtshilfe- bzw. Rechtshilfeverfahrens Daten über Ihre Bankbeziehung an die amerikanischen Behörden von den schweizerischen Behörden zugestellt werden.

Mit freundlichen Grüssen

UBS AG

Jean-Michel Künz
Rechtskonsulent

Roberto Agustoni
Rechtskonsulent

Beilage: - Schreiben der Securities and Exchange Commission (SEC) vom 06.08.2008
        - Verfügung des United States District Court Southern District of New York vom 05.08.2008



UNITED STATES
**SECURITIES AND EXCHANGE COMMISSION**
100 "F" Street, N.E.
WASHINGTON, D.C. 20549-4010

DIVISION OF
ENFORCEMENT

Jeffery T. Infelise
Assistant Chief Litigation Counsel
Telephone: (202) 551-4904
Facsimile: (202) 772-9245

August 6, 2008

**<u>Via E-Mail and FedEx</u>**
Mr. Alan Brudner, Esq.
UBS Securities, LLC
Head of Litigation
299 Park Ave.
New York, NY 10171

Re:    <u>S.E.C. v. One or More Unknown Persons</u> 08-cv-6609

Dear Mr. Brudner:

Enclosed with this letter are is a copy of the order issued by the Honorable Paul A. Crotty, extending the Temporary Restraining Order issued in this case until October 18, 2008. Judge Crotty's Order directs the defendants or their attorneys to appear at a hearing scheduled for August 18, 2008, at 3:30 p.m. in Courtroom 11-C in the United States Courthouse in New York, New York to show cause why a preliminary injunction should not be entered.

The Court's original Order, dated July 25, 2008, provides that service of all pleading and other papers filed in this case may be served upon UBS Securities LLC as an agent of the unknown purchasers. Therefore, please take action to provide copies of the attached order to the unknown purchasers.

If you have any further questions, please feel free to contact me at 202-551-4904 or at infelisej@sec.gov. Thank you again for your assistance.

Very truly yours,

Jeffery T. Infelise
Assistant Chief Litigation Counsel

Encl.

injunction extending the asset freeze and other ancillary relief entered in the Court's Order

of July 25, 2008 (doc. no. 3) until a final adjudication on the merits may be held.

*A copy of this order shall be served in accordance with the proceed service requirements set forth in the Original Order to show cause, dated 7/25/08*

Dated this ___ day of August, 2008.

_____
UNITED STATES DISTRICT JUDGE

CROTTY, J

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————

SECURITIES AND EXCHANGE
COMMISSION,

       **Plaintiff,**

     v.

ONE OR MORE UNKNOWN PURCHASERS
OF CALL OPTIONS FOR THE COMMON
STOCK OF DRS TECHNOLOGIES, INC.
AND AMERICAN POWER CONVERSION
CORP.,

       **Defendant.**

———————————————————

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: AUG 0 5 2008

Civil Action No. 08-6609 (cc/s)

### ORDER

  On the application of Plaintiff Securities and Exchange Commission

("Commission") for a ten-day extension, until August 15, 2008, of the temporary

restraining order issued on July 25, 2008:

  The Court, having considered the Complaint in this action, the Declarations of

Kevin Guerrero and Alberto A. Arevalo and attachments thereto and the Memorandum of

Points and Authorities in support of the Commission's Motion,

  **IT IS HEREBY ORDERED** that, all the terms of the temporary restraining order

issued on July 25, 2008, will remain in effect until August 8, 2008, at which time the   *p. 12*

hearing previously scheduled for August 5, 2008, will be held in Courtroom 11C, United

States Courthouse, New York, New York. — at 3:30 PM At that time defendants or their attorneys shall

appear before this Court to show cause why this Court should not enter a preliminary

cc:    Ms. Judith Romaine
        Executive Director, Compliance
        UBS Securities LLC
        201 Tresser Blvd.
        Stamford, CT 06901

 **UBS**

UBS AG
Postfach, 8098 Zürich
Tel. +41-44-234 11 11

Rechtsdienst

Jean-Michel Kunz
TT83 C45P-J6K
Bahnhofstrasse 45
8001 Zürich
Tel. +41-44-234 88 91
Fax +41-44-234 20 90
Jean-Michel .Kunz@ubs.com

www.ubs.com

**Einschreiben**

08. August 2008
Ihre Referenz:
Unsere Referenz: TT83 C45P-A9C-2008-3880

**Schreiben der SEC betr. Anhörung vor dem United States District Court Southern District of New York in Sachen "Optionen DRS Technologies" –**

Sehr geehrter Kunde

Anbei erhalten Sie eine Vorladung für eine auf den 18. August 2008 angesetzte Anhörung vor dem United States District Court Southern District of New York. Diese Vorladung wurde uns durch die Kläge-rin in diesem Verfahren, die Securities and Exchange Commission (SEC), zugestellt und nicht durch das aus unserer Sicht zuständige United States District Court Southern District of New York selbst. Wir sind uns bewusst, dass für die Zustellung ausländischer Gerichtsvorladungen das Haager-Übereinkommen in Zivilsachen zur Anwendung kommen muss. Obwohl diese Zustellung aus unserer Sicht formell nicht richtig erfolgt ist, möchten wir es dennoch nicht versäumen, Sie bereits heute dar-über in Kenntnis zu setzen, damit Sie allenfalls die in dieser Angelegenheit Ihnen geeignet scheinenden Massnahmen (z.B. Kontaktaufnahme mit einem Rechtsvertreter, etc.) ergreifen können.

Wir möchten darauf hinweisen, dass wir den amerikanischen Behörden weder Namen noch Kontoin-formationen zugestellt haben und das Bankgeheimnis somit seitens UBS AG gewahrt wurde. Es kann aber nicht ausgeschlossen werden, dass im weiteren Verlauf des Verfahrens im Rahmen des Amtshilfe-bzw. Rechtshilfeverfahrens Daten über Ihre Bankbeziehung an die amerikanischen Behörden von den schweizerischen Behörden zugestellt werden.

Mit freundlichen Grüssen

UBS AG

Jean-Michel Künz
Rechtskonsulent

Roberto Agustoni
Rechtskonsulent

Beilage: - Schreiben der Securities and Exchange Commission (SEC) vom 06.08.2008
        - Verfügung des United States District Court Southern District of New York vom 05.08.2008



**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
100 "F" Street, N.E.
WASHINGTON, D.C. 20549-4010

DIVISION OF
ENFORCEMENT

Jeffery T. Infelise
Assistant Chief Litigation Counsel
Telephone: (202) 551-4904
Facsimile: (202) 772-9245

August 6, 2008

**Via E-Mail and FedEx**
Mr. Alan Brudner, Esq.
UBS Securities, LLC
Head of Litigation
299 Park Ave.
New York, NY 10171

Re:    <u>S.E.C. v. One or More Unknown Persons</u> 08-cv-6609

Dear Mr. Brudner:

Enclosed with this letter are is a copy of the order issued by the Honorable Paul A. Crotty, extending the Temporary Restraining Order issued in this case until October 18, 2008. Judge Crotty's Order directs the defendants or their attorneys to appear at a hearing scheduled for August 18, 2008, at 3:30 p.m. in Courtroom 11-C in the United States Courthouse in New York, New York to show cause why a preliminary injunction should not be entered.

The Court's original Order, dated July 25, 2008, provides that service of all pleading and other papers filed in this case may be served upon UBS Securities LLC as an agent of the unknown purchasers. Therefore, please take action to provide copies of the attached order to the unknown purchasers.

If you have any further questions, please feel free to contact me at 202-551-4904 or at infelisej@sec.gov. Thank you again for your assistance.

Very truly yours,

Jeffery T. Infelise
Assistant Chief Litigation Counsel

Encl.

injunction extending the asset freeze and other ancillary relief entered in the Court's Order

of July 25, 2008 (doc. no. 3) until a final adjudication on the merits may be held.

*A copy of this order shall be served in accordance with the process serving requirements set forth in the Original Order to Show Cause, dated 7/25/08*

Dated this ___ day of August, 2008.

_____
UNITED STATES DISTRICT JUDGE

CROTTY, J

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

SECURITIES AND EXCHANGE
COMMISSION,

                            **Plaintiff,**

              v.

ONE OR MORE UNKNOWN PURCHASERS
OF CALL OPTIONS FOR THE COMMON
STOCK OF DRS TECHNOLOGIES, INC.
AND AMERICAN POWER CONVERSION
CORP.,

                          **Defendant.**

---

             :
             :
             :
             :
             :

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: AUG 05 20__

Civil Action No. 08-6609 (cc/s)

## ORDER

    On the application of Plaintiff Securities and Exchange Commission

("Commission") for a ten-day extension, until August 15, 2008, of the temporary

restraining order issued on July 25, 2008:

    The Court, having considered the Complaint in this action, the Declarations of

Kevin Guerrero and Alberto A. Arevalo and attachments thereto and the Memorandum of

Points and Authorities in support of the Commission's Motion,

    **IT IS HEREBY ORDERED** that, all the terms of the temporary restraining order

issued on July 25, 2008, will remain in effect until August 15, 2008, at which time the      p.12

hearing previously scheduled for August 5, 2008, will be held in Courtroom 11C, United

States Courthouse, New York, New York. ~at 3:30 PM At that time defendants or their attorneys shall

appear before this Court to show cause why this Court should not enter a preliminary

cc:    Ms. Judith Romaine
        Executive Director, Compliance
        UBS Securities LLC
        201 Tresser Blvd.
        Stamford, CT 06901



UBS AG
Postfach, 8098 Zürich
Tel. +41-44-234 11 11

Rechtsdienst

Jean-Michel Kunz
TT83 C45P-J6K
Bahnhofstrasse 45
8001 Zürich
Tel. +41-44-234 88 91
Fax +41-44-234 20 90
Jean-Michel .Kunz@ubs.com

www.ubs.com

**Einschreiben**

08. August 2008
Ihre Referenz:
Unsere Referenz: TT83 C45P-A9C-2008-3880

**Schreiben der SEC betr. Anhörung vor dem United States District Court Southern District of New York in Sachen "Optionen DRS Technologies" –**

Sehr geehrter Kunde

Anbei erhalten Sie eine Vorladung für eine auf den 18. August 2008 angesetzte Anhörung vor dem United States District Court Southern District of New York. Diese Vorladung wurde uns durch die Klägerin in diesem Verfahren, die Securities and Exchange Commission (SEC), zugestellt und nicht durch das aus unserer Sicht zuständige United States District Court Southern District of New York selbst. Wir sind uns bewusst, dass für die Zustellung ausländischer Gerichtsvorladungen das Haager-Übereinkommen in Zivilsachen zur Anwendung kommen muss. Obwohl diese Zustellung aus unserer Sicht formell nicht richtig erfolgt ist, möchten wir es dennoch nicht versäumen, Sie bereits heute darüber in Kenntnis zu setzen, damit Sie allenfalls die in dieser Angelegenheit Ihnen geeignet scheinenden Massnahmen (z.B. Kontaktaufnahme mit einem Rechtsvertreter, etc.) ergreifen können.

Wir möchten darauf hinweisen, dass wir den amerikanischen Behörden weder Namen noch Kontoinformationen zugestellt haben und das Bankgeheimnis somit seitens UBS AG gewahrt wurde. Es kann aber nicht ausgeschlossen werden, dass im weiteren Verlauf des Verfahrens im Rahmen des Amtshilfe- bzw. Rechtshilfeverfahrens Daten über Ihre Bankbeziehung an die amerikanischen Behörden von den schweizerischen Behörden zugestellt werden.

Mit freundlichen Grüssen

UBS AG

Jean-Michel Künz
Rechtskonsulent

Roberto Agustoni
Rechtskonsulent

Beilage: - Schreiben der Securities and Exchange Commission (SEC) vom 06.08.2008
         - Verfügung des United States District Court Southern District of New York vom 05.08.2008



UNITED STATES
**SECURITIES AND EXCHANGE COMMISSION**
100 "F" Street, N.E.
WASHINGTON, D.C. 20549-4010

DIVISION OF
ENFORCEMENT

Jeffery T. Infelise
Assistant Chief Litigation Counsel
Telephone: (202) 551-4904
Facsimile: (202) 772-9245

August 6, 2008

**Via E-Mail and FedEx**
Mr. Alan Brudner, Esq.
UBS Securities, LLC
Head of Litigation
299 Park Ave.
New York, NY 10171

Re:    <u>S.E.C. v. One or More Unknown Persons</u> 08-cv-6609

Dear Mr. Brudner:

Enclosed with this letter are is a copy of the order issued by the Honorable Paul A. Crotty, extending the Temporary Restraining Order issued in this case until October 18, 2008. Judge Crotty's Order directs the defendants or their attorneys to appear at a hearing scheduled for August 18, 2008, at 3:30 p.m. in Courtroom 11-C in the United States Courthouse in New York, New York to show cause why a preliminary injunction should not be entered.

The Court's original Order, dated July 25, 2008, provides that service of all pleading and other papers filed in this case may be served upon UBS Securities LLC as an agent of the unknown purchasers. Therefore, please take action to provide copies of the attached order to the unknown purchasers.

If you have any further questions, please feel free to contact me at 202-551-4904 or at infelisej@sec.gov. Thank you again for your assistance.

Very truly yours,

Jeffery T. Infelise
Assistant Chief Litigation Counsel

Encl.

injunction extending the asset freeze and other ancillary relief entered in the Court's Order

of July 25, 2008 (doc. no. 3) until a final adjudication on the merits may be held.

*A copy of this order shall be served in accordance with the process serving requirements set forth in the Original Order to show cause, dated 7/25/08*

Dated this _5_ day of August, 2008.

_____

UNITED STATES DISTRICT JUDGE

_CROTTY, J_

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

---

SECURITIES AND EXCHANGE
COMMISSION,

                         **Plaintiff,**

            v.

ONE OR MORE UNKNOWN PURCHASERS
OF CALL OPTIONS FOR THE COMMON
STOCK OF DRS TECHNOLOGIES, INC.
AND AMERICAN POWER CONVERSION
CORP.,

                        **Defendant.**

---

: Civil Action No. 08-6609 (cc/o)

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _AUG 0 5 2008_

<u>**ORDER**</u>

On the application of Plaintiff Securities and Exchange Commission

("Commission") for a ten-day extension, until August 15, 2008, of the temporary

restraining order issued on July 25, 2008:

The Court, having considered the Complaint in this action, the Declarations of

Kevin Guerrero and Alberto A. Arevalo and attachments thereto and the Memorandum of

Points and Authorities in support of the Commission's Motion,

**IT IS HEREBY ORDERED** that, all the terms of the temporary restraining order

issued on July 25, 2008, will remain in effect until August 15, 2008, at which time the _p. 12_

hearing previously scheduled for August 5, 2008, will be held in Courtroom 11C, United

States Courthouse, New York, New York. ~at 3:30 pm~ At that time defendants or their attorneys shall

appear before this Court to show cause why this Court should not enter a preliminary

cc:     Ms. Judith Romaine
        Executive Director, Compliance
        UBS Securities LLC
        201 Tresser Blvd.
        Stamford, CT 06901

**UBS**

UBS AG
Postfach, 8098 Zürich
Tel.+41-44-234 11 11

Rechtsdienst

Jean-Michel Kunz
TT83 C45P-J6K
Bahnhofstrasse 45
8001 Zürich
Tel. +41-44-234 88 91
Fax +41-44-234 20 90
Jean-Michel .Kunz@ubs.com

www.ubs.com

**Einschreiben**

08. August 2008
Ihre Referenz:
Unsere Referenz: TT83 C45P-A9C-2008-3880

**Schreiben der SEC betr. Anhörung vor dem United States District Court Southern District of New York in Sachen "Optionen DRS Technologies" –**

Sehr geehrter Kunde

Anbei erhalten Sie eine Vorladung für eine auf den 18. August 2008 angesetzte Anhörung vor dem United States District Court Southern District of New York. Diese Vorladung wurde uns durch die Klägerin in diesem Verfahren, die Securities and Exchange Commission (SEC), zugestellt und nicht durch das aus unserer Sicht zuständige United States District Court Southern District of New York selbst. Wir sind uns bewusst, dass für die Zustellung ausländischer Gerichtsvorladungen das Haager-Übereinkommen in Zivilsachen zur Anwendung kommen muss. Obwohl diese Zustellung aus unserer Sicht formell nicht richtig erfolgt ist, möchten wir es dennoch nicht versäumen, Sie bereits heute darüber in Kenntnis zu setzen, damit Sie allenfalls die in dieser Angelegenheit Ihnen geeignet scheinenden Massnahmen (z.B. Kontaktaufnahme mit einem Rechtsvertreter, etc.) ergreifen können.

