UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>GIANLUCA DI NARDO,<br>CORRALERO HOLDINGS, INC.<br>OSCAR RONZONI<br>PAOLO BUSARDÒ,<br>TATUS CORP., and<br>A-ROUND INVESTMENT, SA<br><br>Defendants. | Case No. 1:08-cv-06609-PAC<br><br>Related Case:  08-cv-4520-PAC |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S MOTION TO ESTABLISH FAIR FUND, APPROVE DISTRIBUTION PLAN, AND ESTABLISH NOTICE PROCEDURES**

Plaintiff, the United States Securities and Exchange Commission (the "Commission" or "SEC"), respectfully submits this Memorandum of Law in Support of its Motion for an Order  (i) establishing a Fair Fund under the Fair Fund provisions of Section 308(a) of the Sarbanes-Oxley Act of 2002, as amended [15 U.S.C. § 7246(a)]; (ii) approving the Commission's plan to distribute the Fair Fund attached hereto as Exhibit A ("Distribution Plan"); and (iii) establishing notice procedures as set forth in the proposed Distribution Plan.

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

  A.   **Factual Background**

On July 25, 2008, the Commission brought this civil insider trading case seeking, among other things, permanent injunctive relief against one or more unknown purchasers of call options for the common stock of DRS Technologies, Inc. ("DRS") and American Power Conversion

1

Corp. ("APCC"). The Commission alleged that the Unknown Purchaser or Purchasers made well-timed purchases of call options of both corporations in the days and weeks immediately preceding public disclosures and announcements relating to these companies' ultimate acquisitions. In both cases, there was no public information available concerning the acquisitions before the purchases of the call options. On August 18, 2008, the Court issued a Preliminary Injunction Freezing Assets and Granting Other Relief, thereby freezing the accounts of the unknown purchasers at UBS AG in Zurich, Switzerland ("UBS Zurich").

Subsequently, on October 6, 2010, the Commission filed its First Amended Complaint, identifying the previously unknown purchasers as Gianluca DiNardo ("DiNardo"), his investment vehicle Corralero Holdings, Inc. ("Corralero Holdings"), and four other Defendants: Oscar Ronzoni ("Ronzoni"), Paolo Busardò ("Busardò"), Tatus Corp. ("Tatus"), and A-Round Investment SA ("A-Round").

### B.      Procedural Background

On October 12, 2010, with the consent of Defendants Di Nardo and Corralero Holdings, without admitting or denying the allegations of the Amended Complaint, the Court entered Final Judgment as to both Defendants pursuant to Rule 54(b) of the Federal Rules of Civil Procedure permanently restraining them from violations of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder. Pursuant to the Final Judgment, Defendants were jointly and severally liable for disgorgement of $2,110,600.00, prejudgment interest in the amount of $191,345.77 and a civil penalty in the amount of $700,000.00, for a total of $3,001,945.77. On the same date, the Court entered a Consent Order for Payment of Judgment from Frozen Funds, requiring UBS Zurich to transfer $3,001,945.77 to the Clerk of the Court from the frozen accounts in satisfaction of the Final Judgments entered

against the Defendants. The Clerk of the Court then deposited the funds into an interest-bearing account with the Court Registry Investment System ("CRIS"), under the case name designation *Securities and Exchange Commission v. Gianluca Di Nardo, et al.*, Account No. 1:08cv06609-1.

On April 19, 2011, with the consent of the remaining Defendants, and without admitting or denying the allegations of the Amended Complaint, the Court entered Final Judgments as to Defendants Ronzoni, Busardò, Tatus and A-Round permanently restraining them from violations of Section 10(b) of the Exchange Act and Rule 10b-5. Pursuant to these Final Judgments, these Defendants were jointly and severally liable for disgorgement of $967,699.97, prejudgment interest in the amount of $8,689.00 and a civil penalty in the amount of $483,849.99 for a total amount of $1,460,238.96. On the same date, the Court entered a Consent Order for Payment of Judgment from Frozen Funds, requiring UBS Zurich to transfer $1,460,238.96 to the Clerk of the Court from the frozen accounts in satisfaction of the Final Judgments entered against these Defendants.

These monies were also paid to the Clerk of the Court, and the funds were also deposited into an interest-bearing account with the CRIS under the case name designation *Securities and Exchange Commission v. Gianluca Di Nardo, et al.*, Account No. 1:08cv06609-6. As of September 9, 2013, the balance in the two accounts totaled $4,459,629.35 (the "Distribution Fund").

        **C.**      **<u>Appointment of Damasco & Associates LLP as Tax Administrator</u>**

The Distribution Fund constitutes a Qualified Settlement Fund ("QSF") under Section 468B(g) of the Internal Revenue Code ("IRC"), 26 U.S.C. § 468B(g), and related regulations, 26 C.F.R. §§ 1.468B-1 through 1.468B-5.

On June 24, 2011, the Court approved the appointment of Damasco & Associates LLP ("Damasco") to fulfill the tax obligations of the Distribution Fund. Pursuant to that Order, the Tax Administrator is required to pay taxes in a manner consistent with treatment of the Distribution Fund as a QSF and is to be compensated for the tax services provided. The reasonable costs, fees, and other expenses incurred in the performance of the Tax Administrator's duties will be borne by the Distribution Fund in accordance with the agreement between the Commission and the Tax Administrator.

## II.   THE COURT SHOULD ESTABLISH A FAIR FUND

The Commission now moves the Court to designate these funds as a Fair Fund pursuant to Section 308(a) of the Sarbanes-Oxley Act of 2002, as amended, which provides in relevant part:

> If, in any judicial or administrative action brought by the Commission under the securities laws, the Commission obtains a civil penalty against any person for a violation of such laws, or such person agrees, in settlement of any such action, to such civil penalty, the amount of such civil penalty shall, on the motion or at the direction of the Commission, be added to and become part of the disgorgement fund or other fund established for the benefit of the victims of such violation.