Wir möchten darauf hinweisen, dass wir den amerikanischen Behörden weder Namen noch Kontoinformationen zugestellt haben und das Bankgeheimnis somit seitens UBS AG gewahrt wurde. Es kann aber nicht ausgeschlossen werden, dass im weiteren Verlauf des Verfahrens im Rahmen des Amtshilfebzw. Rechtshilfeverfahrens Daten über Ihre Bankbeziehung an die amerikanischen Behörden von den schweizerischen Behörden zugestellt werden.

Mit freundlichen Grüssen

UBS AG

Jean-Michel Künz
Rechtskonsulent

Roberto Agustoni
Rechtskonsulent

Beilage: - Schreiben der Securities and Exchange Commission (SEC) vom 06.08.2008
         - Verfügung des United States District Court Southern District of New York vom 05.08.2008



UNITED STATES
**SECURITIES AND EXCHANGE COMMISSION**
100 "F" Street, N.E.
WASHINGTON, D.C. 20549-4010

DIVISION OF
ENFORCEMENT

Jeffery T. Infelise
Assistant Chief Litigation Counsel
Telephone: (202) 551-4904
Facsimile: (202) 772-9245

August 6, 2008

**<u>Via E-Mail and FedEx</u>**
Mr. Alan Brudner, Esq.
UBS Securities, LLC
Head of Litigation
299 Park Ave.
New York, NY 10171

Re:    <u>S.E.C. v. One or More Unknown Persons</u> 08-cv-6609

Dear Mr. Brudner:

Enclosed with this letter are is a copy of the order issued by the Honorable Paul A. Crotty, extending the Temporary Restraining Order issued in this case until October 18, 2008. Judge Crotty's Order directs the defendants or their attorneys to appear at a hearing scheduled for August 18, 2008, at 3:30 p.m. in Courtroom 11-C in the United States Courthouse in New York, New York to show cause why a preliminary injunction should not be entered.

The Court's original Order, dated July 25, 2008, provides that service of all pleading and other papers filed in this case may be served upon UBS Securities LLC as an agent of the unknown purchasers. Therefore, please take action to provide copies of the attached order to the unknown purchasers.

If you have any further questions, please feel free to contact me at 202-551-4904 or at infelisej@sec.gov. Thank you again for your assistance.

Very truly yours,

Jeffery T. Infelise
Assistant Chief Litigation Counsel

Encl.

injunction extending the asset freeze and other ancillary relief entered in the Court's Order

of July 25, 2008 (doc. no. 3) until a final adjudication on the merits may be held.

*A copy of this order shall be served in accordance with the process supply requirements set forth in the Original Order to show cause, dated 7/25/08*

Dated this _____ day of August, 2008.

_____

UNITED STATES DISTRICT JUDGE

CROTTY, J

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

---

SECURITIES AND EXCHANGE                  :
COMMISSION,                              :
                                        :
                        Plaintiff,       :
                                        :
              v.                         :        Civil Action No. 08-6609 (cc/s)
                                        :
ONE OR MORE UNKNOWN PURCHASERS          :
OF CALL OPTIONS FOR THE COMMON          :
STOCK OF DRS TECHNOLOGIES, INC.         :
AND AMERICAN POWER CONVERSION           :
CORP.,                                  :
                                        :
                        Defendant.       :

---

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: AUG 0 5 20

## <u>ORDER</u>

On the application of Plaintiff Securities and Exchange Commission

("Commission") for a ten-day extension, until August 15, 2008, of the temporary

restraining order issued on July 25, 2008:

The Court, having considered the Complaint in this action, the Declarations of

Kevin Guerrero and Alberto A. Arevalo and attachments thereto and the Memorandum of

Points and Authorities in support of the Commission's Motion,

**IT IS HEREBY ORDERED** that, all the terms of the temporary restraining order

issued on July 25, 2008, will remain in effect until August 8, 2008, at which time the

hearing previously scheduled for August 5, 2008, will be held in Courtroom 11C, United

States Courthouse, New York, New York. ~~At that time~~ at 3:30 pm defendants or their attorneys shall

appear before this Court to show cause why this Court should not enter a preliminary

cc:    Ms. Judith Romaine
       Executive Director, Compliance
       UBS Securities LLC
       201 Tresser Blvd.
       Stamford, CT 06901



**UBS**

UBS AG
Postfach, 8098 Zürich
Tel. +41-44-234 11 11

Rechtsdienst

Jean-Michel Kunz
TT83 C45P-J6K
Bahnhofstrasse 45
8001 Zürich
Tel. +41-44-234 88 91
Fax +41-44-234 20 90
Jean-Michel .Kunz@ubs.com

www.ubs.com

**Einschreiben**

08. August 2008
Ihre Referenz:
Unsere Referenz: TT83 C45P-A9C-2008-3880

**Schreiben der SEC betr. Anhörung vor dem United States District Court Southern District of New York in Sachen "Optionen DRS Technologies" –**

Sehr geehrter Kunde

Anbei erhalten Sie eine Vorladung für eine auf den 18. August 2008 angesetzte Anhörung vor dem United States District Court Southern District of New York. Diese Vorladung wurde uns durch die Klägerin in diesem Verfahren, die Securities and Exchange Commission (SEC), zugestellt und nicht durch das aus unserer Sicht zuständige United States District Court Southern District of New York selbst. Wir sind uns bewusst, dass für die Zustellung ausländischer Gerichtsvorladungen das Haager-Übereinkommen in Zivilsachen zur Anwendung kommen muss. Obwohl diese Zustellung aus unserer Sicht formell nicht richtig erfolgt ist, möchten wir es dennoch nicht versäumen, Sie bereits heute darüber in Kenntnis zu setzen, damit Sie allenfalls die in dieser Angelegenheit Ihnen geeignet scheinenden Massnahmen (z.B. Kontaktaufnahme mit einem Rechtsvertreter, etc.) ergreifen können.

Wir möchten darauf hinweisen, dass wir den amerikanischen Behörden weder Namen noch Kontoinformationen zugestellt haben und das Bankgeheimnis somit seitens UBS AG gewahrt wurde. Es kann aber nicht ausgeschlossen werden, dass im weiteren Verlauf des Verfahrens im Rahmen des Amtshilfe-bzw. Rechtshilfeverfahrens Daten über Ihre Bankbeziehung an die amerikanischen Behörden von den schweizerischen Behörden zugestellt werden.

Mit freundlichen Grüssen

UBS AG

Jean-Michel Künz
Rechtskonsulent

Roberto Agustoni
Rechtskonsulent

Beilage: - Schreiben der Securities and Exchange Commission (SEC) vom 06.08.2008
         - Verfügung des United States District Court Southern District of New York vom 05.08.2008



UNITED STATES
**SECURITIES AND EXCHANGE COMMISSION**
100 "F" Street, N.E.
WASHINGTON, D.C. 20549-4010

DIVISION OF
ENFORCEMENT

Jeffery T. Infelise
Assistant Chief Litigation Counsel
Telephone: (202) 551-4904
Facsimile: (202) 772-9245

August 6, 2008

**<u>Via E-Mail and FedEx</u>**
Mr. Alan Brudner, Esq.
UBS Securities, LLC
Head of Litigation
299 Park Ave.
New York, NY 10171

Re:    <u>S.E.C. v. One or More Unknown Persons</u> 08-cv-6609

Dear Mr. Brudner:

Enclosed with this letter are is a copy of the order issued by the Honorable Paul A. Crotty, extending the Temporary Restraining Order issued in this case until October 18, 2008. Judge Crotty's Order directs the defendants or their attorneys to appear at a hearing scheduled for August 18, 2008, at 3:30 p.m. in Courtroom 11-C in the United States Courthouse in New York, New York to show cause why a preliminary injunction should not be entered.

The Court's original Order, dated July 25, 2008, provides that service of all pleading and other papers filed in this case may be served upon UBS Securities LLC as an agent of the unknown purchasers. Therefore, please take action to provide copies of the attached order to the unknown purchasers.

If you have any further questions, please feel free to contact me at 202-551-4904 or at infelisej@sec.gov. Thank you again for your assistance.

Very truly yours,

Jeffery T. Infelise
Assistant Chief Litigation Counsel

Encl.

injunction extending the asset freeze and other ancillary relief entered in the Court's Order

of July 25, 2008 (doc. no. 3) until a final adjudication on the merits may be held.

*A copy of this order shall be served in accordance with the process service requirements set forth in the Original Order to show cause, dated 7/25/08*

Dated this _____ day of August, 2008.

_____
UNITED STATES DISTRICT JUDGE

CROTTY, J

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SECURITIES AND EXCHANGE                     :
COMMISSION,

                             **Plaintiff,**               :

                         **v.**                     :          Civil Action No. 08-6609 (cc/s)

ONE OR MORE UNKNOWN PURCHASERS    :
OF CALL OPTIONS FOR THE COMMON
STOCK OF DRS TECHNOLOGIES, INC.   :
AND AMERICAN POWER CONVERSION
CORP.,                                        :

                      **Defendant.**             :

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _AUG 0 5 2008_

## ORDER

On the application of Plaintiff Securities and Exchange Commission

("Commission") for a ten-day extension, until August 15, 2008, of the temporary

restraining order issued on July 25, 2008:

    The Court, having considered the Complaint in this action, the Declarations of

Kevin Guerrero and Alberto A. Arevalo and attachments thereto and the Memorandum of

Points and Authorities in support of the Commission's Motion,

    **IT IS HEREBY ORDERED** that, all the terms of the temporary restraining order

issued on July 25, 2008, will remain in effect until August 8, 2008, at which time the          p. 12

hearing previously scheduled for August 5, 2008, will be held in Courtroom 11-C, United

States Courthouse, New York, New York. ~at 3:30 PM~ At that time defendants or their attorneys shall

appear before this Court to show cause why this Court should not enter a preliminary

cc:    Ms. Judith Romaine
       Executive Director, Compliance
       UBS Securities LLC
       201 Tresser Blvd.
       Stamford, CT 06901

# ❖ UBS

UBS AG
P.O. Box, CH-8098 Zürich
Tel.+41-44-234 11 11

Legal Services

Caterina Allegretti
TT83-A9C
Bahnhofstrasse 45
8001 Zurich
Tel. +41-44-234 42 32
Fax +41-44-234 20 90
caterina.allegretti@ubs.com

www.ubs.com

CQUE

July 31, 2008
Your ref:
Our ref: TT83 C45P-A9C-2008-3880

**Order of the Federal Office of Justice**

Dear client

Based on a request for legal assistance in the investigation of DRS Technologies Inc. and American Power Conversion Corp. of the U.S. Departments of Justice enclosed please find copy of the above mentioned order of the Federal Office of Justice dated July 30, 2008.

We are obliged to obey that order and, therefore, we will comply with it within the next days. As we cannot engage ourselves in this procedure we must leave it up to you to take the steps you consider appropriate.

Yours sincerely,

UBS AG

Caterina Allegretti
Associate Director

Jean-Michel Kunz
Legal adviser

Enclosure

UBS AG
Postfach, 8098 Zürich
Tel. +41-44-234 11 11

Rechtsdienst

Caterina Allegretti
TT83 C45P-A9C
Bahnhofstrasse 45
8001 Zürich
Tel. +41-44-234 42 32
Fax +41-44-234 20 90
caterina.allegretti@ubs.com

www.ubs.com

**Einschreiben**

5. August 2008
Ihre Referenz:
Unsere Referenz: TT83 C45P-A9C-2008-3880

**Eintretensverfügung Bundesamt für Justiz**
**Rechtshilfeersuchen U.S. Departments of Justice**

Sehr geehrter

In der Beilage erhalten Sie Kopie einer Eintretensverfügung des Bundesamtes für Justiz vom 30. Juli 2008 betreffend Rechtshilfeersuchen des U.S. Departments of Justice. Darin werden wir u.a. aufgefordert Konti, auf welche die im Ersuchen erwähnten Einkünfte transferiert wurden zu sperren und die entsprechenden Unterlagen zu liefern.

Da Sie am 20. Oktober 2006 80 Optionen American Power Conversion Corp. erworben haben, sind wir von Gesetzes wegen verpflichtet, der Aufforderung des Bundesamtes für Justiz nachzukommen und haben daher dem Ersuchen Folge geleistet. Da wir von uns aus zu dem laufenden Verfahren keine Stellung beziehen können, müssen wir es Ihnen überlassen, in dieser Angelegenheit die Ihnen geeignet scheinenden Massnahmen zu ergreifen. Sollten Sie dafür einen Anwalt beiziehen wollen, wenden Sie sich bitte das Sekretariat des Schweizerischen Anwaltsverband, Marktgasse 4, Postfach 8321, CH-3001 Bern, Telefon +41-31-313 06 06, Fax +41-31-313 06 16; www.swisslawyers.com; info@swisslawyers.com; dort kann man Ihnen mit einer geeigneten Anwaltsadresse behilflich sein.

Mit freundlichen Grüssen

UBS AG

Caterina Allegretti                    Michaela E. Ulrich Khan
Prokuristin                            Handlungsbevollmächtigte

Beilage

UBS SA
Casella Postale
8001 Zurigo

Servizio Giuridico

Caterina Allegretti
TT83 C45P-A9C
Bahnhoftstrasse 45
8001 Zurigo
Tel. 044 234 42 32
Fax 044 234 20 90

www.ubs.com

CQUE

05 agosto 2008

Nostra sigla: TT83-C45P-A9C-2008-3880

**Decisione di entrata del Ufficio federale di giustizia
Rogatoria U.S. Departments of Justice**

Egregio Cliente

Le comunichiamo che con decisione di entrata del 30 luglio 2008, allegata in fotocopia, l'Ufficio federale di giustizia, nell'ambito della rogatoria del 28 luglio 2008, ha ordinato il sequestro della documentazione nonché il blocco dei conti dove sono state trasferite le entrate dalle operazioni eseguite per quel che concerne le opzioni DRS Technologies Inc. (vedi pag. 17 della rogatoria dell'U.S. Department of Justice).

Datosi che in data del 05 e 06 maggio 2008 Lei ha acquistato un totale di 340 opzioni DRS Technologies Inc. il nostro istituto è obbligato a dar seguito a questo provvedimento, lasciando a Lei la cura di tutelare i Suoi interessi nel modo che riterrà più opportuno. Qualora desiderasse interpellare un avvocato voglia mettersi in contatto con la segreteria dell'associazione degli avvocati svizzeri, Marktgasse 4, Casella postale 8321, CH-3001 Berna, tel. +41-31-313 06 06, fax +41-31-313 06 16; www.swisslawyers.com; info@swisslawyers.com.

Distinti saluti

UBS SA

Caterina Allegretti
Procuratrice

Michaela E. Ulrich Khan
Mandataria commerciale

Allegato: citato

UBS SA
8001 Zurigo

Servizio Giuridico

Caterina Allegretti
TT83 C45P-A9C
Bahnhoftstrasse 45
8001 Zurigo
Tel. 044 234 42 32
Fax 044 234 20 90

www.ubs.com

05 agosto 2008

Nostra sigla: TT83-C45P-A9C-2008-3880

**Decisione di entrata del Ufficio federale di giustizia
Rogatoria U.S. Departments of Justice**

Egregi Signori

Le comunichiamo che con decisione di entrata del 30 luglio 2008, allegata in fotocopia, l'Ufficio federale di giustizia, nell'ambito della rogatoria del 28 luglio 2008, ha ordinato il sequestro della documentazione nonché il blocco dei conti dove sono state trasferite le entrate dalle operazioni eseguite per quel che concerne le opzioni DRS Technologies Inc. (vedi pag. 17 della rogatoria dell'U.S. Department of Justice).

Datosi che in data del 07 maggio 2008 sulla relazione                sono stati acquistati 130 opzioni DRS Technologies il nostro il nostro istituto è obbligato a dar seguito a questo provvedimento, lasciando a Lei la cura di tutelare i Suoi interessi nel modo che riterrà più opportuno. Qualora desiderasse interpellare un avvocato voglia mettersi in contatto con la segreteria dell'associazione degli avvocati svizzeri, Marktgasse 4, Casella postale 8321, CH-3001 Berna, tel. +41-31-313 06 06, fax +41-31-313 06 16; www.swisslawyers.com; info@swisslawyers.com.