*See* 15 U.S.C. §7246(a). The Commission brought this action under the securities laws and the Defendants paid civil penalties as part of the settlements. Accordingly, Section 308's requirements have been satisfied, and the Court should establish a Fair Fund to facilitate ultimate distribution to injured investors.

## III.   THE COURT SHOULD APPROVE PLAINTIFF'S PLAN OF DISTRIBUTION

The SEC's proposed Distribution Plan is an equitable plan, which the Court has the authority to approve. The Court has broad equitable authority to craft remedies for violations of federal securities laws. *SEC v. Fishbach Corp.,* 133 F.3d 170, 175 (2d Cir.1997). The standard

applied by courts in assessing a plan of distribution is whether it is "fair and reasonable." *SEC v. Wang,* 944 F.2d 80, 84 (2d Cir. 1991) (Court will approve plan if "fair and reasonable").  Courts have accorded the Commission wide discretion in the development of plans to distribute disgorged funds.  *Id.* at 88.  The proposed Distribution Plan would fairly compensate all traders in the securities of APCC and DRS who sold call options that were purchased by the Defendants during the relevant time period and who suffered a loss as a result.  The proposed Distribution Plan is attached hereto as Exhibit A, and its provisions are summarized below:

(a) The Distribution Plan provides for a comprehensive and efficient means to identify and notify potentially eligible Counter-Parties[1] who might be entitled to recovery from the Distribution Fund.

(b) The Distribution Plan provides for the distribution of all available funds to those Counter-Parties that are eligible based upon a distribution formula calculated by the Commission's expert, *see Declaration of Stuart Jackson*, attached hereto as Exhibit B, which formula includes a hedge deduction to ensure that no Counter-Party receives a windfall profit.  Consistent with precedent in other Commission insider trading cases (*see Securities and Exchange Commission v. Reza Saleh and Amir Saleh,* United States District Court, Northern District of Texas, Dallas Division, Case No. 3:09-CV-01778-M; and *Securities and Exchange Commission v. Michael J. Ricks, et al.,* United States District Court, Western District of North Carolina, Charlotte Division, Case No. 3:04-CV-576), the distribution, as proposed, will only cover losses on trades in which the insider trader was the purchaser.

---

[1] A "Counter-Party" is defined as a person or firm who sold call option contracts in the securities of DRS from April 29, 2008 through May 7, 2008 and/or sold call option contracts in the securities of APCC from September 21, 2006 through September 22, 2006, which options were purchased by Defendants.

(c)  The Distribution Plan provides for the Commission staff to send a notice (a proposed Notice of Plan to Distribute Funds to Counter-Parties, attached hereto as Exhibit C) about the Plan to the Counter-Parties giving them an opportunity to object to the Commission staff's determination of the amount of their distribution payment. After the objections are resolved, either by the Commission staff or the Court, the Commission staff will submit a proposed final distribution order for the Court's approval. Once approved, the Commission staff will submit to the Clerk of the Court a list of names, addresses, and amounts to be disbursed and the Clerk shall cause checks to be drawn on the CRIS account and issued to the Counter-Parties in the amounts specified. Each check issued by the Clerk will state on the face of the check that it is valid for one year. After one year from the date on the distribution check, the Commission staff will contact the Clerk to obtain information regarding the amount of all uncashed checks. The amount of all uncashed checks shall be returned to the Distribution Fund.

(d)  Forty-Five (45) days after the remittance of the checks, the Commission staff shall obtain information from the Clerk of the Court concerning checks that have not been negotiated. The staff of the Commission shall then undertake good faith efforts for thirty (30) days to locate and contact the intended recipients of the uncashed checks to ensure that the intended recipients have a reasonable opportunity to participate in the distribution.

(e)  The Commission staff will submit a final report to the Court prior to termination of the Distribution Fund. The report shall include, among other things, a final accounting of all monies received, earned, spent, and distributed in connection

    with any administration of the Distribution Plan, and if necessary, a request for approval of any unpaid fees and costs.

(f)      After submission of the final accounting, the Clerk of the Court will close the CRIS account, remitting any proceeds to the Office of Financial Management, U.S. Securities and Exchange Commission for transfer to the United States Treasury.

(g)      The Distribution Fund shall be eligible for termination, after all of the following have occurred: (1) the final accounting has been submitted and approved by the Court; (2) all taxes and fees have been paid; and (3) all remaining funds have been paid to the Commission for transfer to the United States Treasury.

In sum, the SEC's proposed Distribution Plan in this case is "fair and reasonable." *SEC v. Wang,* 944 F.2d at 84.

**IV.     CONCLUSION**

For the foregoing reasons, the Commission respectfully requests that the Court grant the SEC's Motion for an Order: (i) establishing a Fair Fund under the Fair Fund provisions of Section 308(a) of the Sarbanes-Oxley Act of 2002, as amended [15 U.S.C. §7246(a)]; (ii) approving the Commission's plan to distribute the Fair Fund submitted herewith; and (iii) establishing notice procedures as set forth in the proposed Distribution Plan.

Dated: September 17, 2013
Washington, DC

Respectfully submitted,

s/ Nichola L. Timmons_____
Nichola L. Timmons
Attorney for Plaintiff
Securities and Exchange Commission
100 F Street, N.E.
Washington, DC 20549-5631
Tel:  (202) 551-4456
Fax:  (703) 813-9728
Email: Timmonsn@sec.gov