Distinti saluti

UBS SA

Caterina Allegretti
Procuratrice

Michaela E. Ulrich Khan
Mandataria commerciale

Allegato: citato

UBS SA
8001 Zurigo

Servizio Giuridico

Caterina Allegretti
TT83 C45P-A9C
Bahnhoftstrasse 45
8001 Zurigo
Tel. 044 234 42 32
Fax 044 234 20 90

www.ubs.com

05 agosto 2008

Nostra sigla: TT83-C45P-A9C-2008-3880

**Decisione di entrata del Ufficio federale di giustizia
Rogatoria U.S. Departments of Justice**

Egregi Signori

Le comunichiamo che con decisione di entrata del 30 luglio 2008, allegata in fotocopia, l'Ufficio federale di giustizia, nell'ambito della rogatoria del 28 luglio 2008, ha ordinato il sequestro della documentazione nonché il blocco dei conti dove sono state trasferite le entrate dalle operazioni eseguite per quel che concerne le opzioni DRS Technologies Inc. (vedi pag. 17 della rogatoria dell'U.S. Department of Justice).

Datosi che in data del 07 maggio 2008 sulla relazione no.

sono state acquistati 800 opzioni DRS Technologies il nostro il nostro istituto è obbligato a dar seguito a questo provvedimento, lasciando a Lei la cura di tutelare i Suoi interessi nel modo che riterrà più opportuno. Qualora desiderasse interpellare un avvocato voglia mettersi in contatto con la segreteria dell'associazione degli avvocati svizzeri, Marktgasse 4, Casella postale 8321, CH-3001 Berna, tel. +41-31-313 06 06, fax +41-31-313 06 16; www.swisslawyers.com; info@swisslawyers.com.

Distinti saluti

UBS SA

Caterina Allegretti
Procuratrice

Michaela E. Ulrich Khan
Mandataria commerciale

<u>Allegato:</u> citato

✠ UBS

UBS AG
Postfach, 8098 Zürich
Tel. +41-44-234 11 11

Rechtsdienst

Jean-Michel Kunz
TT83 C45P-J6K
Bahnhofstrasse 45
8001 Zürich
Tel. +41-44-234 88 91
Fax +41-44-234 20 90
Jean-Michel .Kunz@ubs.com

www.ubs.com

**Einschreiben**

08. August 2008
Ihre Referenz:
Unsere Referenz: TT83 C45P-A9C-2008-3880

**Schreiben der SEC betr. Anhörung vor dem United States District Court Southern District of New York in Sachen "Optionen DRS Technologies" –**

Sehr geehrter Kunde

Anbei erhalten Sie eine Vorladung für eine auf den 18. August 2008 angesetzte Anhörung vor dem United States District Court Southern District of New York. Diese Vorladung wurde uns durch die Klägerin in diesem Verfahren, die Securities and Exchange Commission (SEC), zugestellt und nicht durch das aus unserer Sicht zuständige United States District Court Southern District of New York selbst. Wir sind uns bewusst, dass für die Zustellung ausländischer Gerichtsvorladungen das Haager-Übereinkommen in Zivilsachen zur Anwendung kommen muss. Obwohl diese Zustellung aus unserer Sicht formell nicht richtig erfolgt ist, möchten wir es dennoch nicht versäumen, Sie bereits heute darüber in Kenntnis zu setzen, damit Sie allenfalls die in dieser Angelegenheit Ihnen geeignet scheinenden Massnahmen (z.B. Kontaktaufnahme mit einem Rechtsvertreter, etc.) ergreifen können.

Wir möchten darauf hinweisen, dass wir den amerikanischen Behörden weder Namen noch Kontoinformationen zugestellt haben und das Bankgeheimnis somit seitens UBS AG gewahrt wurde. Es kann aber nicht ausgeschlossen werden, dass im weiteren Verlauf des Verfahrens im Rahmen des Amtshilfe- bzw. Rechtshilfeverfahrens Daten über Ihre Bankbeziehung an die amerikanischen Behörden von den schweizerischen Behörden zugestellt werden.

Mit freundlichen Grüssen

UBS AG

Jean-Michel Künz
Rechtskonsulent

Roberto Agustoni
Rechtskonsulent

Beilage: - Schreiben der Securities and Exchange Commission (SEC) vom 06.08.2008
　　　　　- Verfügung des United States District Court Southern District of New York vom 05.08.2008



**UNITED STATES**
## SECURITIES AND EXCHANGE COMMISSION
100 "F" Street, N.E.
WASHINGTON, D.C. 20549-4010

DIVISION OF
ENFORCEMENT

Jeffery T. Infelise
Assistant Chief Litigation Counsel
Telephone: (202) 551-4904
Facsimile: (202) 772-9245

August 6, 2008

**<u>Via E-Mail and FedEx</u>**
Mr. Alan Brudner, Esq.
UBS Securities, LLC
Head of Litigation
299 Park Ave.
New York, NY 10171

Re:    <u>S.E.C. v. One or More Unknown Persons</u> 08-cv-6609

Dear Mr. Brudner:

Enclosed with this letter are is a copy of the order issued by the Honorable Paul A. Crotty, extending the Temporary Restraining Order issued in this case until October 18, 2008. Judge Crotty's Order directs the defendants or their attorneys to appear at a hearing scheduled for August 18, 2008, at 3:30 p.m. in Courtroom 11-C in the United States Courthouse in New York, New York to show cause why a preliminary injunction should not be entered.

The Court's original Order, dated July 25, 2008, provides that service of all pleading and other papers filed in this case may be served upon UBS Securities LLC as an agent of the unknown purchasers. Therefore, please take action to provide copies of the attached order to the unknown purchasers.

If you have any further questions, please feel free to contact me at 202-551-4904 or at <u>infelisej@sec.gov</u>. Thank you again for your assistance.

Very truly yours,

Jeffery T. Infelise
Assistant Chief Litigation Counsel

Encl.

injunction extending the asset freeze and other ancillary relief entered in the Court's Order

of July 25, 2008 (doc. no. 3) until a final adjudication on the merits may be held.

*A copy of this order shall be served in accordance with the process service requirements set forth in the Original Order to show cause, dated 7/25/08*

Dated this _____ day of August, 2008.

_____
UNITED STATES DISTRICT JUDGE

CROTTY, J

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————

SECURITIES AND EXCHANGE                    :
COMMISSION,                                :
                                           :
                    Plaintiff,             :
                                           :
          v.                               :         Civil Action No. 08-6609 (cc/s)
                                           :
ONE OR MORE UNKNOWN PURCHASERS             :
OF CALL OPTIONS FOR THE COMMON             :
STOCK OF DRS TECHNOLOGIES, INC.            :
AND AMERICAN POWER CONVERSION              :
CORP.,                                     :
                                           :
                    Defendant.             :

———————————————————

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: AUG 0 5 200

## ORDER

On the application of Plaintiff Securities and Exchange Commission

("Commission") for a ten-day extension, until August 15, 2008, of the temporary

restraining order issued on July 25, 2008:

The Court, having considered the Complaint in this action, the Declarations of

Kevin Guerrero and Alberto A. Arevalo and attachments thereto and the Memorandum of

Points and Authorities in support of the Commission's Motion,

**IT IS HEREBY ORDERED** that, all the terms of the temporary restraining order

issued on July 25, 2008, will remain in effect until August 15, 2008, at which time the          p. 12

hearing previously scheduled for August 5, 2008, will be held in Courtroom 11C, United

States Courthouse, New York, New York. —at 3:30 PM. At that time defendants or their attorneys shall

appear before this Court to show cause why this Court should not enter a preliminary

cc:     Ms. Judith Romaine
        Executive Director, Compliance
        UBS Securities LLC
        201 Tresser Blvd.
        Stamford, CT 06901

✣ **UBS**

**UBS AG**
Postfach
CH-8098 Zürich
Tel. +41-44-497 81 11

Legal Services

Jean-Michel Kunz
TT83-C45P-J6K
P.O. Box 1770
CH-8098 Zürich
Tel. +41-44-234 88 91
Fax +41-44-234 20 90

www.ubs.com

Bundesamt für Justiz
Herr Bottinelli
Bundesrain 20
3003 Bern

14 August 2008

Our ref: TT83-C45P-J6K-2008-3880

**Request for assistance in the investigation of DRS Technologies, Inc., et al.**

Dear Mr. Bottinelli

As discussed today and upon your request we herewith confirm that we on 31 July 2008 and 5 August 2008 have notified five of our clients about the proceeding taking place and have forwarded to them photocopies of your ordinance dated 30 July 2008 and the request of the U.S. Department of Justice dated 28 July 2008 (included the temporary restraining order freezing assets dated 25 July 2008 from the United States District Court Southern District of New York) for their information.
These five clients undertook the transactions mentioned on page 17 of the above-mentioned U.S.-request.

Please find the forwarded documents in annex.

Yours sincerely

UBS AG

Jean-Michel Kunz
Director

Caterina Allegretti
Associate Director



Schweizerische Eidgenossenschaft
Confédération suisse
Confederazione Svizzera
Confederaziun svizra

Eidgenössisches Justiz- und Polizeidepartement EJPD
Bundesamt für Justiz BJ
Zentralstelle USA

Unser Zeichen : B 209'070 FRS
Bitte in der Antwort angeben

## Eintretensverfügung

vom 30. Juli 2008

der Zentralstelle USA des Bundesamts für Justiz

U.S. Rechtshilfeersuchen i.S. DRS Technologies, Inc. und American Power Conversion Corp

## Gestützt auf

das beiliegende Rechtshilfeersuchen des U.S. Departments of Justice vom 28. Juli 2008;

den Staatsvertrag zwischen der Schweiz und den Vereinigten Staaten von Amerika über die gegenseitige Rechtshilfe in Strafsachen (RVUS, SR 0.351.933.6) und das Bundesgesetz zu diesem Vertrag (BG-RVUS, SR 351.93);

den Briefwechsel vom 3. November 1993 zwischen der Schweiz und den Vereinigten Staaten betreffend Rechtshilfe in ergänzenden Verwaltungsverfahren bei strafbaren Handlungen im Zusammenhang mit dem Angebot, dem Kauf und Verkauf von Effekten und derivativen Finanzprodukten ("futures" und "options") (SR 0.351.933.66);

das Bundesgesetz über internationale Rechtshilfe in Strafsachen vom 20. März 1981 (IRSG; SR 351.1) sowie die Verordnung über internationale Rechtshilfe in Strafsachen, deren Anwendung für diejenigen Fälle vorbehalten ist, welche nicht im Staatsvertrag und dem Bundesgesetz geregelt sind (Art. 38 Abs. 1 RVUS und Art. 36a BG-RVUS);

Sandra Freiburghaus
Bundesrain 20, 3003 Bern, Schweiz
Telefon : +41 31 322 43 41, Telefax : +41 31 322 53 80
frh@bj.admin.ch
http://www.bj.admin.ch



2

**wird in Erwägung gezogen**

### I. Eintreten auf das Rechtshilfeersuchen

dass    die Zentralstelle USA des Bundesamts für Justiz (Zentralstelle) gemäss Art. 28 RVUS und Art. 10 BG-RVUS zuständig ist, über die verlangte Rechtshilfe und die Strafbarkeit der im Ersuchen dargelegten Tatumstände nach schweizerischem Recht zu entscheiden;

dass    die Prüfung der Zentralstelle ergeben hat, dass das Ersuchen den Formvorschriften gemäss Art. 29 RVUS genügt und die Rechtshilfeleistung nicht offensichtlich unzulässig ist (Art. 2 Abs. 1 RVUS);

dass    die ersuchende Behörde, die Securities and Exchange Commission (SEC), Ermittlungen führt gegen unbekannte Täterschaft wegen Verdachts des illegalen Handels mit Call Optionen in Zusammenhang mit zwei Unternehmen, deren Aktien bei der SEC registriert sind.

Dem Rechtshilfeersuchen liegt folgender Sachverhalt zugrunde:

Im ersten Fall soll die Schneider Electric SA (Schneider) der American Power Conversion Corp. (APCC) mit vertraulichem Schreiben vom 19. September 2006 erstmals angezeigt haben, dass sie an einer inskünftigen Verfolgung gemeinsamer Interessen interessiert sei. Daraufhin sollen durch eine derzeit noch nicht identifizierte Person zwischen 21. September und 20. Oktober 2006 via Omnibus Konto Nr. 452-6020300 bei der UBS AG 2'830 Call Optionen der APCC zu einem Gesamtpreis von USD 343'574.00 erworben worden sein. Am 30. Oktober 2006 soll Schneider sodann das Übernahmeangebot betreffend APCC öffentlich bekanntgemacht haben. In der Folge soll die bis anhin unbekannte Person am 30./ 31. Oktober und 3. November 2006 ihre APCC Call Optionen mit einem Gewinn von ca. USD 1,7 Mio. liquidiert haben.

Im zweiten Fall soll die Finmeccanica S.p.A. gegenüber der DRS Technologies, Inc. (DRS) am 18. März 2008 vertraulich angezeigt haben, dass sie an einer Übernahme derselben interessiert sei. Am 29. April 2008 soll bei DRS eine Telefonkonferenz des Verwaltungsrats in diesem Zusammenhang stattgefunden haben. Zwischen besagtem 29. April und 7. Mai 2008 sollen sodann (erneut via obgenanntes Omnibus Konto bei der UBS AG) 1'820 Call Optionen der DRS erworben worden sein. Infolge des am 8. Mai 2008 publik gemachten Übernahmeangebots der Finmeccanica S.p.A. soll der von der bis anhin unbekannten Person generierte Profit ca. USD 1,6 Mio. betragen haben.

Im Übrigen wird auf das Rechtshilfeersuchen vom 28. Juli 2008 verwiesen.



3

dass  die im Rechtshilfeersuchen umschriebenen Handlungen unter den Straftatbestand des Ausnützens der Kenntnis vertraulicher Tatsachen („Insiderhandel", Art. 161 StGB) zu subsumieren sind und somit auch in der Schweiz strafbar wären;

dass  der Tatbestand des Insiderhandels zwar in der Liste des RVUS nicht aufgeführt ist,

dass  aufgrund des Günstigkeitsprinzips jedoch auch für diejenigen Tatbestände, welche nicht in der Liste zum RVUS aufgeführt sind, Rechtshilfe geleistet werden kann (BGE 123 II 134 E. 1a; BGE 122 140 E. 2);

dass  sich die Schweiz mehr noch aufgrund des eingangs erwähnten Briefwechsels vom 3. November 1993 zur Leistung von Rechtshilfe verpflichtet hat;

dass  demzufolge die beidseitige Strafbarkeit gegeben ist und somit Zwangsmassnahmen angeordnet werden können (Art. 4 RVUS);

## II. Verhältnismässigkeit

dass  die ersuchende Behörde um Vornahme folgender Massnahmen ersucht:

Sperrung des Bankkontos/der Bankkonten bei der UBS AG, auf welchem/n sich die in erwähntem Zusammenhang erzielten Guthaben, nämlich wie zur Zeit bekannt bestehend aus den auf Seite 17 des Rechtshilfeersuchens erwähnten Transaktionen, befinden;

Einvernahmen der für die Bewirtschaftung des/der fraglichen Kontos/Konten zuständigen Bankangestellten der UBS AG (wobei die so zu erhebenden Informationen stattdessen durch Erhebung von Bankunterlagen einzuholen sein werden);

Identifizierung des Kontoinhabers:

dass  gemäss Sachverhaltsdarstellung des Rechtshilfeersuchens der unter den beschriebenen Umständen erfolgte, illegale Kauf und Verkauf von Call Optionen via ein sich bei der UBS AG befindliches Omnibus-Konto mit Nr. 452-6020300 von statten ging;

dass  die ersuchende Behörde dadurch einen Zusammenhang zwischen dem Strafverfahren und den verlangten Massnahmen aufgezeigt hat;

dass  die verlangten Massnahmen notwendig sind, um festzustellen, ob der beschuldigte Kontoinhaber tatsächlich das/die für die Durchführung des beschriebenen Vorgehens erforderlichen Bankkonto/en einrichtete und diese/s sodann dem illegalen Handel von Call Optionen diente;

4

dass     die verlangten Massnahmen demzufolge dem Verhältnismässigkeitsgrundsatz entsprechen;

dass     die ersuchende Behörde die Einvernahme der zuständigen Bankangestellten verlangt;

dass     die auf diesem Weg einzuholenden Informationen jedoch vorerst durch Erhebung von Bankdokumenten erhältlich zu machen sind;

dass     dieses Vorgehen gerechtfertigt ist, ist doch die ersuchte Behörde nicht an den Wortlaut des Ersuchens gebunden, sondern hat dieses in dem Sinn auszulegen, der ihm sinnvollerweise zugeschrieben werden kann, wobei nichts gegen eine weite Auslegung des Ersuchens spricht, wenn sämtliche Voraussetzungen zur Gewährung der Rechtshilfe erfüllt sind und auf diese Weise allfällige Nachtragsersuchen vermieden werden können (BGE 121 II 241 E. 3a);

dass     demnach Dokumente für die Zeit vom 1. September 2006 bis heute zu erheben sind;

dass     diese Zeitspanne gemäss Ersuchen dem Deliktzeitraum entspricht und es erlaubt, den Geldfluss zu rekonstruieren;


## III. Vorsorgliche Massnahmen

dass     die Zentralstelle von Amtes wegen oder auf Gesuch der U.S. Zentralstelle (Office of International Affairs, U.S. Department of Justice) nach Art. 8 Abs. 1 BG-RVUS vorläufige Massnahmen zur Erhaltung des bestehenden Zustandes anordnen kann, wenn die Ausführung des Ersuchens nicht offensichtlich unzulässig oder unzweckmässig erscheint;

dass     die sich die vorsorgliche Massnahme der Kontosperre rechtfertigt, da Gefahr besteht, dass die von der Strafuntersuchung betroffene Person die sich bei der UBS AG befindlichen Gelder auf andere Konten transferieren könnte, sobald sie vom Verfahren Kenntnis erhält und demzufolge dem Verhältnismässigkeitsgrundsatz entsprechen;

dass     gemäss Art. 33a IRSV Gegenstände oder Vermögenswerte, die erst gestützt auf einen rechtskräftigen und vollstreckbaren Entscheid des ersuchenden Staates (Art. 74a Abs. 3 IRSG) herausgegeben werden, beschlagnahmt bleiben, bis dieser Entscheid vorliegt oder der ersuchende Staat der zuständigen ausführenden Behörde mitteilt, dass ein solcher Entscheid nach dem Recht dieses Staates nicht mehr erfolgen kann;



5

## IV. Vollzug

dass    die Zentralstelle gemäss Art. 3 Abs. 2 BG-RVUS das Ersuchen dem Kanton übermittelt, in welchem die Rechtshilfehandlungen vorzunehmen sind;

dass    die Zentralstelle die Ausführung des Ersuchens deshalb der Staatsanwaltschaft I des Kantons Zürich überträgt;

dass    das die Vollzugsbehörde in Anbetracht der erfüllten formellen und materiellen Voraussetzungen für die Rechtshilfeleistung anzuweisen ist, den Vollzug des Ersuchens in Anwendung der von ihr in Strafsachen zu beachtenden Verfahrensvorschriften an die Hand zu nehmen (Art. 7 BG-RVUS);

dass    die Vollzugsbehörde die Zentralstelle über den Verfahrensablauf auf dem Laufenden zu halten hat und die Vollzugsakten an die Zentralstelle übermitteln wird (Art. 12. Abs. 5 BG-RVUS);

dass    die Zentralstelle nach vollständiger oder teilweiser Erledigung des Ersuchens mittels Schlussverfügung über den Umfang der Rechtshilfe entscheiden wird;

**Aus diesen Gründen wird durch die Zentralstelle Folgendes**

**verfügt**

**I.**

1. Dem Rechtshilfeersuchen des U.S. Department of Justice vom 28. Juli 2008 wird im Sinne der Erwägungen entsprochen.

**II.**

2. Die sich bei der Bank UBS AG befindlichen Konten, auf welche die im Ersuchen (S. 17 der englischen Version) erwähnten Einkünfte transferiert wurden, werden ab sofort und bis zum Ende des Rechtshilfeverfahrens gesperrt. Gleiches gilt für alle Beträge, die später auf die gesperrten Konten gutgeschrieben werden.

Die Kontonummern, die Namen der Kontoinhaber sowie die Grössenordnung der gesperrten Vermögenswerte ist der Zentralstelle raschmöglichst mitzuteilen. Ebenfalls ist der Zentralstelle

6

bekannt zu geben, ob die auf Grund dieser Verfügung getätigten bankinternen Recherchen negativ verlaufen sind.

3. Die Vermögenswerte sind weiterhin nach bankenüblichen Grundsätzen zu verwalten und anzulegen. Insbesondere dürfen bestehende sowie allfällige künftig eingehende Aufträge zur Anlage solcher Vermögenswerte weiterhin ausgeführt werden. Ausgeschlossen sind jedoch Anlagen im Ausland, die direkt auf den Namen der betroffenen Person/Gesellschaft lauten. Gegebenenfalls sind bestehende derartige Anlagen nach Ablauf bzw. auf den nächsten Kündigungstermin hin in zulässiger Form anzulegen.

4. Sollten vor Eintreffen dieser Verfügung Vermögenswerte auf andere Konten bei derselben oder einer anderen Bank (in der Schweiz oder im Ausland) transferiert worden sein, ist die Zentralstelle unter Angabe der entsprechenden Details dieser Transfers (Empfängerbank, Kontonummer, Name des Kontoinhabers) unverzüglich darüber zu orientieren.

5. Das Nichtbefolgen dieser Verfügung wird die Einleitung eines Strafverfahrens wegen Ungehorsams gegen amtliche Verfügungen im Sinne von Art. 292 des schweizerischen Strafgesetzbuches zur Folge haben. Nach dieser Bestimmung kann ein Nichtbefolgen einer amtlichen Verfügung mit Busse bestraft werden.

## III.

6. Die Staatsanwaltschaft I des Kantons Zürich wird mit der Ausführung des Rechtshilfeersuchens betraut.

7. Die Staatsanwaltschaft I des Kantons Zürich wird aufgefordert, bei der UBS AG die üblichen Dokumente (vollständige Eröffnungsunterlagen, Konto- und Depotauszüge, Gutschrifts- und Belastungsanzeigen, Vergütungsaufträge, Korrespondenzen, interne Aktennotizen, Besucherkontrollen, etc., sowie Darlehensunterlagen und Anträge für Bankschliessfächer) in Zusammenhang mit denjenigen Konten zu erheben, auf welche die im Ersuchen (S. 17 der englischen Version) erwähnten Einkünfte transferiert wurden.

8. Die Staatsanwaltschaft I des Kantons Zürich wird weiter aufgefordert, bei der UBS AG die üblichen Dokumente in Zusammenhang mit denjenigen Konten zu erheben, die mit dem im Ersuchen erwähnten Kauf der Call-Optionen (S. 7f. und 9f. der englischen Version) in Zusammenhang stehen.

9. Die Edition bezieht sich auf den Zeitraum vom 1. September 2006 bis heute.



7

**IV.**

10. Die Staatsanwaltschaft I des Kantons Zürich wird gegebenenfalls zu einem späteren Zeitpunkt durch die Zentralstelle aufgefordert, die im Zusammenhang mit dem Rechtshilfeersuchen verlangten Einvernahmen der Bankangestellten gemäss dem Abschnitt "Testimony Needed" (S. 18 des Ersuchens, englische Version) durchzuführen.

11. Die Staatsanwaltschaft I des Kantons Zürich wird die im Ersuchen erwähnte Bank auffordern, die Namen derjenigen Mitarbeiter bekannt zu geben, welche die im Zusammenhang mit dem Rechtshilfeersuchen verlangten Zeugenaussagen ("Testimony Needed") tätigen können und zu diesem Zwecke bereit wären, für die Einvernahme in die USA zu reisen (Art. 23 RVUS).

**V.**

12. Die Staatsanwaltschaft I des Kantons Zürich wird aufgefordert, der Zentralstelle die Vollzugsakten nach Abschluss der Rechtshilfehandlungen zu übermitteln. Den verlangten und Dokumenten ist die beiliegende Echtheitsbescheinigung von Geschäftsunterlagen bzw. die Bescheinigung der Vollzugsbehörde, die das Rechtshilfeersuchen vollzieht, ausgefüllt beizulegen.

**VI.**

13. Diese Verfügung wird eröffnet:

a. den durch diese Verfügung betroffenen juristischen und natürlichen Personen:

UBS AG, Bahnhofstrasse 45, Postfach 1770, 8098 Zürich

mit dem Ersuchen an das betroffene Bankinstitut, ihren Kunden nach vorgenommener Kontosperre umgehend über diese Verfügung zu informieren bzw. ihm diese und das Ersuchen zukommen zu lassen.

b. der Vollzugsbehörde:

Staatsanwaltschaft I des Kantons Zürich, Abteilung Internationale Rechtshilfe, Gartenhofstrasse 17, Postfach 9680 8036 Zürich



8

soweit nötig stellt die Vollzugsbehörde die vorliegende Verfügung und das Rechtshilfeersuchen den durch diese Verfügung betroffenen Personen zu. Eine solche Zustellung ist der Zentralstelle mitzuteilen.

### Vereinfachte Ausführung (Art. 12a BG-RVUS)

Die Berechtigten, insbesondere die Inhaber von Schriftstücken, Auskünften oder Vermögenswerten, können bis zum Abschluss des Verfahrens einer Herausgabe derselben zustimmen. Die Zustimmung ist unwiderruflich. Umfasst die Herausgabe nur einen Teil der verlangten Schriftstücke, Auskünfte oder Vermögenswerte, so wird für den restlichen Teil das ordentliche Verfahren weitergeführt.

### Rechtsmittelbelehrung

Gegen die vorliegende Verfügung ist kein Rechtsmittel zulässig. Ein solches kann jedoch nach Abschluss des Rechtshilfeverfahrens gegen die Schlussverfügung der Zentralstelle gemäss Art. 17 Abs. 1 BG-RVUS erhoben werden.

Die Zentralstelle USA erlässt ohne Verzug eine Zwischenverfügung, wenn glaubhaft gemacht ist, dass eine gemäss Ziffer II des Dispositivs verfügte Rechtshilfehandlung einen unmittelbaren und nicht wiedergutzumachenden Nachteil verursacht (Art. 11 BG-RVUS). Die Beschwerde hat keine aufschiebende Wirkung (Art. 8 Abs. 4 BG-RVUS).

Sandra Freiburghaus



**Verteiler:**

**Einschreiben**

Staatsanwaltschaft I des Kantons Zürich, Abteilung Internationale Rechtshilfe, Gartenhofstrasse 17, Postfach 9680 8036 Zürich

Beilagen:
- Rechtshilfeersuchen vom 28. Juli 2008
- Echtheitsbescheinigungsformulare

**Einschreiben mit Rückschein**

UBS AG, Bahnhofstrasse 45, Postfach 1770, 8098 Zürich

Beilagen:
- Rechtshilfeersuchen vom 28. Juli 2008
- Bescheinigung über die Echtheit von Geschäftsunterlagen



**U.S. Department of Justice**

Criminal Division

MEW:SCR:KH:JHF:kc
182-29104

Washington, D.C. 20530

Date: July 28, 2008

TO:        The Central Authority of Switzerland

SUBJECT:   Request for Assistance in the Investigation of
           DRS Technologies, Inc., et al.

The Central Authority of the United States requests the
assistance of the appropriate authorities in Switzerland pursuant
to the Treaty on Mutual Assistance in Criminal Matters and the
Diplomatic Notes exchanged on November 3, 1993, which replace the
Diplomatic Notes of November 10, 1987.  The United States
Securities and Exchange Commission ("SEC") is investigating
possible violations of United States laws related to the trading
of securities by persons in the possession of material, non-
public information and the use of accounts in Switzerland to
conduct such suspected illegal insider trading.

The SEC's formal investigations are in connection with the
purchase and sale of certain call options for the securities of
two companies whose stock is registered with the SEC.  One SEC
investigation involves possible illegal trading of call options
of American Power Conversion Corp. ("APCC") in September and
October of 2006, prior to a public announcement on October 30,

2006, that Schneider Electric SA ("Schneider") would acquire APCC. The suspicious trades in APCC securities generated profits of approximately $1.7 million. The other SEC investigation involves suspicious purchases of DRS call options before a May 8, 2008 press report of merger negotiations between DRS Technologies, Inc. ("DRS") and Finmeccanica S.p.A. ("Finmeccanica"). The suspicious DRS trades generated profits of approximately $1.6 million.

The SEC's investigations indicate that a person, whose identity is unknown, used an account in Switzerland to conduct the illegal insider trading of APCC and DRS securities. The SEC therefore requests that any funds located in Switzerland, which represent the proceeds of insider trading, as described herein and which are the subject of the attached temporary restraining order, be frozen in order to prevent the removal of those funds or their dissipation. The SEC also requests such a freeze to afford the SEC time to seek recovery of such funds from Switzerland so the SEC can provide restitution to the victims of the apparent securities fraud or take other appropriate equitable action.

## FACTS

In September and October 2006, and in late April and early May 2008, a currently unidentified purchaser ("Unknown

2

Purchaser") bought APCC and DRS call options through an account at Union Bank of Switzerland ("UBS AG" or "UBS"), in Zurich, Switzerland.  Specifically, Unknown Purchaser acquired a large number of APCC and DRS call options through an omnibus account identified as UBSL A/C Exchange Traded Derivative Account # 452-6020300 ("UBS Omnibus Account"), maintained by UBS AG.

An "option" is a financial contract between the buyer and the seller of the option.  The buyer of the option has the right, but not the obligation, to buy an agreed quantity of a particular security from the seller of the option by a certain time - the expiration date.  No later than that time, the buyer has the right to buy at a certain price - the strike price.  The buyer pays a fee, called a premium, for this right.

A call option contract typically gives the buyer the right to purchase 100 shares of the underlying security.  The buyer of a call option wants the price of the underlying security to rise in the future.  When the market price of the security exceeds the strike price of the option, the purchaser of the option can sell the option for a profit.  When the market price of the security surpasses the strike price, the option is said to be "in-the-money."  The option increases in value when it is "in-the-money." When the market price of the security is less than the strike price, the option is said to be "out-of-the-money."  The option

3

decreases in value when it is "out-of-the-money." A series of
call options consists of all call option contracts for the same
security, with the same expiration date and strike price.

APCC was a Massachusetts corporation, with its principal
executive offices in West Kingston, Rhode Island. APCC provided
products and services for home and corporate environments to
improve the availability, manageability, and performance of
sensitive electronic, network, communication and industrial
equipment. APCC's common stock was registered with the SEC.
APCC's shares traded on the NASDAQ National Market and on the
Pacific Exchange, Inc., and its options traded on the Boston
Stock Exchange, Chicago Board Options Exchange, the International
Securities Exchange, NYSE Arca, and the Philadelphia Stock
Exchange.

Schneider, headquartered in Rueil-Malmaison, France,
designs, manufactures, and sells electrical distribution
equipment, industrial robots, and secured power equipment.
Shares of Schneider trade on NYSE Euronext Paris. On September
13, 2006, Schneider sent an "indication of interest" letter to
the Chairman of APCC and to the CEO of APCC, expressing
Schneider's interest in pursuing a strategic combination with
APCC. On September 19, 2006, the APCC Board of Directors
reviewed the Schneider "indication of interest" letter. On

4

September 20, 2006, the Chairman of APCC called Schneider's President and CEO and stated that the APCC Board of Directors would be willing to have discussions with Schneider about a possible sale of APCC.

On September 21, 2006, the price of a share of APCC common stock reached a high of $21.72 and closed at $21.30. On that same day, Unknown Purchaser bought 1,600 APCC call options due to expire in December 2006, with a strike price of $22.50. Therefore, when the Unknown Purchaser bought the APCC options on September 21, those options were not in-the-money. This purchase constituted 87.33 percent of the trading volume for APCC call options in that series on September 21, 2006, and constituted 26% of all the APCC options trading on that date.

On September 22, 2006, the price of a share of APCC common stock reached a high of $21.60 and closed at $21.40. On that same date, Unknown Purchaser bought 800 APCC call options due to expire in December 2006, with a strike price of $22.50. Therefore, on the date when the Unknown Purchaser bought the APCC options, those options were not in-the-money. Unknown Purchaser's purchase of APCC call options on September 22, 2006, represented 58.78% of the trading volume on that date for options in that series, and constituted approximately nine percent of the trading in all APCC options on that date.

On October 10, 2006, the price of a share of APCC common stock reached a high of $21.98 and closed at $21.93. On that same date, Unknown Purchaser bought 350 APCC call options due to expire in November 2006, with a strike price of $22.50. Therefore when the Unknown Purchaser made his purchase on October 10, those APCC options were not in-the-money. This purchase of APCC call options on October 10, 2006, represented 14.5% of the trading volume on that date for options in that series.

On October 20, 2006, the price of a share of APCC common stock reached a high of $22.90 and closed at $22.26. On that same date, Unknown Purchaser bought 80 APCC call options due to expire in December 2006, with a strike price of $25. Therefore, when the Unknown Purchaser bought the APCC options on October 20, those options were not in-the-money. This purchase of APCC call options on October 20, 2006, represented 60.15% of the trading volume on that date for options in that series.

Thus, between September 21 and October 20, 2006, Unknown Purchaser purchased 2,830 APCC call options at a cost of approximately $343,574. The Unknown Purchaser bought all those call options although they were not in-the-money. The Unknown Purchaser purchased all his APCC call options using the UBS Omnibus Account.

On Monday, October 30, 2006, at approximately 1:00 a.m. EST, Schneider announced that it would acquire all of the outstanding shares of APCC for $31 per share, in a transaction valued at approximately $6.1 billion.  (On February 14, 2007, APCC merged into a wholly-owned subsidiary of Schneider.)

On October 30, trading volume in APCC stock and options rose sharply and the price of APCC stock closed at $30.02 on that day. On that same day, the stock price rose approximately 26% above its closing price on Friday, October 27, the last trading day before Schneider announced the merger with APPC.  On October 30 and 31 and November 3, 2006, following the announcement of the merger between APCC and Schneider, Unknown Purchaser liquidated his APCC call options and generated profits of approximately $1.7 million.

The Unknown Purchaser's trading in the APCC options may be summarized as follows:

UBSL Omnibus Account (No. 452-6020300)
(Zurich, Switzerland)
Trading in APCC Options

| Trade Date | B/S | Option Series | Exercise Price | Quantity | Option Premium | Cost | Sale Proceeds | Profit | Purchases as Percent of Series Volume |
|---|---|---|---|---|---|---|---|---|---|
| 9/21/2006 | B | Dec-06 | $22.50 | 1,600 | 1.246 * | $200,520 | | | 87.33% |
| 9/22/2006 | B | Dec-06 | $22.50 | 800 | 1.25 | $100,360 | | | 58.78% |
| 10/30/2006 | S | Dec-06 | $22.50 | 2,400 | 7.27 | | $1,739,516 | $1,438,636 | |
| 10/20/2006 | B | Dec-06 | $25.00 | 80 | 0.5 | $4,036 | | | 60.15% |
| 11/3/2006 | S | Dec-06 | $25.00 | 80 | 5.2 | | $41,563 | $37,527 | |
| 10/10/2006 | B | Nov-06 | $22.50 | 350 | 1.1 | $38,658 | | | 14.50% |

7

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 10/30/2006 | S | Nov-06 | $22.50 | 175 | 7.3 | | $127,667 | |
| 10/31/2006 | S | Nov-06 | $22.50 | 175 | 7.6 | | $132,917 | $221,927 |
| **Totals** | | | | | | $343,574 | $2,041,663 | $1,698,090 |

\* - denotes average price

Prior to the public announcement on October 30, 2006, APCC's interest in being acquired, the negotiations between Schneider and APCC, and the potential agreement with Schneider were all confidential, nonpublic information. The SEC has found no evidence that there was any public information regarding the APCC acquisition prior to the Unknown Purchaser's trades.

DRS is a Delaware corporation that has its principal executive offices in Parsippany, New Jersey. DRS supplies integrated products, services, and support to military forces, government agencies, and prime contractors worldwide. DRS's common stock is registered with the SEC. The common stock of DRS trades on the New York Stock Exchange and DRS's options trade on the Chicago Board Options Exchange, the Philadelphia Stock Exchange, the International Securities Exchange, and the New York Stock Exchange's Arca System.

Finmeccanica S.p.A. is headquartered in Rome, Italy. Finmeccanica designs and manufactures, among other things, helicopters, civil and military aircraft, satellites, missiles, and defense electronics. Shares of Finmeccanica trade on the Milan Exchange.

8

On March 18, 2008, Finmeccanica made a non-binding indication of interest to DRS to acquire all of DRS'outstanding shares for approximately $75 a share cash.  In April 2008, DRS and Finmeccanica began due diligence activities.  On April 29, 2008, DRS held a special telephonic meeting of its board of directors to discuss the transaction.

That same day, April 29, 2008, the Unknown Purchaser bought 550 DRS call options, which accounted for over 58% of the total volume for that series of options on that day.  In total, between April 29, 2008, and May 7, 2008, the Unknown Purchaser bought 1,820 DRS call options that were out-of-the-money in amounts ranging from $1.26 to $6.93 on the dates purchased, and which were set to expire in the near term.  The Unknown Purchaser purchased all the DRS options through the UBS Omnibus Account. These purchases constituted a very significant percentage of the series volume for DRS call options on the dates purchased.
The trading in the DRS options may be summarized as follows:

UBSL Omnibus Account (No. 452-6020300)
(Zurich, Switzerland)
Trading in DRS Options

| Trade Date | B/S | Option Series | Exercise Price | Quantity | Option Premium | Cost | Sale Proceeds | Profit | Purchases as Percent of Series |
|---|---|---|---|---|---|---|---|---|---|

| | | | | | | | | | Volume |
|---|---|---|---|---|---|---|---|---|---|
| 4/29/2008 | B | Jun-08 | $65 | 550 | 1.7 | | $93,500 | | 58.15% |
| | | | | | | | | $572,38 | |
| 5/12/2008 | S | Jun-08 | $65 | -550 | 12.3 | * | | -$665,680 | 0 |
| 5/5/2008 | B | Jun-08 | $70 | 170 | 1.2 | | $20,400 | | 15.70% |
| 5/6/2008 | B | Jun-08 | $70 | 170 | 1.2 | | $20,400 | | 100.00% |
| | | | | | | | | $156,40 | |
| 5/9/2008 | S | Jun-08 | $70 | -340 | 5.8 | | | -$197,200 | 0 |
| 5/7/2008 | B | Jun-08 | $65 | 930 | 3.46129 | * | $321,900 | | 53.10% |
| 5/13/2008 | S | Jun-08 | $65 | -380 | 12.2979 | * | | -$467,320 | |
| | | | | | | | | $908,68 | |
| 6/23/2008 | S | Jun-08 | $65 | -550 | 13.8775 | * | | -$763,260 | 0 |
| | | | | | | | | - | |
| | | | | | | | | $2,093,66 | $1,637, |
| Totals | | | | | | | $456,200 | 0 | 460 |

* - denotes average price

Before the markets opened on Thursday, May 8, 2008, the Wall Street Journal reported that Finmeccanica was in advanced talks to purchase DRS. The Journal reported that the buyout price constituted at least a 25% premium to DRS's closing share price of $63.74 on the last trading day prior to the announcement. That same day, May 8, DRS confirmed the Wall Street Journal report via a press release issued through Business Wire at 9:57 a.m. EST, and announced that it was "engaged in discussions contemplating a potential strategic transaction." On May 12, 2008, Finmeccanica announced that it would acquire DRS for $5.2 billion, or $81 a share.

In the 52 weeks prior to the May 8, 2008 announcement of DRS's planned merger with Finmeccanica, shares of DRS common

10

stock traded within a range of $44.11 to $65.00 on an average daily volume of approximately 477,088 shares. After the public disclosures, there was a significant increase in the volume and price of DRS common stock. At the close of trading on May 8, 2008, the price of DRS common stock was 15.9% higher than the close on the day before the disclosure of advanced merger negotiations. The stock closed trading at $73.89, on volume of 8,572,800 shares, compared with an average daily volume over the preceding three months of 738,948 shares.

The SEC has found no evidence that there was any public information regarding the DRS acquisition before the May 8, 2008 disclosure by the Journal and DRS's announcement on that same day. Prior to the disclosure, information concerning DRS's interest in being acquired and the potential agreement with Finmeccanica was confidential, nonpublic information.

On June 6, 2008 and July 7, 2008, the SEC requested the assistance of the Swiss Federal Banking Commission ("SFBC") in obtaining information concerning the purchase of APCC and DRS call options executed through UBS AG. Those inquiries revealed that the same individual originated, and is the beneficial owner of, the trades in APCC call options, and the trades in DRS call options. After reviewing the trading activity of the Unknown Purchaser, UBS AG concluded that the trading activity appeared

11

suspicious and decided not to execute further transactions on behalf of the Unknown Purchaser. The Unknown Purchaser was informed of UBS AG's decision on July 10, 2008. UBS AG has also decided to terminate its client relationship with the Unknown Purchaser.

On July 25, 2008, the SEC filed an action in the United States District Court for the Southern District of New York, entitled SEC v. One or More Unknown Purchasers of Call Options for the Common Stock of DRS Technologies, Inc. and American Power Conversion Corp., Civil Action No. 08-cv-6609 (S.D.N.Y.). In its action, the SEC informed the Court that the Unknown Purchaser purchased all the DRS and APCC options through the UBS Omnibus Account. The SEC also told the Court about the information that the SFBC had given the SEC. In addition, in its action, the SEC alleged that the Unknown Purchaser could remove the proceeds from the APCC and DRS call options, which he had liquidated and which represented illicit profits of $3.3 million, from UBS AG. Based, in part, on this information, the United States District Court Judge issued a Temporary Restraining Order to freeze all of the Unknown Purchaser's assets at UBS AG, including the proceeds of his trading in the APCC and DRS call options. In addition, the Court directed the Unknown Purchaser to repatriate his assets located outside the United States.

The SEC is able to refer the information that it used to obtain the TRO to the U.S. Department of Justice for review and possible criminal prosecution of the person who traded in the APCC and DRS call options.

<u>**OFFENSES**</u>

**18 U.S.C. § 1341.    Frauds and swindles**

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, . . . for the purpose of executing such scheme or artifice or attempting so to do, [uses the mails], shall be fined . . . or imprisoned not more than 20 years, or both. . . .

**18 U.S.C. § 1343.    Fraud by wire, radio, or television**

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, . . . any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined . . . or imprisoned not more than 20 years, or both. . . .

**18 U.S.C. § 1349.    Attempt and conspiracy**

Any person who attempts or conspires to commit any offense under this chapter [fraud] shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

**15 U.S.C. § 77q (a).    Fraudulent, Interstate Transactions**

It shall be unlawful for any person in the offer or sale of any securities . . . directly or indirectly- to employ any device, scheme, or artifice to defraud. . . .

13

**15 U.S.C. § 78j (b).  Manipulative and deceptive devices**

It shall be unlawful for any person, directly or indirectly,

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [U.S. Securities and Exchange] Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

**15 U.S.C. § 78ff (a).  Willful violations; false and misleading statements**

Any person who willfully violates any provision of this chapter (other than section 78dd-1 of this title), or any rule or regulation thereunder the violation of which is made unlawful or the observance of which is required under the terms of this chapter, . . . shall upon conviction be fined not more than $5,000,000, or imprisoned not more than 20 years, or both. . . .

**17 C.F.R. § 240.10b-5.  Employment of manipulative and deceptive devices**

It shall be unlawful for any person, directly or indirectly . . .

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

14

**18 U.S.C. § 1956.    Laundering of monetary instruments**

(a)(1)  Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts . . . a financial transaction which in fact involves the proceeds of specified unlawful activity [including fraud in the sale of securities]—

      (A) (i) with the intent to promote the carrying on of a specified unlawful activity; . . . or
      (B) knowing that the transaction is designed in whole or in part -
      (i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity;       . . .

shall be sentenced to a fine of not more than $500,000 or twice the value of the property . . . or imprisonment for not more than twenty years, or both.

(2)  Whoever . . . transfers . . . funds from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States--

      (A) with the intent to promote the carrying on of a specified unlawful activity; or
      (B)  knowing that the . . . funds . . . represent the proceeds of . . . unlawful activity and knowing that such . . . transfer is designed .
 . .

      (i)  to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity; . . .

shall be sentenced to a fine of not more than $500,000 or twice the value of the . . . funds . . . or imprisonment for not more than twenty years, or both.

\*     \*     \*

15

(h)  Any person who conspires to commit any offense defined in this section or section 1957 shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy.

**18 U.S.C. § 1957.  Engaging in monetary transactions in property derived from specified unlawful activity**

(a)  Whoever, in any of the circumstances set forth in subsection (d), knowingly engages . . . in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity [including fraud in the sale of securities], shall be punished as provided in subsection (b). . . .

(b)(1)    . . . , [T]he punishment for an offense under this section is a fine . . . or imprisonment for not more than 10 years or both.

A willful violation of the federal securities laws may be a criminal offense and may be prosecuted by the Department of Justice.  If a prosecution results in a conviction, each person engaging in the unlawful activity would be subject to a maximum penalty of ten years imprisonment and/or a fine of $1,000,000 for each securities law violation of which he or she is convicted pursuant to Section 32(a) of the Exchange Act, 15 United States Code §78ff(a).

The SEC is authorized under Section 21 of the Exchange Act to transmit evidence to the Department of Justice concerning violations, which may be used, in the Department of Justice's discretion, to institute criminal proceedings against any person

16

suspected of trading while in possession of material, nonpublic information.

**REQUEST AND NEED FOR FREEZE**

Please freeze any assets located in Switzerland that are related to the subject-matter of this request for assistance to prevent their removal or dissipation and to afford the appropriate U.S. authorities an opportunity to seek recovery of the assets from Switzerland.

The Unknown Purchaser's assets in Switzerland may presently include:

(1)  Proceeds from the sale of 1,600 APCC call options purchased on September 21, 2006 through the UBS Omnibus Account;

(2)  Proceeds from the sale of 800 APCC call options purchased on September 22, 2006 through the UBS Omnibus Account;

(3)  Proceeds from the sale of 350 APCC call options purchased on October 10, 2006 through the UBS Omnibus Account;

(4)  Proceeds from the sale of 80 APCC call options purchased on October 20, 2006 through the UBS Omnibus Account;

(5)  Proceeds from the sale of 550 DRS call options purchased on April 29, 2008 through the UBS Omnibus Account;

(6)  Proceeds from the sale of 170 DRS call options purchased on May 5, 2008 through the UBS Omnibus Account;

(7)  Proceeds from the sale of 170 DRS call options purchased on May 6, 2008 through the UBS Omnibus Account; and

(8)  Proceeds from the sale of 930 DRS call options purchased on May 7, 2008 through the UBS Omnibus Account.

17

As of July 15, 2008, approximately half of the assets deposited with UBS AG in Switzerland by the Unknown Purchaser are in cash and therefore immediately available and could be moved by the Unknown Purchaser at any time. The remainder of the Unknown Purchaser's assets at UBS AG in Switzerland are invested in shares of investment funds. These shares could be redeemed before 4 August 2008, upon payment of early withdrawal penalty.

### TESTIMONY NEEDED

Please identify any official at UBS AG in Zurich, Switzerland, and at any other bank in Switzerland related to the subject matter of this request for assistance, who opened or was responsible for monitoring any of the accounts responsive to the request above.

Please interview this official or officials regarding the following points:

1.  the identity of the person(s) who opened each account;

2.  the identity of any person seeking to transfer any funds from the account;

3.  the circumstances under which each account was opened;

4.  an explanation as to the disposition of the funds in each account;

5.  the identity of the person(s) ordering such disposition;

18

6.    actions taken in response to the freeze imposed by Swiss authorities;

7.    transactions of any kind that occurred after the freeze;

8.    investment of the funds in any financial instrument(s);

9.    loans or letters of credit for which the funds served as security or collateral;

10.    the transfer of funds out of the account; and

11.    any other matter concerning each account or the bank's relationship with the above-named parties of which the official has knowledge.

Please ask the appropriate judicial authority to permit representatives of the SEC to be present and participate in all interviews to the extent permitted under Swiss law.

### OTHER ASSISTANCE REQUESTED

Please identify Unknown Purchaser, including identifying details such as date of birth, nationality, address, telephone number, etc.

### PROCEDURES TO BE FOLLOWED

Please ask the appropriate judicial authority to do the following:

1.    take the testimony or statement of appropriate officials of UBS AG, pursuant to Article 1(4)(b), Article 10 and Article 12; and

19

2.    invite the bank officials giving testimony and to appear at some future date in New York, New York, at the expense of the United States government, to testify pursuant to Article 23.  If any witness chooses not to appear in the United States, a formal deposition of the witness at some future date is requested pursuant to Article 10 and Article 12.

July 28, 2008
Date

Stewart C. Robinson
Deputy Director
Office of International Affairs
Criminal Division

20



**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
WASHINGTON, D.C. 20549

OFFICE OF
INTERNATIONAL
AFFAIRS

**EXPEDITED TREATMENT REQUESTED**

**VIA FACSIMILE AND EMAIL**

July 25, 2008                                **PRIVILEGED AND CONFIDENTIAL**

Ms. Judith Friedman
Office of International Affairs
Criminal Division
U.S. Department of Justice
1301 New York Avenue, NW
Washington DC 20005

Re:    **Trading in the Securities of DRS Technologies, Inc. (HO-10874);**
       **OIA Ref. #2008-01002-001;**
       **Trading in Securities of American Power Conversion Corp. (HO-10770);**
       **OIA File No. 2008-00498.**

Dear Ms. Friedman:

The United States Securities and Exchange Commission ("SEC" or "Commission") requests the immediate assistance of the appropriate Swiss authorities in restraining assets in Switzerland and taking the testimony of the beneficial owner of those assets (the "Unknown Purchaser"). The SEC makes these requests pursuant to the Treaty on Mutual Assistance in Criminal Matters ("MLAT") and the Diplomatic Notes exchanged on November 3, 1993. Attached please find a draft MLAT Request which the SEC has prepared for your review.

The assets in question are held at UBS AG in Switzerland and include approximately 4.6 million Euros (EUR) (approximately $7.2 million). As of July 21, 2008, those assets consist of approximately EUR 2.3 million in cash and approximately EUR 2.3 million in an investment fund. The latter instrument may be redeemed on August 4, 2008, but may also be redeemed prior to August 4 upon payment of an early redemption penalty, at which time the funds can then be withdrawn or transferred from UBS AG.

We are requesting an expedited restraint of the UBS accounts described in the MLAT request because of our concern that funds may be dissipated at any time out of UBS AG in Switzerland. **We respectfully request that our MLAT request be processed as soon as possible and that the Swiss authorities place the requested freeze on the UBS accounts no later than August 4, 2008.**

Ms. Judith Friedman                              **Privileged and Confidential**
July 25, 2008
Page 2 of 2

On Friday, July 25, 2008, the U.S. District Court for the Southern District of New York
entered a temporary restraining ("TRO") the assets of the Unknown Purchaser, including the
accounts in question at UBS AG. The U.S. District Court also ordered the Unknown
Purchaser to repatriate all assets that are located outside the United States. We have attached
copies of the SEC's complaint, the memorandum in support of the TRO, and the Judge's
signed TRO.

Thank you for your assistance in this matter. If you have any questions concerning this
action, please contact Erin McCartney (mccartneye@sec.gov) at 202-551-4521, or me
(arevaloa@sec.gov) can be reached at 202-551-6697, or by facsimile at 202-772-9280.

Regards,

Alberto Arevalo
Assistant Director

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SECURITIES AND EXCHANGE
COMMISSION,

                              Plaintiff,

                    v.

ONE OR MORE UNKNOWN PURCHASERS
OF CALL OPTIONS FOR THE COMMON
STOCK OF DRS TECHNOLOGIES, INC.
AND AMERICAN POWER CONVERSION
CORP.,

                              Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/25/08

Civil Action No. 08 CV 6609 (UA)

## TEMPORARY RESTRAINING ORDER FREEZING ASSETS AND GRANTING OTHER RELIEF AND ORDER TO SHOW CAUSE WHY THE ASSET FREEZE SHOULD NOT CONTINUE

On the application of Plaintiff Securities and Exchange Commission ("Commission") for an *ex parte* Order: (1) freezing assets; (2) requiring identification; (3) requiring repatriation of assets; (4) preventing document alteration or destruction; (5) expediting discovery in this action; (6) providing for alternative service; and (7) requiring defendants to show cause why the Court should not issue a Preliminary Injunction and impose other relief against them:

The Court, having considered the Complaint in this action; the Declarations of Kevin Guerrero and Ilana Sultan, a letter from the Swiss Federal Banking Commission and the Memorandum of Points and Authorities in support of the Motion for Temporary Restraining Order, makes the following findings:

1.      This Court has jurisdiction over the subject matter of this action and over defendant.

2.    The Commission has made a sufficient and proper showing in support of the relief granted herein, as required by Section 21(d) of the Securities Exchange Act of 1934 (15 U.S.C. § 78u(d)) by evidence establishing a *prima facie* case and a strong likelihood that the Commission will prevail at trial on the merits and that the defendant, directly or indirectly, has engaged in and, unless restrained and enjoined by order of this Court, will continue to engage in acts, practices, and courses of business constituting violations of Section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78j(b)), and Rule 10b-5 (17 C.F.R. § 240.10b-5).

3.    There is good cause to believe that, unless restrained and enjoined by order of this Court, defendants will dissipate, conceal, or transfer from the jurisdiction of this Court assets which could be subject to an order directing disgorgement or the payment of civil money penalties in this action. It is appropriate for the Court to issue this Temporary Restraining Order *ex parte* so that prompt service on appropriate financial institutions can be made, thus preventing the dissipation of assets.

4.    There is good cause to believe that, unless restrained and enjoined by order of this Court, defendant may alter or destroy documents relevant to this action.

Now, therefore,

## I.

IT IS HEREBY ORDERED that, pending the determination of the Commission's Motion for a Preliminary Injunction or hearing on the merits:

A.    Defendants and their agents, servants, employees, attorneys-in-fact, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise (including without limitation, UBS Securities LLC and UBS AG Zurich), and each of them, hold and retain within their control, and otherwise prevent any

2

disposition, transfer pledge, encumbrance, assignment, dissipation, concealment, or other disposal whatsoever of any of their funds or other assets or things of value presently held by them, under their control or over which they exercise actual or apparent investment or other authority, in whatever form such assets may presently exist including, but not limited to:

(1)     Proceeds from the sale of 1,600 APCC call options purchased on September 21, 2006 through an omnibus account known as UBSL A/C Exchange Traded Derivative Account # 452-6020300 maintained by UBS AG of Zurich, Switzerland ("UBS Omnibus Account");

(2)     Proceeds from the sale of 800 APCC call options purchased on September 22, 2006 through the UBS Omnibus Account;

(3)     Proceeds from the sale of 350 APCC call options purchased on October 10, 2006 through the UBS Omnibus Account;

(4)     Proceeds from the sale of 80 APCC call options purchased on October 20, 2006 through the UBS Omnibus Account;

(5)     Proceeds from the sale of 550 DRS call options purchased on April 29, 2008 through the UBS Omnibus Account;

(6)     Proceeds from the sale of 170 DRS call options purchased on May 5, 2008 through the UBS Omnibus Account;

(7)     Proceeds from the sale of 170 DRS call options purchased on May 6, 2008 through the UBS Omnibus Account;

(8)     Proceeds from the sale of 930 DRS call options purchased on May 7, 2008 through the UBS Omnibus Account;

B.     That any financial or brokerage institution or other person or entity and holding any funds or other assets in the name of, for the benefit of, or under the control of defendants, their agents, servants, employees, attorneys-in-fact, and those persons in active concert or participation with them, and each of them, shall hold and retain within their control and prohibit the withdrawal, removal, transfer or other disposal of any such funds or other assets except as otherwise ordered by this Court.  Necessary and reasonable living expenses will be granted to defendants upon

3

good cause show 1 by application to the Court with notice to and an opportunity for the Commission to be 1eard;

**II.**

IT IS HERI BY FURTHER ORDERED that, each defendant shall submit in writing to this Court and Plai 1tiff Commission within two (2) business days following service of this Order, the followin g identify information:

(A) all 1 ames by which each defendant is known, all business and residence addr sses, postal box numbers, telephone numbers, and facsimile numbers, e-mail addr sses and the nationality of defendant; and

(B) each account with any financial institution or brokerage firm maintained in defer dant's name or held for defendant's direct or indirect beneficial interest from Septe mber 1, 2006 through the present, including, but not limited to, each account throu gh which each defendant directed securities transactions since September 1, 2006, or in which proceeds from such transactions were held.

**III.**

3 business days

IT IS HERE 8Y FURTHER ORDERED that, within ~~72 hours~~ of notice of the entry of  this Order, each def :ndant shall repatriate all assets obtained from the activities described in the Commission's Con 1plaint that are now located outside the territorial limits of the United States, and that each defen :ant direct the return of such assets to the Registry of the Court, pending conclusion of this m atter.

4

**IV.**

IT IS HEREBY FURTHER ORDERED that, defendants and his agents, servants, employees, attorney's-in-fact, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, and each of them, are hereby restrained from destroying, mutilating, concealing, altering, or disposing of any document referring or relating in any manner to any transactions described in the Commission's complaint in this action. As used in this order, "document" means the original and all non-identical copies (whether non-identical because of handwritten notation or otherwise) of all written or graphic matter, however produced, and any other tangible record, or electronic data compilation capable of reproduction in tangible form, including, without limitation, correspondence, memoranda, minutes, telephone records, e-mails, reports, studies, telexes, diaries, calendar entries, contracts, letters of agreement, and including any and all existing drafts of all documents.

**V.**

A.    IT IS HEREBY FURTHER ORDERED that, pursuant to Rule 4 of the Federal Rules of Civil Procedure, service of all pleadings and other papers, including the Summons, the Complaint, this Order and all documents filed in support thereof, and all other documents to be served in this action may be made by serving such documents on any of the following agents of defendants: UBS Securities LLC, or UBS AG Zurich, Switzerland and any of their respective affiliates, successors in interest and assigns, ~~these entities having been acting in securities matters for individual principals~~.                    (tbd)

B.    IT IS HEREBY FURTHER ORDERED that, pursuant to Rule 4 of the Federal Rules of Civil Procedure, service of all pleadings and other papers, including the Summons, the Complaint, this Order and all documents filed in support thereof, and all other documents to be served in this action, may be made personally, by facsimile, by overnight courier, or by mail upon

5

each defendant, his attorney, his U.S. agents or his foreign agents identified in the prior subparagraph to the extent permitted by law, or by an alternative provision for service permitted by Rule 4 of the Federal Rules of Civil Procedure, or as this Court may direct by further order.

VI.

IT IS HEREBY FURTHER ORDERED that, the Commission's application for expedited discovery concerning defendants, their assets and activities, is granted and that, commencing with the time and date of this Order, in lieu of the time periods, notice provisions, and other requirements of Rules 26, 30, 33, 34, 36 and 45 of the Federal Rules of Civil Procedure, and Rule 30.1A of the Local Rules of this Court, discovery shall proceed as follows:

(A)    Pursuant to Rule 30(a) of the Federal Rules of Civil Procedure, the Commission may take depositions upon oral examination on two days notice of any such deposition. Depositions may be taken ~~Monday through Saturday.~~ As to each defendant and his agents, servants, employees, brokers and associates, the Commission may depose such witnesses after serving a deposition notice by facsimile, hand or overnight courier upon such individuals, and without serving a subpoena on such witness. Depositions which have not been signed by the witness may be used for purposes of the hearing on plaintiff Commission's application for a preliminary injunction;

(B)    Pursuant to Rule 33(a) of the Federal Rules of Civil Procedure, each defendant shall answer the Commission's interrogatories within three days of service of such interrogatories upon defendant;

(C)    Pursuant to Rule 34(b) of the Federal Rules of Civil Procedure, each defendant shall produce all documents requested by the Commission within three days of service of such

6

request, with production of the documents made to Jeffery T. Infelise, U.S. Securities & Exchange Commission, or such other person or place as counsel for the Commission may direct in writing;

(D)    Pursuant to Rule 36(a) of the Federal Rules of Civil Procedure, each defendant shall respond to the Commission's requests for admissions within three days of such requests; and

(E)    All written responses to the Commission's requests for discovery under the Federal Rules of Civil Procedure shall be delivered by hand or overnight courier to the Commission to the attention of Jeffery T. Infelise, or such other place and person as counsel for the Commission may direct in writing.

## VII

IT IS HEREBY FURTHER ORDERED, that this Order shall be, and is, binding upon each defendant, and each of his agents, servants, employees, attorneys-in-fact, and those persons in active concert or participation with him who receive actual notice of this Order by personal service, facsimile service, or service in accordance with Section V of this Order, or otherwise.

## VIII.

IT IS HEREBY FURTHER ORDERED, that each defendant or his attorneys shall appear before this Court at 10:00 o'clock, a.m., on the 5 day of _____, 2008, in Room 20 C _____ of the United States Courthouse, New York, New York, or as soon thereafter as he can be heard, and in any event prior to the expiration of this Order, to show cause, if any exists, why this Court should not enter a preliminary injunction extending the asset freeze granted in this Order until a final adjudication on the merits may be had. Defendants shall serve any papers in opposition to such relief by hand delivery or overnight courier service to the Commission's counsel, Jeffery T. Infelise, Assistant Chief Litigation Counsel, Securities and Exchange Commission, 100 F Street, NE, Mail Stop 4010, Washington, DC, 20549, or via email to infelisej@sec.gov, no later than three full business days before such hearing. The Commission may serve and file a reply no later than 24 hours before the hearing, and shall serve such reply brief, if any, on each defendant or his attorney by facsimile transmission, email,

courier service, or other means as the Commission may reasonably determine will give
defendants or their attorneys prompt delivery of these papers.

## IX.

~~IT IS FURTHER ORDERED that the Court shall retain jurisdiction of this matter for all
purposes.~~

Dated this 25 day of July, 2008.

_____
UNITED STATES DISTRICT JUDGE

# EXHIBIT L

8 of 14 DOCUMENTS

**SECURITIES AND EXCHANGE COMMISSION, Plaintiff, v. CERTAIN PUR-
CHASERS OF THE CALL OPTIONS OF DURACELL INTERNATIONAL, INC.,
Defendants.**

**96 Civ. 7017 (SAS)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF
NEW YORK**

**1996 U.S. Dist. LEXIS 14425**

**October 1, 1996, Decided
October 2, 1996, FILED**

**COUNSEL:** [*1] For SECURITIES AND EX-
CHANGE COMMISSION, plaintiff: Russell G. Ryan,
Securities & Exchange Commission, Washington, D.C.

**JUDGES:** SHIRA A. SCHEINDLIN, U.S.D.J.

**OPINION BY:** SHIRA A. SCHEINDLIN

**OPINION:**

OPINION

**FINDINGS OF FACT AND CONCLUSIONS OF
LAW**

The Court, having considered the Motion of Plaintiff
Securities and Exchange Commission (the "Commis-
sion") for: (1) a Preliminary Injunction Freezing Assets,
(2) an Order Requiring Identification, (3) an Order Au-
thorizing Alternative Means for Service of Process, and
(4) an Order Preventing Document Alteration or Destruc-
tion; and

Based on the entire record in this case, including the
Complaint, Declarations, and Exhibits on file, and the
Commission having been heard and the defendants hav-
ing failed to appear or in any way contest the Commis-
sion's motion or the factual and legal submissions made
by the Commission in support thereof, and the Court
being full advised;

Pursuant to Rule 52(a) of the Federal Rules of Civil
Procedure, the Court enters the Findings of Fact and
Conclusions of Law set forth below.

**FINDINGS OF FACT**

**The Nature of this Action and Procedural His-
tory**

1. The Commission commenced this action against
defendants, Certain [*2] Purchasers of the Call Options
of Duracell International, Inc. ("Duracell") on September
16, 1996, alleging that defendants violated Securities and
Exchange Act of 1934 Section 10(b) and Rule 10b-5
thereunder. That same day, this Court granted the Com-
mission's ex parte application for a Temporary Restrain-
ing Order Freezing Assets and Other Relief (the "TRO").
The TRO froze the proceeds of defendants' Duracell call
options purchases pending the Commission's motion for
a preliminary injunction continuing the asset freeze
(TRO, PI), permitted the Commission to take expedited
discovery (TRO, PII), required the defendants to provide
identifying information (TRO, PIII), and authorized the
Commission to use alternative methods to effect service
of process pursuant to Fed. R. Civ. P. 4(f) and 4(h) (TRO
PIV).

2. This action arises out of defendants' alleged ille-
gal insider trading in the call options of Duracell. The
Commission's complaint alleges that the defendants pur-
chased Duracell call options while in possession of mate-
rial nonpublic information concerning a proposed merger
between The Gillette Company ("Gillette") and Duracell.
Defendants effected their trading in accounts held [*3]
by 1) Banca della Svizzera Italiana ("BSI"), of Lugano,
Switzerland, at the Pershing Division of Donaldson,
Lufkin & Jenrette Securities Corp. ("Pershing") and 2)
Nominees (Bahamas) Ltd ("Nominees Bahamas") of
Nassau, Bahamas at Prudential Securities Incorporated
("Prudential"). Because defendants by trading through
foreign financial institutions concealed their identities,
and because only one purchaser has identified itself to
the Commission, but refused to identify the beneficial
owners of the options, the beneficial owners of the call
options and the proceeds of their sale remain unknown.

**The Proposed Merger Between Duracell and Gillette**

3. Duracell is a manufacturer and marketer of alkaline batteries. During all times relevant, Duracell's common stock traded on the New York Stock Exchange (Declaration of Laura B. Josephs, ("Josephs Dec."), P 8). Its options traded on the American, New York, and Philadelphia Stock Exchanges (Josephs Dec., P 8; Declaration of Eric D. Miller ("Miller Dec."), P3). Gillette is a Delaware corporation which manufactures and markets personal grooming products, stationery products, and small appliances (Josephs Dec., P 7).

4. On July 12, 1996, [*4] Duracell's chief executive officer was informed by representatives of its principal shareholders that Gillette was interested in acquiring Duracell (Declaration of Charles R. Perrin ("Perrin Dec."), P 2). n1 Duracell's Board of Directors met on August 22, 1996 to consider the terms of a Gillette proposal (Perrin Dec., P 3). The Board informally concluded that the price was inadequate (Id.)

n1 Gillette's chief executive officer initially discussed the possibility of a business combination between Gillette and Duracell with a representative of Duracell's principal shareholder on January 19, 1996 and February 6, 1996, but no progress was made. (Declaration of Joel P. Davis ("Davis Dec."), P 2).

5. Thereafter, on August 29, 1996, Duracell's CEO was advised that Gillette was prepared to offer Duracell's shareholders .904 shares of Gillette stock for each Duracell share, and on August 30, 1996 Gillette and Duracell entered into confidentiality and standstill agreements (Perrin Dec., PP 4, 5; Davis Dec., PP 4, 5). [*5]

6. On September 3, 1996, Gillette's management made a due diligence presentation to Duracell's management in New York and on September 4, 1996, Duracell's management made a due diligence presentation to Gillette's management in Boston (Perrin Dec., PP 6, 7; Davis Dec., PP 6, 7).

7. On Thursday, September 5, 1996, members of Duracell's management met with representatives of its principal shareholder, its investment bankers, and outside legal counsel to discuss Gillette's offer (Perrin Dec., P 8).

8. From September 5 until Wednesday, September 11, representatives of Gillette and Duracell, as well as the companies' attorneys and investment bankers, worked to prepare necessary acquisition documentation for presentation at September 12, 1996 meetings of the compa-

nies' Boards of Directors (Perrin Dec., P 10; Davis Dec., P 8).

9. On or about September 8, 1996, senior executives of Gillette travelled to England for the September 12, 1996 meeting of Gillette's Board (Davis Dec., P 9).

10. On the morning of Thursday, September 12, 1996, the Boards of Gillette and Duracell met separately and approved the transaction (Perrin Dec., P 11; Davis Dec., P 10). Following the board meetings, the [*6] companies jointly announced the merger between Duracell and Gillette in a stock for stock transaction (Perrin Dec., P 11; Davis Dec., P10).

11. Duracell common stock closed at $ 58.125 on September 12, 1996, representing an increase of $ 9 per share, or approximately 18%, over the price at which the stock closed on the previous day (Josephs Dec., P 21). On September 13, 1996, Duracell common stock closed at $ 62.42, 27% higher than the day before the announcement (Josephs Dec., PP 21-24).

12. During the period from August 29 until the time of their September 12 announcement, while Gillette and Duracell were negotiating the terms of their proposed transaction, both Gillette and Duracell took steps to ensure that information pertaining to the proposed transaction was kept confidential (Perrin Dec., P 12; Davis Dec., P 11).

13. Press reports, analysts' reports, and other news sources reveal no published reports of rumors prior to the September 12 announcement concerning a possible business combination between Gillette and Duracell -- or any business combination involving Duracell (Josephs Dec., P 23, Miller Dec., P 18).

**Two Foreign Financial Institutions Purchase Duracell Common [*7] Stock on Behalf of Unknown Purchasers**

**(1) Transactions Effected Through the Pershing Division of Donaldson, Lufkin & Jenrette**

14. On Tuesday September 10, 1996, BSI, a financial institution located in Lugano, Switzerland, purchased 500 September 50 Duracell call option contracts at prices ranging from $ .50 to $ 1.25, on behalf of certain unknown customers (Josephs Dec., P 25; Declaration of David J. Campbell ("Campbell Dec."), Ex. 1). On that same day, BSI purchased 500 September 55 Duracell call option contracts at prices ranging from $ .125 to $ .625 on behalf of certain unknown customers (Josephs Dec., P 25; Campbell Dec., Ex. 2). An employee of Finbro Management, a brokerage firm from Lugano, Switzerland, placed the purchase orders in an account in the name of BSI through Pershing, a United States broker-dealer (Josephs Dec., P 26). The BSI account sold the

options on September 12, 1996 (Campbell Dec., Exs. 3, 4).

15. Under the terms of the Duracell option contracts, the purchaser acquired the right to purchase Duracell stock at $ 50 and $ 55 per share (Miller Dec., P 6). The options would expire on September 21, i.e., if the purchaser failed to exercise [*8] the options, or find a buyer for them, by September 21, they would become worthless (Miller Dec., PP 6, 10-11). The options contracts were "out of the money" i.e., the strike price of the option exceeded the stock price at the time of purchase (Miller Dec., P 11). On September 9, 1996 Duracell common stock closed at $ 47.25 per share -- below the option strike price (Miller Dec., P 14).

16. Lennox, S.A. ("Lennox"), a financial management firm from Lugano, Switzerland, identified itself to the Commission as the purchaser of Duracell call options purchased in the Pershing account in the name of BSI (Shea Dec., PP 16-18). Lennox manages funds for certain BSI customers pursuant to an arrangement with BSI, and claims to have discretionary securities trading authority for the customers (Shea Dec., P 17). Lennox claims to have effected the subject options purchases on at its own initiative, without discussion with its customers (Shea Dec., P 18). Lennox further claimed to the Commission that the beneficial purchasers of the Duracell call options were sixteen Italian clients of BSI (Shea Dec., P 18). Lennox declined, however, to identify its customers (Shea Dec., P 18).

**(2) Transactions [*9]  Effected Through Nominees Bahamas**

17. Also on September 10, 1996, Nominees Bahamas, a Bahamian financial institution, purchased 450 September 50 Duracell call option contracts on behalf of certain unknown customers at prices ranging from $ .6875 to $ 1.25 (Josephs Dec., P 28; Declaration of Christine Sarchapone ("Sarchapone Dec."), Exs. 3, 4). This order was placed by a Nominees Bahamas employee in an account at Prudential, a United States broker-dealer (Josephs Dec., P 29; see Sarchapone Dec., P 2, Exs. 3-4).

18. On September 11, 1996, Nominees Bahamas placed another order with Prudential and this time purchased 150 Duracell September 50 call options at a price of $ .9375 (Josephs Dec., P 28; Sarchapone Dec., P 2, Ex. 1). Nominees Bahamas on September 11 purchased through Prudential an additional 100 September 55 call options at $ .375 (Josephs Dec., P 28; Sarchapone Dec., P 2, Ex. 2). Nominees Bahamas sold these options on September 13, and received $ 4.87 for the September 55 options and $ 10 for the September 50s. (Sarchapone Dec., P 2, Exs. 5, 6).

19. The representative of Nominees Bahamas who placed the order did so on behalf of a customer whom he refused to identify [*10]  to the Commission (Josephs Dec., P 29, 33).

20. The Prudential broker, when he took the Nominees Bahamas order, expressed to this representative incredulity that his client would truly want to buy out of the money options so near expiration (Josephs Dec., P 30). The representative replied that "I'm sure my clients are aware of that. It looks as though they know what they are doing," and went forward with the purchase (Josephs Dec., P 30).

**The Transactions Lacked Economic Sense, Absent Knowledge by the Purchasers of a Proposed Takeover.**

21. Defendants' purchases, viewed in light of the information publicly available on September 10 and 11, 1996, make little economic sense. There appears to be no economically sound basis for the purchases of September 55 Duracell call options purchases on September 10 and 11 in the BSI and Nominees Bahamas accounts, and very little economic basis for the purchases of Duracell 50 call options on those dates (Miller Dec., P 5).

22. Because the price of Duracell common stock had been relatively steady in the time period from August 16 through September 9, and had not traded above $ 47.50 per share during that period, there was nothing in the price [*11]  history of the stock indicating that a purchase of September 50 and September 55 calls would be prudent (Miller Dec., P13). The September 55 call options, for example, would have had to increase by $ 7.75 in ten days; an increase of 16%, following a period when the stock had fluctuated in a 2 1/2 point range (Miller Dec., P14).

23. The price of the September options had dropped to levels indicating the market's assessment that the options were virtually worthless (Miller Dec., P15).

24. The options were due to expire in ten days, posing a substantial risk that any purchaser would be unable to exercise the options, or find a buyer for them, prior to the expiration date, thereby jeopardizing the entire investment (Miller Dec., P17). Indeed, in early morning trading on September 10, Duracell September 55 options were quoted as no bid -- demonstrating the lack of purchaser interest in the options (Miller Dec., P17).

25. Defendants' purchases made up a large portion of the market volume of Duracell September call option on September 10 and 11, 1996. Defendants' purchases on September 10 accounted for 35% of total volume of September 50 call options and 100% of September 55 call options [*12]  (Josephs Dec., P24). On September 11 defendants' purchases were 26% of the volume in Sep-

tember 50 options and 24% of the volume in September 55 options (Josephs Dec., P24).

**The Proceeds of Defendants' Trading are in Imminent Jeopardy of Removal from the United States**

26. On Thursday September 12 and Friday, September 13, following the Gillette-Duracell announcement, BSI and Nominees Bahamas sold on behalf of defendants all of their Duracell options (Josephs Dec., PP 27-31; Sarchapone Dec., Exs. 5, 6). The proceeds of the sales would have been available for distribution to defendants on Monday, September 16 (Josephs Dec., PP 27, 29), but for this Court's issuance of the TRO. Nominees Bahamas requested that Prudential wire transfer the proceeds of the sale to it in the Bahamas upon settlement (Josephs Dec., P 29; Sarchapone Dec., Ex. 7). While BSI did not request the transfer of any funds, once settlement took place, the funds were available for swift wire transfer out of the country (Josephs Dec., P 29).

27. Absent an asset freeze, defendants can remove funds beyond the Court's jurisdiction, and, in the case of defendants certain purchasers through Nominees Bahamas, have shown [*13] the intention to do so. If these funds are removed from the country, there is little hope that they can be recovered at a later date, rendering any final judgment of disgorgement the Commission might obtain meaningless.

**Service of Documents Upon the Defendants**

28. On September 16, 1996, the day the Court issued the TRO, pursuant to paragraph IV of the TRO, the Commission served by overnight courier summonses and copies of the Complaint, along with the TRO and papers filed in support thereof, on the United States brokerage firms through which defendants' Duracell options purchases were effected -- Prudential and Pershing (Shea Dec., PP 7, 11).

29. On September 18, 1996, the Commission delivered a letter to the Federal Office of Police Matters ("FOPM") in Bern, Switzerland requesting that the FOPM deliver to BSI, and to Lennox, the financial management firm from Lugano Switzerland that claims to have initiated the September 10, 1996 Duracell call option purchases in the account of BSI: 1) letters from the Commission explaining this action and giving notice of the September 26, 1996 hearing; 2) copies of the summons and complaint; 3) the TRO, and papers filed in support thereof; [*14] and 4) the Commission's discovery requests for defendants and for nonparties. (Shea Dec., P 8).

30. On September 18, 1996, the Commission sent to Nominees Bahamas, to the attention of Kenneth Clowes, Managing Director of the Royal Bank of Canada Trust Company, in Nassau, Bahamas, 1) a letter explaining this action and giving notice of the September 26, 1996 hearing; 2) copies of the summons and complaint; 3) the TRO, the papers filed in support thereof; and 4) the Commission's discovery requests for defendants and for nonparties. (Shea Dec., P 12).

31. The Commission also sent on September 19, 1996 the documents referred to in P30 to Oliver Liddell, Esq., an attorney claiming to represent the purchaser through Nominees Bahamas. (Shea Dec., P 14).

32. In addition, the Commission gave verbal notice of the terms of the TRO and of the September 26, 1996 hearing to Lennox and to the attorney representing the purchasers through Nominees Bahamas. (Shea Dec., PP 10, 13).

33. Despite having received service and notice of the proceedings, Defendants have failed to appear and contest entry of a preliminary injunction.

**The Commission's Discovery Efforts**

34. The defendants received [*15] actual notice of the Commission's discovery requests, including the Commission's notices requiring the defendants to appear for depositions and produce documents on September 23 and 24, 1996, and notices of subpoenas served upon nonparties for the production of documents. Specifically, on September 18 and 19, 1996 the Commission served defendants with its discovery requests through Prudential, Nominees Bahamas, and Pershing via overnight courier. (Shea Dec., P 20).

35. The Commission further made efforts to notify defendants certain purchasers through BSI of its discovery requests through the FOPM. At the Commission's request the FOPM delivered letters from the Commission to both BSI and Lennox notifying these entities of the discovery requests served on them, enclosing the requests, and requesting that they advise their customers accordingly. (Shea Dec., P 8).

36. The Commission further served its discovery requests on defendants certain purchasers through Nominees Bahamas, and through Mr. Liddell, who claims to represent these defendants. (Shea Dec., PP 14, 20).

**Defendants' Default and Failure to Comply with This Court's Order**

37. To date, defendants have not filed, or [*16] served upon the Commission, any document providing the identifying information regarding themselves and their bank and brokerage accounts, as ordered in the TRO (Shea Dec., P 5).

38. Lennox provided some documents to the Commission, but Defendants otherwise have failed to respond to the Commission's document production requests, and

none of the defendants appeared for their depositions (Shea Dec., P 21).

39. None of the defendants has filed or served any papers in opposition to the entry of the preliminary injunction. Nor has any of the defendants challenged the asset freeze or other emergency relief granted in the TRO.

## CONCLUSIONS OF LAW

1. The defendants, directly and indirectly, have made use of the means and instrumentalities of interstate commerce, the mails, or the facilities of a national securities exchange in connection with the acts, practices, and courses of business described below.

2. The Commission's action arises out of trades, placed or cleared through broker-dealers in the United States registered with the Commission, in the options of a United States corporation traded on the American, New York, and Philadelphia Stock Exchanges.

3. This Court has jurisdiction [*17] over this action pursuant to Sections 21 and 27 of the Exchange Act, 15 U.S.C. § § 78u and 78aa.

4. This Court has personal jurisdiction over defendants pursuant to Section 27 of the Exchange Act, based on the activities set forth in Conclusions of Law 1 and 2.

5. Certain of the transactions, acts, practices, and courses of business constituting the alleged violations of law occurred within the Southern District of New York. Accordingly, pursuant to Sections 21(d) and 27 of the Exchange Act, 15 U.S.C. § § 78u(d) and 78aa, venue properly lies in this District.

6. The defendants received actual notice of the pendency of this action against them, the TRO, and the Commission's discovery requests, and the date and time of the preliminary injunction hearing in this matter. Service of process was validly effected pursuant to the TRO, P IV, as set forth in Findings of Fact P 28.

7. The defendants have violated this Court's order requiring them to provide information identifying themselves, and their brokerage and financial accounts, and have failed to comply with their discovery obligations. The defendants have also defaulted on the Commission's motion for a preliminary injunction continuing [*18] the asset freeze and for an order granting other relief.

8. The Commission has demonstrated that it is necessary to continue the asset freeze during the pendency of this action to ensure that there are assets to satisfy, at least in part, any final judgment that the Commission might obtain against the defendants.

9. The Commission has also demonstrated that there is a basis to infer that the defendants purchased Duracell call options while in possession of material, nonpublic information concerning a proposed merger between Gillette and Duracell, in violation of Section 10(b) of the Exchange Act, 15 U.S.C. 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.

SO ORDERED:

SHIRA A. SCHEINDLIN

U.S.D.J.

Dated: New York, New York

October 1, 1996

# EXHIBIT M

*TG*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION (CHICAGO)

|  |  |  |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | Civil Action No. 07C-1208 |
| | : | |
| ONE OR MORE UNKNOWN PURCHASERS OF | : | |
| CALL OPTIONS FOR THE COMMON STOCK OF | : | |
| TXU CORP., | : | |
| | : | |
| Defendants. | : | |
| | : | |

## PRELIMINARY INJUNCTION AGAINST
## UNKNOWN DEFENDANT NUMBER TWO TRADING THROUGH CREDIT SUISSE
## AND UNKNOWN DEFENDANT NUMBER THREE TRADING THROUGH FIMAT

This matter came before the Court on the motion of the Plaintiff, Securities and Exchange

Commission ("Commission"), for the Entry of Preliminary Injunction Against Defendant

Unknown Purchaser of at least 1060 call option contracts for the common stock of TXU Corp.

traded through Credit Suisse ("Defendant #2") and Defendant Unknown Purchaser of at least 260

call option contracts for the common stock of TXU Corp. traded through Fimat Banque Frankfurt

Zweigniederlassung ("Defendant #3"), following the Order of this Court granting: (1) a

temporary restraining order freezing assets; (2) an order requiring identification; (3) an order for

repatriation of assets; (4) an order preventing document alteration or destruction; (5) an order

authorizing alternative means for service of process; (6) an order for expedited discovery; and (7)

an order requiring defendants to show cause why their assets should not remain frozen until the

conclusion of this litigation. Based on all the files, records, and proceedings herein, and the

Commission having been heard and Defendants #2 and #3 having failed to appear or in any way

contest the Commission's motion for preliminary injunction or any of the factual and legal

submissions made by the Commission in support thereof, and the Court being fully advised, the

Court is of the opinion that the Commission's motion should be GRANTED. Pursuant to FED.

R. CIV. PRO. 52(a), the Court enters the Findings of Fact and Conclusions of Law set forth below.

## FINDINGS OF FACT

1.      Defendants #2 and #3 received actual notice of the proceedings herein, and were validly
served with process.

2.      There are no factual issues in dispute with regard to Defendants #2 and #3. Despite
having received service and notice of the proceedings, neither Defendant has appeared or
otherwise contested the entry of a preliminary injunction. Neither defendant has filed or served
any papers in opposition to the entry of the preliminary injunction, nor has either defendant
challenged the asset freeze or other emergency relief granted in the TRO.

3.      Both Defendant #2 and Defendant #3 have failed to identify themselves to the Court or to
the Commission and have failed to provide financial or account information as ordered by this
Court.

4.      Both Defendant #2 and Defendant #3 have failed to repatriate assets obtained from the
activities described in the Commission's Complaint.

5.      The proceeds of the trading of Defendants #2 and #3 are in imminent jeopardy of
dissipation or loss. Absent an asset freeze, Defendants can remove funds beyond the Court's
jurisdiction with little hope that they can be recovered at a later date, rendering any final
judgment of disgorgement the Commission might obtain meaningless.

6.      It is necessary to guard the records of Defendants #2 and #3 relating to the defendants or
any of their securities, financial, or business dealings from destruction or alteration.

*SEC v. One or More Unknown Purchasers of Call Options*
*For the Common Stock of TXU Corp.*
PRELIMINARY INJUNCTION AGAINST DEFENDANTS #2 AND #3                    Page 2

## CONCLUSIONS OF LAW

1.    Defendants #2 and #3, directly and indirectly, have made use of the means and instrumentalities of interstate commerce, the mails, or the facilities of a national securities exchange in connection with the acts, practices, and courses of business described below.

2.    The Commission's action arises of out trades, placed or cleared through broker-dealers in the United States registered with the Commission, in the options of a United States corporation whose common stock is traded on the New York Stock Exchange and whose options are traded on The American Stock Exchange LLC, the Chicago Board Options Exchange, the International Securities Exchange, the NYSE Arca, the Philadelphia Stock Exchange, and the Boston Stock Exchange.

3.    This Court has subject matter jurisdiction over this action pursuant to Sections 21(e), 21A and 27 of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78aa.

4.    This Court has personal jurisdiction over Defendants #2 and #3 pursuant to Section 27 of the Exchange Act, based on the activities set forth in Conclusions of Law 1 and 2.

5.    Certain of the transactions, acts, practices, and courses of business constituting the alleged violations of law occurred within the Northern District of Illinois. Accordingly, pursuant to Sections 21(d) and 27 of the Exchange Act, 15 U.S.C. §§ 78u(d) and 78aa, venue properly lies in this District.

6.    Defendants #2 and #3 received actual notice of the pendency of this action against them, the TRO, and the date and time of the preliminary injunction hearing in this matter. Service of process was validly effected pursuant to the TRO, ¶ V. All pleadings and other papers were served on Defendants in accordance with FED. R. CIV. PRO. 5.

*SEC v. One or More Unknown Purchasers of Call Options*
*For the Common Stock of TXU Corp.*
PRELIMINARY INJUNCTION AGAINST DEFENDANTS #2 AND #3

Page 3

7.    Defendants #2 and #3 have violated this Court's order requiring them to provide
information identifying themselves and their brokerage and financial accounts. Defendants #2 and
#3 have also defaulted on the Commission's motion for a preliminary injunction continuing the
asset freeze and for an order granting other relief.

8.    The Commission has demonstrated that it is necessary to continue the asset freeze during
the pendency of this action to ensure that there are assets to satisfy, at least in part, any final
judgment that the Commission might obtain against Defendants #2 and #3.

9.    The Commission has also demonstrated that there is a basis to infer that Defendants #2 and
#3 purchased TXU Corp. call options while in possession of material, nonpublic information
concerning a proposed buyout of TXU Corp. by private equity groups headed by KKR, TPG, and
Goldman, Sachs & Co, in violation of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and
Rule 10b-5 promulgated thereunder [17 C.F.R. § 240.10b-5].

Based on the foregoing Findings of Fact and Conclusions of Law:

I.

**IT IS HEREBY ORDERED** that, during the pendency of this matter, Defendants #2 and
#3, their officers, agents, servants, employees, attorneys, and those persons in active concert or
participation with them who receive actual notice of this Order by personal service or otherwise
(including, without limitation, Swiss American Securities, Inc., Credit Suisse, Fimat USA, LLC,
Fimat Banque Frankfurt Zwiegniederlassung or their affiliates, successors in interest and assigns);
and each of them, shall, until further ordered by the Court, hold and retain within their control, and
otherwise prevent any disposition, transfer, or dissipation of any and all of the following series of
call options for the common stock of TXU Corp. ("TXF") as indicated below (or proceeds from
the sale or exercise of any such call options):

*SEC v. One or More Unknown Purchasers of Call Options*                    Page 4
*For the Common Stock of TXU Corp.*
PRELIMINARY INJUNCTION AGAINST DEFENDANTS #2 AND #3

▪      TXF Mar 60 Calls purchased on 2/21/07 in account number 65400141
        at Credit Suisse and cleared through Swiss American Securities, Inc.; and

▪      TXF Mar 60 Calls purchased on 2/21/07 and TXF Apr 62½ Calls
        purchased on 2/22/07 in account number FMT ZGR62E1 at Fimat Banque
        Frankfurt Zweigniederlassung and cleared through Fimat USA LLC.

Notwithstanding, this Order will not preclude the sale or exercise of such call options provided

that Swiss American Securities, Inc., Credit Suisse, Fimat USA, LLC, Fimat Banque Frankfurt

Zwiegniederlassung (or their affiliates, successors in interest and assigns) holds and retains the

proceeds of any such sale or exercise as required by this Order.

## II.

IT IS HEREBY FURTHER ORDERED that each defendant shall submit in writing to

this Court and Plaintiff Commission within two (2) business days following service of this Order,

the following identifying information:

(A)     all names by which each defendant is known, all business and residence addresses,

        postal box numbers, telephone numbers, and facsimile numbers, and the nationality

        of each defendant; and

(B)     each account with any financial institution or brokerage firm maintained in each

        defendant's name or held for the defendant's direct or indirect beneficial interest

        from January 1, 2005 to the present, including, but not limited to, each account

        through which the defendant directed securities transactions at any time since

        October 1, 2005, or in which proceeds from such transactions were held.

## III.

IT IS FURTHER ORDERED that, within 72 hours of notice of the entry of this Order,

Defendants #2 and #3 shall repatriate all assets obtained from the activities described in the

*SEC v. One or More Unknown Purchasers of Call Options*                                                    Page 5
*For the Common Stock of TXU Corp.*
PRELIMINARY INJUNCTION AGAINST DEFENDANTS #2 AND #3

Commission's Complaint that are now located outside the territorial limits of the United States, and that each Defendant direct the return of such assets to the Registry of the Court, pending conclusion of this matter.

## IV.

**IT IS HEREBY FURTHER ORDERED** that defendants, their officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them, and each of them, are hereby restrained from destroying, mutilating, concealing, altering or disposing of any items, including but not limited to any books, records, documents, contracts, agreements, assignments, obligations or other property of the defendants, relating to the defendants or any of their securities, financial or business dealings.

## V.

A.    **IT IS HEREBY FURTHER ORDERED** that pursuant to Rule 4 of the Federal Rules of Civil Procedure, service of all pleadings and other papers, including the Summons, the Complaint, this Order and all documents filed in support thereof, and all other documents to be served in this action, may be made by serving such documents on any of the following agents of defendants:  Swiss American Securities, Inc., Credit Suisse, Fimat USA, LLC, Fimat Banque Frankfurt Zwiegniederlassung, and any of their respective affiliates, successors in interest and assigns.

B.    **IT IS HEREBY FURTHER ORDERED** that, pursuant to Rule 4 of the Federal Rules of Civil Procedure, service of all pleadings and other papers, including the Summons, the Complaint, this Order and all documents filed in support thereof, and all other documents to be served in this action, may be made personally, by facsimile, by overnight courier, or by mail upon Defendants #2 and #3, their attorneys, their U.S. agents, or their foreign agents identified in the

*SEC v. One or More Unknown Purchasers of Call Options*
*For the Common Stock of TXU Corp.*
PRELIMINARY INJUNCTION AGAINST DEFENDANTS #2 AND #3

Page 6

prior subparagraph to the extent permitted by law, or by an alternative provision for service

permitted by Rule 4 of the Federal Rules of Civil Procedure, or as this Court may direct by further

order.

VI.

**IT IS HEREBY FURTHER ORDERED** that this Order shall be, and is, binding upon

Defendants #2 and #3, and each of their agents, servants, employees, attorneys-in-fact, and those

persons in active concert or participation with them who receive actual notice of this Order by

personal service, facsimile service, service in accordance with Section V of this Order, or

otherwise.

Dated this *28* day of March, 2007.

UNITED STATES DISTRICT JUDGE

*SEC v. One or More Unknown Purchasers of Call Options*
*For the Common Stock of TXU Corp.*
PRELIMINARY INJUNCTION AGAINST DEFENDANTS #2 AND #3

Page 7

# EXHIBIT N

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | NO. 06-4540 |
| | : | |
| v. | : | |
| | : | |
| ONE OR MORE PURCHASERS OF CALL OPTIONS FOR THE COMMON STOCK OF CNS, INC., | : | |
| | : | |
| Defendants. | : | |

## PRELIMINARY INJUNCTION FREEZING ASSETS AND GRANTING OTHER RELIEF

This matter came before the Court pursuant to the orders of October 20 and 23, 2006, requiring defendants to show cause why the Court should not enter a preliminary injunction extending the asset freeze and other ancillary relief provided in the temporary restraining order entered at the request of the Securities and Exchange Commission ("Commission") on October 20, 2006 (doc. no.'s 9, 10). Having considered the papers and exhibits submitted by the Commission in support of its requests for preliminary relief, having heard argument by the Commission during the show cause hearing on October 30, 2006, finding that defendant Unknown Purchasers received notice of these proceedings by service in a manner authorized in the temporary restraining orders issued in this case (see doc. no.'s 4, 9) but failed to appear at the show cause hearing

1

or to otherwise oppose issuance of the preliminary
injunction despite having been provided notice, and for the
reasons set forth in the Court's memoranda accompanying the
two earlier temporary restraining orders (see doc. no.'s 4,
9), the Court hereby **GRANTS** the Commission's request for a
preliminary injunction and orders as follows:

I.

**IT IS HEREBY ORDERED** that defendants and their
officers, agents, servants, employees, and those persons in
active concert or participation with them who receive actual
notice of this preliminary injunction by personal service or
otherwise, including without limitation  Swiss American
Securities, Inc. ("SASI") and National Financial Services
LLC ("NFS"), shall hold and retain within their control, and
prevent any disposition, transfer or dissipation of, any
proceeds currently in their possession, custody, or control
from: (i) the sales of 430 October-30 call option contracts
and 475 November-30 call option contracts for shares of CNS,
Inc. on October 9 and 10 in the account maintained in the
name of or for the benefit of the Credit Suisse; and (ii)
the sales of 195 October-30 call option contracts, 66
November-30 call option contracts, and 20 November-35 call
option contracts for shares of CNS, Inc. on October 9 in the
account maintained in the name of or for the benefit of

2

Zurich Cantonal Bank.

## II.

**IT IS FURTHER ORDERED** that (A) in addition to all other potential means of service, service of all pleadings, process, and papers in this litigation, including the summons, complaint, and this preliminary injunction, may be made by serving such documents on the following as agents of defendants:  For defendants who directly or indirectly purchased call options at issue in this litigation through Swiss American Securities, Inc., service may be made on Swiss American Securities, Inc.  For defendants who directly or indirectly purchased call options at issue in this litigation through National Financial Services LLC, service may be made on National Financial Services LLC or Prudential Equity Group LLC; and (B) in addition to all other potential methods of service, service on defendants, directly or through their agents or attorneys, may be by facsimile, overnight courier, mail, or any alternative permitted by Rule 4 of the Federal Rules of Civil Procedure, including letters rogatory, or as this Court may direct by further order.

## .III.

**IT IS FURTHER ORDERED** that each defendant shall submit the following identifying information to the Commission within 20 days following service of this preliminary

3

injunction on that defendant: (A) all names by which the
defendant is known; defendant's business and residence
addresses; defendant's post office box numbers, telephone
numbers, and facsimile numbers; and defendant's nationality;
and (B) each account held by the defendant with any financial
institution or brokerage at any time between September 1,
2006, and October 15, 2006.

### IV.

**IT IS FURTHER ORDERED** that defendants and their
officers, agents, servants, employees, and attorneys,
including Swiss American Securities, Inc., National
Financial Services LLC, and Prudential Equity Group LLC, are
hereby restrained from destroying, mutilating, concealing,
altering or disposing of any documents or other items,
including any books, records, documents, agreements,
correspondence, memos, and electronic data or communication in
any form, relating to defendants' direct or indirect purchase
or sale of options relating to the common stock of CNS during
the period September 1, 2006, through October 15, 2006.

### V.

**IT IS FURTHER ORDERED** that this preliminary
injunction supersedes the temporary restraining order issued
on October 20, 2006, and shall remain in effect until final
judgment except as amended or withdrawn by further order of

4

the Court.

## VI.

**IT IS FURTHER ORDERED** that the Commission shall file a status report by **December 29, 2006,** in which the Commission shall request either: (1) a status and scheduling conference to be held in this matter; or (2) for the matter to be continued until a further date, at which date the Commission shall file its next status report in this matter.

**AND IT IS SO ORDERED.**

Date: <u>10/30/06</u>              <u>S/Eduardo C. Robreno</u>
                                **Eduardo C. Robreno    J.**
Time: <u>10 a.m.</u>

5